## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SOUTHERN SNOW MFG. CO., INC.** | **CIVIL ACTION** |
| **v.** | **CASE NO. 06-9170** |
| **SNOWIZARD, INC.** | **SEC. A, JUDGE JAY C. ZAINEY** |
| | **MAG. 1, MAG. JUDGE SHUSHAN** |

## SECOND AMENDED COMPLAINT

Plaintiff Southern Snow Mfg. Co., Inc., with respect, amends its petition filed in state court on 21 March 2006 and once previously amended, and files this Second Amended Complaint, intended as a substitute and replacement petition, as follows:

### Jurisdiction and Venue

1.     This U.S. District Court has jurisdiction under 28 USC §1331 and 15 USC §1121 because Plaintiffs complain pursuant to the Lanham Act, codified at 15 USC §1051, *et seq.*, the federal law regulating trademarks and unfair competition and trade practices.  This Court has supplemental jurisdiction under 28 USC §1367 over Plaintiffs' state-law claims under Louisiana state trade mark law at La. R.S. 51:211, *et seq.*, under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, and under Louisiana Civil Code Article 2315, which arise from the same transactions or occurrences and implicate the same questions of fact and related questions of law.

2.     Venue is proper in the Eastern District of Louisiana under 28 USC §1391 where the defendant is subject to personal jurisdiction, the defendant is doing business in the State of Louisiana, and the acts complained of occurred in such district.

1

**Parties**

3.  [1]  Southern Snow Manufacturing Co., Inc., (Southern Snow) is a Louisiana corporation domiciled in Plaquemines Parish, State of Louisiana, and is petitioner herein.

4.  [2]  SnoWizard, Inc., (SnoWizard) is a Louisiana corporation domiciled in the Parish of Jefferson, State of Louisiana, and is made defendant herein.

**Facts establishing Plaintiffs' standing to bring this Complaint**

5.  [3]  Petitioner Southern Snow and Defendant SnoWizard are both engaged in the business of manufacturing ice-shaving machines and flavoring concentrates, and selling such ice-shaving machines and flavoring concentrates to vendors of "snowball" flavored ice confections.

6.  Plaintiff Southern Snow Mfg. Co., Inc, has a business need to offer and sell the goods for which Defendant asserts trademark rights.

**Overview of Complaint**

7.  Plaintiff sues under federal law of trademarks and unfair competition and trade practices, the Lanham Act, codified at 15 USC §1051, *et seq.*, under Louisiana state trade mark law at La. R.S. 51:211, *et seq.*, under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, and under Louisiana Civil Code Article 2315.  Defendant business-competitor SnoWizard unlawfully asserted trademarks in ORCHID CREAM VANILLA, WHITE CHOCOLATE & CHIPS, and SNOBALL.  Defendant's purported trademarks are variously federally-registered, invoking Lanham Act Sections 37 & 38 (15 USC §1119 & §1120), or state-registered or common-law trademarks, invoking Lanham Act Sections 35 & 43 (15 USC §1117 & §1125).  Defendant also damaged Plaintiff's business by making false claims of having invented and/or originated the snowball, the snowball machine, the snowball "industry", and various snowball flavors.  Plaintiff claims damages, enhanced damages, costs, attorney fees, and equitable relief for Defendant's various unlawful assertions and registrations of trademarks and other false assertions.

2

**Original Amended Statement of Claims**

8.     [4]  Defendant SnoWizard made a false claim of trademark infringement for the snowball flavor ORCHID CREAM VANILLA, such false claim damaging plaintiff Southern Snow by, among other things, causing it to incur costs in responding to the false claim of trademark infringement.  Defendant obtained the registration of a trademark for ORCHID CREAM VANILLA by providing false information to the trademark registering authority.  The false claim of infringement was first made in a 'cease and desist' letter from plaintiff's attorney dated 23 March 2005.

9.     [4a]  Plaintiff suffered and is suffering damages as a result of defendant's false claim of trademark infringement for ORCHID CREAM VANILLA and is entitled to recovery under Louisiana Civil Code Article 2315 and under the Louisiana Unfair Trade Practices Act, R.S. 51:1405, *et seq.*

10.     [4b]  Defendant SnoWizard perpetrated fraud upon the U.S. Patent and Trademark Office by stating in a signed statement made part of the application for registration that "... no other person, firm, corporation, or association has the right to use the mark in commerce..." when in fact the defendant knew at the time of signing the statement that the mark for the snowball flavor ORCHID CREAM VANILLA was originated decades earlier by the unrelated business Plum Street Snowballs, that consumers associated the mark with the Plum Street Snowballs business, that the mark had come to be used by other snowball businesses, and that the Plum Street Snowballs business and other snowball businesses had a right to continue to use the mark in commerce.  This false statement by the defendant was made willfully, in bad faith, and with the intent to obtain a registration to which the defendant was not entitled.  This willfully withheld information, if disclosed to the Patent and Trademark Office, would have resulted in the disallowance of the registration.  Plaintiff suffered and is suffering damages as a result of defendant's action and is entitled to recovery under Louisiana Civil Code Article 2315, under the Louisiana Unfair Trade Practices Act, R.S. 51:1405, *et seq.*, and under U.S. trademark law 15 U.S.C. §1120.

11.    [4c]  Defendant SnoWizard perpetrated fraud upon the U.S. Patent and Trademark Office by stating, through counsel, in response to a direct inquiry from the Trademark Examining Attorney, that the product does not "... contain orchids as an ingredient or additive, or in any way feature orchids ...", when in fact the defendant knew that the product contained an extract from the vanilla orchid plant, and that the product when used as directed featured a light purple or violet color that is so closely associated with orchids that a color named "orchid", being a light purple or violet, can be found in many dictionaries and color charts.  This false statement by the defendant was made willfully, in bad faith, and with the intent to obtain a registration to which the defendant was not entitled.  This willfully withheld information, if disclosed to the Patent and Trademark Office, would have resulted in the disallowance of the registration.  Plaintiff suffered and is suffering damages as a result of defendant's action and is entitled to recovery under Louisiana Civil Code Article 2315, under the Louisiana Unfair Trade Practices Act, R.S. 51:1405, *et seq.*, and under U.S. trademark law 15 U.S.C. §1120.

12.    [4d]  Defendant SnoWizard perpetrated fraud upon the U.S. Patent and Trademark Office by stating, through counsel, in response to a direct inquiry from the Trademark Examining Attorney, that the product "... does not feature a scent or odor of orchids ...", when in fact the defendant knew that the product featured a "flowery" scent and the "subtle flowery overtones of the vanilla orchid".  This false statement by the defendant was made willfully, in bad faith, and with the intent to obtain a registration to which the defendant was not entitled.  This willfully withheld information, if disclosed to the Patent and Trademark Office, would have resulted in the disallowance of the registration.  Plaintiff suffered and is suffering damages as a result of defendant's action and is entitled to recovery under Louisiana Civil Code Article 2315, under the Louisiana Unfair Trade Practices Act, R.S. 51:1405, *et seq.*, and under U.S. trademark law 15 U.S.C. §1120.

13.    [4e]  Defendant SnoWizard perpetrated fraud upon the U.S. Patent and Trademark Office by stating, through counsel, in response to a direct inquiry from the Trademark Examining Attorney, that "orchid" "... has no significance in the relevant trade, no geographical significance ..." when in fact the defendant knew that the word "orchid" and the mark ORCHID CREAM VANILLA had been significant in the snowball trade for many years and had been featured in newspaper and magazine articles, some of which were quoted or reprinted in defendant's own publications.  This false statement by the defendant was made willfully, in bad faith, and with the intent to obtain a registration to which the defendant was not entitled.  This willfully withheld information, if disclosed to the Patent and Trademark Office, would have resulted in the disallowance of the registration.  Plaintiff suffered and is suffering damages as a result of defendant's action and is entitled to recovery under Louisiana Civil Code Article 2315, under the Louisiana Unfair Trade Practices Act, R.S. 51:1405, *et seq.*, and under U.S. trademark law 15 U.S.C. §1120.

14.    [4f]  Defendant SnoWizard perpetrated fraud upon the U.S. Patent and Trademark Office by stating, through counsel, in response to a direct inquiry from the Trademark Examining Attorney, that "[O]rchid is an arbitrary word added to cream vanilla to create an arbitrary and fanciful trademark[.]" when in fact the defendant knew that the word "orchid" and the mark ORCHID CREAM VANILLA had been in general use in the snowball trade for many years and that the word and the mark were evocative of the ingredients, the color, the smell, and the general effect of a certain type of snowball.  This false statement by the defendant was made willfully, in bad faith, and with the intent to obtain a registration to which the defendant was not entitled.  This willfully withheld information, if disclosed to the Patent and Trademark Office, would have resulted in the disallowance of the registration.  Plaintiff suffered and is suffering damages as a result of defendant's action and is entitled to recovery under Louisiana Civil Code Article 2315, under the Louisiana Unfair Trade Practices Act, R.S. 51:1405, *et seq.*, and under U.S. trademark law 15 U.S.C. §1120.

15.     [4g]  Defendant's several instances of fraud upon the U.S. Patent and Trademark Office as set forth above are subject to civil liability imposed by U.S. trademark law, 15 U.S.C. §1120, which is a matter separate from any consideration of cancellation of the trademark registration, and which may be properly tried by this honorable Court.

16.     [5]  Defendant SnoWizard made a false claim of trademark infringement for the snowball flavor WHITE CHOCOLATE AND CHIPS, such false claim damaging plaintiff Southern Snow by, among other things, causing it to incur costs in responding to the false claim of trademark infringement.  The false claim was first made in a 'cease and desist' letter from plaintiff's attorney dated 8 April 2005.

17.     [5a]  Plaintiff suffered and is suffering damages as a result of defendant's false claim of trademark infringement for WHITE CHOCOLATE AND CHIPS and is entitled to recovery under Louisiana Civil Code Article 2315 and under the Louisiana Unfair Trade Practices Act, R.S. 51:1405, *et seq*.

18.     [6]  Defendant SnoWizard presently makes false claims of having a trademark in the word SNOBALL, such false claims being derogatory to plaintiff Southern Snow's business and reputation, and damaging to plaintiff.  Defendant knows that such claims are false because of its knowledge of expirations, revocations, and refusals to register the trademark.  Defendant's false claims of trademark are made in its current advertising, product literature, and on its website.

19.     [6a]  Plaintiff suffered and is suffering damages as a result of defendant's false claims of trademark in SNOBALL and is entitled to recovery under Louisiana Civil Code Article 2315 and under the Louisiana Unfair Trade Practices Act, R.S. 51:1405, *et seq*.

20.     [7]  Defendant SnoWizard presently makes false claims of having invented the snoball or snowball shaved ice confection, such false claims being derogatory to plaintiff Southern Snow's business and reputation, and damaging to plaintiff.  Defendant knows, or should know, that snowballs have been a popular

confection since long before the establishment of its business, and that machinery for shaving ice to make snowballs has been developed and sold since long before the establishment of its business.

21.   [7a]   Plaintiff suffered and is suffering damages as a result of defendant's false claims of having invented the snoball or snowball and is entitled to recovery under Louisiana Civil Code Article 2315 and under the Louisiana Unfair Trade Practices Act, R.S. 51:1405, *et seq*.

22.   [8]   Defendant SnoWizard presently makes false claims of having originated several flavors for snowballs, such false claims being derogatory to plaintiff Southern Snow's business and reputation, and damaging to plaintiff. Defendant knows that these several flavors were offered and sold by other suppliers before the defendant began offering and selling the flavors.  Among the flavors falsely claimed as having been originated by defendant are Wedding Cake, Pink Champagne, Mango, Tiger's Blood, Egg Custard, Silver Fox, Wild Cherry, and Wild Strawberry.

23.   [8a]  Plaintiff suffered and is suffering damages as a result of defendant's false claims of having originated several flavors for snowballs and is entitled to recovery under Louisiana Civil Code Article 2315 and under the Louisiana Unfair Trade Practices Act, R.S. 51:1405, *et seq*.

24.   [9]  Defendant SnoWizard caused, and is causing, damages reasonable in the premises to plaintiff Southern Snow.

25.   [10]  Some or all of defendant's above-listed actions are a violation of the Louisiana Unfair Trade Practices Act, R.S. 51:1405, *et seq*.

### Second-Amended Clarification of Claims

26.   The federal law of trademark under which these claims are made is the Lanham Act, codified at 15 USC §1051, *et seq*., which is the federal law regulating registered and unregistered trademarks and unfair competition and trade practices.

27.     Fraudulent federal registration of the purported trademark ORCHID CREAM VANILLA most specifically invokes Lanham Act Section 38 (15 USC §1120) and Section 37 (15 USC §1119), which are considered *in pari materia* with the entire Lanham Act.

28.     Fraudulent registration of the purported trademark ORCHID CREAM VANILLA is also unfair competition or trade practice under Lanham Act Section 43 (15 USC §1125), considered *in pari materia* with the entire Lanham Act, and under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq*., and Louisiana Civil Code Article 2315.

29.     Unlawful assertion of the purported trademarks WHITE CHOCOLATE AND CHIPS and SNOBALL, *not* federally registered, including assertion of state-registered or common-law trademarks, is unfair competition or trade practice, implicating Lanham Act Section 43 (15 USC §1125), considered *in pari materia* with the entire Lanham Act, and under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq*., and Louisiana Civil Code Article 2315.

30.     Application for federal registration of a trademark is deemed constructive use of the mark as a federal trademark under Lanham Act Section 7(c) (15 USC 1057(c)), and is, consequently, an assertion of having a federal trademark.

31.     Remedies under the federal Lanham Act are provided in various sections of the Act and are applicable to various violations of other sections of the Act. Provided remedies include damages, enhanced damages, profits, costs, reasonable attorney fees, and injunctive and other equitable relief.

32.     Remedies under the Louisiana Unfair Trade Practices Act (LUTPA) include damages, treble damages, and recovery of costs and reasonable attorney fees.  Treble damages are available for "willful" violations of the Act, and single damages are available for non-willful violations.

33.     Louisiana state-law trademarks are governed by La. R.S. 51:211, *et seq*.  La. R.S. 51:219 provides that a mark shall be cancelled, *inter alia*, when a

8

court of competent jurisdiction orders such a cancellation on any ground, including any finding that the registrant is not the owner of the mark, that the registration was granted improperly, or that the registration was obtained fraudulently.

34.    In order to obtain Louisiana state trademark registrations, as Defendant has, the applicant must submit a signed and notarized sworn statement, swearing that the applicant is the owner of the mark, and that no other has the right to use the mark in the indicated class.  The applicant must also swear that the facts alleged in the application, which includes the dates of first use, are true.

35.    Fraud upon the USPTO for the purpose of trademark registration is a false statement or the witholding of material information by an applicant, made willfully, in bad faith, and with the intent to obtain a registration to which the applicant is not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

36.    Fraud upon the State of Louisiana for the purpose of trademark registration is a false statement or the withholding of material information by an applicant, made willfully, in bad faith, and with the intent to obtain a registration to which the applicant is not entitled, where the truth of the matter, if disclosed to the State, would have resulted in disallowance of registration.

**ORCHID CREAM VANILLA**

37.    Defendant applied for federal trademark registration for ORCHID CREAM VANILLA in International Class 030, for "flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections", on 12 May 2003, in application No. 78248640, which was granted as Registration No. 2901592 on 9 November 2004.

38.    Ronald R. Sciortino, Defendant's President, signed the ORCHID CREAM VANILLA application and attested to the truthfulness and accuracy of the statements made.

39.     Ronald R. Sciortino, Defendant's President, signed the Declaration dated 9 May 2003 in the ORCHID CREAM VANILLA application and attested to the truthfulness and accuracy of the statements made, acknowledging the Declaration's warning "that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration".

40.     Defendant SnoWizard stated in a solemn declaration to the USPTO on 9 May 2003 that Defendant was the owner of the trademark ORCHID CREAM VANILLA sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

41.     Defendant stated to the USPTO on 12 May 2003 that its first use and first use in commerce date for ORCHID CREAM VANILLA was 1 June 1999.

42.     Defendant claims a trademark in ORCHID CREAM VANILLA by affixing a circle-R to the flavor name in Defendant's promotional materials and advertising.

43.     Defendant sold a generic or descriptive "Orchid Cream Vanilla" flavor concentrate for more than five years with no claim of trademark or exclusivity.

44.     Defendant's own promotional literature, including its 2007 "Flavor-Color-Description" list, identifies the "Orchid Cream Vanilla" flavor concentrate as having the color "Neon Lavender", and the description: "Rich creamy flowery vanilla flavor.  Unique fluorescent color".

45.     "Orchid Cream Vanilla" is a *generic* identifier for the flavor name of the snowball shaved ice confection that results from using Defendant's "Orchid Cream Vanilla" flavoring concentrate as directed.

46.     "Orchid Cream Vanilla" is a *functional* identifier for a flavoring concentrate which, when used as directed, produces a generic and functional "Orchid Cream Vanilla" ready-to-use syrup for pouring over shaved ice to be sold to the customers of Defendant's customers.

47.     "Orchid Cream Vanilla" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of purple orchids, vanilla orchid plants, and cream, and has not acquired any distinctiveness because of the long period of Defendant's non-exclusive use.

48.     The Trademark Trial and Appeal Board (TTAB) of the USPTO, in an Opinion issued 10 December 2009, ordered cancellation of the the registration of ORCHID CREAM VANILLA because the term is merely descriptive of the goods.

49.     The question whether Defendant exclusively used the mark in commerce as a trademark for a significant amount of time is a material question because such use is required in order to overcome a finding of descriptiveness, as was made by the TTAB of the USPTO.

50.     Defendant's false statement about its ownership of the mark ORCHID CREAM VANILLA through exclusive use in commerce is a false statement regarding a material fact because acquired distinctiveness or secondary meaning, through exclusive use in commerce for a significant period, is required in order to overcome a finding of descriptiveness, as was made by the USPTO.

51.     Defendant's false statements regarding Defendant's right to the mark ORCHID CREAM VANILLA, the absence of any others' right to the generic term, and purported exclusive use of the term, are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

52.     Defendant's false assertion of a trademark in ORCHID CREAM VANILLA is a misstatement of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

53.     Defendant has disparaged and tarnished Plaintiff's business.

54.     Plaintiff claims damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Orchid Cream Vanilla" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademark is valid, and purchasing from Defendant without even enquiring about the purported trademark.

55.     Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in ORCHID CREAM VANILLA.

56.     Defendant's actions regarding ORCHID CREAM VANILLA constitute a fraud upon the customers and potential customers of Plaintiff's business.

57.     Defendant's actions regarding ORCHID CREAM VANILLA were ongoing and continuing as of 21 March 2006, and are yet ongoing and continuing.

58.     Regarding ORCHID CREAM VANILLA, Defendant SnoWizard has violated Lanham Act Section 38 (15 USC §1120) and Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violation.

59.     Regarding ORCHID CREAM VANILLA, Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

60.     Regarding ORCHID CREAM VANILLA, Defendant SnoWizard is liable to Plaintiff under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

61.     Regarding ORCHID CREAM VANILLA, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

62.     Regarding ORCHID CREAM VANILLA, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable

attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

63.    Regarding ORCHID CREAM VANILLA, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

64.    Regarding ORCHID CREAM VANILLA, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

65.    Regarding ORCHID CREAM VANILLA, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

## WHITE CHOCOLATE & CHIPS

66.    Defendant applied for federal trademark registration for WHITE CHOCOLATE & CHIPS in International Class 030, for "food flavorings", on 12 May 2008, in application No. 77471425, which is a pending application.

67.    Ronald R. Sciortino, Defendant's President, signed the WHITE CHOCOLATE & CHIPS application and attested to the truthfulness and accuracy of the statements made.

68.    Ronald R. Sciortino, Defendant's President, signed the Declaration in the WHITE CHOCOLATE & CHIPS application and attested to the truthfulness and accuracy of the statements made, acknowledging the Declaration's warning "that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration".

69.    Defendant SnoWizard stated in a solemn declaration to the USPTO on 12 May 2008 that Defendant was the owner of the trademark WHITE CHOCOLATE

13

& CHIPS sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

70.     Defendant stated to the USPTO on 12 May 2008 that its first use and first use in commerce date for WHITE CHOCOLATE & CHIPS was 1 May 1986.

71.     Defendant SnoWizard obtained, on 17 November 2006, after this actions was filed, a Louisiana state Trade Mark Registration No. 59-4008 for WHITE CHOCOLATE & CHIPS for "flavoring concentrate for shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 1 May 1986.

72.     Defendant submitted a solemn statement to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of WHITE CHOCOLATE & CHIPS.

73.     Defendant claims a trademark in WHITE CHOCOLATE & CHIPS by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

74.     Defendant sold a generic or descriptive "White Chocolate & Chips" flavor concentrate for more than five years with no claim of trademark or exclusivity.

75.     Defendant's own promotional literature, including its 2007 "Flavor-Color-Description" list, identifies the "White Chocolate & Chips" flavor concentrate as having the color "White with Specks", and the description: "A luscious Swiss Chocolate flavor with little specks".

76.     "White Chocolate & Chips" is a *generic* identifier for the flavor name of the snowball shaved ice confection that results from using Defendant's "White Chocolate & Chips" flavoring concentrate as directed.

77.     "White Chocolate & Chips" is a *functional* identifier for a flavoring concentrate which, when used as directed, produces a generic and functional "White Chocolate & Chips" ready-to-use syrup for pouring over shaved ice to be sold to the customers of Defendant's customers.

14

78. "White Chocolate & Chips" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of white chocolate, and having "chips" or "specks", and has not acquired any distinctiveness because of the long period of Defendant's non-exclusive use.

79. The USPTO, in an Office Action issued 12 August 2008 and a final Office Action issued 15 October 2009, refused the application because, *inter alia*, "White Chocolate & Chips" is merely descriptive of the goods.

80. The question whether Defendant exclusively used the mark in commerce as a trademark for a significant amount of time is a material question because such use is required in order to overcome a finding of descriptiveness, as was made by the USPTO.

81. Defendant's false statement about its ownership of the mark WHITE CHOCOLATE & CHIPS through exclusive use in commerce is a false statement regarding a material fact because acquired distinctiveness or secondary meaning, through exclusive use in commerce for a significant period, is required in order to overcome a finding of descriptiveness, as was made by the USPTO.

82. Defendant's false statements regarding Defendant's right to the mark WHITE CHOCOLATE & CHIPS, the absence of any others' right to the generic term, and purported exclusive use of the term, are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

83. Defendant's false statements regarding the date of first use are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

84.     Defendant's false statements are also a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

85.     Defendant's false assertion of a trademark in WHITE CHOCOLATE & CHIPS is a misstatement of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

86.     Defendant has disparaged and tarnished Plaintiff's business.

87.     Plaintiff claims damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "White Chocolate & Chips" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademark is valid, and purchasing from Defendant without even enquiring about the purported trademark.

88.     Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in WHITE CHOCOLATE & CHIPS.

89.     Defendant's actions regarding WHITE CHOCOLATE & CHIPS constitute a fraud upon the customers and potential customers of Plaintiff's business.

90.     Defendant's actions regarding WHITE CHOCOLATE & CHIPS were ongoing and continuing as of 21 March 2006 and are yet ongoing and continuing.

91.     Regarding WHITE CHOCOLATE & CHIPS, Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violation.

92.     Regarding WHITE CHOCOLATE & CHIPS, Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

93.     Regarding WHITE CHOCOLATE & CHIPS, Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

94.     Regarding WHITE CHOCOLATE & CHIPS, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

95.     Regarding WHITE CHOCOLATE & CHIPS, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

96.     Regarding WHITE CHOCOLATE & CHIPS, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

97.     Regarding WHITE CHOCOLATE & CHIPS, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

98.     Regarding WHITE CHOCOLATE & CHIPS, Plaintiff Southern Snow is entitled to an order cancelling the Louisiana Trade Mark registration under La. R.S. 51:219.

99.     Regarding WHITE CHOCOLATE & CHIPS, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

**SNOBALL**

100.   Defendant applied for federal trademark registration for SNOBALL in International Class 007, for "ice shaving machines for sale to retail businesses selling shaved ice confections", on 30 May 2000, in application No. 76059333.

101.   Defendant's application for registration for SNOBALL was rejected by the USPTO, and the rejection was appealed to the Trademark Trial and Appeal Board (TTAB) where the rejection was upheld in a decision of 5 August 2004, concluding that "[a]pplicant's term SNOBALL is generic for the goods recited in the application and, in the event that the term is not generic, applicant has not demonstrated that its mark has acquired distinctiveness".

102.   Defendant continued and still continues to claim a trademark in SNOBALL even after having the genericness and the non-distinctiveness of the term fully analyzed and explained by the TTAB of the USPTO.

103.   Ronald R. Sciortino, Defendant's President, signed the SNOBALL application and attested to the truthfulness and accuracy of the statements made.

104.   Ronald R. Sciortino, Defendant's President, signed Declarations in the SNOBALL application and attested to the truthfulness and accuracy of the statements made, acknowledging the Declaration's warning "that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration".

105.   Defendant SnoWizard stated in a solemn declaration to the USPTO on 27 June 2001 that Defendant was the owner of the trademark SNOBALL sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

106.   Defendant SnoWizard stated in a sworn affidavit notarized on 27 June 2001 that SNOBALL had become distinctive of its goods through "substantially exclusive" use for more than forty (40) years.

107.   Defendant stated to the USPTO on 27 June 2001 that its first use and first use in commerce date for SNOBALL was 15 June 1955.

108.   Defendant claims a trademark in SNOBALL by affixing a "TM" or a circle-R to the term in Defendant's promotional materials and advertising.

109.   SNOBALL, SNOWBALL, and SNOW-BALL have a pseudo-mark relationship and are substantially the same mark.

110.   "Snoball" is a *generic* identifier for the snowball shaved ice confection that results from using Defendant's goods as directed.

111.   "Snoball" is a *functional* identifier for snowball shaved ice confections to be sold to the customers of Defendant's customers.

112.   "Snoball" is merely *descriptive* of snowball shaved ice confections.

113.   The USPTO, in an Office Action issued 29 December 2000 and a second Office Action issued 25 October 2001, refused the application because, *inter alia*, "Snoball" is merely descriptive of the goods.

114.   The question whether Defendant exclusively used the mark in commerce as a trademark for a significant amount of time is a material question because such use is required in order to overcome a finding of descriptiveness.

115.   Defendant's false statement about its ownership of the mark SNOBALL through exclusive use in commerce is a false statement regarding a material fact because acquired distinctiveness or secondary meaning, through exclusive use in commerce for a significant period, is required in order to overcome a finding of descriptiveness, as was made by the USPTO.

116.   Defendant's false statements regarding Defendant's right to the mark SNOBALL, the absence of any others' right to the generic term, and purported exclusive use of the term, are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

117.   Defendant's false assertion of a trademark in SNOBALL is a misstatement of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

118.   Defendant has disparaged and tarnished Plaintiff's business.

119.   Plaintiff claims damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Snoball" or snowball equipment and supplies to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademark is valid, and purchasing from Defendant without even enquiring about the purported trademark.

120.   Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in SNOBALL.

121.   Defendant's actions regarding SNOBALL constitute a fraud upon the customers and potential customers of Plaintiff's business.

122.   Defendant's actions regarding SNOBALL were ongoing and continuing as of 21 March 2006 and are yet ongoing and continuing.

123.   Regarding SNOBALL, Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violation.

124.   Regarding SNOBALL, Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

125.   Regarding SNOBALL, Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

126.   Regarding SNOBALL, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages,

profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

127.   Regarding SNOBALL, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

128.   Regarding SNOBALL, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

129.   Regarding SNOBALL, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

130.   Regarding SNOBALL, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

### Origin of snowballs, snowball business, and flavors

131.   Defendant's false claims of having invented and/or originated the snowball, the snowball machine, the snowball "industry", and various snowball flavors, were ongoing as of 21 March 2006 and have continued unabated.

132.   Defendant's false claims of having invented and/or originated the snowball, the snowball machine, the snowball "industry", and various snowball flavors, are misstatements of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

133.   Defendant has disparaged and tarnished Plaintiff's business.

134.   Plaintiff claims damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell snowball equipment, supplies, or flavor concentrates to customers without exposure to a claim of copying from Defendant, and the costs and lost profits resulting from customers assuming

that Defendant's bogus claims are valid, and purchasing from Defendant without even enquiring about the purported inventions or originality.

136. Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate invention or origination of the snowball, the snowball machine, the snowball "industry", or various snowball flavors.

136. Defendant's actions regarding invention or originality constitute a fraud upon the customers and potential customers of Plaintiff's business.

137. Regarding invention or originality, Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violation.

138. Regarding invention or originality, Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

139. Regarding invention or originality, Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

140. Regarding invention or originality, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

141. Regarding invention or originality, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

142. Regarding invention or originality, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

143. Regarding invention or originality, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

144.   Regarding invention or originality, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

**Damages caused by all bogus trademarks and assertions combined**

145.   Plaintiff has been damaged by Defendant's false assertions and by each trademark obtained by fraud or otherwise falsely asserted or used as unfair competition or trade practice, and has also been damaged by the totality of Defendant's amassing a false portfolio of false trademarks, which together make a false claim to customers and potential customers that Defendant's products are legitimate and Plaintiff's products are not, which cause confusion among customers and potential customers regarding whether purchasing supplies from Plaintiff is somehow unlawful, and which require Plaintiff's principal officers to respond to Defendant's constant bogus claims of trademark, invention, and originality.

WHEREFORE Plaintiff Southern Snow Mfg. Co., Inc., prays that, after due proceedings had, the Court render judgment against Defendant SnoWizard, Inc., for damages, enhanced damages, treble damages, profits, costs, and reasonable attorney fees, for orders cancelling fraudulently-obtained federal and Louisiana trademarks, where applicable, and for injunctive and/or other equitable relief, under the federal Lanham Act, the Louisiana Unfair Trade Practices Act, and Louisiana Civil Code Article 2315, and any other equitable or legal remedies authorized by law.

RESPECTFULLY SUBMITTED:
Attorney for Plaintiff Southern Snow

_____
Mark Edw. Andrews
Louisiana Bar No. 26172
Andrews Arts & Sciences Law, LLC
7104 Coliseum St.
New Orleans, LA  70118
504-383-3632
mea@mealaw.com