## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SOUTHERN SNOW MFG. CO., INC.**<br>v.<br>**SNOWIZARD, INC.** | **CIVIL ACTION** |
| | **CASE NO.   06-9170**<br>       c/w    **09-3394**<br>              **10-0791** |
| **PARASOL FLAVORS, LLC, &**<br>**SOUTHERN SNOW MFG. CO., INC.**<br>v.<br>**SNOWIZARD, INC.** | **SEC. A, JUDGE JAY C. ZAINEY** |
| | **MAG. 1, MAG. JUDGE SALLY SHUSHAN** |
| **SOUTHERN SNOW MFG. CO., INC.**<br>**& SIMEON, INC.**<br>v.<br>**SNOWIZARD, INC.** | **JURY DEMANDED** |

### SECOND AMENDED COMPLAINT, 09-3394

Southern Snow Mfg. Co., Inc., and Parasol Flavors, LLC, with respect, submit this Second Amended Complaint as a substitute for the Complaint in Case No. 09-3394, filed 28 April 2009 and first amended 12 August 2009.

### Jurisdiction and Venue

1.    This U.S. District Court has jurisdiction under 28 USC §1331 and 15 USC §1121 because Plaintiffs complain under the Lanham Act, codified at 15 USC §1051, *et seq.*, the federal law regulating trademarks and unfair competition and trade practices.  This Court has supplemental jurisdiction, under 28 USC §1367, of state-law claims under Louisiana Trade Mark law at La. R.S. 51:211, *et seq.*; the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*; and Louisiana Civil Code Article 2315, which arise from the same transactions or occurrences and implicate the same questions of fact and related questions of law.

2.    Venue is proper in the Eastern District of Louisiana under 28 USC §1391 where the defendant is subject to personal jurisdiction, the defendant is doing business in the State of Louisiana, and the acts complained of occurred in such district.

1

## Plaintiffs

3.    Southern Snow Mfg. Co., Inc., (Southern Snow) is a Louisiana corporation having its place of business at 103 West W St., Belle Chasse, LA 70037, Plaquemines Parish, Louisiana, and is a Plaintiff herein.

4.    Parasol Flavors, LLC, (Parasol) is a limited liability company organized in Louisiana, having its place of business at 69345 Hwy. 59, Abita Springs, LA 70420, St. Tammany Parish, Louisiana, and is a Plaintiff herein.

## Defendant

5.    SnoWizard, Inc., (SnoWizard) is a Louisiana corporation having its place of business at 101 River Road, Jefferson, LA 70121, Jefferson Parish, Louisiana, and is made the Defendant herein.

## Overview of Complaint

6.    Plaintiffs sue under the federal law of trademarks and unfair competition and trade practices, the Lanham Act, codified at 15 USC §1051, *et seq.*; Louisiana Trade Mark law at La. R.S. 51:211, *et seq.*; the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*; and Louisiana Civil Code Article 2315.  Defendant business-competitor SnoWizard unlawfully asserts trademarks in SNOSWEET, HURRICANE, KING CAKE, BUTTERED POPCORN, GEORGIA PEACH, PRALINE, MUDSLIDE, CAKE BATTER, DILL PICKLE, and BUTTERCREAM. Defendant's purported trademarks are variously federally-registered, invoking Lanham Act Sections 37 & 38 (15 USC §1119 & §1120), or state-registered or common-law trademarks, invoking Lanham Act Sections 35 & 43 (15 USC §1117 & §1125). Plaintiffs claim damages, enhanced damages, costs, attorney fees, and equitable relief for Defendant's various unlawful assertions and registrations of trademarks.

## Facts establishing Plaintiffs' standing to bring this Complaint

7.    Defendant SnoWizard and Plaintiffs Southern Snow and Parasol are competitors in the business of selling flavoring concentrates and other supplies for snowball shaved ice confections.  Defendant SnoWizard caused a "cease and desist"

letter to be sent to Plaintiff Parasol on 22 April 2009, charging infringement of federal and state trademarks. Defendant SnoWizard infringed on Plaintiff Parasol's trademark SNOW SWEET. Both Plaintiffs have a business need to offer and sell the flavor concentrates which are subject to Defendant's purported trademark rights.

### Allegations Common to Claims Against Several Purported Trademarks

8.     Federal registration of trademarks is administered by the U.S. Patent and Trademark Office (USPTO), where Trademark Examining Attorneys review applications and approve or deny registration, and where the Trademark Trial and Appeal Board (TTAB) reviews the decisions of Trademark Examining Attorneys and also decides oppositions and cancellation actions brought by third parties.

9.     The USPTO requires applications for registration of a trademark to be signed as an attestation of the truthfulness and accuaracy of the statements made.

10.     The USPTO further requires applicants for registration of a trademark to sign a solemn Declaration attesting to the truthfulness and accuracy of the statements made, and acknowledging the Declaration's warning "that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration".

11.     Application for federal registration of a trademark is constructive use of the mark as a federal trademark, under Lanham Act Section 7(c) (15 USC §1057(c)), and is therefore an assertion of having a federal trademark.

12.     The federal Lanham Act, codified at 15 USC §1051, *et seq.*, governs the use of both registered and non-registered trademarks, and also governs unfair competition or trade practice.

13.     Infringement of an unregistered trademark invokes Lanham Act Section 43 (15 USC §1125), considered *in pari materia* with the entire Lanham Act, *and* the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*

14.   Fraudulent federal registration of a trademark most specifically invokes Lanham Act Section 38 (15 USC §1120) and Section 37 (15 USC §1119), which are considered *in pari materia* with the entire Lanham Act.

15.   Fraudulent registration of a trademark is also unfair competition or trade practice under Lanham Act Section 43 (15 USC §1125), considered *in pari materia* with the entire Lanham Act, *and* under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq*.

16.   False assertion of a trademark *not* federally registered, including false assertion of state-registered or common-law trademarks, is unfair competition or trade practice, implicating Lanham Act Section 43 (15 USC §1125), considered *in pari materia* with the entire Lanham Act, *and* under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq*., which federal courts treat as mirroring the Lanham Act.

17.   Remedies under the federal Lanham Act are provided in various sections of the Act and are applicable to violations of various other sections of the Act. Provided remedies include damages, enhanced damages, profits, costs, reasonable attorney fees, and injunctive and other equitable relief.

18.   Remedies under the Louisiana Unfair Trade Practices Act (LUTPA) include damages, treble damages, and recovery of costs and reasonable attorney fees.  Treble damages are available for "willful" violations of the Act, and single damages are available for non-willful violations.

19.   Louisiana state-law trademarks are governed by La. R.S. 51:211, *et seq*. La. R.S. 51:219 provides that a mark shall be cancelled, *inter alia*, when a court of competent jurisdiction orders such a cancellation on any ground, including any finding that the registrant is not the owner of the mark, that the registration was granted improperly, or that the registration was obtained fraudulently.

20.   In order to obtain Louisiana state trademark registrations, the applicant must submit a signed and notarized statement, swearing that the applicant is the

4

owner of the mark, and that no other has the right to use the mark in the indicated class.  The applicant must also swear that the facts alleged in the application are true.

21.   Louisiana trademark registrations are issued upon receipt of a notarized application and payment of a fee, without any examination.  The listed date of the Louisiana trademark registration is generally the same date that the application was sworn and submitted.

22.   False statements about ownership, exclusive use, and date of first use of a mark are false statements regarding material facts where a mark is descriptive, because acquired distinctiveness or secondary meaning— through exclusive use in commerce for a significant time— is required for trademark protection of a descriptive mark.

23.   Fraud upon the USPTO for the purpose of trademark registration is a false statement or the witholding of material information by an applicant, made willfully, in bad faith, and with the intent to obtain a registration to which the applicant is not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

24.   Fraud upon the State of Louisiana for the purpose of trademark registration is a false statement or the withholding of material information by an applicant, made willfully, in bad faith, and with the intent to obtain a registration to which the applicant is not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

## SNOSWEET

25.   Plaintiff Parasol owns a trademark in SNOW SWEET for sugar-free simple syrup mix for snowballs.

26.   Defendant SnoWizard infringed upon Parasol's trademark SNOW SWEET by unlawfully registering the trademark SNOSWEET, as set forth in detail herein.

27.   Defendant applied on 17 July 2008 for federal trademark registration for SNOSWEET in International Class 30, for "sugar and sugar substitutes", in application No. 77524703, granted as Registration No. 3580056 on 24 February 2008.

5

28.   Ronald R. Sciortino, Defendant's President, signed the Declaration in the SNOSWEET application, attesting to truthfulness and accuracy, and acknowledging the criminal and civil penalties for willful false statements.

29.   As a required specimen showing the mark being used, Defendant submitted to the USPTO on 17 July 2008 a computer-generated design for a label showing no evidence of being affixed to any goods, which is in fact an altered version of the label for Defendant's SNOLITE goods, where only the word "SnoLite" has been replaced by "SnoSweet", and the other information, including the ingredients, is the same.

30.   Defendant SnoWizard stated to the USPTO on 17 July 2008 that Defendant had been using the mark SNOSWEET and using the mark in commerce since 16 February 2008.

31.   Defendant SnoWizard applied for and obtained, on 25 July 2008, Louisiana Trade Mark Registration No. 60-2796 for SNOSWEET for "sugar substitute for baked and frozen desserts, snoballs, snow cones and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 16 February 2008.

32.   Defendant submitted a solemn notarized statement on 25 July 2008 to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of SNOSWEET.

33.   Defendant was not using the mark SNOSWEET and was not using the mark SNOSWEET in commerce on 16 February 2008.

34.   Defendant has never used the mark SNOSWEET, and is not using the mark SNOSWEET even at present.

35.   Defendant's false statement regarding use of the mark SNOSWEET and Defendant's falsified specimen purporting to show the mark in use on Defendant's goods are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

36.   Defendant SnoWizard stated in a solemn declaration to the USPTO on 17 July 2008 that Defendant was the owner of the trademark SNOSWEET sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

37.   Defendant did not own a trademark in SNOSWEET at the time of making its solemn declaration because it was not selling or offering goods having the mark SNOSWEET at the time of making the declaration nor at any time before or since.

38.   Defendant knew it did not offer and did not have a trademark in SNOSWEET on 17 July 2008 and 25 July 2008 when it made solemn declarations to the contrary.

39.   Plaintiff Parasol was offering identical goods under the valid trademark SNOW SWEET (two words) since at least March 2008.

40.   The marks SNOW SWEET and SNOSWEET have a pseudo-mark relationship to each other and are identical or nearly-identical.

41.   Before Defendant's application for registration on 17 July 2008, Plaintiff Parasol was already using the identical mark SNOW SWEET on identical goods in interstate commerce for several months.

42.   Plaintiff had a right to continue using the nearly-identical mark SNOW SWEET in commerce on 17 July 2008 and 25 July 2008 when Defendant SnoWizard made solemn declarations to the contrary.

43.   Defendant maintains an awareness of Plaintiff Parasol's product offerings and the offerings of other competitors, as is evidenced by Defendant's "cease and desist" letter to Parasol and by Defendant's reporting Parasol's former use of the name "Simply Sweet" to the owner of the trademark SIMPLY SWEET.

44.   Defendant SnoWizard knew that Plaintiff Parasol was using, and had a right to use the trademark SNOW SWEET on 17 July 2008 and 25 July 2008 when Defendant made its solemn declarations to the contrary.

45.   Defendant's false statements in its solemn declaration regarding Defendant's right to the mark SNOSWEET and Plaintiff's right to the trademark

SNOW SWEET are a fraud upon the USPTO, being false statements and the withholding of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

46.   Defendant's false statements regarding SNOSWEET are also a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

47.   Plaintiff Parasol has suffered damages as a result of Defendant SnoWizard's infringement of Plaintiff's trademark SNOW SWEET.

48.   Plaintiff Parasol has suffered damages as a result of Defendant SnoWizard's procurement by fraud of federal and state trademark registrations for SNOSWEET.

49.   Plaintiff Parasol suffered damage, cognizable injury, and ascertainable loss as a result of Defendant SnoWizard's actions, including but not limited to the costs of Parasol's failed application for federal registration of its trademark SNOW SWEET, Parasol's lost sales of the product, the value of any sales by Defendant of the product, if any such sales there be, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademarks are valid, and purchasing from Defendant without investigating the purported trademarks.

50.   Defendant's assertions about SNOSWEET are fraudulent or misleading statements to Plaintiff Parasol's and Defendant's existing and potential customers.

51.   Defendant SnoWizard has disparaged and tarnished Plaintiff Parasol's business regarding SNOSWEET and other purported trademarks.

52.   Defendant's actions were perpetrated willfully, and with knowledge of Defendant's having no legitimate trademark rights in SNOSWEET.

53.   Defendant SnoWizard has violated Lanham Act Section 38 (15 USC §1120) and Section 43 (15 USC §1125) by the complained-of actions regarding SNOSWEET and the infringement of SNOW SWEET.

54.   Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing Plaintiff Parasol ascertainable loss from Defendant's complained-of actions regarding SNOSWEET and the infringement of SNOW SWEET.

55.   Defendant SnoWizard is liable to Plaintiff Parasol under Louisiana Civil Code Article 2315 for damages caused regarding SNOSWEET and the infringement of SNOW SWEET.

56.   Regarding SNOSWEET, Plaintiff Parasol is entitled, under Lanham Act Section 38 (15 USC §1120), to recover damages in consequence of Defendant SnoWizard's fraudulent procurement of registration of SNOSWEET.

57.   Plaintiff Parasol is entitled, under Lanham Act Section 37 (15 USC §1119), to an order cancelling Registration No. 3580056 for SNOSWEET.

58.   Regarding SNOSWEET and the infringement of SNOW SWEET, Plaintiff Parasol is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, litigation costs, and reasonable attorney fees for Defendant's fraudulent and willful acts which make this case exceptional.

59.   Regarding SNOSWEET and the infringement of SNOW SWEET, Plaintiff Parasol is entitled, under the LUTPA, to recover damages for Defendant's actions.

60.   Regarding SNOSWEET and the infringement of SNOW SWEET, Plaintiff Parasol is entitled, under the LUTPA, to recover treble damages and reasonable attorney fees for Defendant's fraudulent and willful actions.

61.   Regarding SNOSWEET and the infringement of SNOW SWEET, Plaintiff Parasol is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions.

62.    Plaintiff Parasol is entitled to an order under La. R.S. 51:219 cancelling Louisiana Trade Mark Registration No. 60-2796 for SNOSWEET.

63.    Plaintiff Parasol is entitled, under Lanham Act Section 34 (15 USC §1116) and corresponding Louisiana law, to an injunction against Defendant SnoWizard's continued assertion of any trademark in SNOSWEET and the continued infringement of SNOW SWEET.

## HURRICANE

64.    Defendant SnoWizard applied for federal trademark registration for HURRICANE in International Class 030, for "food flavorings", on 13 May 2008, in application No. 77472650, and obtained Registration No. 3540276 on 2 December 2008.

65.    Ronald R. Sciortino, Defendant's President, signed the application and the Declaration in the HURRICANE application, attesting to truthfulness and accuracy, and acknowledging the criminal and civil penalties for willful false statements.

66.    Defendant SnoWizard stated in a solemn declaration to the USPTO on 13 May 2008 that Defendant was the owner of the trademark HURRICANE sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

67.    Defendant on 13 May 2008 submitted as a specimen of use a label from a bottle of Defendant's flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.  The specimen failed to show Defendant's use of the mark HURRICANE for "food flavoring" as claimed in the application, but instead showed use of the mark for flavoring concentrates for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.

68.    Defendant SnoWizard obtained, on 25 July 2008, Louisiana Trade Mark Registration No. 60-2751 for HURRICANE for "food flavoring concentrate for baked and frozen desserts, snoballs and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 30 April 1988.

69.   Defendant submitted a solemn notarized statement on 25 July 2008 to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of HURRICANE.

70.   Defendant claims a federally-registered trademark in HURRICANE by affixing a circle-R to the flavor name in promotional materials and advertising.

71.   Defendant SnoWizard sold a "Hurricane" flavor concentrate for at least fifteen (15) years with no claim of trademark or exclusivity, from at least as early as 1992 to at least as late as 2007.

72.   Plaintiff Southern Snow has offered and sold a "Hurricane" snowball flavoring concentrate since at least 1991.

73.   Plaintiff Parasol has offered and sold a "Hurricane" snowball flavoring concentrate since at least March 2004.

74.   Defendant SnoWizard was aware of the sale by Plaintiffs and other vendors of a "Hurricane" snowball flavoring concentrate over several years.  Defendant was also aware of its own sale of a "Hurricane" snowball flavoring concentrate, without any claim of trademark, over several years.  Defendant could not have formed a reasonable, good-faith belief that it owned a trademark in HURRICANE, as it solemnly declared, nor could it have formed a reasonable, good-faith belief that none of the other vendors had a right to use the generic term "Hurricane" after they had been selling the goods for several years with no action or protest from Defendant.

75.   Defendant's own promotional literature has described its "Hurricane" snowball flavoring concentrate as "[r]um base with berries.  Like the original Pat O'Brien's Hurricane cocktail".

76.   "Hurricane" is a *generic* term for the flavor name of the snowball that results from using the flavoring concentrate as directed.

77.   "Hurricane" is a *generic* term for the flavor imitating the generic "Hurricane" beverage sold all over the French Quarter in New Orleans, which was originated and made famous by Pat O'Brien's Bar, but which has become so generic

11

that even the originator uses the more limited mark PAT O'BRIEN'S HURRICANE and disclaims the word "hurricane", which is generic.

78.   "Hurricane" is a functional term for a flavoring concentrate which produces "Hurricane" ready-to-use snowball syrup when used as directed.

79.   "Hurricane" is merely *descriptive* of a flavoring concentrate for producing a snowball having the taste, color, and smell of a "Hurricane" adult beverage.

80.   "Hurricane" has not acquired distinctiveness or secondary meaning.

81.   Defendant's false statements regarding Defendant's right to the mark HURRICANE, the absence of any others' right to the term, exclusive use of the term, and identification of goods are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

82.   Defendant's false statements regarding HURRICANE are also a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

83.   Defendant's assertions about HURRICANE are fraudulent or misleading statements to Plaintiffs' and Defendant's existing and potential customers.

84.   Defendant SnoWizard has disparaged and tarnished Plaintiffs Southern Snow's and Parasol's business regarding purported HURRICANE trademarks.

85.   Plaintiffs Southern Snow and Parasol claim damages, cognizable injury, and ascertainable loss resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Hurricane" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting

from customers assuming that Defendant's bogus trademarks are valid, and purchasing from Defendant without investigating the purported trademarks.

86.   Defendant's actions were perpetrated willfully, and with knowledge of Defendant's having no legitimate trademark rights in HURRICANE.

87.   Defendant SnoWizard has violated Lanham Act Section 38 (15 USC §1120) and Section 43 (15 USC §1125) by the complained-of actions regarding HURRICANE.

88.   Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing Plaintiffs ascertainable loss from Defendant's complained-of actions regarding HURRICANE.

89.   Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused regarding HURRICANE.

90.   Regarding HURRICANE, Plaintiffs Southern Snow and Parasol are entitled, under Lanham Act Section 38 (15 USC §1120), to recover damages for Defendant's fraudulently obtaining Registration No. 3540276 for HURRICANE.

91.   Plaintiffs are entitled, under Lanham Act Section 37 (15 USC §1119), to cancellation of Registration No. 3540276 for HURRICANE.

92.   Regarding HURRICANE, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

93.   Regarding HURRICANE, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent or willful acts which make this case exceptional.

94.   Regarding HURRICANE, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

95.   Regarding HURRICANE, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover treble damages and reasonable attorney fees for Defendant's fraudulent or willful actions.

96.   Regarding HURRICANE, Plaintiffs Southern Snow and Parasol are entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

97.   Plaintiffs Southern Snow and Parasol are entitled under La. R.S. 51:219 to an order cancelling Louisiana Trade Mark Registration No. 60-2751 for HURRICANE.

98.   Plaintiffs Southern Snow and Parasol are entitled, under Lanham Act Section 34 (15 USC §1116) and corresponding Louisiana law, to an injunction against Defendant SnoWizard's continued assertion of any trademark in HURRICANE.

### KING CAKE

99.   Defendant applied on 14 May 2008 for federal trademark registration for KING CAKE in International Class 030, for "food flavorings", in application No. 77473810, which was approved and published for opposition on 26 May 2009, and is the subject of Opposition No. 91191979 filed by Plaintiff Southern Snow on 21 September 2009 and suspended by the Trademark Trial and Appeal Board on 28 December 2009 pending disposition of this civil action.

100.  Ronald R. Sciortino, Defendant's President, signed the application and the Declaration in the KING CAKE application, attesting to truthfulness and accuracy, and acknowledging the criminal and civil penalties for willful false statements.

101.  Defendant SnoWizard stated in a solemn declaration to the USPTO on 14 May 2008 that Defendant was the owner of the trademark KING CAKE sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

102.  Defendant, on 14 May 2008, submitted as a specimen of use a label from a bottle of flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.  The specimen failed to show use of the mark KING CAKE for "food flavoring" as claimed in the application, but instead showed use of the mark for flavoring concentrates for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.

14

103. Defendant's attorney stated to the USPTO on 2 April 2009, in a petition to revive the abandoned application and response to office action, "[t]he product sold under the trademark KING CAKE is a flavored concentrate that is purchased by snow ball vendors, or snow ball vendor suppliers, to produce a ready-to-use flavored syrup. The snow ball vendor, in turn, produces the ready-to-use syrup and pours it over shaved ice to make a snow ball, a/k/a, a snow cone. Applicant does not sell favored concentrate to the general public", providing further proof that Defendant's goods are flavoring concentrates for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections, and not "food flavorings" as applied for.

104. Defendant stated to the USPTO on 14 May 2008 that its first use and first use in commerce date for KING CAKE was 30 November 1996.

105. Defendant SnoWizard applied for and obtained, on 15 August 2008, Louisiana Trade Mark Registration No. 60-3067 for KING CAKE for "light beverages" in Class 32, and for "advertising & business/miscellaneous" in Class 35, with a claimed date first used and date first used in Louisiana of 30 November 1996.

106. Defendant submitted a solemn notarized statement on 25 July 2008 to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of KING CAKE.

107. Defendant claims a trademark in KING CAKE by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

108. Defendant was not offering or selling "King Cake" flavor concentrate for snowballs on 30 November 1996, as claimed in the federal trademark application.

109. Defendant did not offer or sell "King Cake" flavor concentrate for snowballs at any time prior to 2008.

110. Defendant's own promotional literature in the years 2009 and 2010 describe the "King Cake" flavor concentrate for snowballs as being "New!".

111. Defendant's promotional literature, including its present internet website entry, identifies the "King Cake" flavor concentrate as having the color "Royal

Purple", and the description: "For decades SnoWizard has furnished New Orleans area bakeries with King Cake™ flavoring for the making of this traditional Mardi Gras cake. King Cake™ is a unique blend of cake flavoring, rum, butter, pure vanilla extract- and of course, secret flavoring ingredients that make this delicious concentrate unique to SnoWizard. The taste of King Cake™ can now being enjoyed on shaved ice by everyone with this newest flavor release".

112. "King Cake" is a *generic* term for the flavor name of the snowball that results from using the flavoring concentrate as directed.

113. "King Cake" is a *generic* term for the flavor name of the cinnamon cake flavor imitating the "King Cake" sold in New Orleans during Carnival season, which was originated in Europe and altered by popular bakeries in New Orleans over many decades during which the "King Cake" flavor has become generic. A flavoring concentrate for snowballs would be worthless if it did not taste like the average consumer's expectation for the taste of a traditional king cake. Defendant promotes its KING CAKE goods as tasting like a traditional Mardi Gras king cake.

114. "King Cake" is a *functional* term for a flavoring concentrate which produces "King Cake" ready-to-use snowball syrup when used as directed.

115. "King Cake" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of a "King Cake" traditional cake served during Carnival season.

116. "King Cake" has not acquired distinctiveness or secondary meaning.

117. The USPTO, in an Office Action issued 12 August 2008, refused the application because, *inter alia*, "king cake" is a recognized food, and "king cake" refers both to both the flavor of applicant's product, as well as its use.

118. Defendant's attorney argued to the USPTO on 2 April 2009, in a petition to revive the abandoned application and response to office action, that king cakes may be made with a variety of flavors and have historically been made with a variety of ingredients, but Defendant's assertions are disingenuous and misleading in light

of Defendant's other assertion that Defendant's goods are not the "food flavorings" applied for, but are in fact snowball flavoring concentrates sold to snowball vendors who expect their "King Cake" flavor to taste like traditional king cake, which is what SnoWizard claims in its promotional materials.

119. Defendant's attorney made the material, false, and misleading statement to the USPTO on 2 April 2009, in a petition to revive the abandoned application and response to office action, that "[t]he product is not used in the production or flavoring of king cakes".  This false statement is material because it caused the USPTO to withdraw its rejection and allow registration of KING CAKE.  This statement is false because the only "King Cake" flavor concentrate sold by Defendant during the years 1996 through 2008 was a yellow-colored flavor concentrate specifically formulated and sold for flavoring actual king cakes, and not suitable for or offered for the making of snowballs.

120. Plaintiff Parasol has offered and sold a generic "King Cake" snowball flavoring concentrate since at least March 2006.

121. Plaintiff Southern Snow has offered and sold a "Mardi Gras King Cake" snowball flavoring concentrate since 2007.

122. Defendant SnoWizard was aware of the sale by Plaintiffs of "Mardi Gras King Cake" and generic "King Cake" snowball flavoring concentrate prior to Defendant's offering the same goods.  Defendant was also aware that its own sale of "King Cake" snowball flavoring concentrate only began in 2008 at the time of applying for the trademark registration.  Defendant could not have formed a reasonable, good-faith belief that it owned a trademark in KING CAKE, as it solemnly declared, nor could it have formed a reasonable, good-faith belief that none of the other vendors had a right to use the generic term "King Cake" after they had been selling the generic goods for several years with no action or protest from Defendant.

123. Defendant's false statements regarding Defendant's right to the mark KING CAKE, the absence of any others' right to the term, exclusive use of the term,

identification of goods, and date of first use are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

124.  Defendant's false statements regarding KING CAKE are also a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

125.  Defendant's assertions about KING CAKE are fraudulent or misleading statements to Plaintiffs' and Defendant's existing and potential customers.

126.  Defendant SnoWizard has disparaged and tarnished Plaintiffs Southern Snow's and Parasol's business regarding purported KING CAKE trademarks.

127.  Plaintiffs Southern Snow and Parasol claim damages, cognizable injury, and ascertainable loss resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "King Cake" or "Mardi Gras King Cake" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademarks are valid, and purchasing from Defendant without investigating the purported trademarks.

128.  Defendant's actions were perpetrated willfully, and with knowledge of Defendant's having no legitimate trademark rights in KING CAKE.

129.  Defendant SnoWizard has violated Lanham Act Section 38 (15 USC §1120) and Section 43 (15 USC §1125) by the complained-of actions regarding KING CAKE.

130.  Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing Plaintiffs ascertainable loss from Defendant's complained-of actions regarding KING CAKE.

131. Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused regarding KING CAKE.

132. Regarding KING CAKE, Plaintiffs are entitled, under Lanham Act Section 38 (15 USC §1120) or other provisions of the Lanham Act, to recover damages for Defendant's fraudulently obtaining approval of federal registration for KING CAKE.

133. Plaintiffs are entitled, under Lanham Act Section 37 (15 USC §1119) or other provisions of the Lanham Act, to an order cancelling or otherwise preventing the approved federal registration of KING CAKE.

134. Regarding KING CAKE, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

135. Regarding KING CAKE, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent or willful acts which make this case exceptional.

136. Regarding KING CAKE, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

137. Regarding KING CAKE, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover treble damages and reasonable attorney fees for Defendant's fraudulent or willful actions.

138. Regarding KING CAKE, Plaintiffs Southern Snow and Parasol are entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

139. Plaintiffs are entitled under La. R.S. 51:219 to an order cancelling Louisiana Trade Mark Registration No. 60-3067 for KING CAKE.

140. Plaintiffs Southern Snow and Parasol are entitled, under Lanham Act Section 34 (15 USC §1116) and corresponding Louisiana law, to an injunction against Defendant SnoWizard's continued assertion of any trademark in KING CAKE.

## BUTTERED POPCORN

141. Defendant applied for federal trademark registration for BUTTERED POPCORN in International Class 30, for "food flavorings" on 24 April 2008, in application No. 77457380, which is a pending application.

142. Ronald R. Sciortino, Defendant's President, signed the application and the Declaration in the BUTTERED POPCORN application, attesting to truthfulness and accuracy, and acknowledging the criminal and civil penalties for willful false statements.

143. Defendant SnoWizard stated in a solemn declaration to the USPTO on 24 April 2008 that Defendant was the owner of the trademark BUTTERED POPCORN sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

144. Defendant, on 24 April 2008, submitted as a specimen of use a label from a bottle of flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections. The specimen failed to show use of the mark BUTTERED POPCORN for "food flavorings" as claimed in the application, but instead showed use of the mark for flavoring concentrates for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.

145. Defendant stated to the USPTO on 24 April 2008 that its first use and first use in commerce date for BUTTERED POPCORN was 8 May 2002.

146. Defendant SnoWizard applied for and obtained, on 25 July 2008, Louisiana Trade Mark Registration No. 60-2743 for BUTTERED POPCORN for "food flavoring concentrate for baked and frozen desserts, snoballs and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 8 May 2002.

147. Defendant submitted a solemn notarized statement on 25 July 2008 to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of BUTTERED POPCORN.

148. Defendant claims a trademark in BUTTERED POPCORN by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

149. Defendant was not offering or selling "Buttered Popcorn" flavor concentrate on 8 May 2002, as claimed in the federal and state trademark applications.

150. Defendant did not offer or sell "Buttered Popcorn" flavor concentrate for snowball shaved ice confections at any time prior to 2008.

151. Defendant's promotional literature, including its internet website, in 2009, described its "Buttered Popcorn" flavor concentrate for snowballs as being "New!".

152. Defendant's president Ronald R. Sciortino signed a sworn, notarized Affidavit on 10 February 2009 which was submitted to the USPTO on 11 February 2009 in response to an office action from the USPTO.

153. Defendant's sworn affidavit of 10 February 2009 purported to prove that a company named "Ronald Reginald's", not "SnoWizard", had been offering "Buttered Popcorn Flavor" as a food flavoring, not as a snowball flavoring concentrate, since the January 2003 effective date printed on a price list for Ronald Reginald's food flavorings.

154. Defendant's sworn affidavit of 10 February 2009 stated that Defendant's use of the purported BUTTERED POPCORN mark had been exclusive since its first use, meaning that no other, such as Plaintiffs Parasol Southern Snow or another vendor, had offered or sold any "Buttered Popcorn" goods.

155. Plaintiff Southern Snow has offered and sold a "Buttered Popcorn" snowball flavoring concentrate since 2007.

156. Plaintiff Parasol has offered and sold a generic "Buttered Popcorn" snowball flavoring concentrate since at least 11 February 2008.

157. The USPTO on 23 February 2009 rejected Defendant's purported trademark in "Buttered Popcorn" as being merely descriptive, and Defendant is required to show a long period of exclusive use in order to overcome the rejection, making the issues of date of first use and of exclusivity material issues in this application.

158. Defendant SnoWizard was aware of the sale by Plaintiff and other vendors of a generic "Buttered Popcorn" snowball flavoring concentrate before Defendant's first offer and sale. Defendant could not have formed a reasonable, good-faith belief

that it owned a trademark in BUTTERED POPCORN, as it solemnly declared, nor could it have formed a reasonable, good-faith belief that none of the other vendors had a right to use the generic term "Buttered Popcorn" after they had been selling the generic goods with no action or protest from Defendant.

159.  In a Response to Office Action filed 31 March 2009 and signed by Defendant's attorney of record Kenneth L. Tolar, who elected not to submit a signed declaration, Defendant amended the description of goods to be "flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections", but did not correct the erroneous and misleading information that the dates of first use and first use in commerce are still claimed to be 8 May 2002.

160.  Defendant's promotional literature, including its present internet website entry, identifies the "Buttered Popcorn" flavor concentrate as having the color "Yellow", and the description: "Unbelievable fresh Pop-Corn taste drizzled with butter - just like at the movie theater".

161.  "Buttered Popcorn" is a *generic* term for the flavor name of the snowball that results from using the flavoring concentrate as directed.

162.  "Buttered Popcorn" is a *generic* term for the flavor of buttered popcorn.

163.  "Buttered Popcorn" is a *functional* term for a flavoring concentrate which produces "Buttered Popcorn" ready-to-use snowball syrup when used as directed.

164.  "Buttered Popcorn" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of buttered popcorn.

165.  "Buttered Popcorn" has not acquired distinctiveness or secondary meaning.

166.  The USPTO, in an Office Action issued 17 April 2009, refused the application because, *inter alia*, "Buttered Popcorn" is generic for the goods.

167.  Defendant's false statements in its solemn declaration regarding Defendant's right to the mark BUTTERED POPCORN and the absence of any others' right to the generic term are a fraud upon the USPTO, being false statements of material

information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

168. Defendant's false statements regarding the identification of goods and date of first use are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

169. Defendant's false statements regarding BUTTERED POPCORN are also a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

170. Defendant's assertions about BUTTERED POPCORN are fraudulent or misleading statements to Plaintiffs' and Defendant's existing and potential customers.

171. Defendant SnoWizard has disparaged and tarnished Plaintiffs' business regarding purported BUTTERED POPCORN trademarks.

172. Plaintiffs Southern Snow and Parasol claim damages, cognizable injury, and ascertainable loss resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Buttered Popcorn" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademarks are valid, and purchasing from Defendant without investigating the purported trademarks.

173. Defendant's actions were perpetrated willfully, and with knowledge of Defendant's having no legitimate trademark rights in BUTTERED POPCORN.

174. Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125) by the complained-of actions regarding BUTTERED POPCORN.

175. Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq*., by causing Plaintiffs ascertainable loss from Defendant's complained-of actions regarding BUTTERED POPCORN.

176. Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused regarding BUTTERED POPCORN.

177. Regarding BUTTERED POPCORN, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

178. Regarding BUTTERED POPCORN, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent or willful acts which make this case exceptional.

179. Regarding BUTTERED POPCORN, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

180. Regarding BUTTERED POPCORN, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover treble damages and reasonable attorney fees for Defendant's fraudulent or willful actions.

181. Regarding BUTTERED POPCORN, Plaintiffs Southern Snow and Parasol are entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

182. Plaintiffs are entitled under La. R.S. 51:219 to an order cancelling Louisiana Trade Mark Registration No. 60-2743 for BUTTERED POPCORN.

183. Plaintiffs are entitled, under Lanham Act Section 34 (15 USC §1116) and corresponding Louisiana law, to an injunction against Defendant SnoWizard's continued assertion of any trademark in BUTTERED POPCORN.

24

## GEORGIA PEACH

184. Defendant applied for federal trademark registration for GEORGIA PEACH in International Class 30, for "food flavorings" on 12 May 2008, in application No. 77471426, which is a pending application.

185. Ronald R. Sciortino, Defendant's President, signed the application and the Declaration in the GEORGIA PEACH application, attesting to truthfulness and accuracy, and acknowledging the criminal and civil penalties for willful false statements.

186. Defendant SnoWizard stated in a solemn declaration to the USPTO on 12 May 2008 that Defendant was the owner of the trademark GEORGIA PEACH sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

187. Defendant, on 12 May 2008, submitted as a specimen of use a label from a bottle of flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections. The specimen failed to show use of the mark GEORGIA PEACH for "food flavorings" as claimed in the application, but instead showed use of the mark for flavoring concentrates for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.

188. Defendant stated to the USPTO on 24 April 2008 that its first use and first use in commerce date for GEORGIA PEACH was 31 May 1988.

189. Defendant SnoWizard applied for and obtained, on 25 July 2008, Louisiana Trade Mark Registration No. 60-2749 for GEORGIA PEACH for "food flavoring concentrate for baked and frozen desserts, snoballs and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 31 May 1988.

190. Defendant submitted a solemn notarized statement on 25 July 2008 to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of GEORGIA PEACH.

191. Defendant claims a trademark in GEORGIA PEACH by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

192. Defendant offered and sold a "Georgia Peach" snowball flavoring concentrate for at least thirteen (13) years with no indication of any claim of trademark, from 1988 through at least 2001.

193. Plaintiff Parasol has offered and sold a "Georgia Peach" snowball flavoring concentrate since at least July 2002.

194. Plaintiff Southern Snow has offered and sold a "Peach" snowball flavoring concentrate since at least 1983, and a "Georgia Peach" flavoring concentrate since April 2010.

195. Other vendors of snowball flavoring concentrates have offered and sold "Georgia Peach" and "Peach" snowball flavoring concentrates for several years.

196. The USPTO on 12 August 2008 and 26 October 2009 rejected Defendant's purported trademark in "Georgia Peach" as being merely descriptive, and Defendant is required to show a long period of exclusive use in order to overcome the rejection, making the issue of exclusivity a material issue in this application.

197. Defendant SnoWizard was aware of the sale by Plaintiffs and other vendors of generic "Georgia Peach" snowball flavoring concentrate before Defendant's applications for registration. Defendant was also aware of its own sale of a "Georgia Peach" snowball flavoring concentrate, without any claim of trademark, over several years. Defendant could not have formed a reasonable, good-faith belief that it owned a trademark in GEORGIA PEACH, as it solemnly declared, nor could it have formed a reasonable, good-faith belief that none of the other vendors had a right to use the generic term "Georgia Peach" after they had been selling the generic goods with no action or protest from Defendant.

198. Defendant's promotional literature, including its present website, identifies the "Georgia Peach" flavor concentrate as having the color "Reddish Orange", and the description: "Peach flavor so true that you can taste the 'fuzz'. *Really!!*".

199. "Georgia Peach" is a *generic* term for the flavor name of the snowball that results from using the flavoring concentrate as directed.

200. "Georgia Peach" is a *generic* term for the flavor of Georgia peaches.

201. "Georgia Peach" is a *functional* term for a flavoring concentrate which produces "Georgia Peach" ready-to-use snowball syrup when used as directed.

202. "Georgia Peach" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of Georgia peaches.

203. "Georgia Peach" has not acquired distinctiveness or secondary meaning.

204. "Georgia Peach" is geographically deceptive and geographically deceptively misdescriptive for Defendant's goods.

205. The USPTO, in an Office Action issued 24 May 2010, maintained the refusal for mere descriptiveness, and also added a new refusal for "Georgia Peach" being geographically deceptive and geographically deceptively misdescriptive.

206. Defendant's false statements in its solemn declaration regarding Defendant's right to the mark GEORGIA PEACH and the absence of any others' right to the term are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

207. Defendant's false statements regarding the identification of goods for GEORGIA PEACH are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

208. Defendant's false statements regarding GEORGIA PEACH are also a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

27

209.  Defendant's assertions about GEORGIA PEACH are fraudulent or misleading statements to Plaintiffs' and Defendant's existing and potential customers.

210.  Defendant SnoWizard has disparaged and tarnished Plaintiffs' business regarding purported GEORGIA PEACH trademarks.

211.  Plaintiffs Southern Snow and Parasol claim damages, cognizable injury, and ascertainable loss resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Georgia Peach" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademarks are valid, and purchasing from Defendant without investigating the purported trademarks.

212.  Defendant's actions were perpetrated willfully, and with knowledge of Defendant's having no legitimate trademark rights in GEORGIA PEACH.

213.  Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125) by the complained-of actions regarding GEORGIA PEACH.

214.  Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq*., by causing Plaintiffs ascertainable loss from Defendant's complained-of actions regarding GEORGIA PEACH.

215.  Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused regarding GEORGIA PEACH.

216.  Regarding GEORGIA PEACH, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

217.  Regarding GEORGIA PEACH, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent or willful acts which make this case exceptional.

218.  Regarding GEORGIA PEACH, Plaintiffs are entitled, under the LUTPA, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

219. Regarding GEORGIA PEACH, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover treble damages and reasonable attorney fees for Defendant's fraudulent or willful actions.

220. Regarding GEORGIA PEACH, Plaintiffs Southern Snow and Parasol are entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

221. Plaintiffs are entitled under La. R.S. 51:219 to an order cancelling Louisiana Trade Mark Registration No. 60-2749 for GEORGIA PEACH.

222. Plaintiffs are entitled, under Lanham Act Section 34 (15 USC §1116) and corresponding Louisiana law, to an injunction against Defendant SnoWizard's continued assertion of any trademark in GEORGIA PEACH.

## PRALINE

223. Defendant applied for federal trademark registration for PRALINE in International Class 30, for "food flavorings" on 15 May 2008, in application No. 77474648, which is a pending application for registration.

224. Ronald R. Sciortino, Defendant's President, signed the application and the Declaration in the PRALINE application, attesting to truthfulness and accuracy, and acknowledging the criminal and civil penalties for willful false statements.

225. Defendant SnoWizard stated in a solemn declaration to the USPTO on 15 May 2008 that Defendant was the owner of the trademark PRALINE sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

226. Defendant, on 15 May 2008, submitted as a specimen of use a label from a bottle of flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections. The specimen failed to show use of the mark PRALINE for "food flavorings" as claimed in the application, but instead showed use of the mark for flavoring concentrates for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.

29

227.  Defendant stated to the USPTO on 15 May 2008 that its first use and first use in commerce date for PRALINE was 31 May 1985.

228.  Defendant claims a trademark in PRALINE by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

229.  Defendant offered and sold a "Praline" snowball flavoring concentrate for at least twenty-two (22) years with no indication of any claim of trademark, from 1985 through at least 2007.

230.  Plaintiff Southern Snow has offered and sold a "Praline" snowball flavoring concentrate since at least 1986.

231.  Plaintiff Parasol has offered and sold a "Praline" snowball flavoring concentrate since at least June 2002.

232.  The USPTO on 12 August 2008 rejected Defendant's purported trademark in "Praline" as being merely descriptive, and Defendant is required to show a long period of *exclusive* use in order to overcome the rejection, making the issue of exclusivity a material issues in this application.

233.  Defendant SnoWizard was aware of the sale by Plaintiffs and other vendors of generic "Praline" snowball flavoring concentrate before Defendant's application for registration.  Defendant was also aware of its own sale of a "Praline" snowball flavoring concentrate, without any claim of trademark, over several years. Defendant could not have formed a reasonable, good-faith belief that it owned a trademark in PRALINE, as it solemnly declared, nor could it have formed a reasonable, good-faith belief that none of the other vendors had a right to use the generic term "Praline" after they had been selling the generic goods with no action or protest from Defendant.

234.  Defendant's promotional literature, including its present internet website entry, identifies the "Praline" flavor concentrate as having the color "Golden Brown", and the description: "Like New Orleans Praline™ candies.  Nutty, very sweet Caramel made with Pure Vanilla extract".

235. "Praline" is a *generic* term for the flavor name of the snowball that results from using the flavoring concentrate as directed.

236. "Praline" is a *generic* term for the flavor that tastes like pralines.

237. "Praline" is a *functional* term for a flavoring concentrate which produces "Praline" ready-to-use snowball syrup when used as directed.

238. "Praline" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of pralines.

239. "Praline" has not acquired distinctiveness or secondary meaning.

240. The USPTO, in an Office Action issued 26 October 2009, refused the application because, *inter alia*, "Praline" is generic for the goods.

241. Defendant's false statements in its solemn declaration regarding Defendant's right to the mark PRALINE and the absence of any others' right to the generic term are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

242. Defendant's false statements regarding the identification of goods are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

243. Defendant's assertions about PRALINE are fraudulent or misleading statements to Plaintiffs' and Defendant's existing and potential customers.

244. Defendant SnoWizard has disparaged and tarnished Plaintiffs' business regarding purported PRALINE trademarks.

245. Plaintiffs Southern Snow and Parasol claim damages, cognizable injury, and ascertainable loss resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer

or sell "Praline" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademarks are valid, and purchasing from Defendant without investigating the purported trademarks.

246. Defendant's actions were perpetrated willfully, and with knowledge of Defendant's having no legitimate trademark rights in PRALINE.

247. Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125) by the complained-of actions regarding PRALINE.

248. Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing Plaintiffs ascertainable loss from Defendant's complained-of actions regarding PRALINE.

249. Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused regarding PRALINE.

250. Regarding PRALINE, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

251. Regarding PRALINE, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent or willful acts which make this case exceptional.

252. Regarding PRALINE, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

253. Regarding PRALINE, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover treble damages and reasonable attorney fees for Defendant's fraudulent or willful actions.

254. Regarding PRALINE, Plaintiffs Southern Snow and Parasol are entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

255. Plaintiffs are entitled, under Lanham Act Section 34 (15 USC §1116) and corresponding Louisiana law, to an injunction against Defendant SnoWizard's continued assertion of any trademark in PRALINE.

## MUDSLIDE

256. Defendant applied for federal trademark registration for MUDSLIDE in International Class 30, for "food flavorings" on 17 July 2008, in application No. 77524270, which is a pending application.

257. Defendant submitted as a specimen of use a label from a bottle of Defendant's flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.  Therefore Defendant's submitted specimen failed to show Defendant's use of the mark MUDSLIDE for "food flavoring" as claimed in the application, but instead showed use of the mark for flavoring concentrates for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.

258.  Defendant attempted on 23 April 2009 to amended the description of goods for MUDSLIDE to "flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections", but that amendment was rejected by the USPTO.

259.  Ronald R. Sciortino, Defendant's President, signed the application and the Declaration in the MUDSLIDE application, attesting to truthfulness and accuracy, and acknowledging the criminal and civil penalties for willful false statements.

260.  Defendant SnoWizard stated in a solemn declaration to the USPTO on 17 July 2008 that Defendant was the owner of the trademark MUDSLIDE sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

261.  Defendant stated to the USPTO on 17 July 2008 that its first use and first use in commerce date for MUDSLIDE was 6 April 2007.

262.  Defendant SnoWizard applied for and obtained, on 25 July 2008, Louisiana Trade Mark Registration No. 60-2753 for MUDSLIDE for "food flavoring concentrate

for baked and frozen desserts, snoballs and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 6 April 2007.

263.  Defendant submitted a solemn notarized statement on 25 July 2008 to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of MUDSLIDE.

264.  Defendant claims a trademark in MUDSLIDE by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

265.  Defendant was not offering or selling "Mudslide" flavor concentrate on 6 April 2007, as claimed in the federal and state trademark applications.

266.  Defendant did not offer or sell "Mudslide" flavor concentrate for snowball shaved ice confections at any time prior to 2008.

267.  Defendant's promotional literature, including its internet website, in 2009, described its "Mudslide" flavor concentrate as being "New!".

268.  Plaintiff Southern Snow has offered and sold a "Mudslide" snowball flavoring concentrate since at least early 2008, before Defendant filed for registration of MUDSLIDE.

269.  The USPTO on 23 October 2008 rejected Defendant's purported trademark in "Mudslide" as being merely descriptive, and Defendant is required to show a long period of exclusive use in order to overcome the rejection, making the issues of date of first use and of exclusivity material issues in this application.

270.  Defendant SnoWizard was aware of the sale by Plaintiff Southern Snow and other vendors of a generic "Mudslide" snowball flavoring concentrate before Defendant's first offer and sale.  Defendant was also aware that it had not been selling "Mudslide" exclusively, or even selling "Mudslide" at all, for a sufficient amount of time to acquire any trademark rights.  Defendant could not have formed a reasonable, good-faith belief that it owned a trademark in MUDSLIDE, as it solemnly declared, nor could it have formed a reasonable, good-faith belief that none of the other vendors had a right to use the generic term "Mudslide".

271. Defendant's promotional literature, including its "New Flavors" internet website in 2008, identifies the "Mudslide" flavor concentrate as having the color "Creamy Tan", and the description: "This new flavor captures the real taste of the popular drink. Mudslide™ is a blend of cane rum flavor, real coffee, natural cocoa and milk. Pure vanilla extract rounds out the flavor for a really delicious taste".

272. "Mudslide" is a *generic* term for the flavor name of the snowball that results from using the flavoring concentrate as directed.

273. "Mudslide" is a *generic* term for the flavor of the "Mudslide" adult beverage.

274. "Mudslide" is a *functional* term for a flavoring concentrate which produces "Mudslide" ready-to-use snowball syrup when used as directed.

275. "Mudslide" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of a "Mudslide" adult beverage.

276. "Mudslide" has not acquired distinctiveness or secondary meaning.

277. Defendant's false statements in its solemn declaration regarding Defendant's right to the mark MUDSLIDE and the absence of any others' right to the generic term are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

278. Defendant's false statements regarding the identification of goods and date of first use are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

279. Defendant's false statements regarding MUDSLIDE are also a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the

Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

280.  Defendant's assertions about MUDSLIDE are fraudulent or misleading statements to Plaintiffs' and Defendant's existing and potential customers.

281.  Defendant SnoWizard has disparaged and tarnished Plaintiffs' business regarding purported MUDSLIDE trademarks.

282.  Plaintiffs Southern Snow and Parasol claim damages, cognizable injury, and ascertainable loss resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Mudslide" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademarks are valid, and purchasing from Defendant without investigating the purported trademarks.

283.  Defendant's actions were perpetrated willfully, and with knowledge of Defendant's having no legitimate trademark rights in MUDSLIDE.

284.  Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125) by the complained-of actions regarding MUDSLIDE.

285.  Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing Plaintiffs ascertainable loss from Defendant's complained-of actions regarding MUDSLIDE.

286.  Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused regarding MUDSLIDE.

287.  Regarding MUDSLIDE, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

288.  Regarding MUDSLIDE, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent or willful acts which make this case exceptional.

289.  Regarding MUDSLIDE, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

290.  Regarding MUDSLIDE, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover treble damages and reasonable attorney fees for Defendant's fraudulent or willful actions.

291.  Regarding MUDSLIDE, Plaintiffs Southern Snow and Parasol are entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

292.  Plaintiffs are entitled under La. R.S. 51:219 to an order cancelling Louisiana Trade Mark Registration No. 60-2753 for MUDSLIDE.

293.  Plaintiffs are entitled, under Lanham Act Section 34 (15 USC §1116) and corresponding Louisiana law, to an injunction against Defendant SnoWizard's continued assertion of any trademark in MUDSLIDE.

### CAKE BATTER

294.  Defendant SnoWizard applied for and obtained, on 25 July 2008, Louisiana Trade Mark Registration No. 60-2745 for CAKE BATTER for "food flavoring concentrate for baked and frozen desserts, snoballs and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 12 February 2008.

295.  Defendant submitted a solemn notarized statement on 25 July 2008 to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of CAKE BATTER.

296.  Defendant claims a trademark in CAKE BATTER by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

297.  Defendant's promotional literature, including its present internet website, identifies the "Cake Batter" flavor concentrate as having the color "Golden Yellow", and the description:  "Everyone remembers wiping the side of a bowl with their

finger to taste the cake batter mix their mother was preparing.  Well, SnoWizard has captured that taste in our new Cake Batter™ concentrate.  The taste of REAL cake mix is the hot, new flavor sensation".

298. "Cake Batter" is a *generic* term for the flavor name of the snowball that results from using the flavoring concentrate as directed.

299. "Cake Batter" is a *generic* term for the flavor that tastes like cake batter.

300. "Cake Batter" is a *functional* term for a flavoring concentrate which produces "Cake Batter" ready-to-use snowball syrup when used as directed.

301. "Cake Batter" is merely *descriptive* of a flavoring concentrate for producing a snowball having the taste, color, and smell of cake batter.

302. "Cake Batter" has not acquired distinctiveness or secondary meaning.

303. Defendant did not offer or sell "Cake Batter" flavor concentrate for snowballs at any time prior to 2008.

304. Defendant's own current promotional literature describes the "Cake Batter" flavor concentrate for snowballs as being "New!".

305. Plaintiff Parasol offered a generic "Yellow Cake Batter" flavor concentrate since 2005, before Defendant first offered its "Cake Batter" flavor concentrate, and before Defendant made its Louisiana trademark filing on 25 July 2008.

306. Plaintiff Southern Snow offered and sold a generic "Cake Batter" flavor concentrate since April 2010.

307. Defendant has not sold its "Cake Batter" flavor concentrate exclusively for a sufficient time to acquire distinctiveness or establish secondary meaning.

308. Defendant's false statements regarding rights to the mark CAKE BATTER, the absence of any others' right to the term, and exclusive use of the term, are a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

38

309.  Defendant's assertions about CAKE BATTER are fraudulent or misleading statements to Plaintiffs' and Defendant's existing and potential customers.

310.  Defendant SnoWizard has disparaged and tarnished Plaintiffs' business regarding purported CAKE BATTER trademarks.

311.  Plaintiffs Southern Snow and Parasol claim damages, cognizable injury, and ascertainable loss resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Cake Batter" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademarks are valid, and purchasing from Defendant without investigating the purported trademarks.

312.  Defendant's actions were perpetrated willfully, and with knowledge of Defendant's having no legitimate trademark rights in CAKE BATTER.

313.  Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125) by the complained-of actions regarding CAKE BATTER.

314.  Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq*., by causing Plaintiffs ascertainable loss from Defendant's complained-of actions regarding CAKE BATTER.

315.  Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused regarding CAKE BATTER.

316.  Regarding CAKE BATTER, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

317.  Regarding CAKE BATTER, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent or willful acts which make this case exceptional.

318.  Regarding CAKE BATTER, Plaintiffs are entitled, under the LUTPA, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

319. Regarding CAKE BATTER, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover treble damages and reasonable attorney fees for Defendant's fraudulent or willful actions.

320. Regarding CAKE BATTER, Plaintiffs Southern Snow and Parasol are entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

321. Plaintiffs are entitled to an order under La. R.S. 51:219 cancelling Louisiana Trade Mark Registration No. 60-2745 for CAKE BATTER.

322. Plaintiffs are entitled, under Lanham Act Section 34 (15 USC §1116) and corresponding Louisiana law, to an injunction against Defendant SnoWizard's continued assertion of any trademark in CAKE BATTER.

## DILL PICKLE

323. Defendant SnoWizard applied for and obtained, on 25 July 2008, Louisiana Trade Mark Registration No. 60-2748 for DILL PICKLE for "food flavoring concentrate for baked and frozen desserts, snoballs and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 30 April 1998.

324. Defendant submitted a solemn notarized statement on 25 July 2008 to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of DILL PICKLE.

325. Defendant claims a trademark in DILL PICKLE by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

326. Defendant's promotional literature, including its present internet website, identifies the "Dill Pickle" flavor concentrate as having the color "Bright Green", and the description:  "Zowie!  *REAL* Dill Pickle™ juice flavor that will make you pucker your lips".

327. "Dill Pickle" is a *generic* term for the flavor name of the snowball that results from using the flavoring concentrate as directed.

328. "Dill Pickle" is a *generic* term for the flavor that tastes like dill pickles.

329. "Dill Pickle" is a *functional* term for a flavoring concentrate which produces "Dill Pickle" ready-to-use snowball syrup when used as directed.

330. "Dill Pickle" is merely *descriptive* of a flavoring concentrate for producing a snowball having the taste, color, and smell of dill pickles.

331. "Dill Pickle" has not acquired distinctiveness or secondary meaning.

332. Defendant did not offer or sell a "Dill Pickle" flavor concentrate in 1998 as claimed, and did not start offering and selling "Dill Pickle" flavor concentrate until 1999 or later.

333. Plaintiff Southern Snow offered a generic "Dill Pickle" flavor concentrate since 1999, before Defendant first offered its "Dill Pickle" flavor concentrate, and nine (9) years before Defendant made its Louisiana trademark filing on 25 July 2008.

334. Defendant offered and sold a "Dill Pickle" snowball flavoring concentrate for at least eight (8) years with no indication of any claim of trademark, from approximately 1999 through at least 2007.

335. Defendant has not sold its "Dill Pickle" flavor concentrate exclusively for a sufficient time to acquire distinctiveness or establish secondary meaning.

336. Defendant's false statements regarding rights to the mark DILL PICKLE, the absence of any others' right to the term, date of first use, and exclusive use of the term, are a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

337. Defendant's assertions about DILL PICKLE are fraudulent or misleading statements to Plaintiffs' and Defendant's existing and potential customers.

338. Defendant SnoWizard has disparaged and tarnished Plaintiffs' business regarding purported DILL PICKLE trademarks.

339. Plaintiffs Southern Snow and Parasol claim damages, cognizable injury, and ascertainable loss resulting from Defendant's complained-of actions, including

but not limited to the costs and lost profits resulting from not being able to offer or sell "Dill Pickle" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademarks are valid, and purchasing from Defendant without investigating the purported trademarks.

340. Defendant's actions were perpetrated willfully, and with knowledge of Defendant's having no legitimate trademark rights in DILL PICKLE.

341. Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125) by the complained-of actions regarding DILL PICKLE.

342. Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing Plaintiffs ascertainable loss from Defendant's complained-of actions regarding DILL PICKLE.

343. Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused regarding DILL PICKLE.

344. Regarding DILL PICKLE, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

345. Regarding DILL PICKLE, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent or willful acts which make this case exceptional.

346. Regarding DILL PICKLE, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

347. Regarding DILL PICKLE, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover treble damages and reasonable attorney fees for Defendant's fraudulent or willful actions.

348. Regarding DILL PICKLE, Plaintiffs Southern Snow and Parasol are entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's

actions, even in the absence of a finding of fraud or willfulness.

349. Plaintiffs are entitled to an order under La. R.S. 51:219 cancelling Louisiana Trade Mark Registration No. 60-2748 for DILL PICKLE.

350. Plaintiffs are entitled, under Lanham Act Section 34 (15 USC §1116) and corresponding Louisiana law, to an injunction against Defendant SnoWizard's continued assertion of any trademark in DILL PICKLE.

## BUTTERCREAM

351. Defendant SnoWizard claims a common-law trademark in the purported mark BUTTERCREAM, as evidenced by Defendant's placing a "TM" adjacent to the flavor concentrate name in its promotional literature.

352. Defendant SnoWizard began claiming a trademark in BUTTERCREAM in either 2008 or 2009.

353. Defendant's promotional literature describes "Buttercream" flavoring concentrate as follows: "Rich creamy, buttery, Vanilla taste. ... Color: Caramel".

354. "Buttercream" is a *generic* term for the flavor name of the snowball that results from using the flavoring concentrate as directed.

355. "Buttercream" is a *generic* term for the flavor that tastes like butter-cream.

356. "Buttercream" is a *functional* term for a flavoring concentrate which produces "Buttercream" ready-to-use snowball syrup when used as directed.

357. "Buttercream" is merely *descriptive* of a flavoring concentrate for producing a snowball having the taste, color, and smell of butter-cream.

358. "Buttercream" has not acquired distinctiveness or secondary meaning.

359. Plaintiff Southern Snow offered a generic "Butter Cream" flavor concentrate since 1991, seventeen (17) years before Defendant started claiming a trademark in BUTTERCREAM in 2008 or 2009.

360. Plaintiff Parasol offered a generic "Buttercream" flavor concentrate since 2006, two (2) years before Defendant started claiming a trademark in BUTTERCREAM in 2008 or 2009.

361.  Defendant SnoWizard offered and sold a "Buttercream" snowball flavoring concentrate for at least twenty-two (22) years with no indication of any claim of trademark, from 1985 through at least 2007.

362.  Defendant has not sold its "Buttercream" flavor concentrate exclusively for a sufficient time to acquire distinctiveness or establish secondary meaning.

363.  "Buttercream" is generic, functional, and merely descriptive under the common law of trademark, and cannot serve as a trademark.

364.  Defendant SnoWizard was aware of the sale by Plaintiffs and other vendors of a generic "Buttercream" or "Butter Cream" snowball flavoring concentrate over several years.  Defendant was also aware of its own sale of a generic "Buttercream" snowball flavoring concentrate over several years.  Defendant could not have formed a reasonable, good-faith belief that it owned a trademark in BUTTERCREAM, nor could it have formed a reasonable, good-faith belief that none of the other vendors had a right to use the generic term "Buttercream" or "Butter Cream" after they had been selling the generic goods for several years with no action or protest from Defendant.

365.  Defendant's claim of a common-law trademark in BUTTERCREAM is therefore unsupported and unsupportable, and is made in bad faith.

366.  Defendant's assertions about BUTTERCREAM are fraudulent or misleading statements to Plaintiffs' and Defendant's existing and potential customers.

367.  Defendant SnoWizard has disparaged and tarnished Plaintiffs' business regarding BUTTERCREAM and other purported trademarks.

368.  Plaintiffs claim damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Buttercream" or "Butter Cream" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademarks are valid, and purchasing from Defendant without investigating the purported trademarks.

369. Defendant's actions were perpetrated willfully, and with knowledge of Defendant's having no legitimate trademark rights in BUTTERCREAM.

370. Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125) by the complained-of actions regarding BUTTERCREAM.

371. Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing Plaintiffs ascertainable loss from Defendant's complained-of actions regarding BUTTERCREAM.

372. Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused regarding BUTTERCREAM.

373. Regarding BUTTERCREAM, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

374. Regarding BUTTERCREAM, Plaintiffs are entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent or willful acts which make this case exceptional.

375. Regarding BUTTERCREAM, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

376. Regarding BUTTERCREAM, Plaintiffs Southern Snow and Parasol are entitled, under the LUTPA, to recover treble damages and reasonable attorney fees for Defendant's fraudulent or willful actions.

377. Regarding BUTTERCREAM, Plaintiffs Southern Snow and Parasol are entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

378. Plaintiffs are entitled, under Lanham Act Section 34 (15 USC §1116) and corresponding Louisiana law, to an injunction against Defendant SnoWizard's continued assertion of any trademark in BUTTERCREAM.

**Damages caused by all bogus trademarks combined**

379. Plaintiffs Southern Snow and Parasol have been damaged by each trademark obtained by fraud or otherwise falsely asserted as unfair competition or trade practice, and have also been damaged by the totality of Defendant's asserting a false portfolio of false trademarks, which together make a false statement to customers and potential customers that Defendant's products are legitimate and Plaintiffs' products are not; which cause confusion among customers and potential customers regarding whether purchasing supplies from Plaintiffs is somehow unlawful; and which require Plaintiffs' principal officers to respond to Defendant's constant bogus claims of trademark.

WHEREFORE Plaintiffs Southern Snow Mfg. Co., Inc., and Parasol Flavors, LLC, pray that, after due proceedings had, the Court render judgment against Defendant SnoWizard, Inc., for damages, enhanced damages, treble damages, profits, costs, and reasonable attorney fees, for orders cancelling improperly-obtained federal and Louisiana trademarks, and for injunctive and other equitable relief, under the federal Lanham Act (15 USC §1051, *et seq.*), the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, Louisiana Trade Mark law (La. R.S. 51:211, *et seq.*), Louisiana Civil Code Article 2315, and any other authorized equitable or legal remedies.

RESPECTFULLY SUBMITTED:
Attorney for Plaintiffs

*Mark Andrews*
_____

**Certificate of Service**
I certify that this document is electronically filed and therefore served on counsel for all parties via the CM/ECF system, this 7 June 2010.

*Mark Andrews*

Mark Edw. Andrews
Louisiana Bar No. 26172
Andrews Arts & Sciences Law, LLC
7104 Coliseum St.
New Orleans, LA  70118
504-383-3632
mea@mealaw.com