## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| SOUTHERN SNOW MFG. CO., INC., et al. | * <br> * CIVIL ACTION <br> * <br> * CASE NO. 06-9170 c/w 09-3394, <br> * 10-791, 10-4275 |
| vs. | * <br> * SECT. "A", JUDGE ZAINEY |
| SNOWIZARD HOLDINGS, INC., et al. | * <br> * MAG. DIV. 1, <br> * MAG. JUDGE SHUSHAN <br> * |

### SNOWIZARD'S MEMORANDUM IN OPPOSITION
### TO PARASOL'S MOTION FOR SUMMARY JUDGMENT
### ON THIRD-PARTY CLAIMS IN CASE NO. 10-0791

**MAY IT PLEASE THE COURT:**

Defendant and plaintiff-in-counterclaim SnoWizard, Inc., through undersigned counsel, respectfully submits this memorandum in opposition to the "3d Party Defendant Parasol's Motion for Summary Judgment on the 3d-Party Claims in Case No. 10-0791" (Rec. Doc. 205) filed by plaintiff and defendant-in-counterclaim Parasol Flavors, LLC in these consolidated cases.

In "SnoWizard's Answer, Defenses, and Counterclaims to First Amended Complaint" filed herein in response to plaintiff and defendant-in-counterclaim Southern Snow Manufacturing Co., Inc.'s first amended complaint in consolidated Case No. 10-791, SnoWizard, pursuant to Rules 13, 13(h), and 20 of the Federal Rules of Civil Procedure, joined Parasol as an additional party to the case and stated counterclaims against it for infringement, unfair competition, unfair trade practices, and damages under La. C.C. art. 2315 for using "the words 'snow wizard' and variants thereof, as concealed metatags on its internet website www.parasolflavors.com" (Rec. Doc. 168, ¶ 10). Parasol

now seeks a summary judgment dismissing those counterclaims (which Parasol calls third-party claims).  However, as shown and supported herein and in the attached and incorporated depositions, declaration, and sworn exhibits, Parasol's contentions and arguments lack merit as a matter of fact and law, and at the very least there remain genuine issues of material fact, precluding summary judgment.

In support of its motion, Parasol has attached a discovery response in which its member/manager Donavan Drewes attests that he has "no knowledge of whether or when the phrase 'snow wizard' was ever inserted on the website" (Rec. Doc. 205-3, p. 1), and also has attached an unauthenticated printout of the purported source code of its website as of December 15, 2010 (*id.* at p. 3), to argue that according to Parasol, that allegedly SnoWizard has no evidence that Parasol "ever used" SnoWizard's trademark and trade name "snow wizard" as a keyword metatag on Parasol's website (Rec. Doc. 205-2, Parasol Memo., pp. 1-2).  Parasol is wrong, however, because in addition to the printout of the source code of Parasol's website as of September 10, 2010 which is attached as an exhibit to SnoWizard's counterclaims against Parasol (Rec. Doc. 168-3), the attached declaration of SnoWizard's President, Ronald Sciortino, establishes that "Parasol was using the mark 'Snow Wizard' as a keyword metatag in its website's source code since at least 2005" and as late as July 16, 2010 (Ex. A, Sciortino Decl., ¶¶ 7-8; Ex. Sciortino 1-4, Web Pages and Source Code).  Indeed, Mr. Drewes' deposition testimony that he has "no idea whether or not SnoWizard ever appeared in the metatags" of Parasol's website, that he "didn't change those metatags," and that he "Never" spoke with Milton Wendling, the president of Parasol's co-plaintiff Southern Snow, about Parasol's website (Ex. B, Drewes Depo., pp. 49-61, 66), is flatly contradicted by the deposition testimony of Mr. Wendling as follows:

Q.      How did it first come to your attention that SnoWizard had your marks in its meta tags?

A.      On the website, I believe Mark Andrews, my attorney, discovered it.

Q.      Did you have any conversations with anybody else -- about other than Mr. Andrews about the meta tags?

A.      Yes. I talked to the guy at Parasol and I understand that he had something on his site for Southern Snow and SnoWizard and I told him he should get it off.

Q.      What did he say?

A.      He said he would take it off. He said he didn't even know it was on there.

Q.      But he said he would remove it?

A.      Yeah.

Q.      When did you have that conversation with him?

A.      Shortly after when Mark discovered it.

Q.      Mark discovered what?

A.      That they had these meta tags on SnoWizard's site.

Q.      So you called him up and asked him to remove it and he removed it?

A.      Yes.

Q.      You spoke to Mr. Drewes directly?

A.      Yes.

(Ex. C, Wendling Depo., pp. 51-52).  Clearly on this conflicted record, Parasol is not entitled to summary judgment.

-3-

Parasol next argues that its use of SnoWizard's trademark and trade name "snow wizard" as a keyword metatag in the source code of its website allegedly was not a "use in commerce" of SnoWizard's trademark and trade name (Rec. Doc. 205-2, Parasol Memo., pp. 5-6).  This argument lacks merit because at least one circuit court of appeals has expressly held that allegations of the use of a trademark as a sponsored keyword which triggers the appearance of a competitor's advertisement and website link when entered as a search term in an internet search engine "adequately plead a use in commerce."  *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 126-27 (2d Cir. 2009).  *See also Playboy Enter., Inc., v. Netscape Comm. Corp.,* 354 F.3d 1020, 1024 (9th Cir.2004) (noting that defendants' use of plaintiff's trademarks as sponsored keyword internet search terms constituted use in commerce); *Brookfield Comm., Inc. v. West Coast Enter. Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) (finding that plaintiff was entitled to a preliminary injunction against defendant's use of plaintiff's trademark as a keyword metatag without addressing the "use in commerce" requirement).

Parasol's suggestion that its use of "snow wizard" as a keyword metatag did not constitute use in commerce of "SNOWIZARD" because of the slight difference in spelling is belied by the Lanham Act itself, which prohibits unauthorized use in commerce of "any reproduction, counterfeit, copy, or *colorable imitation* of a registered mark . . ." which is likely to cause confusion, 15 U.S.C. § 1114(1)(a) (emphasis added), or of "any word, term, name, symbol, or device, or *any combination thereof* . . ." which is likely to cause confusion, 15 U.S.C. § 1125(a)(1) (emphasis added).  As the Fifth Circuit explained in *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226-27 (5th Cir. 2009), "mark similarity" is only one factor in a nonexhaustive list of "digits of confusion" to be examined in evaluating likelihood of confusion.  "Mark similarity 'is determined by comparing the

-4-

marks' appearance, sound, and meaning,'" stated the Court.  *Id.* at 228.  "Even if two marks are distinguishable, we ask whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association."  *Id.*  Here, the sounds of the two marks are indistinguishable, and the only distinction is the slight difference in spelling.  Therefore, as a matter of law, a reasonable person hearing or even seeing the two marks would believe products sold in connection with them have a common origin or association.  In fact, SnoWizard claims state and federal common law rights in "colorable imitations" of its registered trademark "SNOWIZARD," including the trademark and trade name "SNOW WIZARD" (Ex. A, Sciortino Decl., ¶ 6).

Similarly, Parasol's argument that allegedly "there is no actual or likely confusion" as a result of Parasol's use of SnoWizard's trademark and trade name "snow wizard" as a keyword metatag on its website lacks merit because in this district, absent the defenses of nominative fair use and unclean hands, such use creates "initial interest confusion" and constitutes trademark infringement and unfair competition as a matter of law.  In *Bayer Corp. v. Custom School Frames, LLC*, 259 F.Supp.2d 503, 509 (E.D. La. 2003), Judge McNamara cited *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999), and *Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002), in support of its finding that the defendant's use of the plaintiff's mark "in the metatags for Defendants' website creates initial interest confusion."  The Court then held that such use of the plaintiff's mark "constitutes trademark infringement and unfair competition *as a matter of law*."  *Bayer*, 259 F.Supp. at 509 (emphasis added).  In this case too, Parasol's use of SnoWizard's trademark and trade name "snow wizard" as a keyword metatag on

-5-

its website created initial interest confusion among consumers and constituted trademark infringement and unfair competition as a matter of law.

Furthermore, at the very least there remain genuine issues of material fact as to whether Parasol's use of "snow wizard" as a metatag created a likelihood of confusion. "[L]ikelihood of confusion is typically a question of fact . . . ." *Xtreme Lashes*, 576 F.3d at 227.  And evidence of "actual confusion," like "mark similarity," is only one factor among the following nonexhaustive "digits of confusion" to be examined in evaluating likelihood of confusion:

> (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers.  No digit is dispositive, and the digits may weigh differently from case to case, "depending on the particular facts and circumstances involved."

*Xtreme Lashes*, 576 F.3d at 226-27 (citations omitted).

Here, SnoWizard's trademark "SNOWIZARD" is quite distinctive on its face and is protected by two federal trademark registrations, and SnoWizard also claims state and federal common law rights in the trademark and trade name "SNOWIZARD" and colorable imitations thereof, including the mark "SNOW WIZARD" (Ex. A, Sciortino Decl., ¶ 6).  As discussed above, the sounds of the two marks "SNOWIZARD" and "SNOW WIZARD" are indistinguishable, and the only distinction between them is their confusingly similar spellings.  Parasol's flavoring concentrates are similar to SnoWizard's original, proprietary flavoring concentrates (*see* Case No. 09-3394, Rec. Doc. 36-2, Parasol Memo., p. 3).  Like SnoWizard, Parasol sells its products to snowball vendors, and both advertise using flavor lists posted on internet web sites (*see id.*; Case No. 09-3394, Rec. Doc. 43-3, Sciortino Decl., ¶ 9; Case No. 09-3394, Rec. Doc. 43-16, Website Flavor Lists).  Parasol has a history of copying SnoWizard's trademarks in order to mislead consumers into

-6-

believing Parasol offers the same flavoring concentrates SnoWizard had originated, evidencing its intent to misappropriate the good will associated with SnoWizard's business and to create consumer confusion (*see* Case No. 09-3394, Rec. Doc. 43-3, Sciortino Decl., ¶¶ 8, 10; Case No. 09-3394, Rec. Doc. 43-5, SnoWizard Flavor Lists; Case No. 09-3394, Rec. Doc. 36-2, Parasol Memo., pp. 4-5). *See Precision Tune, Inc. v. Tune-A-Car, Inc.*, 611 F.Supp. 360 (W.D. La. 1984) ("If the evidence reveals that defendant specifically intended to copy plaintiff's mark, this factor alone might be sufficient to allow the court to conclude that confusing deception exists") (citations omitted).  And at prices ranging from only $8.75 per quart to $26 per gallon for flavoring concentrates (*see* Case No. 09-3394, Rec. Doc. 43-16, Website Flavor Lists, pp. 1, 6), potential purchasers are not likely to exercise a great amount of care in selecting flavoring concentrates.  *See Board of Super. for L.S.U. v. Smack Apparel Co.*, 550 F.3d 465, 483 (5th Cir. 2008) ("Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion").

Thus, every "digit of confusion" except evidence of "actual confusion" weighs in favor of finding a likelihood of confusion or initial interest confusion between SnoWizard's trademark and trade name and Parasol's infringing use of that  trademark and trade name as a keyword metatag on its website.  *See Board of Supervisors of L.S.U. v. Smack Apparel Co.*, 438 F.Supp.2d 653, 661 (E.D. La. 2006), *aff'd*, 550 F.3d 465 (5th Cir. 2008) ("It has long been held that actual confusion need not be proved. Rather, a showing of a likelihood of confusion is sufficient") (citation omitted). A reasonable jury therefore could find a likelihood of confusion or initial interest confusion based on such evidence, and at the least there remain genuine issues of material fact as to whether there is a likelihood of confusion or initial interest confusion.

Finally, Parasol's facetious argument that allegedly "SnoWizard's own claims here cannot be maintained because SnoWizard cannot possibly establish any financial loss because SnoWizard has refused to provide any of its own financial data" also lacks merit (Rec. Doc. 205-2, Parasol Memo., p. 6). This is the identical argument raised by Parasol, Southern Snow, and plaintiff and defendant-in-counterclaim Simeon, Inc. in their pending "Counter-Defendants' Motion for Partial Summary Judgment on the Remaining Counterclaims" (Rec. Doc. 207-2, Parasol et al. Memo., p. 9), which SnoWizard has refuted soundly and at length in its "Memorandum in Opposition to Counter-Defendants' Motion for Partial Summary Judgment on the Remaining Counter Claims" (Rec. Doc. 214, SnoWizard Memo., pp. 4-7). So rather than repeat SnoWizard's arguments in opposition here, SnoWizard hereby adopts and incorporates those arguments by reference herein, including the referenced exhibits, in opposition to Parasol's identical meritless argument in its instant motion.

For the foregoing reasons, SnoWizard respectfully prays that the Court deny Parasol's "3d Party Defendant Parasol's Motion for Summary Judgment on the 3d-Party Claims in Case No. 10-0791" (Rec. Doc. 205).

RESPECTFULLY SUBMITTED,

**BRAD E. HARRIGAN, La. Bar # 29592**
**SIMEON B. REIMONENQ, JR., # 19755**
**LUGENBUHL, WHEATON, PECK, RANKIN &**
        **HUBBARD**
**601 Poydras Street, Suite 2775**
**New Orleans, Louisiana 70130**
**Telephone: (504) 568-1990**
**Facsimile: (504) 310-9195**
**Email: bharrigan@lawla.com**

-8-

- and -

*/s/ Jack E. Morris*

_____

**JACK E. MORRIS (Bar No. 22539) (T.A.)**
**ATTORNEY AT LAW**
**4051 Veterans Boulevard, Suite 208**
**Metairie, Louisiana  70002**
**Telephone:  (504) 454-2769**
**Facsimile:  (504) 454-3855**
**Email: jem@jemorrislaw.com**

- and -

**KENNETH L. TOLAR (Bar #22641)**
**2908 Hessmer Avenue, Suite 2**
**Metairie, Louisiana  70002**
**Telephone:  (504) 780-9891**
**Facsimile:  (504) 780-7741**
**Email:  tolar@cavtel.net**

***ATTORNEYS FOR SNOWIZARD, INC.***

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2011 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to those participants in the CM/ECF filing system.

*/s/ Jack E. Morris*

_____

**JACK E. MORRIS**