February 15, 2011

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOUTHERN SNOW MANUFACTURING CO., ET AL.        CIVIL ACTION

VERSUS                                          NO. 06-9170 c/w
                                                09-3394, 10-791

SNO WIZARD HOLDINGS, INC., ET AL.               SECTION "A"(1)

### ORDER AND REASONS (Ref: 10-791)

Before the Court is **3D-Party Defendant Parasol's Motion for Summary Judgment of the 3D-Party Claims in Case No. 10-791 (Rec. Doc. 205)** filed by third-party defendant Parasol Flavors, LLC. Defendant and third-party plaintiff SnoWizard, Inc. opposes the motion. The motion, set for hearing on January 19, 2011, is before the Court on the briefs without oral argument.

The instant motion challenges SnoWizard's claims against Parasol Flavors, LLC for infringing SnoWizard's federally registered trademark SNOWIZARD by using the phrase "snow wizard" as a metatag on Parasol's internet website. (Rec. Doc. 168, at 30 ¶ 16). SnoWizard alleges that Parasol's use of this metatag on its website has damaged SnoWizard and that Parasol's continued use of the term "snow wizard" as a hidden metatag on its website

will likely cause SnoWizard irreparable harm.[1]  (Id. at 31 ¶¶ 17-18).  SnoWizard claims that Parasol's use of the term "snow wizard" violates the Lanham Act § 32 (15 U.S.C. § 1114), the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. § 51:1405, et seq., and Louisiana Civil Code article 2315.  (Id. at 46 ¶¶ 77-79).

Parasol moves for summary judgment arguing that SnoWizard cannot establish a claim for trademark infringement.  Parasol argues that SnoWizard cannot establish that "snow wizard" was used as a metatag on Parasol's website, that even if it was used "snow wizard" does not constitute a use in commerce of SNOWIZARD, that there is no evidence of any actual or likely confusion under these specific facts, and that SnoWizard has no evidence of damages.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[1] Plaintiffs Southern Snow and Simeon, Inc. were the first to pursue infringement claims based on the use of metatags in SnoWizard's website.  SnoWizard questioned in its motion to dismiss whether such a claim would be cognizable under the law of this circuit.  (Rec. Doc. 143).  The Court denied SnoWizard's motion noting that at least one circuit court had specifically found that the use of a competitor's trademark in hidden metatags can state a claim for trademark infringement.  (Rec. Doc. 162) (citing Brookfield Commun., Inc. v. W. Coast Entertainment Corp., 174 F.3d 1036 (9th Cir. 1999)).  The Fifth Circuit has not yet addressed whether such conduct is actionable as infringement.

2

together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."  TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

 Parasol's argument that use of the phrase "snow wizard" does not constitute a use in commerce of the trademark SNOWIZARD presents a question of law.  Parasol points out that "snow

3

wizard" and SNOWIZARD might sound the same to the human ear but computers do not process internet searches by sound and that a computer search engine knows the difference between "snow wizard" and SNOWIZARD. Parasol points out that SnoWizard does not have an expert to establish how a computer search engine would process the term "snow wizard" so as to establish that there would even be any likelihood of confusion based on the search results.

SnoWizard retorts that the cases applying <u>Brookfield Communications</u> recognize that the defendant's use of the plaintiff's mark in website metatags creates initial interest confusion and therefore constitutes trademark infringement and unfair competition as a matter of law.

A claim for trademark infringement, whether based on website metatags or otherwise, ultimately turns on whether one mark is likely to cause confusion with another. <u>Xtreme Lashes, LLC v. Xtended Beauty, Inc.</u>, 576 F.3d 221, 226 (5th Cir. 2009) (<u>citing</u> <u>Marathon Mfg. Co. v. Enerlite Prods. Corp.</u>, 767 F.2d 214, 217 (5th Cir. 1985)). "Likelihood of confusion" is more than a mere possibility; the plaintiff must demonstrate a probability of confusion. <u>Id.</u> (<u>citing</u> <u>Bd. of Supv. v. Smack Apparel</u>, 550 F.3d 465, 478 (5th Cir. 2008)). Likelihood of confusion is typically a question of fact, but summary judgment is proper if the "record compels the conclusion that the movant is entitled to judgment as

4

a matter of law." Id. at 227 (quoting Smack Apparel, 550 F.3d at 474). Obviously, the burden of proving likelihood of confusion is going to rest with the plaintiff.

The Court does not agree with SnoWizard's contention that "likelihood of confusion" is established as a matter of law because of the initial interest confusion that may result when the defendant uses the plaintiff's trademark as a website metatag. The cases merely recognize that use of such a metatag can constitute trademark infringement because of the initial interest confusion that may be created--this notwithstanding that the consumer never actually sees the trademark. It would be odd indeed for the law to require a plaintiff in an ordinary trademark infringement case to prove likelihood of confusion to the jury, yet to create a lighter burden where metatags are involved, given that with metatags the consumer never actually sees the trademark or knows that it is in use. Thus, the Court is persuaded that SnoWizard cannot passively assume that likelihood of confusion is established as a matter of law in this case.

Further, in light of the technical, esoteric, and hidden nature of website metatags, the Court is persuaded that SnoWizard cannot prevail on its metatag claim without evidence of what actually takes place as a result of the phrase "snow wizard"

5

being hidden in Parasol's website.  Is every consumer diverted to Parasol's website, or is Parasol listed at the top of many search results, or somewhere in the middle of a result list, or twenty names down the list?  Does the consumer have to type in just "snow wizard" or is the metatag triggered by other variations of the phrase too?  Certainly the likelihood of consumer confusion will turn on questions such as these but the record contains no evidence of this nature.

Evidence regarding what happens when Parasol uses the phrase "snow wizard" in its website is especially important here because SnoWizard is suing for infringement of its federally-registered SNOWIZARD trademark.  But Parasol did not embed the SNOWIZARD trademark in its website.[2]  While the Court is persuaded that use of the phrase "snow wizard" could conceivably constitute a use in commerce of the trademark SNOWIZARD,[3] the jury would be left to

---

[2] Parasol denies that it ever used the phrase "snow wizard" on its website but this issue is clearly one of disputed fact.

[3] 15 U.S.C. § 1114(1)(a) requires on its face that the trademark be used in commerce.  Parasol argues that using "snow wizard" does not constitute a "use in commerce" of SNOWIZARD. The answer to that question is not clear but interestingly the Brookfield decision, supra, specifically stated that the alleged infringer could use the phrase "Movie Buff" as a metatag but not "MovieBuff."  174 F.3d at 1066.  The court reasoned that the space was pivotal because Movie Buff is a descriptive term, which is routinely used in the English language to describe a movie devotee whereas the term "Movie Buff" is not in the dictionary and is not in common usage.  Id.

guess that "snow wizard" and SNOWIZARD are synonymous to a computer search engine but the Court is not even persuaded that such an assumption is factually correct.

In sum, Parasol has demonstrated that SnoWizard lacks sufficient evidence to support its claim that Parasol's use of "snow wizard" as a website metatag constitutes infringement of SNOWIZARD®. SnoWizard cannot meet its burden on these infringement claims simply by establishing that Parasol used "snow wizard" in its website. Parasol is entitled to judgment as a matter of law.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **3D-Party Defendant Parasol's Motion for Summary Judgment of the 3D-Party Claims in Case No. 10-791 (Rec. Doc. 205)** filed by third-party defendant Parasol Flavors, LLC is **GRANTED**. The third-party claims filed by SnoWizard are **DISMISSED**.

\* \* \* \* \* \* \* \*

---

Of course, similar reasoning does <u>not</u> apply in this case. Even though "snow wizard" differs from SNOWIZARD by a space and an extra W, snow wizard is not a term in common usage, it is not in the dictionary, and it is not a synonym for the Winter Warlock. Thus, unlike the MovieBuff situation, it may very well take more than a single space and extra letter to keep "snow wizard" from being confusingly similar to SNOWIZARD.