UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOUTHERN SNOW MANUFACTURING CO.          CIVIL ACTION

VERSUS                                   NO. 06-9170 c/w 09-
                                         3394, 10-791
                                         **[REF: ALL CASES]**

SNOW WIZARD HOLDINGS, INC., ET AL.       SECTION "A"(1)

<u>**ORDER AND REASONS**</u>

Before the Court are a **Motion for Partial Summary Judgment on Most Main Claims (Rec. Doc. 228)** filed by plaintiffs Southern Snow Manufacturing Co., Inc., Parasol Flavors, LLC, and Simeon, Inc., and a **Motion for Partial Summary Judgment on False Advertising Claims (Rec. Doc. 281)** filed by defendant SnoWizard, Inc.  The motions are before the Court on the briefs without oral argument.[1]  For the reasons that follow, Plaintiffs' motion is DENIED and Defendant's motion is GRANTED.

**I.    <u>BACKGROUND</u>**

Plaintiff Southern Snow and defendant SnoWizard are both engaged in the business of manufacturing ice-shaving machines and flavoring concentrates, and selling these products to vendors of "snowball" flavored ice confections.  SnoWizard successfully registered a federal trademark for the snowball flavor ORCHID

---

[1] Oral argument has been requested by both parties but the Court is not persuaded that it would be helpful.

1

CREAM VANILLA.  SnoWizard then sent Southern Snow a cease and desist letter asserting that Southern Snow was infringing the trademark.  In response Southern Snow filed suit claiming that SnoWizard had obtained the trademark for ORCHID CREAM VANILLA by providing false information to the trademark registering authority.  Southern Snow also included unfair competition claims for flavors ORCHID CREAM VANILLA and WHITE CHOCOLATE & CHIPS, and the term SNOBALL.[2]  Southern Snow separately brought an administrative cancellation action against ORCHID CREAM VANILLA in the U.S. Patent and Trademark Office ("USPTO").  SnoWizard asserted counterclaims for ORCHID CREAM VANILLA and WHITE CHOCOLATE & CHIPS.  In January 2008, Civil Action 06-9170 was stayed pending action on ORCHID CREAM VANILLA by the USPTO Trademark Trial and Appeal Board ("TTAB").  In December 2009 the TTAB rendered its decision cancelling the registration for ORCHID CREAM VANILLA after finding the term to be merely descriptive.[3]

In 2009, plaintiff Parasol Flavors, LLC filed Civil Action 09-3394 after SnoWizard sent it a cease and desist letter.  This lawsuit involved trademarks pertaining to flavors SNOSWEET®, HURRICANE, PRALINE, KING CAKE, BUTTERED POPCORN, MUDSLIDE,

---

[2] SnoWizard has clarified that it makes no claim to this term.  (Oppo., Rec. Doc. 246 at 4 n.1).

[3] On March 23, 2011, the Court entered an order granting summary judgment in Plaintiffs' favor as to ORCHID CREAM VANILLA, in essence affirming the decision of the TTAB as to the mark's descriptive nature.  (Rec. Doc. 299).

GEORGIA PEACH, DILL PICKLE, CAKE BATTER, and BUTTERCREAM. SnoWizard filed counterclaims in that action and the parties filed cross motions for summary judgment.  Judge Lemmon was assigned the case at the time and she dismissed all of SnoWizard counterclaims as to HURRICANE, PRALINE, KING CAKE, BUTTERED POPCORN, MUDSLIDE, GEORGIA PEACH, DILL PICKLE, CAKE BATTER, and BUTTERCREAM, finding those terms to be generic and therefore unprotectable as trademarks.  SNOSWEET® was not part of the ruling.  (09-3394, Rec. Doc. 56).  Judge Lemmon later transferred Civil Action 09-3394 to this Section for consolidation with 06-9170.

In March 2010, Southern Snow and Simeon, Inc. filed Civil Action 10-791 against SnoWizard for infringement of SOUTHERN SNOW® and FLAVOR SNOW® and challenging the validity of SnoWizard's trademarks for CAJUN RED HOT, CHAI LATTEA, COOKIE DOUGH, MOUNTAIN MAPLE®, SNOFREE®, SNOSOUR®, SNOBALLS (design), SWISS ALMOND COCO, TIRAMISU, and ZEPHYR.  SnoWizard filed counterclaims in that action for cancellation of SOUTHERN SNOW® and FLAVOR SNOW® and for infringement of MOUNTAIN MAPLE®, CAJUN RED HOT, and GEORGIA PEACH.[4]

SnoWizard also filed counterclaims in each of the actions for attorney's fees for groundless, bad-faith, and harassing main

---

[4] The March 23, 2011, Order and Reasons also granted summary judgment in Plaintiffs' favor as to GEORGIA PEACH.  (Rec. Doc. 299 at 19).

claims.  Civil Action 10-791 was consolidated with 06-9170 and 09-3394.

Plaintiffs are seeking monetary and injunctive relief under the Lanham Act, as well as state law recovery pursuant to La. R.S. § 51:1405, et seq. (LUTPA)[5] and Louisiana Civil Code article 2315.

Via their instant motion for partial summary judgment, Plaintiffs seek injunctive relief (and orders cancelling any registrations)[6] with respect to 22 of SnoWizard's trademarks: ORCHID CREAM VANILLA, WHITE CHOCOLATE & CHIPS, ~~SNOBALL~~, SNOSWEET®, HURRICANE, KING CAKE, BUTTERED POPCORN, GEORGIA PEACH, PRALINE, MUDSLIDE, CAKE BATTER, DILL PICKLE, BUTTERCREAM, CAJUN RED HOT, CHAI LATTEA, COOKIE DOUGH, MOUNTAIN MAPLE®, SNOFREE®, SNOSOUR®, SNOBALLS (design), SWISS ALMOND COCO, TIRAMISU, and ZEPHYR.  Plaintiffs urge the Court to find that these marks are generic and therefore incapable of serving as trademarks.  With respect to SNOSWEET®, SNOFREE®, and ZEPHYR, Plaintiffs urge invalidity based on the assertion that SnoWizard has never made any qualifying sales with these names.

---

[5] Louisiana Unfair Trade Practices Act

[6] Plaintiffs do not seek determination of any question of fraud or willfulness, nor any question of quantum of damages or attorney's fees, which are all reserved for trial or settlement. Plaintiffs' motion does not seek relief with respect to the infringement claims asserted in connection with SOUTHERN SNOW®, FLAVOR SNOW®, or SNOW SWEET.  (Rec. Doc. 228-2, at 8).

4

Plaintiffs' validity challenge to 22 of SnoWizard's claimed trademarks is really only a first stop on the road to the injunctive and other equitable relief that Plaintiffs ultimately seek via this motion.[7]  The unfair competition statutory scheme of the Lanham Act allows for injunctive relief in cases of "false advertising" where the defendant has made false statements of fact.  The "false statement of fact" that Plaintiffs rely upon are the trademark assertions that SnoWizard has made as to various product names by appending a TM or ® symbol.  According to Plaintiffs, if the statement, i.e., the assertion of a trademark, is *literally* false, then competitive injury is assumed and injunctive and equitable relief are available even without establishing a specific amount of actual loss.[8]  In essence, once

---

[7] In fact, seven of the flavors at issue had already been found by the Court to be unprotectable *before* Plaintiffs filed the instant motion:  HURRICANE, KING CAKE, BUTTERED POPCORN, GEORGIA PEACH, PRALINE, DILL PICKLE, & BUTTERCREAM.  (09-3394, Rec. Doc. 56).  After the motion was filed, the Court found that SnoWizard was not entitled to trademark ORCHID CREAM VANILLA. (06-9170, Rec. Doc. 299).

[8] Although some of Plaintiffs' claims are based on infringement, Plaintiffs remind the Court that this has always been an unfair competition case.  Plaintiffs contend that it is unfair for SnoWizard to claim trademarks in its advertisements to customers in names that are commonplace in the industry when ordering supplies.  Plaintiffs assert that customers are not familiar with trademark law and that their purchasing decisions are likely to be skewed in SnoWizard's favor when they see all of the TMs and circle-Rs on SnoWizard's products--TMs and circle-R's that are allegedly based on false claims of exclusivity and trademark.  Plaintiffs point out that customers who buy "exclusive" flavors from SnoWizard might very well buy their other flavors and supplies from SnoWizard for the benefit of

the Court declares each of the foregoing marks to be generic (or otherwise unprotectable), and therefore incapable as a matter of law of serving as a trademark, then Plaintiffs will have established that the claims of trademark brandished to customers are statements of fact that are literally false as to those marks.

SnoWizard, both in its opposition to Plaintiffs' motion and in its memorandum in support its own motion for partial summary judgment, challenges Plaintiffs' unfair competition/false advertising claims on several fronts.  First, SnoWizard argues that neither the Lanham Act nor the LUTPA creates a cause of action for the act of improperly asserting trademark rights through the use of the TM symbol because use of the TM symbol does not create a false representation.  Second, SnoWizard has taken great pains to address each of the 22 trademark names individually to persuade the Court that they are not generic in nature.  Finally, SnoWizard contends that Plaintiffs cannot show that any alleged misrepresentation actually caused customers to be misled.

Trial in this matter is set for Monday, July 18, 2011.

---

shipping discounts and for the convenience of one-stop shopping. The "customers" at issue in this case are the owners of snowball stands and wholesalers who purchase flavoring concentrates and other supplies from the parties.  Plaintiffs and SnoWizard do not sell flavoring concentrates and snowball supplies directly to the public.

II.  <u>DISCUSSION</u>

  1.  *Lanham Act--Unfair Competition--False Advertising*

  The unfair competition claims at issue in the parties'
motions are claims of false advertising and they have their
genesis in Section 43(a) of the Lanham Act.[9]  Section 43(a) of
the Act provides in relevant part:

> Any person who, on or in connection with any goods or
> services, or any container for goods, uses in commerce any
> word, term, name, symbol, or device, or any combination
> thereof, or any false designation of origin, false or
> misleading description of fact, or false or misleading
> representation of fact, which--
>
> > in commercial advertising or promotion,
> > misrepresents the nature, characteristics,
> > qualities, or geographic origin of his or her
> > or another person's goods, services, or
> > commercial activities,
>
> shall be liable in a civil action by any person who
> believes that he or she is or is likely to be damaged by
> such act.

15 U.S.C.A. § 1125(a)(1)(B) (West 2009).  This section provides

protection against a "myriad of deceptive commercial practices,"

including false advertising or promotion.  <u>Seven-Up Co. v. Coca-</u>

<u>Cola Co.</u>, 86 F.3d 1379, 1383 (5th Cir. 1996) (<u>quoting</u> <u>Resource</u>

<u>Dev. v. Statue of Liberty-Ellis Island Found.</u>, 926 F.2d 134, 139

---

  [9] Plaintiffs also rely upon the LUTPA as a statutory basis
for recovery.  Neither party has specifically briefed the claims
in light of the LUTPA because throughout this litigation
Plaintiffs have always maintained that unfair competition claims
under the LUTPA are governed by the same standards applied in the
Lanham Act.  (<u>See, e.g.</u>, Rec. Doc. 228-2, at 10).

7

(2nd Cir. 1991)).  Section 43(a) of the Lanham Act has been characterized as a remedial statute that should be broadly construed.  Id. (citing Gordon & Breach Science Pub. v. Am. Inst. of Physics, 859 F. Supp. 1521, 1532 (S.D.N.Y. 1994)).  While the congressional purpose for the Lanham Act is to provide remedies for unfair and misleading use of trademarks, it is now clear that § 43(a) extends beyond mere trademark protection.  Schlotzsky's, Ltd. v. Sterling Purch. & Nat'l Distrib. Co., 520 F.3d 393, 399 (5th Cir. 2008) (citing Proctor & Gamble Co. v. Amway Corp., 242 F.3d 539, 563 (5th Cir. 2001); Dastar Corp. v. Twentieth Cent. Fox Film Corp., 539 U.S. 23 (2003)).

However, Section 43(a) "does not have boundless application as a remedy for unfair trade practices." Dastar, 539 U.S. at 29 (quoting Alfred Dunhill, Ltd. v. Inter. Cigar Co., 499 F.2d 232, 237 (2nd Cir. 1974)).  "[B]ecause of its inherently limited wording, Section 43(a) can never be a federal 'codification' of the overall law of 'unfair competition,'" but can only apply to certain unfair trade practices prohibited by its text.  Id. (quoting 4 J. McCarthy, Trademarks & Unfair Competition § 27:7, p. 27-14 (4th ed. 2002)).

The plaintiff must establish five elements to make out a prima facie case of false advertising under the Lanham Act:

(1)  A false or misleading statement of fact about a product;

(2)  Such statement either deceived or had the capacity

to deceive a substantial segment of potential
consumers;

(3)   The deception was material, in that it is likely to
influence the customer's purchasing decision;

(4)   The product is in interstate commerce; and

(5)   The plaintiff has been or is likely to be injured
as a result of the statement at issue.[10]

IQ Prods. Co. v. Pennzoil Prods. Co., 305 F.3d 368, 375 (5th Cir.
2002) (citing Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227
F.3d 489, 495 (5th Cir. 2000)).  The failure to prove the
existence of any element of the *prima facie* case is fatal to the
plaintiff's claim.  Pizza Hut, 227 F.3d at 495 (citing Taquino v.
Teledyne Monarch Rubber, 893 F.2d 1488, 1500 (5th Cir. 1990)).

In order to obtain monetary damages or equitable relief in
the form of an injunction for a false advertising claim, a
plaintiff must demonstrate that the commercial advertisement or
promotion is either literally false, or if not literally false,
that it is likely to mislead and confuse customers.  Pizza Hut,
227 F.3d at 495 (quoting Seven-Up, 86 F.3d at 1390).  If the
statement at issue is shown to be literally false, then the court
must assume that it actually misled customers, without requiring

---

[10] "Injury" for purposes of the Lanham Act is not synonymous
with proof of actual damages.  Logan v. Burgers Ozark Country
Cured Hams, 263 F.3d 447, 462 (5th Cir. 2001).  Even where a
plaintiff fails to prove actual damages he may very well
establish that he was in some way injured because of the false
advertising.  Id. at 462-63.  At the least, the likelihood of
injury must be proven even if only injunctive relief is at issue.
Schlotzsky's, 520 F.3d at 401.

any evidence of such deception from the plaintiff.  IQ Prods.,
305 F.3d at 375 (citing Pizza Hut, 227 F.3d at 495).  But if, on
the other hand, the statement is shown to be only misleading or
ambiguous, then the plaintiff must demonstrate actual deception
through direct evidence of consumer reaction to the advertising,
referred to as materiality, or evidence of consumer surveys or
consumer tests.  Id.  In such a case, actual deception and
materiality cannot be presumed.  Thus, the plaintiff's burden of
proof is significantly impacted by whether the statements at
issue are literally false or simply misleading.[11]

     The type of evidence needed to prove materiality varies
depending on what type of recovery the plaintiff seeks.
Plaintiffs looking to recover monetary damages for false or
misleading advertising that is not literally false must prove
actual deception.  Pizza Hut, 227 F.3d at 497 (citing Balance
Dynamics Corp. v. Schmitt Ind., 204 F.3d 683, 690 (6th Cir.

_____

     [11] Plaintiffs state, without citation to authority, that if
a statement is shown to be literally false then competitive
injury is assumed and that injunctive relief is then available.
(Rec. Doc. 228-2, at 10).  The Court does not agree.  It is clear
that certain elements of the prima facie case will be assumed
upon proof of a false statement but injury is not one of them.
Injury, or at the very least the tendency to be injured, must be
proven in any false advertising case including one involving
literally false statements.  See, e.g., Logan, 263 F.3d at 462-63
Moreover, as explained below, injunctive relief is not
necessarily available even where all of the elements of the case
are proven.  Injunctive relief is only available upon proof of
irreparable harm.  Id. at 465 (denying injunctive relief where
literally false statements were made but where plaintiff failed
to demonstrate irreparable harm).

2000)).  Plaintiffs hoping to prove actual deception must produce
evidence of actual consumer reaction to the challenged
advertising or surveys showing that a substantial number of
consumers were actually misled by the advertisement.  Id. (citing
PPX Enters., Inc. v. Audiofidelity Enters., Inc., 818 F.2d 266,
271 (2nd Cir. 1987)).  Plaintiffs seeking injunctive relief must
prove that the defendant's representations "have a tendency to
deceive consumers."  Pizza Hut, 227 F.2d at 497 (quoting Balance
Dynamics, 204 F.3d at 690).  Although this standard requires less
proof than actual deception, the plaintiff must still produce
evidence that the advertisement tends to deceive consumers.  Id.
(citing Coca-Cola co. v. Tropicana Prod., Inc., 690 F.2d 312, 317
(2nd Cir. 1982)).  To prove a tendency to deceive, the plaintiff
must show that at least some consumers were confused by the
advertisements.  Id. at 498 (citing Am. Council of Certified
Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery,
Inc., 185 F.3d 606, 614 (6th Cir. 1999) ("Although plaintiff need
not present consumer surveys or testimony demonstrating actual
deception, it must present evidence of some sort demonstrating
that consumers were misled.").

Furthermore, in the absence of a literally false statement,
the plaintiff may not rely on the judge or the jury to determine
"based solely upon his or her own intuitive reaction, whether the
advertisement is deceptive."  Pizza Hut, 227 F.3d at 497 (quoting

11

Johnson & Johnson v. Smithkline Beecham Corp., 960 F.2d 294, 297
(2nd Cir. 1992)).  The "common sense" belief of an expert will
likewise be insufficient.  IQ Prods., 305 F.3d at 376.

A threshold question essential to any claim under § 43(a) of
the Lanham Act is a determination of whether the challenged
statement is one of fact--actionable under § 43(a)--or one of
general opinion, which is not actionable under § 43(a).  Pizza
Hut, 227 F.3d at 496.  For instance, bald assertions of
superiority or general statements of opinion cannot form the
basis of Lanham Act liability.  Id. (citing Presido Enters., Inc.
v. Warner Bros. Distrib. Corp., 784 F.2d 674, 685 (5th Cir.
1986); Groden v. Random House, Inc., 61 F.3d 1045, 1051 (2nd Cir.
1995).  In order to be actionable, the statements at issue must
be a "specific and measurable claim, capable of being proved
false or of being reasonably interpreted as a statement of
objective fact."  Id. (quoting Coastal Abstract Serv., Inc. v.
First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999)).
"[A] statement of fact is one that (1) admits of being adjudged
true or false in a way that (2) admits of empirical
verification."  Pizza Hut, 227 F.3d at 496 (quoting Presidio, 784
F.2d at 679).  It is well-settled that puffery, i.e., exaggerated
advertising, blustering and boasting upon which no reasonable
buyer would rely, is a category of statement not actionable under
the Lanham Act.  Id.  Similarly, statements of opinion will

rarely be the basis for Lanham Act liability.  <u>Id.</u> at 496 n.6.

In order to obtain permanent injunctive relief pursuant to §
43(a) the plaintiff must show, in addition to the other elements
that make a prima facie case of false advertising, that he will
suffer irreparable harm if the injunction is not granted.  <u>Seven-
Up</u>, 86 F.3d at 390 (<u>citing</u> <u>McNeil-P.C.C., Inc. v. Bristol-Meyers
Squibb Co.</u>, 938 F.2d 1544, 1548-49 (2nd Cir. 1991)).  Of course,
in order to obtain preliminary injunctive relief, the plaintiff
must show 1) a substantial likelihood of success on the merits,
2) a substantial threat of irreparable injury if the injunction
is not issued, 3) that the threatened injury if the injunction is
denied outweighs any harm that will result if the injunction is
granted, and 4) that the grant of an injunction will not disserve
the public interest.  <u>Speaks v. Kruse</u>, 445 F.3d 396, 399-400 (5th
Cir. 2006).  Irreparable harm and irreparable injury are not
assumed but must be proven by the party seeking injunctive
relief.

Summary judgment is appropriate only if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any," when viewed in the light
most favorable to the non-movant, "show that there is no genuine
issue as to any material fact." <u>TIG Ins. Co. v. Sedgwick James</u>,
276 F.3d 754, 759 (5th Cir. 2002) (citing <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).  A dispute about a

material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

    Moreover, where Plaintiffs seek summary judgment on claims on which they bear the burden of proof at trial, the burden is understandably heavier because Plaintiffs must show the absence of a genuine issue of material fact as to each element of the claims for which they seek summary judgment.  Trautmann v. Cogema Mining, Inc., No. 5:04-117, 2006 WL 2716156, at *2 (S.D. Tex. Sept. 20, 2006).  Plaintiffs must support their motion with credible evidence that if uncontradicted would entitle them to a directed verdict at trial.  Id. (citing Irby v. Bittick, 44 F.3d

949, 953 (11th Cir. 1995); <u>Wasserman v. Bressman</u>, 327 F.3d 229,

238 (3rd Cir. 2003)).

### 2. *Analysis--Lanham Act--Unfair Competition*

The Court begins its analysis with the threshold question of
whether Plaintiffs state a claim for unfair competition under the
Lanham Act. SnoWizard has consistently maintained that neither
the Lanham Act nor the LUTPA creates a cause of action for the
act of improperly asserting trademark rights through the use of
the TM symbol, and that neither statutory scheme contains any
prohibition against claiming a trademark through the use of the
TM symbol. SnoWizard emphasizes that there is no caselaw to
support Plaintiffs' "overreaching theory." (Rec. Doc. 281-1, at
5).

The Court has always found the argument that Plaintiffs fail
to state a claim because neither § 43(a) nor the LUTPA contains
any express prohibition against claiming a trademark through the
use of the TM symbol unpersuasive because neither scheme purports
to enumerate the universe of potential unfair trade practices
that are actionable. While § 43(a) is more limited on its face
to certain classes of unfair trade practices, it remains that the
statute makes no attempt to enumerate the specific instances of
when a symbol may constitute a false or misleading representation
of fact about a characteristic of a product. Surely, it is for
this reason that the Fifth Circuit has expressly recognized the

broad construction to which the statute is entitled.  And the LUTPA contains even broader wording than § 43(a).[12]  Thus, either statutory scheme could *conceivably* encompass a claim that involves an unfair trade practice involving improper use of trademark symbols and the Court is persuaded that it would be legal error to broadly hold otherwise.  Plaintiffs' false advertising claims cannot be rejected based on the broad premise that improper use of trademark symbols can never form the basis for a Lanham Act/LUTPA unfair competition claim.

It is now clear, however, that Plaintiffs' unfair competition false advertising claims are grounded on a legal theory that tests much more than whether the Lanham Act allows for a cause of action for improper use of trademark symbols. Plaintiffs' theory even goes beyond whether the use of trademark symbols can constitute a misleading statement.  Plaintiffs' theory is that when a competitor like SnoWizard uses an ® or TM symbol in conjunction with a *generic* mark--which can never be the subject of a trademark--then a literally false statement has been made.  And when those marks with their impressive ®s and TMs

---

[12] The LUTPA broadly states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. Ann. § 51:1405(A) (West Supp. 2011).  What constitutes "unfair" or "deceptive" for purposes of the Act is not specifically defined, but is determined on a case by case basis.  831 Bartholomew Investments-A, LLC v. Margulis, 20 So. 3d 532, 538 (La. App. 4th Cir. 2009) (quoting Wyatt v. PO2, Inc., 651 So. 2d 359 (La. App. 2nd Cir. 1995)).

appear on something like a product list directed at customers
then false advertising--clearly a type of unfair competition--has
occurred.  Plaintiffs recognize that there are no reported
decisions specifically supporting their theory of false
advertising but they also point out that "[t]here is also *not* any
reported caselaw saying that asserting bogus trademarks is *not*
unfair competition." (Rec. Doc. 293, at 1).

### 3.   *Classification of Trademarks*

In order to determine whether placing an ® symbol or a TM
next to a generic term is actionable as a literally false
statement under § 43(a), it is important to understand how
trademarks are classified.[13]  Marks are normally classified in
"categories of generally increasing distinctiveness":  1)
generic, 2) descriptive, 3) suggestive, 4) arbitrary, or 5)
fanciful.  Xtreme Lashes, LLC v. Xtended Beauty, Inc., 576 F.3d
221, 227 (5th Cir. 2009) (quoting Two Pesos, Inc. v. Taco Cabana,
Inc., 505 U.S. 763, 768 (1992)).  The latter three categories of

---

[13] By way of background, a trademark is any word, name,
symbol, or device, or any combination thereof used by a person in
commerce to identify and distinguish his or her goods, including
a unique product, from those manufactured or sold by others and
to indicate the source of the goods, even if that source is
unknown.  15 U.S.C.A. § 1127 (West 2009).  Trademarks are
supposed to make it easier for the consuming public to identify
the source of particular products and they also serve to reward
investment in the marketplace and to promote competition.
Jonathan S. Digby, What's the Deference?: Should *Dickinson v.*
*Zurko* Apply in the Trademark Context?, 15 J. Intell. Prop. L. 173
(2007).

marks (suggestive, arbitrary, fanciful) are deemed to be
inherently distinctive and are entitled to trademark protection
because their intrinsic nature serves to identify a particular
source of a product.  Id.

A descriptive mark describes the qualities or
characteristics of a good or service.  Park 'N Fly, Inc. v.
Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985).  Marks which
are merely descriptive of a product are not inherently
distinctive because when used to describe a product they do not
inherently identify a particular source.  Two Pesos, 505 U.S. at
769.  But descriptive marks may acquire the distinctiveness which
will allow them to be protected.  Id.  A descriptive mark may
serve as a trademark if it "has become distinctive of its
applicant's goods in commerce."  Id. (quoting 15 U.S.C. §
1052(e), (f)).  This acquired distinctiveness is generally called
"secondary meaning."  Id. (citing Inwood Labs., Inc. v. Ives
Labs., Inc., 456 U.S. 844, 851 n.11 (1982)).  In order to
establish secondary meaning the party must show that the primary
significance of the mark in the minds of the consuming public is
not the product but the producer.

Generic marks stand in contrast to the inherently
distinctive categories of marks (suggestive, arbitrary, fanciful)
and to descriptive marks, which may acquire distinctiveness.  A
generic term is one that refers to the genus of which the

18

particular product is a species or to a common descriptive name.
Park 'N Fly, 469 U.S. at 195 (citing Abercrombie & Fitch Co. v.
Hunting World, Inc., 537 F.2d 4, 9 (2nd Cir. 1976)).  Generic
terms are not registerable nor protectable as trademarks and even
a registered trademark is subject to cancellation at any time if
it becomes generic.  Id. (citing 15 U.S.C. § 1064(3)).

The "genericness doctrine" also recognizes that trademark
law protects a phrase only if and to the extent it is necessary
to enable consumers to distinguish one producer's goods from
others and even then only if the grant of such a "monopoly" will
not substantially disadvantage competitors by preventing them
from describing the nature of their goods.  A.J. Canfield Co. v.
Honickman, 808 F.2d 291, 305 (3rd Cir. 1986) (citing Ideal Toy
Corp. v. Plawner Toy Mfg. Corp., 685 F.2d 78, 84 (3rd Cir.
1982)).  Thus, if a term is necessary to describe a product
characteristic that a competitor has a right to copy, a producer
may not effectively preempt competition by claiming that term as
its own.  Id.

In sum, an identifying mark is distinctive and capable of
being protected if it is *either* inherently distinctive or has
acquired distinctiveness through secondary meaning.  Two Pesos,
505 U.S. at 769 (citing Restatement (Third) of Unfair Competition
§ 13, pp. 37-38 & cmt. a).  Generic marks need not apply.

Considering how marks are typically categorized along the

19

distinctiveness continuum ranging from fanciful to generic, it becomes apparent why Plaintiffs' case for literal falsity is grounded on the marks at issue being generic as opposed to perhaps merely descriptive.  Merely descriptive marks can attain protected status if the proponent of the mark can present sufficient evidence of secondary meaning.  In other words, unlike generic marks, descriptive marks are not *ipso facto* inconsistent with trademark protection, it is just more difficult to obtain protection for a descriptive mark.  Thus, even where the USPTO or a court determines that a party has failed to establish secondary meaning for a descriptive mark, it would not be fair to say that his assertion of the trademark via the TM was a literally false statement.  The problem may be one simply of failed proof at the time that the claim is pressed.  Therefore, if a trademark symbol is ever to constitute a literally false statement grounded solely on the classification to which the mark belongs, it could only arise with respect to generic marks.

### 4.  *Plaintiffs' Theory of False Advertising*

Even though generic marks are never protectable as trademarks, it is quite another matter to conclude that a competitor's use of a trademark symbol with a generic mark constitutes a literally false statement of fact.  Food flavor names cannot be *ipso facto* generic in nature because the learned examining attorneys at the USPTO were willing to register several

of the flavors at issue in this case.  And while very few
published decisions address a competitor's claim to trademark
rights in a flavor, the few decisions that are available suggest
what intuition would suggest:  A likely problem with attaining
trademark status for a flavor name is the highly descriptive
nature of the mark.  See, e.g., In re Andes Candies, Inc., 478
F.2d 1264 (C.C.P.A. 1973) (denying registration for the candy
flavor "creme de menthe").  So ignoring the possibility that a
flavor name could be suggestive, arbitrary, or fanciful, it is
arguably more likely that a flavor name will fall into either the
category of descriptive or generic.

    The glaring problem with Plaintiffs' theory of the case is
that classifying marks into one of the five categories is really
somewhat of a subjective exercise, particularly at the
descriptive/generic end of the category continuum where flavor
names are often found.  Courts, commentators, and our own Fifth
Circuit have recognized the difficulties of distinguishing
between suggestive, descriptive, and generic marks."  Canfield,
808 F.2d at 296-97 (citations omitted); Vision Ctr. v. Opticks,
Inc., 596 F.2d 111, 115 n.11 (5th Cir. 1979) (citing Am. Heritage
Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 11 (5th Cir.
1974) ("Some courts see little difference between the generic and
the descriptive categories and tend to meld the two concepts into
one.").  In Canfield, the Third Circuit noted that one commentary

had even found the distinction between descriptive and generic
marks to be "artificial and unworkable." Canfield, 808 F.2d at
296-97 (quoting Folsom & Teply, Trademarked Generic Words, 89
Yale L.J. 1323, 1351 (1980)).  "Any given term's correct
classification is a factual issue." Xtreme Lashes, 576 F.3d at
227 (quoting Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1183
n.12 (5th Cir. 1980)).  It is hard to escape the conclusion that
in the lower end of the categorization continuum some marks could
be classified as either descriptive or generic depending upon who
does the classifying.  Classification is by no means an exact
science.

A perfect example of this phenomenon can be found in the
A.J. Canfield Co. situation demonstrated by A.J. Canfield Co. v.
Honickman, supra, which is a Third Circuit decision, and A.J.
Canfield Co. v. Vess Beverages, Inc., 796 F.2d 903 (7th Cir.
1986), out of the Seventh Circuit.  Both Canfield decisions
involved a soft drink manufacturer's ability to trademark the
flavor name "chocolate fudge" for its highly successful diet
soda.  The district court for the Northern District of Illinois
granted a preliminary junction in Canfield's favor precluding a
competitor from using the term for a competing diet soda.  A.J.
Canfield Co. v. Vess Beverages, Inc., 612 F. Supp. 1081 (N.D.
Ill. 1985).  The district court had concluded that "chocolate
soda" was merely descriptive of the flavor but that Canfield had

22

demonstrated that it could likely show secondary meaning so as to earn trademark protection.  The Seventh circuit affirmed that decision, and while the court noted that secondary meaning would be difficult to establish with such a highly descriptive flavor name, it was nevertheless willing to let Canfield try.  <u>Canfield</u>, 796 F.2d at 906-07.

Canfield had also filed suit in the Eastern District of Pennsylvania against another competitor and the district court in that case also found "chocolate fudge" to be descriptive.  <u>A.J. Canfield Co. v. Concord Beverage Co.</u>, 629 F. Supp. 200 (E.D. Pa. 1985).  The district court refused, however, to issue a preliminary injunction and Canfield appealed.  The Third Circuit affirmed but it did so based on its conclusion that the term was generic and therefore could never serve as a trademark regardless of any potential evidence as to secondary meaning.  <u>Canfield</u>, 808 F.2d at 307-08.

The <u>Canfield</u> decisions demonstrate the sometimes inexact and uncertain nature of classification with respect to marks.  Five learned federal judges (three appellate judges on the Seventh Circuit and two district judges) considered the term "chocolate fudge" and found that it should be classified as descriptive. Three other learned federal judges (appellate judges on the Third Circuit) considered the same term and found it to be generic. Thus, it would seem that the term "chocolate fudge" is

23

potentially trademarkable in one geographic region (if secondary meaning is shown) and never subject to trademark protection in another geographic region.  But genericness, unlike secondary meaning, does not differ based on the geographic region at issue or at least it is not intended to.  For Plaintiffs' theory to succeed, a mark would either have to be generic or not but the Canfield decisions demonstrate the fallacy of this otherwise axiomatic statement.

Likewise, the fact that the USPTO has denied registration of a flavor name as generic need not deter a party from seeking trademark protection.  The USPTO's refusal to register a mark is subject to reversal by a federal court.  See 15 U.S.C.A. § 1071. Further, marks that were once considered descriptive and subject to protection can with time become generic and lose their protected status.  See 15 U.S.C. § 1064(3).  Further, a mark might be generic in one context but perhaps descriptive in another.  See In re Seats, Inc., 757 F.2d 274, 277-78 (Fed. Cir. 1985) ("The term 'seats' may be generic in relation to chairs or couches or bleachers.  It is clearly not generic to reservation services.").  Clearly, genericness is not an intrinsic, immutable characteristic of a mark.

All of the foregoing points serve to demonstrate the difficulty in imposing liability on a party who uses a trademark symbol with a generic term.  Ascertaining whether a mark is

24

generic or descriptive is not the same as ascertaining whether a
word is a noun or a verb--there is no dictionary of marks that
gives the definitive answer because there is no definitive
answer.  So any determination as to genericness will necessarily
come after the fact, meaning after a party has been the subject
of legal action challenging his use of the TM symbol, and after
he has perhaps exposed himself to civil liability under the
Lanham Act for unfair competition.  The function and purpose of
the TM symbol in commerce, which is explained in greater detail
below, are not consistent with a punitive legal scheme that
chills competitors from using the TM symbol to claim trademark
rights or forces risk averse and well-funded competitors to flood
the courts with declaratory judgment actions prior to using the
TM symbol with hopes of avoiding potential civil liability should
the mark turn out to be generic.  Of course, the <u>Canfield</u>
decisions demonstrate why a competitor could not even rely upon a
favorable court ruling as to non-genericness when hoping to avoid
potential liability for the cause of action that Plaintiffs urge
in this case.  Even a federal appellate court cannot bind courts
located in another circuit.

Simply, depending on how descriptive the mark is, reasonable
minds could differ as to whether a term is generic.  Whether a
cause of action for false advertising grounded on a literally
false statement exists could depend on how the specific judge

25

presiding views the mark. For all of the foregoing reasons, the Court is unpersuaded that a party who has used a trademark symbol with a term later found to be generic has made a literally false statement.

### 5. Plaintiffs' Theory and "Clearly" Generic Marks

That said, the Court recognizes that some marks are so incredibly common and descriptive that it would be intellectually dishonest to believe that its categorization as generic *vel non* could ever be a close call. And it would seem that no party would ever be justified in believing that he could claim that mark as his own to the exclusion of others. Flavors like peppermint and chocolate are perfect examples, and probably no court would indulge a party's attempt to present evidence of secondary meaning in the hope of commandeering these flavors for itself. See Andes, 478 F.2d at 1266 ("Clearly, 'peppermint' or 'chocolate' would be incapable of designating origin of candy and would therefore not be registerable."). And in this case, Plaintiffs surely believe that SnoWizard's claims of trademark to flavors such as praline and dill pickle fit squarely into this category. So if a party decides to use a TM symbol with an unarguably generic flavor term like "vanilla," does the conclusion change--in other words is the phrase "Vanilla™" a literally false statement?

In order to determine if "Vanilla™" is actionable as a

26

literally false statement, it is necessary to ascertain exactly
what information or statement can fairly be attributed to placing
a ® or TM next to any product name.  With respect to the ® symbol
the answer is clear.  The owner of a trademark registered in the
USPTO may give notice that his mark is registered by displaying
"the letter R enclosed within a circle, thus ®."  15 U.S.C.A. §
1111 (West 2009).  Improper use of a registration notice in
connection with an unregistered mark may be grounds for denying
the registration of an otherwise registerable mark.  Copeland's
Enters., Inc. v. CNV, Inc., 945 F.2d 1563, 1566 (Fed. Cir. 1991)
(citing Fed. Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098,
1101 (C.C.P.A. 1976)).  Thus, use of the ® symbol conveys to the
customer and to other competitors that the trademark is in fact
registered with the USPTO.

With respect to the TM symbol the statement made is not
statutorily defined as is the case with the ® symbol.  The Court
has found no specific statutory authority that either authorizes
the use of the TM symbol, limits its use, or states definitively
what it does or does not convey to the public.  But the USPTO
documentation called Basic Facts About Trademarks helps to answer
the question.  In response to the question, "[w]hen can I use the
trademark symbols TM, SM, and ®?" the document states as follows:

> If you claim rights to use a mark, you may use the "TM"
> (trademark) . . . designation to alert the public to your
> claim of ownership of the mark, regardless of whether you
> have filed an application with the [USPTO].  However, you

27

> may only use the federal registration symbol "®" after
> the UTPSO actually *registers a mark,* and **not** while an
> application is pending.

(Rec. Doc. 239-12, at 2) (emphasis in original).  SnoWizard's

expert, Professor Stacey L. Dogan, explains that businesses

commonly use the TM symbol to put the public on notice that they

have adopted a term as a trademark, with the hope that the mark

will gain traction in the minds of the relevant public.  (Dogan

rpt. at 6, Rec. Doc. 281-7).  Thus, the statement or message that

a party conveys by putting the TM symbol next to a product name

is that he *claims* trademark rights to the term.  Whether a party

actually has a valid and enforceable trademark in the term is a

wholly different question and one that a court will likely

determine at some juncture.

Given that use of the ® symbol makes an affirmative

statement that the USPTO has registered the symbol, it is

plausible that a literally false statement is being made when a

party appends the ® symbol to a mark that is *not* federally

registered.  Appending the ® statement to a mark makes a

statement that admits of being adjudged true or false in a way

that "admits of empirical verification." <u>Pizza Hut</u>, 227 F.3d at

496.  So unauthorized use of the ® could perhaps form the basis

for making a literally false statement.[14]

_____

[14] Plaintiffs' expert notes in his report that the Copyright
and Patent Acts both provide penalties for a party who falsely
claims that a work or product is protected by a copyright or

But Plaintiffs' claims for improper use of the ® symbol are not based on SnoWizard having appended the ® symbol to unregistered marks.  As the Court appreciates the case, SnoWizard only appended the ® symbol to those marks for which it had in fact obtained registration through the USPTO.  Plaintiffs' assertion that a statement such as ORCHID CREAM VANILLA® is literally false is grounded on the allegation that SnoWizard was only able to obtain the registration via fraudulent assertions made to the USPTO during the application process.  15 U.S.C. § 1120, of which Plaintiffs have availed themselves in this case, is the remedy that Congress devised for malevolent competitors who obtain registration via falsity.[15]  But subsequent loss of

---

patent.  (Lunney rpt. at 6, Rec. Doc. 281-5).  Of course, a false claim that a work is copyrighted or patented, like a false claim that a mark is federally registered, is a statement that admits of empirical verification.  A work, invention, or mark is either federally registered or it is not, and the owner's rights to use the relevant symbols are dictated by statute based on that status.  The same reasoning does not apply where a TM is involved because TMs do not denote the same unequivocal information that a symbol like the ® does.

[15] Section 1120, Civil Liability for False or Fraudulent Registration, states:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C.A. § 1120 (West 2009).

registration on § 1120 grounds, does not operate to retroactively
turn the use of the ® symbol into a literally false statement.
In other words, ORCHID CREAM VANILLA® is not a literally false
statement because the term was in fact federally registered.[16]
And for a flavor like MOUNTAIN MAPLE® where Plaintiffs' chief
complaint seems to be that the mark is simply generic and should
not have been registered in the first place, it is even clearer
why the statement MOUNTAIN MAPLE® is not a literally false
statement, regardless of whether the registration ultimately
withstands challenge.  Once federal registration is attained, the
right to display the ® is statutorily granted via 15 U.S.C. §
1111.

In contrast, Vanilla™ does not make a statement that admits
of being adjudged true or false in a way that "admits of
empirical verification."  Vanilla™ makes the statement that the
party is *claiming* rights to the flavor name as a trademark, as
preposterous as that assertion might be.  But the TM symbol does
not mean that the party has trademark rights in the name or can
ensure that the mark is capable of serving as a trademark or that

---

[16] At this point the Court does not know if the USPTO
cancelled ORCHID CREAM VANILLA's federal registration immediately
after the TTAB issued its opinion or whether the USPTO's policy
is to wait until after the owner has exhausted its judicial
appeal remedies.  Given that the TTAB does not have the final
word as to cancellations, the Court assumes that the USPTO would
not strip a party of its federal registration status so long as
the party is actively challenging the TTAB's decision thereby
making it subject to reversal.

the party could meet its burden of proof as to secondary meaning if a court were so indulgent so as to allow a party to try. Vanilla™ might be described as an oxymoron but it is not a literally false statement.[17]

Plaintiffs argue that the customers at issue in this case-- owners of snowball stands--are not familiar with trademark law and are therefore likely to overvalue the assertions of intellectual property rights.  In other words, snowball stand owners are not likely to appreciate the nuances of trademark law that the Court has explained above and therefore will not understand that a trademarking symbol like the TM may be nearly meaningless when applied to certain flavor names or that the status granted by ® is subject to cancellation.

---

[17] In this vein, the Court is not even certain that a party's continued assertion of the TM symbol even after rejection at the USPTO or rejection by a court is a literally false statement.  For instance, Plaintiffs complain that SnoWizard continues to use the TM symbol on its website with the very flavors that Judge Lemmon has previously found to be generic and therefore unprotectable.  While the Court would suggest that SnoWizard's chances of prevailing at the Fifth Circuit are slim, the chance remains that the Fifth Circuit may very well believe that the terms are descriptive in nature and that SnoWizard should at the least be given an opportunity to produce evidence of secondary meaning.  The more likely outcome will be that secondary meaning in the snowball world aside, the terms are far too commonplace to allow any one competitor to monopolize those terms to the exclusion of the other participants in the marketplace.  See Canfield, 808 F.2d 291, 305.  In the interim, SnoWizard's continued use of the TM symbol suggests that it disagrees with Judge Lemmon's ruling and in the absence of injunction to the contrary, is persisting in claiming rights to the marks.

This argument is of no moment when determining if the statements at issue are literally false. A statement is either literally false or it is not. The determination as to literal falsity cannot depend on who hears the statement and the meaning that the unsophisticated listener might attach. The intended audience may be relevant to determining the tendency of a statement to deceive but it is not relevant to determining whether a statement is in fact literally false.

For all of the foregoing reasons, the Court finds that Plaintiffs have no claim for unfair competition under the Lanham Act or LUTPA insofar as they rely on the legal assertion that use of trademarking symbols with a generic term constitutes a literally false statement.

### 6.   Analysis--Lanham Act--Misleading Statement

Because the Court has left open the possibility that use of trademark symbols in some instances could constitute a misleading or ambiguously deceiving statement for purposes of the Lanham Act, Plaintiffs only avenue for relief is by proving all five elements of the prima facie case for false advertising under the Lanham Act, including materiality and the tendency to deceive--nothing is presumed.

As explained in Part 1 <u>supra</u>, Plaintiffs must produce evidence that the advertisements they challenge tend to deceive consumers. Even under the lesser burden of demonstrating a

tendency to deceive, Plaintiffs must show that at least some consumers were confused by the trademark symbols and although consumer surveys or testimony demonstrating actual deception are not required, evidence of some sort demonstrating that consumers were misled is necessary.  Plaintiffs cannot simply rely on legal argument that appeals to the fact finder's intuition.

Plaintiffs have no evidence of any kind that demonstrates a tendency to deceive, which is necessary for the non-monetary relief that they seek in this motion, much less actual deception, which is necessary for any monetary relief that they had hoped to obtain at trial.  Plaintiffs have made a strategic business decision to proceed without customer input via surveys, etc., in order to avoid alienating their customers or discomfiting them by serving subpoenaes and other litigation-related materials.  (Rec. Doc. 293, at 3-4).  Thus, Plaintiffs have no evidence of materiality, i.e., how the presence of those TMs are likely to influence the customers' purchasing decision, or of actual deception, which is necessary for monetary relief, or of the tendency to deceive, which is necessary for injunctive relief. The law in this circuit is very clear as to how materiality and deception must be proven.  See, e.g., IQ Prods., 305 F.3d at 376. Even expert evidence will be insufficient where it lacks reliable market survey analysis and instead relies on "common sense."  Id.

Plaintiffs' contention that the customers' lack of

33

familiarity with trademark law causes them to give inordinate weight to the TMs is wholly a matter of speculation.  Plaintiffs cannot demonstrate what significance, if any, the parties' customer base attaches to various trademarking symbols.  Without an understanding of the materiality of the trademarking symbols to the customer base, it is impossible to determine whether the statements made by such symbols have a tendency to deceive, much less that anyone was actually deceived.  While Plaintiffs' customers may not know enough about trademark law to simply ignore the TMs when making purchasing decisions, they could just as easily know so little about trademark law so as to assume that the TM means "Totally Magnificent," as opposed to having any relation to a trademark.  The lack of sophistication argument cuts both ways but as the proponent of the theory it is Plaintiffs' burden to prove which way it cuts.[18]

Consequently, under the facts and circumstances of the case and the evidence offered in support of and in opposition to the parties' motions, Plaintiffs' false advertising claims cannot survive summary judgment.  SnoWizard's motion for summary judgment is granted as to Plaintiffs' false advertising claims.

---

[18] Plaintiffs' expert explains in his report the legitimate value that trademarks have to a competitor: guarantees of product quality, signals of innovativeness and exclusivity.  (Lunney rpt. at 5-6, Rec. Doc. 281-5).  But without evidence of materiality, Plaintiffs cannot demonstrate that the relevant customer base attaches this value to the trademarking symbols during the purchasing decision.

7.   *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs' motion for summary judgment is denied in its entirety because Plaintiffs have not demonstrated that they are entitled to the injunctive relief that they seek.  As part of their motion Plaintiffs hoped to have the Court declare most of the marks at issue in their motion invalid as being generic.  The Court agrees with SnoWizard's contention that the marks cannot be treated in globo as Plaintiffs have attempted to do.  For instance, MOUNTAIN MAPLE® is federally registered, which entitles the mark to a strong presumption of validity.  The Court is not persuaded that this mark is generic on its face.  Another example is CAJUN RED HOT, which while not federally registered, is likewise not generic on its face.  TIRAMISU, on the other hand, would surely be generic under the reasoning applied by Judge Lemmon when she previously found several of the marks in this case to be generic.

Plaintiffs' have challenged SNOSWEET,® SNOFREE,® and ZEPHYR on the grounds that SnoWizard has not used these marks in commerce.  Plaintiffs are not entitled to judgement as a matter of law as to these marks, particularly ZEPHYR which is *not* federally registered.  Based on the explanation of the TM symbol contained in this opinion, the Court can see no basis to apply the use in commerce requirements that apply to federally-registered trademarks to ZEPHYR.

35

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment on Most Main Claims (Rec. Doc. 228)** filed by plaintiffs Southern Snow Manufacturing Co., Inc., Parasol Flavors, LLC, and Simeon, Inc. is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment on False Advertising Claims (Rec. Doc. 281)** filed by defendant SnoWizard, Inc. is **GRANTED** as explained above.

April 15, 2011

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE