**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SOUTHERN SNOW MANUFACTURING CO., INC.**     **CIVIL ACTION**

**VERSUS**                                                        **NO.   06-9170**
                                                                           **09-3394**
                                                                           **10-0791**
                                                                           **11-1499**

**SNOWIZARD HOLDINGS, INC., et. al.**                **SECTION: "G" (1)**

**ORDER AND REASONS**[1]

    Before the Court is SnoWizard, Inc.'s and Ronald R. Sciortino's (collectively, the "Defendants") Motion to Dismiss Alleged RICO Claims Under Rule 12(b)(6) (Ref: 11-1499).[2] Therein, Defendants request that this court dismiss with prejudice Counts 1 through 24 of the Complaint[3] and Counts 1 through 13 of the Amended Complaint,[4] in Civil Action No. 11-1499. Defendants argue that even assuming all allegations in the plaintiffs' Complaint and Amended Complaint are true, they fail to assert the predicate criminal acts required to establish a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"),[5] 18 U.S.C. § 1961 *et seq.*  Having considered the motion, the response, the reply, the record, and the applicable law, the Court will, for the following reasons, grant Defendants' Motion to Dismiss Alleged RICO Claims Under Rule 12(b)(6).

---

[1] These written reasons relate to this Court's Order issued on September 27, 2012.  *See* Rec. Doc. 561.

[2] Rec. Doc. 415.

[3] Civ. Action No. 11-1499, Rec. Doc. 1.

[4] Rec. Doc. 412.

[5] 18 U.S.C. § 1961, *et seq.*

# I. Background

## A. Procedural Background

Civil Action No. 06-9170 began in 2006, when Plaintiff Southern Snow Manufacturing Co., Inc. filed a Petition[6] and a Supplementing and Amending Petition[7] in the Civil District Court for the Parish of Jefferson, State of Louisiana, against SnoWizard Holdings, Inc., SnoWizard Inc., SnoWizard Extracts, Inc., and SnoWizard Supplies, Inc. (collectively, "SnoWizard") for violations of Louisiana state law and U.S. trademark law.  On October 27, 2006, SnoWizard filed a Notice of Removal[8] in the Eastern District of Louisiana invoking this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), which was allotted to Judge Jay C. Zainey, Section "A."   On May 13, 2012, Judge Zainey consolidated Civil Action No. 06-9170 with Civil Actions Nos. 09-3394 and 10-0791.[9]

On June 24, 2011, Plaintiffs Claude Black and Donna Black d/b/a Plum Street Snowballs; Theodore Eisenmann; Raggs Supply, LP d/b/a Raggs Sno-Cone Supplies; Special T Ice Co., Inc.; Parasol Flavors, LLC; Simeon, Inc.; Southern Snow Mfg. Co., Inc.; and Snow Ingredients, Inc. filed a Complaint[10] against Defendants in Civil Action No. 11-1499.  Although the case was initially allotted to Judge Martin L.C. Feldman, Section "F," Civil Action No. 11-1499 was subsequently transferred to Judge Zainey[11] and consolidated with the consolidated Civil Action

---

[6] Rec. Doc. 1-1 at pp. 1-4.

[7] *Id.* at pp. 5-11.

[8] Rec. Doc. 1.

[9] Rec. Doc. 122.  Civil Action No. 11-0880 was also consolidated with Civil Action No. 06-9170, but, on September 27, 2012, No. 11-0880 was removed from consolidated matter No. 06-9170.  Rec. Doc. 563.

[10] Civ. Action No. 11-1499, Rec. Doc. 1.

[11] Civ. Action. No. 11-1499, Rec. Doc. 6.

No. 06-9170.[12]   The Amended Complaint in 11-1499[13] ("Amended Complaint") was subsequently filed in this matter on August 27, 2011 by the above-named plaintiffs together with new plaintiff Van Howenstine d/b/a Van's Snowballs (collectively, "Plaintiffs").   Defendants filed their Motion to Dismiss Alleged RICO Claims Under Rule 12(b)(6) (Ref:11-1499) on August 30, 2011.[14]   On October 1, 2011, Plaintiffs filed their Opposition to Defendant's Motion to Dismiss Under Rule 12(b)(6).[15]   After receiving leave of Court, Defendants filed a reply in support of their motion.[16]   On October 7, 2011, the consolidated matter, encompassing Civil Actions Nos. 06-9170, 09-3394, 10-0791, and 11-1499, was transferred to Section "G" of this Court while the motion to dismiss was still pending.[17]

### B. Factual Background

"Snowballs" or "snoballs" are shaved ice confections flavored and colored with "flavoring syrups" made from "flavor concentrate" mixed with simple syrup.[18]   In this case, all parties are engaged in the sale, distribution, or manufacture of snowballs.  SnoWizard, owned by Defendant Ronald R. Sciortino ("Sciortino"), is a manufacturer and purveyor of snowball flavor concentrates and ice-shaving machines that it sells at wholesale, at retail, and as private

---

[12] Rec. Doc. 383.

[13] Rec. Doc. 412.

[14] Rec. Doc. 415.

[15] Rec. Doc. 433.

[16] Rec. Doc. 446.

[17] Rec. Doc. 439.

[18] Rec. Doc. 412 at p. 10.

labelings.[19] Plaintiff Plum Street Snoballs ("Plum Street") is a vendor of snowballs at retail to the general public and a former customer of SnoWizard.[20]   Plaintiffs Southern Snow Manufacturing, Co., Inc. and Snow Ingredients, Inc. (collectively, "Southern Snow") are commonly owned manufacturers and purveyors of ice-shaving machines and snowball flavor concentrates.[21]   Plaintiff Theodore Eisenmann is a former owner of Eisenmann Products, a manufacturer of flavor concentrates and ice-shaving machines under the trademark FLAVOR SNOW.   Eisenmann Products' FLAVOR SNOW business was sold in 2006 to the owner of Southern Snow.[22]   Plaintiff Parasol Flavors, LLC ("Parasol") is a manufacturer of snowball flavor concentrates.[23]   Plaintiff Simeon, Inc. is related to Southern Snow through common ownership, and is a company owning rights, recipes, and designs for snowball-related products.[24] Plaintiff Raggs Supply, LP ("Raggs") is a distributor of snowball flavor concentrates and ice-shaving machines and non-exclusively distributed SnoWizard flavor concentrates between 1991 and 2010.[25]   Raggs continues to distribute Southern Snow and Parasol products.   Plaintiff Special T Ice Co., Inc. ("Special T") is also a distributor of snowball flavor concentrates and ice-shaving machines.[26]

---

[19] Rec. Doc. 1 at p. 7.

[20] *Id.*

[21] *Id.* at p. 8.

[22] *Id.* at p. 8.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

In this litigation the parties bitterly dispute the scope and existence of patents on the ice-shaving machine and its parts.  According to Plaintiffs, SnoWizard filed a patent application for the entirety of the ice-shaving machine in 1942, which was denied; however, the words "patent pending" were displayed on the door of the machines from 1942 to 1984, at which time the molding on the door was altered to read "patented," and SnoWizard's promotional literature also claimed the machine was patented.[27]  In 2009, SnoWizard stopped molding the word "patented" into the door of the machine and started placing stickers to that effect on the machine.[28]  On April 7, 1987, Plaintiffs allege that Sciortino obtained a U.S. patent on the "stabilization means" of the ice-shaving machine, but he subsequently abandoned that patent in 1995 due to non-payment of the maintenance fee.[29]  Despite the alleged abandonment of the patent, on April 12, 2001, Sciortino posted on the internet that "[t]here are differences between the two machines in quality since Southern Snow did not have the patent to manufacture the SnoWizard machine exactly."[30]

In 2002, SnoWizard began using a new ratchet-style linkage in its ice-shaving machines.  According to Plaintiffs, this ratchet linkage was designed and manufactured in cooperation with Precision Metalsmiths, Inc. and without the execution of a confidentiality agreement.[31]  In 2004, Sciortino applied for a patent on the ratchet linkage, allegedly listing only himself as the inventor and failing to disclose the parts' public use and sale for more than one year before the application

---

[27] *Id.* at p. 18.

[28] *Id.* at p. 19.

[29] *Id.* at pp. 18-19.

[30] *Id.* at p. 19.

[31] *Id.* at p. 20.

was filed.[32]  Patents on the ratchet linkage and a new leg design were granted in 2007, and after a period of abandonment for failure to pay the issue fee, were revived in 2009 based on Sciortino's statement that abandonment was unintentional.[33]  Based on the patents SnoWizard claimed on its ice-shaving machines, Plaintiffs allegedly stopped purchasing, distributing, selling, and using ice-shaving machines that were not of the SnoWizard brand.[34]

The parties are also in disagreement over a number of claimed state and federal trademarks and trademark registrations.  In late 2007 and early 2008, Plaintiff Parasol made preparations to change the name of its sugar-free simple syrup mix to "SNOW SWEET," formerly "Simply Sweet."  SnoWizard allegedly contacted the owners of the mark "SIMPLY SWEET," causing them to send a cease and desist letter to Parasol, making it more urgent for Parasol to re-label its product "SNOW SWEET."  Parasol registered "SNOW SWEET" in March 2008, but, in July 2008, SnoWizard registered the mark "SNOSWEET" with the United States Patent and Trademark Office ("USPTO") and the Louisiana Secretary of State.  Although Parasol was using its mark "SNOW SWEET" in commerce prior to SnoWizard's application for registration of the "SNOSWEET" mark, SnoWizard sent a cease and desist letter to Parasol.

Starting in 1981, Southern Snow began manufacturing flavor concentrates and ice-shaving machines in Gretna and Belle Chasse, Louisiana.[35]  Also in the early 1980s, SnoWizard sold flavor concentrates manufactured by the Charles Dennery Company.[36]  But, in the mid-2000s, SnoWizard began asserting various state and federal trademark and patent rights,

---

[32] *Id.* at p. 23.

[33] *Id.* at pp. 24-25.

[34] *Id.* at pp. 26-27.

[35] *Id.*

[36] *Id.* at p. 15.

including registering 22 trademarks between 2003 and 2008.  SnoWizard then sent cease and desist letters to manufacturers and distributors on the basis of its registered trademarks.[37]

The snowball flavor and name "ORCHID CREAM VANILLA" was allegedly developed by the first owner of Plum Street, and it became a signature flavor of Plum Street, leading it to be a separately listed asset in the sale of Plum Street to Donna and Claude Black in 1979.[38] According to Plaintiffs, SnoWizard copied the flavor without authorization, used the flavor with no claim of exclusivity for approximately five years, and then applied for and received federal trademark registration in May 2004.  SnoWizard then sent cease and desist letters to Southern Snow and Simeon, Inc. asserting the federal trademark registration.  The registration was later cancelled in December 2009 by the Trademark Trial and Appeal Board ("TTAB") of the USPTO.[39]

Plaintiffs claim that the snowball flavor "SILVER FOX" was a signature flavor and trademark of Eisenmann Products, which was acquired by Simeon, Inc. and related entities in 2006, when the "FLAVOR SNOW" brand was purchased.[40]  Although the owners of "FLAVOR SNOW" and Southern Snow claimed a trademark in "SILVER FOX" by affixing a "TM" to the term in promotional materials, SnoWizard began using the "SILVER FOX" trademark in commerce without authorization, claiming it as a "SnoWizard Original."[41]

Although SnoWizard was allegedly aware of the sale of various snowball flavors and use of the term "SNOBALL" by Plaintiffs and other vendors prior to its application, SnoWizard

---

[37] *Id.* at pp. 33-35.

[38] *Id.* at p. 27.

[39] *Id.* at p. 30.

[40] *Id.* at p. 38.

[41] *Id.*

applied for federal registration of the marks "SNOBALL," "WHITE CHOCOLATE & CHIPS," "GEORGIA PEACH," "BUTTERED POPCORN," "MUDSLIDE," and "PRALINE." These applications were rejected by the USPTO because the marks were merely descriptive or generic. Plaintiff Simeon, Inc. purchased the Louisiana state Trade Mark Registration (hereinafter, "state registration") of "SNOBALL," which Plaintiffs claim Defendants are now infringing.[42] Likewise, SnoWizard, allegedly with knowledge of prior use by competitors, applied for and obtained a state registration of "HURRICANE," "KING CAKE," "WHITE CHOCOLATE & CHIPS," "CAJUN RED HOT," "GEORGIA PEACH," "BUTTERED POPCORN," "CAKE BATTER," DILL PICKLE," "MUDSLIDE," and "MOUNTAIN MAPLE." SnoWizard also obtained federal trademark registrations of some of these marks, including "HURRICANE," "KING CAKE," "MOUNTAIN MAPLE," and "CAJUN RED HOT."

SnoWizard claims common law trademark protection on "BUTTERCREAM" and "CHAI LATTEA," although others allegedly used those flavors before Snowizard. Additionally, SnoWizard obtained state registration of "COOKIE DOUGH," which Plaintiffs allege was not used at all prior to submission of SnoWizard's application, and federal and state registration of "SNOFREE," which Plaintiffs claim has never been used in commerce. SnoWizard also sold the flavor TIRAMISU from 2002 to 2005 and then registered it as a trademark in Louisiana after reintroducing it in 2008.

SnoWizard has engaged in a number of tactics to protect its intellectual property rights to which Plaintiffs claim it is not entitled. After obtaining state and/or federal trademark protection on the marks, SnoWizard sent cease and desist letters to Parasol and Simeon, Inc. for alleged infringement of the marks "HURRICANE," "KING CAKE," "WHITE CHOCOLATE & CHIPS," "GEORGIA PEACH," and "BUTTERED POPCORN." Thereafter, SnoWizard

---

[42] Rec. Doc. 412 at pp. 107-108.

pursued lawsuits to protect its perceived intellectual property rights against Simeon, Inc., Parasol, and Southern Snow over various trademarks, including "HURRICANE," "WHITE CHOCOLATE & CHIPS," "GEORGIA PEACH," "BUTTERCREAM," "BUTTERED POPCORN," "CAKE BATTER," "MUDSLIDE," "PRALINE," and "MOUNTAIN MAPLE." SnoWizard also terminated a 19 year long distributorship with Plaintiff Raggs in June 2010, after a dispute with Raggs about permissible redistribution and resale of SnoWizard's products.[43] After terminating the distributorship, SnoWizard filed a lawsuit against Raggs for trademark infringement in 2011.[44]  Finally, Plaintiffs allege that SnoWizard sent a letter on January 1, 2002 to BellSouth Advertising and Publishing Corporation protesting Southern Snow's Yellow-Pages advertisement on the basis that it infringed SnoWizard's intellectual property rights and demanding that Southern Snow's advertisement not be published.  Plaintiffs claim that many of the same allegations in SnoWizard's letter to BellSouth were repeated in a posting to an internet discussion group by Sciortino. Further, Plaintiffs note that on March 21, 2007, Sciortino asserted in a posting to a internet discussion group he owns and controls, that "[SnoWizard] will protect [its] legal and trademark rights if anyone infringes on them."[45]

Plaintiffs assert allegations relating to SnoWizard's certification of its ice-shaving machines.  According to Plaintiffs, SnoWizard sought certification of its products from ETL SEMKO, a division of Intertek Group plc.[46]  Such certification by ETL is indicated by placing an "ETL" sticker on the ice-shaving machine and related advertisements, which assures

---

[43] Rec. Doc. 1 at pp. 33-34.

[44] *Id.* at p. [].

[45] Rec. Doc. 1 at pp. 16-17.

[46] Rec. Doc. 412 at p. 109.

customers that the machine is well-designed and safe.[47]   In 2010, SnoWizard's ice-shaving machine allegedly fell out of compliance with ETL and its certification lapsed.   However, as of August 5, 2011, Plaintiffs maintain that SnoWizard ice-shaving machines still displayed stickers indicating ETL certification.[48]

## II. Parties' Arguments

The parties agree that to assert a civil-RICO claim, Plaintiffs must demonstrate that Defendants engaged in a "pattern of racketeering activity"[49] consisting of two or more predicate acts,[50] which are defined by 18 U.S.C. § 1961 to include, *inter alia*, extortion, mail fraud, and wire fraud.   In the motion to dismiss,[51] Defendants argue that Plaintiffs fail to state a claim for relief which can be granted under RICO, because the allegations in the Complaint and Amended Complaint do not suffice to establish the requisite predicate acts.   In support of Defendants' position that Plaintiffs' failure to allege any requisite predicate criminal acts is fatal to their RICO claim,[52]   Defendants rely on the holding of the United States Court of Appeals for the Fifth Circuit in *St. Germain v. Howard*.   *St. Germain* clearly states that "[b]ecause Appellants have not alleged the requisite predicate *criminal* acts under RICO, they have not met the pleading standard of Rule 12(b)(6)."[53]

---

[47] *Id.* at pp. 109-10.

[48] *Id.* at 110.

[49] *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009).

[50] *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).

[51] Rec. Doc. 415-1.

[52] Rec. Doc. 415-1 at p. 5.

[53] 556 F.3d at 263.

Defendants have identified in the Complaint and Amended Complaint five categories of allegations made by Plaintiffs of purported predicate acts:

1)      "[f]raudulent assertion of patent rights" in the SnoWizard SnoBall Machine;

2)      "[f]raudulent assertion of trademark rights" with respect to twenty different trademarks, at least five of which are federally registered in SnoWizard's name, and none of which have been conclusively declared unprotectable;

3)      infringement of five trademarks, two of which are federally registered in SnoWizard's name;

4)      extortion by sending a total of four trademark cease and desist letters to Southern Snow, Parasol, and the Yellow Pages over a period of nine years, and by suing Raggs for trademark infringement, unfair competition, trademark dilution, and defamation; and

5)      "[f]raudulent assertion of ETL certification" of ice shaving machines certified by Intertek Group plc.[54]

However, according to Defendants, "no reasonable attorney would believe that any of these alleged acts were capable of satisfying the predicate act requirements of RICO."[55]

Although Plaintiffs recognize in the Opposition to Defendants' Motion to Dismiss Under Rule 12(b)(6) that "[t]o sustain a civil-RICO claim, at least 2 predicate acts must be shown,"[56] Plaintiffs rely on *Sedima, S.P.R.L. v. Imrex Co.*[57] to argue that the fact "[t]hat the offending conduct [in civil-RICO] is described by reference to criminal statutes does not mean that its

---

[54] Rec. Doc. 415-1 (quoting Rec. Doc. 1 at ¶¶ 131- 948 and Rec. Doc. 412 at ¶¶ 150-861).

[55] *Id.* at p. 4.

[56] Rec. Doc. 433 at p. 11.

[57] 473 U.S. 479, 491 (1985).

occurrence must be established by criminal standards or that the consequences of a finding of liability in a private civil action are identical to the consequences of a criminal conviction."[58] Thus, according to Plaintiffs, "SnoWizard's many references to 'criminal' charges, and the floodgates argument, are misplaced and unhelpful."[59]   In their reply, Defendants explain that *Sedima* in no way suggests that Plaintiffs do not need to establish criminal predicate acts to sustain a civil-RICO case.   Instead, *Sedima* addresses what standard of proof—"beyond a reasonable doubt versus preponderance of the evidence"—that must be met in order to establish the requisite criminal predicate acts.[60]

### A. Mail and Wire Fraud Based on Fraudulent Assertion of Patent and Trademark Rights

As to the first category of allegations, Defendants argue that fraudulent assertion of patent and trademark rights cannot constitute the predicate criminal acts of mail or wire fraud, and thus Plaintiffs cannot establish a pattern of racketeering activity under RICO based on such alleged fraudulent assertions.   Defendants note that Plaintiffs fail to allege "that defendants at any time claimed to have any patent or trademark registrations that did not exist, or that defendants at any time asserted trademark rights in any trademark in violation of any final and definite court order prohibiting such conduct."[61]

---

[58] Rec. Doc. 433 at p. 11.

[59] *Id.* (citations omitted).

[60] Rec. Doc. 446 at p. 3 (citing 473 U.S. at 491).

[61] Rec. Doc. 415-1 at p. 6.

1. *Evidence of Intent to Defraud Required for Mail and Wire Fraud*

According to Defendants, "[b]oth mail fraud and wire fraud require evidence of intent to defraud by false or fraudulent representations,"[62] and Plaintiffs cannot establish such intent by (1) alleging that SnoWizard was not entitled to obtain the patents and trademarks; (2) alleging fraud on the USPTO; or (3) alleging that SnoWizard is not entitled to use the patents and trademarks.

First, Defendants contend that Plaintiffs cannot establish the element of intent to defraud by merely alleging that SnoWizard was not entitled to patent its SnoBall Machine; federally register its trademarks in "HURRICANE," "MOUNTAIN MAPLE," "ORCHID CREAM VANILLA," "SNOFREE," and "SNOSWEET"; or claim federal, state, or common law trademark rights in the marks "BUTTERCREAM," "BUTTERED POPCORN," "CAJUN RED HOT," "CAKE BATTER," "CHAI LATTEA," "COOKIE DOUGH," "DILL PICKLE," "GEORGIA PEACH," "HURRICANE," "MUDSLIDE," "ORCHID CREAM VANILLA," "PRALINE," "KING CAKE," "SNOBALL," "SNOBALL MACHINE," "SNOFREE," "SNOSWEET," "TIRAMISU," and "WHITE CHOCOLATE & CHIPS."[63]

Second, Defendants reason that Plaintiffs may not rely on alleged fraud on the USPTO to demonstrate the element of intent to defraud.[64]  In support of this position, Defendants cite *Semiconductor Energy Laboratory Co. v. Samsung Electric Co.*, which found that since a patent application cannot properly be deemed government property, misrepresentations before the USPTO in obtaining that patent cannot constitute mail or wire fraud for the purposes of the

---

[62] *Id.*

[63] *Id.* at pp. 6-7.

[64] *Id.* at p. 9.

predicate act requirement.[65]   In opposition, Plaintiffs assert that *Semiconductor Energy Laboratory Co.* is "no longer pertinent law" because of the Supreme Court's holding in *Bridge v. Phoenix Bond & Indemnity Co.*[66]   The Supreme Court held in *Bridge* that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations,"[67] which, according to Plaintiffs, obviates the need for Plaintiffs to establish any injury to the USPTO to sustain the RICO claim.[68]   Plaintiffs suggest that the pending matter, involving injury to the Plaintiffs (not the government) caused by the patents and trademark registrations issued to SnoWizard, is similar to *Bridge*, where "the fraud perpetrated on Cook County was the proximate cause of the injury to the competing purchasers, notwithstanding the absence of first person detrimental reliance."[69]

Plaintiffs further elaborate on their argument that fraud upon the USPTO is actionable by injured private parties by citing two Federal Circuit cases in support of their position.   In *Aristocrat Technologies Australia v. International Game Technology*,[70] the Federal Circuit stressed that "where the procedural irregularity involves an affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive, may rise to the level of inequitable conduct, and

---

[65] *Id.* (citing 204 F.3d 1368, 1380 (Fed. Cir. 2000)); *see also id.*(citing *University of W. Va. v. VanVoorhies*, 278 F.3d 1288, 1303 (Fed. Cir. 2002) (upholding a district court's dismissal of a plaintiff's RICO claim where the plaintiff asserted mail fraud based on false submissions to the PTO in connection with patent applications)).

[66] 07-210, slip op. at 21, 553 U.S. _ _ (6/9/2008).

[67] Rec. Doc. 433 at pp. 5, 7.

[68] *Id.* at p. 8.

[69] *Id.* at 7.

[70] 08-1016 (CAFC 9/22/2008) 543 F.3d 657.

is redressible under that framework.[71]   Likewise, in *Therasense Inc. v. Becton, Dickinson & Co.*,[72] the Federal Circuit found that "[w]hen the patentee ha[s] engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material."[73]

In reply, Defendants contend that *Bridge* "involved the interpretation and application of RICO's proximate cause standing requirement of injury 'by reason of' a violation of the statute, 18 U.S.C. § 1964(c); it did not involve the interpretation or application of the 'money or property' element of the wire and mail fraud statutes at issue in *Semiconductor Energy*."[74] Moreover, Defendants note that the Fifth Circuit, in *St. Germain*, acknowledges the Supreme Court's holding in *Bridge*, but then holds that "[n]otwithstanding the fact that reliance is no longer required to be pled, Appellants have still not sufficiently pled the predicate acts of mail and wire fraud."[75]

Third, Defendants maintain that SnoWizard's mere use of trademarking symbols or other assertions of trademark rights cannot evidence "'false or fraudulent pretenses, representations, or promises' within the meaning of either the mail or wire fraud statutes."[76]   Defendants refer to this Court's finding earlier in these proceedings that the use of trademarking symbols and even generic terms does not constitute a literally false statement under the Lanham Act and LUTPA.[77]

---

[71] Rec. Doc. 433 at p. 14 (citing 543 F.3d at 663-64 (internal quotations omitted)).

[72] 08-1511 (CAFC 5/25/2011).

[73] Rec. Doc. 433 at p. 13 (citing  08-1511, pp. 29-30 (CAFC 5/25/2011)).

[74] Rec. Doc. 446 at p. 4 (citing 18 U.S.C. §§ 1341, 1343).

[75] *Id.* at p. 5 (citing 556 F.3d at 263).

[76] Rec. Doc. 446 at p. 6 (citing 18 U.S.C. §§ 1341, 1343).

[77] Rec. Doc. 332 at p. 32.

Defendants reason that if SnoWizard's assertion of trademark rights did not constitute a literally false statement, as required to assert an unfair competition claim under the Lanham Act or LUTPA,"[78] then those same actions cannot logically constitute evidence of intent to defraud.[79] Defendants further note that patents and federal trademark registrations are presumed valid pursuant to 35 U.S.C. § 282 and 15 U.S.C. § 1057(b).[80]

### 2. Assertion of Patent Rights

Plaintiffs allege that Defendants are fraudulently asserting patent rights, because "SnoWizard has been advertising that its whole machine is 'PATENTED' since years before 2009," even though the "whole machine is not, and never was, patented."[81]   In support of the motion to dismiss, Defendants contend that Plaintiffs are "unable to cite a single allegation of fact pleaded with specificity, or a single legal authority, which would support a reasonable inference that SnoWizard's assertions of patent and trademark rights could conceivably constitute the statutorily defined crimes of mail and wire fraud or any other crime."[82]   Although, Plaintiffs recognize that "fraud must be alleged with specificity,"[83] they argue that they have satisfied the Fifth Circuit's "time, place, and contents of the false representations" standard and the Federal Circuit's "who, what, when, where, and how" standard based on "no fewer than 41

---

[78] *Id.* (citing Rec. Doc. 332, Order & Reasons at p. 32).

[79] *Id.*

[80] Rec. Doc. 415-1 at p. 8; *see also In re MasterCard International Inc., Internet Gambling Litigation,*132 F.Supp.2d 468, 482 (E.D. La. 2001) (J. Duval) (citing *Meacham v. Halley*, 103 F.2d 967, 971 (5th Cir. 1939) (noting that "fraud cannot be predicated upon misrepresentations of law")).

[81] *Id.* at p. 15.

[82] Rec. Doc. 446 at p. 2.

[83] Rec. Doc. 415-1 at p. [].

specific dated communications. . .including the specific means of mailing or wire transmission."[84]

Moreover, Plaintiffs argue, in opposition to the motion, that "SnoWizard makes something like a preemption argument when it contends that its patents have an unassailable validity[,] [b]ut the granting of the patents does not confer any immunity for anti-competitive misuse of the patents, or the inequitable conduct used to obtain the patents."[85]  Plaintiffs go on to explain that assertions made "in the marketplace are separately actionable as a separate wrong."[86]  In support of their position, Plaintiffs cite *Zenith Electric Corp. v. Exzec, Inc.*,[87] which held that liability for unfair competition based on marketplace activity in support of a patent requires that the marketplace activity be in bad-faith.[88]  Plaintiffs argue that the holding in *Zenith* should be applied by analogy to Plaintiffs' civil-RICO claims.[89]

### B. Mail and Wire Fraud Based on Alleged Infringement of Plaintiffs' Trademarks

According to Defendants, Plaintiffs also may not rely on allegations of "ordinary" trademark infringement to establish mail or wire fraud.[90]  In support of their position, Defendants cite *Johnson Electric North America Inc. v. Mabuchi Motor America Corp.*,[91] which

---

[84] Rec. Doc. 433 at p. 16.

[85] Rec. Doc. 433 at p. 9.

[86] *Id.* at p. 10.

[87] 98-1288 (CAFC 7/12/1999) 182 F.3d 1340, 1353.

[88] Rec. Doc. 433 at p. 10.

[89] *Id.*

[90] Rec. Doc. 415-1 at p. 11.

[91] 98 F.Supp.2d 480, 491 (S.D.N.Y. 2000).

explains that numerous district courts have dismissed RICO claims based upon patent or copyright infringement.[92]   Defendants also point to Plaintiffs' failure to cite any authority supporting their contention that trademark infringement can constitute mail or wire fraud.[93]

Plaintiffs assert that patent infringement is actionable under RICO since the infringement occurred in conjunction with additional allegations of fraud on the USPTO.[94]   In support of their position, Plaintiffs explain that the "district court in *Johnson Electric* said [] that patent infringement *by itself* is not fraudulent, in the absence of an overall fraudulent scheme involving infringement as one of its steps."[95]   To the contrary, the court noted in *Johnson Electric* that there were no "allegations that defendants somehow perpetrated a fraud on the Patent and Trademark Office by, for example, obtaining its own patent through material false representations or non-disclosures."[96]   Plaintiffs argue that since "[they] have made the additional allegations which the *Johnson Electric* court recognized would make actionable an overall fraudulent scheme involving infringement as one of its steps," Defendants' trademark infringement constitutes a predicate criminal act.[97]

### C. Mail and Wire Fraud Based on Fraudulent Assertion of ETL Certification

Defendants also contend that Plaintiffs' allegations of fraudulent assertion of ETL certifications are insufficient to demonstrate mail and wire fraud.  First, Defendants note that

---

[92] Rec. Doc. 415-1 at p. 12.

[93] *Id.*

[94] Rec. Doc. 433 at p. 12.

[95] *Id.* (citing *Johnson Electric N.A. v. Mabuchi Motor*, 88-7377 (S.D.N.Y. 5/31/2000) 98 F.Supp.2d 480, 491).

[96] *Id.* (citing *Johnson*, 98 F.Supp.2d at 491).

[97] *Id.*

Plaintiffs fail to plead with particularity, as required by *Tel-Phonic Services, Inc. v. TBS International, Inc.*,[98] "that [D]efendants' alleged representations of ETL certification by placing stickers on machines and advertisements were false or fraudulent within the meaning of the mail and wire fraud statutes."[99]   Plaintiffs respond, in opposition, that Defendants' continued fraudulent assertion of a lapsed safety certification is actionable because SnoWizard lost its ETL certification but still affirmatively claims to be certified.   Second, Defendants assert that "Plaintiffs do not allege [] that any ice-shaving machines advertised and sold with ETL stickers were manufactured *after* SnoWizard's ETL certification allegedly lapsed in 2010."[100]   But, according to Plaintiffs, the date of manufacturing of the ice-shaving machines is irrelevant.[101] Moreover, Plaintiffs claim that they are not required to plead information exclusively within Snowizard's possession, such as the manufacturing date of SnoWizard's machines.[102]

### D. Extortion Based on Cease and Desist Letters and Suit for Trademark Infringement

Defendants also contend that Plaintiffs do not adequately demonstrate the predicate act of extortion.   Defendants assert that Plaintiffs fail to allege that Defendants "ever communicated to any person any *threat* to do any *harm* to anyone within the meaning of the Louisiana extortion statute, La. R.S. 14:66, or ever employed any *wrongful use of actual or threatened force, violence, or fear* against anyone within the meaning of the federal extortion statute, 18 U.S.C. §

---

[98] 975 F.2d 1134 (5th Cir. 1992).

[99] *Id.* at 1138.

[100] Rec. Doc. 415-1 at p. 12 (emphasis in original).

[101] Rec. Doc. 433 at pp. 15, 16.

[102] *Id.*

1951(b)(2)."[103]   Thus, Plaintiffs' allegations that Defendants committed extortion by sending four trademark "cease and desist" letters over a period of nine years and by suing Raggs for trademark infringement, unfair competition, and defamation "do not even begin to establish the requisite predicate criminal acts under RICO."[104]

Plaintiffs assert that "SnoWizard's extortionate statements, actions, and threatened actions are set forth in the Complaint, plausibly, and in more detail than Rule 8 requires for these non-fraud claims."[105]   In support of this assertion, Plaintiffs cite a number of actions, that constitute the requisite "communications," including: (1) throwing a Plum Street employee out of the SnoWizard facility and refusing to sell to Plum Street in retaliation for Donna Black's effective witness testimony in a trademark cancellation proceeding; (2) posting on the internet that "[SnoWizard] will protect [its] legal and trademark rights if anyone infringes them"; (3) harassing Raggs about SnoWizard's trademarks in 2010 and suing Raggs for trademark infringement and dilution in 2011; (4) sending four cease and desist communications; and (4) filing the instant lawsuit and related threatened and pending litigation.[106]

## III. Law and Analysis

### A. Legal Standard on a Motion to Dismiss

The Federal Rules of Civil Procedure provide that an action may be dismissed "for failure to state a claim upon which relief can be granted."[107]   "To survive a motion to dismiss, a

---

[103] Rec. Doc. 415-1 at p. 14 (emphasis in original).

[104] *Id.*

[105] Rec. Doc. 433 at p. 14.

[106] *Id.*

[107] Fed. R. Civ. P. 12(b)(6).

complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[108]   "Factual allegations must be enough to raise a right to relief above the speculative level,"[109] and a claim is facially plausible when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[110]   In considering a motion to dismiss for failure to state a claim, the court typically must limit itself to the contents of pleadings, including any attachments.[111]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[112]   However, although required to accept all "well-pleaded facts" as true, the court is not required to accept legal conclusions as true.[113]   "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[114]   Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[115]   The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[116]   That is, the complaint must offer more than an

---

[108] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[109] *Twombly*, 550 U.S. at 556.

[110] *Id.* at 570.

[111] *See* Fed. R. Civ. P. 12(b); *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985); *Neville v. Am. Rep. Ins. Co.*, 912 F.2d 813, 814 n. 1 (5th Cir. 1990); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004).

[112] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

[113] *Iqbal*, 556 U.S. 662, 677-78.

[114] *Id.* at 679.

[115] *Id.* at 678.

[116] *Id.*

"unadorned, the defendant-unlawfully-harmed-me accusation."[117]   From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[118]   If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[119]

### B.  Allegations of Fraud

Under Federal Rule of Civil Procedure 8, a complaint generally only must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."[120]   However, under Federal Rule of Civil Procedure 9(b), a heightened pleading requirement exists for fraud claims, such that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake."[121]   Only "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[122]   Thus, a claim of fraud cannot be based on mere "speculation and conclusory allegations,"[123] and the Fifth Circuit strictly interprets the requirements for pleading fraud.[124]   That is, Federal Rule of Civil Procedure 9(b)

---

[117] *Id.*

[118] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[119] *Moore v. Metropolitan Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir. 2007)).

[120] Fed. R. Civ. P. 8(a)(2).

[121] Fed. R. Civ. P. 9(b).

[122] *Id.*

[123] *U.S. ex rel. Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 385 (5th Cir. 2003).

[124] *Flaherty v. Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009), *cert denied*, __ U.S. __, 130 S.Ct. 199 (2009).

"requires 'the who, what, when, where, and how' to be laid out."[125]   The "circumstances constituting fraud" must be plead with particularity under Rule 9(b), and "[t]his particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim as well."[126]   The requirements of Rule 9(b) are "supplemental to the Supreme Court's recent interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'"[127]  Both state and federal fraud claims are subject to this heightened pleading standard of Rule 9(b).[128]

### C. Civil-RICO Violations

RICO[129] provides a private civil action to recover treble damages for injury caused by violation of RICO's substantive provisions.[130]   In *St. Germain v. Howard*,[131] the Fifth Circuit explained that claims under RICO have three common elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.   A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal

---

[125] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)).

[126] *Tel-Phonic Services, Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992).

[127] *Lentz v. Trinchard*, 730 F.Supp.2d 567, 579 (E.D. La. 2010) (Africk, J.) (citing *U.S. ex. Rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570)).

[128] *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("We see no principled reason why the state claims of fraud should escape the pleading requirements of the federal rules.").

[129] 18 U.S.C. §§ 1961-1968.

[130] *Sedima, S.P.R.L. v. Imrex Co., Inc., et. al.*, 473 U.S. 479, 481 (1985).

[131] 556 F.3d 261, 263 (5th Cir. 2009).

activity."[132]   RICO defines "racketeering activity" in 18 U.S.C. § 1961(1) to include any act or threat involving extortion, which is punishable for more than one year; any act indictable under 18 U.S.C. § 1341 (relating to mail fraud); any act indictable under 18 U.S.C. § 1343 (relating to wire fraud); and any act indictable under 18 U.S.C. § 1951 (relating to extortion).[133]

Notably, the predicate acts that constitute racketeering activity under RICO are in fact criminal.  Plaintiffs' misconstrue *Sedima, S.P.R.L. v. Imrex Co., Inc.*[134] to allow civil-RICO claims based on predicate acts that are not criminal in nature; when, in fact, *Sedima* addressed whether a prior criminal *conviction* was required to establish a pattern of racketeering activity.[135] The Supreme Court has noted that "[i]n a number of settings, conduct that can be punished as criminal only upon proof beyond a reasonable doubt will support civil sanctions under a preponderance standard."[136]   Likewise, Plaintiffs need not establish the predicate criminal acts beyond a reasonable doubt in the pending case, but they nonetheless must plead a set of facts sufficient to plausibly establish the predicate criminal acts of mail or wire fraud under RICO.

### 1. Mail & Wire Fraud Allegations

Plaintiffs allege that Defendants committed the predicate criminal acts of mail or wire fraud by fraudulently asserting patents and trademarks, infringing Plaintiffs' trademarks, and fraudulently asserting ETL certification of ice-shaving machines. The federal crimes of mail fraud and wire fraud are defined in 18 U.S.C. §§ 1341 and 1343, respectively, and because they

---

[132] *Id.* (citations omitted).

[133] 18 U.S.C. § 1961(1)(A), (B).

[134] 473 U.S. 479 (1985).

[135] *Id.* at 491.

[136] *Id.*

"share the same language in relevant part, the same analysis applies to each."[137]  Thus, to state a claim for mail fraud, the plaintiff must demonstrate, "(1) a scheme to defraud, (2) which involves the use of the mails, (3) for the purpose of executing the scheme."[138]  To state a claim for wire fraud, the plaintiff must demonstrate, "(1) a scheme to defraud, (2) the use of, or causing the use of, wire communications in furtherance of the scheme."[139]  Therefore, both RICO mail fraud and wire fraud "require evidence of intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent pretenses."[140]

### a.   Mail and Wire Fraud Based on Fraudulent Assertions of Patents and Trademarks

Primary among Plaintiffs' allegations are the claims that SnoWizard fraudulently asserted patent and trademarks rights.   According to Plaintiffs, Defendants made numerous false representations to the USPTO in order to obtain patents and trademark registrations to which they were not entitled.   These false representations allegedly included (1) statements to the USPTO that Defendants invented parts of an ice-shaving machine and applied for the patents within one year of the parts going on sale, (2) that Defendants created and exclusively used a variety of flavor concentrates such that the names of these flavors became trademarks, and (3) that Defendants created and exclusively used certain words and product names such that these terms became trademarks.   Additionally, Defendants allegedly made false representations to the public that they owned a patent on the entire SnoWizard brand ice-shaving machine.   Even if

---

[137] *United States v. Mills*, 199 F.3d 184, 185 (5th Cir. 1999) (internal quotations omitted).
[138] *United States v. Gray*, 96 F.3d 769 (5th Cir. 1996).

[139] *Id.*

[140] *St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000).

these allegations are all true, which the Court must assume when deciding a motion to dismiss, controlling authority clearly states that "inequitable conduct before the PTO cannot qualify as an act of mail fraud or wire fraud for purposes of the predicate act requirement," because such conduct did not "'defraud' the government of any 'property.'"[141]

Plaintiffs further argue that Defendants' representations to the public that they had patent and trademark rights, which Defendants allegedly knew to be premised on false statements to the USPTO, constitute fraud within the meaning of mail and wire and fraud.  The Court does not agree with this logic.  If fraud in obtaining patent and trademark rights are insufficient to establish a RICO violation under *Semiconductor Energy Laboratory Co.*, it would be illogical to conclude that asserting those patents and trademarks in the marketplace would constitute a RICO violation.  Therefore, since the underlying alleged fraud on the USPTO does not constitute mail or wire fraud, SnoWizard's representations to customers and competitors regarding its intellectual property rights cannot constitute RICO violations.  This position is further buttressed by the general rule that fraud cannot be predicated upon misrepresentations of law.[142]

Plaintiffs are also incorrect in their assertion that they no longer must prove injury resulting from the scheme to defraud in the wake of *Bridge v. Phoenix Bond & Indemnity Co.*[143]  In *Bridge*, the Supreme Court held that the injured party need not demonstrate first-party reliance on the fraud.[144]   Here, Plaintiffs contend that injury to the government is irrelevant and

---

[141] *Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.*, 204 F.3d 1368, 1380 (Fed. Cir. 2000); *see also University of W. Va. V. VanVoorhies*, 278 F.3d 1288, 1303 (Fed. Cir. 2002) (affirming dismissal of plaintiff's RICO claim where the plaintiff asserted the predicate acts of mail and wire fraud based on plaintiff's false submissions to the PTO in connection with patent application).

[142] *Meacham v. Halley*, 103 F.2d  967, 971 (5th Cir. 1939) (citing 12 R.C.L. 295; Black on Rescission, 2d Ed., Sec. 71).

[143] 553 U.S. 639

[144] *Id.* at 660.

*Semiconductor Energy Laboratory Co.*'s holding is no longer good law.  Plaintiffs need not demonstrate that the customers and competitors injured by Defendants' assertions of patent and trademark rights relied on Defendants' fraudulent statements to the USPTO, in light of the holding in *Bridge*.  However, Plaintiffs must still plead a scheme to defraud upon which the predicate acts of mail or wire fraud may be based.[145]  Here, Plaintiffs argue that the scheme to defraud involved Defendants' alleged fraudulent statements to the USPTO.  But, *Semiconductor Energy Laboratory Co.* precludes a finding that Defendants committed mail and wire fraud on the basis of fraudulent statements to the USPTO.

> ### b.   Mail and Wire Fraud Based on Alleged Infringement of Plaintiffs' Trademarks

Next, Plaintiffs contend that Defendants committed mail and wire fraud by infringing trademarks owned by Plaintiffs.  This Court has found no authority within the Fifth Circuit holding that patent or trademark infringement can form the underlying predicate acts required for a civil-RICO claim.  Likewise, the Court notes that Plaintiffs were unable to cite any cases where patent or trademark infringement constituted mail or wire fraud, for purposes of the predicate act requirement.  Instead, both parties discuss *Johnson Electric North America Inc. v. Mabuchi Motor America Corp.,*[146] wherein the Southern District of New York noted the "numerous cases

---

[145] *See St. Germain*, 556 F.3d 261, 263 (5th Cir. 2009) (The Fifth Circuit clearly explained that "[n]otwithstanding the fact that reliance is no longer required to be pled," the plaintiff must still sufficiently plead the predicate criminal acts of mail and wire fraud.)

[146] 98 F.Supp.2d 480 (S.D.N.Y. 2000).

in which RICO claims based upon patent or copyright infringement have been dismissed, even where the plaintiffs attempted to plead the claims as mail or wire fraud."[147]

*Johnson Electric* suggests that ordinary infringement claims cannot constitute mail or wire fraud because there is no deceptive element, which is required to establish a scheme to defraud.[148]   Here, Plaintiffs would have this Court interpret Defendants' alleged fraud on the USPTO as the deceptive element necessary to establish the scheme to defraud, and essentially transform an ordinary infringement claim into a predicate criminal act.   Plaintiffs rely heavily on dicta in *Naso v. Park,*[149] noting that there were no "allegations that defendants somehow perpetrated a fraud on the Patent and Trademark Office by, for example, obtaining its own patent through material false representations or non-disclosures."[150]   *Naso* is not controlling in this Court, and it is also not persuasive.   Controlling authority establishes that fraud on the USPTO does not constitute mail or wire fraud.   Thus, ordinary trademark infringement in conjunction with fraud on the USPTO cannot constitute the scheme to defraud required by the mail and wire fraud statutes.

---

[147] *Id.* at 491 (citing *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996) (affirming dismissal of RICO claims alleging same activity alleged in copyright infringement claims); *U.S. Media Corp.,* 94 Civ.4849, 1996 WL 520901, at * 13 (holding that "[a] copyright violation alone does not involve either affirmative misrepresentation or any duty to disclose. Such a violation may not be 'bootstrapped' into a violation of the mail or wire fraud statutes"); *B.V. Optische Industrie,* 909 F.Supp. 162 (granting motion to dismiss RICO claims based upon fraudulent acts before the United States Patent and Trademark office); *Naso,* 850 F.Supp. at 275 (dismissing RICO claims based upon mail fraud involving patent infringement because patent infringement is not deceptive); *Damiano,* 975 F.Supp. at 632 (granting summary judgment for the defendant on RICO claims based upon allegations that defendants engaged in mail fraud by selling recordings that stated that they were created by Bob Dylan)).

[148] *Id.* at 491.

[149] 850 F.Supp. 264, 274-75 (S.D.N.Y. 1994).

[150] *Id.*

c.   <u>Mail & Wire Fraud Based on Fraudulent Assertion of ETL Certification</u>

The Fifth Circuit requires that the allegations of fraud be plead with particularity, including "the who, what, when, where, and how."[151]   Plaintiffs allege that Defendants committed mail or wire fraud by fraudulently asserting ETL certification.  Specifically, Plaintiffs allege that Defendants' ETL certification on its ice shaving machines lapsed in 2010, but ice-shaving machines continued to display ETL certifications stickers in August 2011.   These allegations are insufficient to plead the requisite "evidence of intent to defraud" with the particularity required to state a claim for RICO mail or wire fraud.[152]

*2. Extortion Based on Cease and Desist Letters and Pursuit of Litigation*

To state a civil-RICO claim based on the predicate act of extortion, the unlawful actions must be chargeable under state law and punishable by more than one year of imprisonment or indictable under 18 U.S.C. § 1951.[153]   Extortion under Louisiana state law is defined as:

> the communication of threats to another with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity of any description.  The following kinds of threats shall be sufficient to constitute extortion:
> (1)  A threat to do any unlawful injury to the person or property of the individual threatened or of any member of his family or of any other person held dear to him;
> (2)  A threat to accuse the individual threatened or any member of his family or any other person held dear to him of any crime;
> (3)  A threat to expose or impute any deformity or disgrace to the individual threatened or to any member of his family or to any other person held dear to him;
> (4)  A threat to expose any secret affecting the individual threatened or any member of his family or any other person held dear to him;
> (5)  A threat to do any other harm.[154]

---

[151] *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

[152] *See St. Paul Mercury Insurance Co.*, 224 F.3d at 441.

[153] *See* 18 U.S.C. § 1961(1).

[154] La. R.S. 14:66.

Under federal law, extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."   The Supreme Court, in *Scheidler v. National Organization for Women, Inc.*,[155] held that the actions taken by an antiabortion coalition to shut down health care centers performing abortions did not constitute extortion under 18 U.S.C. § 1951, because the defendants did not "obtain" or attempt to obtain property from the plaintiffs.[156]   The Court reasoned that, even if some of the defendants' actions were criminal, "[t]o conclude that such actions constituted extortion would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion."[157]   The Court also held that "[b]ecause petitioners did not obtain or attempt to obtain respondents' property, [ ] the state extortion claims…were fatally flawed."[158]

In the present matter, the Plaintiffs rely on the transmission of cease and desist letters, the commencement of litigation on the basis of intellectual property rights, internet postings that "[SnoWizard] will protect [its] legal and trademark right,"[159] and the refusal to provide services or retail products to Plum Street employees as the basis for the predicate act of extortion. However, none of these allegations suggest that Defendants obtained or attempted to obtain property from the Plaintiffs.  Defendants' actions to protect its intellectual property rights,

---

[155] 537 U.S. 393 (2003).

[156] *Id.* at 409.

[157] *Id.* at 405.

[158] *Id.* at 410.

[159] Rec. Doc. 433 at p. 14.

regardless of whether Plaintiffs believe Defendants are entitled to those rights, clearly do not constitute extortion under federal or state law based on the Supreme Court's holding in *Scheidler*.

## IV. Conclusion

Even assuming all allegations in the Complaint and Amended Complaint are true, the Plaintiffs have not established the predicate acts of mail fraud, wire fraud, or extortion. Therefore, Plaintiffs have not demonstrated the pattern of racketeering activity required to state a claim under RICO.  Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Alleged RICO Claims Under Rule 12(b)(6) (Ref: 11-1499) is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this <u>14th</u> day of December, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**