**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SOUTHERN SNOW MANUFACTURING CO., INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO.   06-9170** |
| | **09-3394** |
| | **10-0791** |
| | **11-1499** |
| **SNOWIZARD HOLDINGS, INC., et. al.** | **SECTION: "G" (1)** |

## ORDER AND REASONS

Before the Court is SnoWizard, Inc. and Ronald R. Sciortino's (collectively, "SnoWizard") Motion for a *Markman* Determination and for Summary Judgment of Patent Infringement.[1] Therein, SnoWizard first requests a *Markman* determination, which requires that the Court interpret the meaning of key phrases in SnoWizard's U.S. Patent No. 7,536,871.   Second, SnoWizard requests that the Court find that a device developed by Southern Snow Manufacturing Co., Inc. ("Southern Snow") infringes SnoWizard's patent and that the Court grant summary judgment in SnoWizard's favor on this issue.   Having considered the motion, the response, the reply, and the applicable law, the Court will make a *Markman* determination but will deny the motion for summary judgment of patent infringement as premature considering the parties previously stipulated that there exists a material fact in dispute, which may affect the validity of the patent. Unless and until a jury decides when the patented device was first sold, which is a necessary prerequisite factual finding for the Court to decide whether the patent is valid, a decision on patent infringement is premature in this case.

---

[1] Rec. Doc. 579.

1

## I.  Background

On May 26, 2009, U.S. Patent No. 7,536,871, for "Icemaker with Improved Cam Assembly" (hereinafter, the "871 patent") was issued to Ronald R. Sciortino ("Sciortino"), the principal of SnoWizard, Inc.  Sciortino claims to have exclusively licensed the patent to SnoWizard, Inc.[2]  "The '871 patent issued to SnoWizard relates to a cam assembly for an ice shaving machine that maximizes the distance an ice-block pusher plate is advanced by a reciprocal handle."[3]  The scope of the invention is limited by 20 claims, of which claims 1 and 11 are in dispute in the pending motion.[4]  Claim 1 provides for:

> A cam assembly for an icemaker having a pusher arm with ratchet teeth comprising:
> a cam connector, the cam connector is adapted to be coupled to a handle of said icemaker; and,
> a cam member having a single elongated structure that has a gradually tapering width from back to front, the back having a forked end pivotally coupled to said cam connector and the front having a second end, the second end has formed in a bottom surface thereof, a[n] indented cavity for receipt of a ratchet tooth.[5]

Claim 11 also provides for:

> An icemaker comprising:
> means for shaving ice;
> a pusher arm with ratchet teeth;
> a handle; and,
> a cam assembly, the cam assembly comprising:
> a cam connector, the cam connector is adapted to be coupled to said handle of said icemaker and
> a cam member having a single elongated structure that has a gradually tapering width from back to front, the back having a forked end pivotally coupled to

---

[2] Rec. Doc. 579-5.

[3] Rec. Doc. 579-1 at pp. 4-5. *See also id.* at Ex. A-1, Column 3 at lns. 63-67, Column 4 at lns. 1-35.

[4] Rec. Doc. 579-5 at pp. 7-8.

[5] *Id.* at p. 7.

said cam connector and the front having a second end, the second end has formed in a bottom surface thereof, a[n] indented cavity for receipt of a ratchet tooth.[6]

Specifically, the parties dispute in the pending motion the interpretation of the phrases: (1) "gradually tapering width from back to front;" and (2) "the second end has formed in a bottom surface thereof, a[n] indented cavity for receipt of a ratchet tooth."

Prior to invention of the cam assembly patented by the 871 patent, Southern Snow and SnoWizard used "old-style ratchet linkages assembled from 2 bars of metal drilled and fitted with 3 steel pins."[7]   The old-style cam assembly had empty spaces between the three steel pins and straight parallel edges along the length of the arm of the cam with a rounded edge.   From 2006 to 2011, Southern Snow claims to have used a cam assembly it "develop[ed] on its own" (hereinafter, "SS-1").[8]   After SnoWizard's 871 patent issued and SnoWizard sued Southern Snow for patent infringement, Southern Snow claims to have developed a new design in September of 2011, which was incorporated into machines in 2012 (hereinafter, "SS-2").[9]   Both SS-1 and the 871 patent have an indented rectangular area on one side and have edges that taper down to a point along the entire length of arm of the cam.   SS-2, on the other hand, has no indentations in the metal and the edges are straight along most of the arm, only tapering at the end.[10]

SnoWizard filed its counterclaim against Southern Snow, Banister & Co. Inc., Milton G. Wendling, Jr., Precision Metalsmiths, Inc., Raggs Supply, LP, Doty Management LLC, Julie K.

---

[6] *Id.* at p. 8.

[7] Rec. Doc. 585 at p. 2.

[8] *Id.  See also* Rec. Doc. 579-6 (photograph of SS-1).

[9] Rec. Doc. 585 at p. 2.  *See also* Rec. Doc. 579-9 (photograph of SS-2).

[10] Rec. Doc. 585 at p. 2.

Doty, and Ron Robinson (collectively, "Plaintiffs")[11] for infringement of the 871 patent on August

29, 2011.[12] SnoWizard maintains that both SS-1 and SS-2 infringe the 871 patent.

Plaintiffs moved for dismissal of the counterclaims against them under Federal Rule of Civil

Procedure 12(b)(6) on September 27, 2011.[13] Prior to resolution of the motion to dismiss, Plaintiffs

filed a Motion for Partial Summary Judgment Dismissing Entire Counterclaim for Patent

Infringement on November 7, 2011.[14] A status conference was conducted on September 27, 2012

wherein the parties stipulated to: (1) denial of Plaintiffs' Motion to Dismiss Counterclaim provided

Defendants amend their Counterclaim for Patent Infringement to include a more definite statement

regarding the "secondary patent infringement" and join Sciortino as a party, and (2) denial of

Plaintiffs' Motion for Partial Summary Judgment Dismissing Counterclaim for Patent Infringement

on the basis of a disputed material issue of fact regarding the on-sale bar.[15] Based on the parties'

stipulations, the Court denied the Plaintiff's Motion to Dismiss Counterclaim[16] and Motion for

Partial Summary Judgment Dismissing Counterclaim for Patent Infringement[17] on September 27,

2012.[18]

---

[11] Precision Metalsmiths, Inc. was never represented by Plaintiffs' counsel and was terminated as a party to the action after settling with SnoWizard, and is therefore excluded from the collective "Plaintiffs."

[12] Rec. Doc. 414.

[13] Rec. Doc. 432.

[14] Rec. Doc. 461.

[15] Rec. Doc. 560.

[16] Rec. Doc. 432.

[17] Rec. Doc. 461.

[18] *See* Rec. Docs. 564 & 565.

On November 6, 2012, SnoWizard filed the pending Motion for a *Markman* Determination and for Summary Judgment of Patent Infringement.[19]  Plaintiffs timely submitted their opposition to the pending motion on November 13, 2012,[20] and SnoWizard subsequently filed a reply to the opposition with leave of Court.[21]

## II.  Parties' Arguments

SnoWizard asks this Court to (1) interpret patent claims 1 and 11 in its 871 patent, and (2) enter summary judgment for SnoWizard on the issue that SS-1, Southern Snow's first version of the cam assembly, infringes SnoWizard's patent.  In opposition, Plaintiffs request that the motion for a *Markman* determination be denied and a *Markman* hearing set, or if the Court is satisfied that sufficient information has been presented, the Court should determine that the words have their "normal dictionary definitions."[22]

### A. *Markman* Determination

The Supreme Court of the United States, in *Markman v. Westview Instruments*,[23] held that the interpretation of patent claims, including the terms of art used, is a question of law to be decided by the Court.[24]  While the parties agree that the interpretation of patent claims is a question of law

---

[19] Rec. Doc. 579.

[20] Rec. Doc. 585.

[21] Rec. Doc. 590.

[22] Rec. Doc. 585 at p. 10.

[23] 517 U.S. 370 (1996).

[24] *Id.* at 372.

for the Court, they dispute the necessity of conducting a claim construction hearing, also known as a *Markman* hearing.  SnoWizard contends that such a determination does not require a formal hearing and may be done at various stages of litigation and through a motion for summary judgment,[25] which SnoWizard claims is especially appropriate where, as here, the subject matter is not highly technical.[26]  In contrast, Plaintiffs argue that a claim construction hearing should be held, because it provides the Court with the "most and best information available in order to construe the patent claims."[27]

Regardless of whether a claim construction hearing is held, the parties dispute the appropriate interpretation of claims 1 and 11.  Specifically, Plaintiffs argue that SnoWizard is impermissibly asking the Court to disregard several claim terms or interpret them as having no meaning.[28]  Plaintiffs further claim that "maybe the claims can be construed on summary judgment," and to that end, Plaintiffs "identif[y] the dictionary definitions and suggest[] how they might be applied to the claim terms."[29]

### 1.  SnoWizard's Interpretation of the Claims

SnoWizard contends that "the [C]ourt should look first to intrinsic evidence, which includes the language of the patent claims, the specification, and the prosecution history of the patent[,]" to

---

[25] Rec. Doc. 579-1 at pp. 2-3 (citing *Elder v. Tanner,* 180 F. Supp. 2d 818, 821 (E.D. Tex. 2001); *PMG Inc. v. Stinger Spike Sys., Inc.,* 2002 WL 31008137, at *2 (N.D. W. Va. 2002); *Utah Med. Prods. Inc. v. Clinical Innovations Assocs., Inc.*, 79 F. Supp. 2d 1290, 1299 (D. Utah 1999); *Leoutsakos v. Coll's Hospital Pharmacy, Inc.*, 51 Fed. App. 310, 312 (Fed. Cir. 2002); *J.G. Peta, Inc. v. Club Protector, Inc.*, 65 Fed. Appx. 724 727 (Fed. Cir. 2003)).

[26] *Id.* at p. 3.

[27] Rec. Doc. 585 at p. 8.

[28] *Id.*

[29] *Id.*

interpret the patent claims.[30]  Further, SnoWizard explains that courts should examine the claims and give them their "ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention."[31]  In doing so, SnoWizard maintains that "terms that are not used in a technical sense may be construed through reference to a general purpose dictionary."[32]  According to SnoWizard, when "claim language is clear on its face, the remaining intrinsic evidence is considered only to determine whether a deviation from that clear definition is specified, either because the patentee set forth a definition of the disputed claim term, or because the patentee distinguished the term from the prior art."[33]

SnoWizard argues that two phrases, both of which are present in claims 1 and 11, are in dispute.  Specifically, SnoWizard explains that the Court must construe the phrases "*gradually tapering width from back to front*" and "*the second end has formed in a bottom surface thereof, (an) indented cavity for receipt of a ratchet tooth*[,]" in order to determine after the trial whether SS-2, Southern Snow's more recently developed cam, infringes the 871 patent.[34]

### a.   Interpretation of "A Gradually Tapering Width from Back to Front"

SnoWizard argues that "gradually" and "tapering" should be given their ordinary meaning as defined by a general-purpose dictionary, because the words are not technical, esoteric, or

---

[30] Rec. Doc. 579-1 at p. 3.

[31] *Id.* at p. 4 (citing *Bell Atlantic Network Servs., Inc. v. Convad Comm. Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001)).

[32] *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1248 (Fed. Cir. 2001).

[33] *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

[34] Rec. Doc. 579-1 at p. 5.

assigned a special definition by the patent specification or prosecution history.[35]  Relying on definitions from the Merriam-Webster Online Dictionary, SnoWizard argues that the claimed limitation defines "a reduction in thickness from back to front."[36]  SnoWizard further claims that the tapering in thickness does not need to be continuous and uniform from the back edge to the front edge, because that limitation is nonexistent in the claims or specifications.  Therefore, SnoWizard reasons that the Court should construe the limitation "a gradually tapering width from back to front" as diminutive (or any) decrease in width at the front of the cam with respect to the back.[37]

   b.  Interpretation of "The Second End has Formed in a Bottom Surface Thereof,
       a[n] Indented Cavity for Receipt of a Ratchet Tooth"

      Again, SnoWizard argues that the claim should be interpreted by reference to a general-purpose dictionary in light of the heavy presumption that claim terms carry their ordinary and customary meaning, absent a specific definition in the prosecution history, patent specification, or by distinguishing the term from the prior art.[38]  Therefore, SnoWizard contends that the ordinary definitions of the key words indicate that the claim defines the bottom surface of the cam member as being "notched, jagged, or having a hollowed out space therein."[39]

---

[35] *Id.* at p. 9.

[36] *Id.* "Taper" is defined as "a gradual diminution of thickness, diameter, or width in an elongated object" or "a gradual decrease."  "Gradual" is defined as "1: proceeding by steps or degrees; 2: moving, changing, or developing by fine or often imperceptible degrees."  *Id.*

[37] *Id.*

[38] *Id.* at p. 7 (citing *Interactive Gift Express, Inc.*, 256 F.3d at 1331).

[39] *Id.* at p. 8.  "Cavity" is defined as "an unfilled space within a mass; especially a hollowed-out space."  "Indent" is defined as "2: to notch the edge of: make jagged 3: indenture; 4: to set (as a line of a paragraph) in from the margin."  *Id.* at p. 8.

2.  *Plaintiffs' Interpretation of the Claims*

Plaintiffs contend that SnoWizard fails to analyze the patent claims with reference to the prior art, which is necessary for claim construction because "the prior art specifies what cannot possibly be covered by the Patent because it already existed."[40]  In addition to proposing alternative claim constructions, Plaintiffs argue that SS-2 does not infringe SnoWizard's 871 patent, because every element of Plaintiffs' proposed claim constructions does not read onto SS-2.  However, the pending motion only evaluates whether SS-1 infringes the 871 patent, and Plaintiffs' arguments relating to SS-2 are irrelevant to the pending motion.[41]

a.  <u>Interpretation of "A Gradually Tapering Width from Back to Front"</u>

Plaintiffs maintain that SnoWizard's interpretation of "a gradually tapering width from back to front" to mean "any[] decrease in width at the front …with respect to the back"[42]  is wrong, because it encompasses the prior art which also diminished in size at one end to form a rounded point.[43]  According to Plaintiffs, SnoWizard's interpretation ignores the fact that the claims define "a single elongated structure" and specify which ends are the "back" and the "front."[44]  Plaintiffs argue that, based on the general-purpose dictionary, the claim should be interpreted to mean "a

---

[40] Rec. Doc. 585 at p. 3.

[41] Although interpretation of the claims will ultimately impact the determination of whether SS-2 infringes SnoWizard's 871 patent, this motion does not evaluate the validity of the allegations of patent infringement by SS-2.

[42] Rec. Doc. 585 at p. 4 (citing Rec. Doc. 579-1 at p. 9).

[43] *Id.*

[44] *Id.* at p. 6.

9

gradual diminution of width, changing by fine or often imperceptible degrees, over the whole 'single elongated structure,' from the 'back' to the 'front.'"[45]

      b.  <u>Interpretation of "The Second End has Formed in a Bottom Surface Thereof, a[n] Indented Cavity for Receipt of a Ratchet Tooth"</u>

Again, Plaintiffs reason that SnoWizard's interpretation of "indented cavity for receipt of a ratchet tooth" to mean "notched, jagged or having a hollowed out space therein" is incorrect because it incorporates the prior art, which had empty spaces for the ratchet teeth to fit into.[46] Because SnoWizard's new ratchet linkage did not have an empty space for the ratchet tooth, Plaintiffs contend that "SnoWizard had to 'invent' an 'indented cavity for receipt of a ratchet tooth.'"[47] Plaintiffs argue that, "[a]ccording to the general-purpose dictionary, 'indented cavity for receipt of a ratchet tooth' in SnoWizard's patent means a hollowed-out space within the body of the piece, set in from the exterior margin of the piece like a notch, which acts as a receptacle or container for the next ratchet tooth."[48]

**B. Summary Judgment of Patent Infringement**

    *1. SnoWizard's Arguments for Summary Judgment*

Although SnoWizard ultimately wants judgments that both of Southern Snow's cam assemblies infringe SnoWizard's 871 patent, this motion only requests summary judgment on

---

[45] *Id.* at p. 7.

[46] *Id.* at p. 4 (citing Rec. Doc. 579-1 at pp. 6-8).

[47] *Id.* at p. 3.

[48] *Id.* at p. 6.

infringement of SnoWizard's patent by SS-1.[49]   According to SnoWizard, a patentee may prove infringement either by showing that an accused product literally infringes a claim in the patent or that the product infringes under the doctrine of equivalents.[50]   Literal infringement requires proof that every limitation set forth in a claim is "found in an accused product, exactly;"[51] whereas, under the doctrine of equivalents, infringement can be shown if every element in the claim is "either literally or equivalently present in the accused product."[52] SnoWizard reasons that analyzing literal patent infringement should proceed in two steps: "proper construction of the asserted claim and then a determination as to whether the accused method or product infringes the asserted claim as properly construed."[53]

SnoWizard claims that "regardless of the Court's ultimate construction of the claims at issue, SS-1 literally infringes the 871 patent."[54]   Specifically, SnoWizard relies on (1) Plaintiff's alleged "judicial admission" that SS-1 infringes the 871 patent, and (2) Defendant Ronald R. Sciortino's personal inspection of the Southern Snow cam assembly, SS-1.

SnoWizard contends that in Civil Action 10-4275,[55] Plaintiffs' counsel, intending to introduce photographs of SnoWizard's patented cam assembly, mistakenly introduced photographs

---

[49] The *Markman* determination that SnoWizard requests is necessary to determine after trial whether SS-2 infringed the 871 patent.

[50] Rec. Doc. 579-1 at p. 10 (citing *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995)).

[51] *Id.* (citing *Southwall Techs., Inc.*, 54 F.3d at 1575).

[52] *Id.*

[53] *Id.* at p. 11 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581 (Fed. Cir. 1996)).

[54] *Id.* at pp. 11-12.

[55] Civil Action No. 10-4275 was originally consolidated with Civil Action No. 06-9170.  Civil Action No. 10-4275 was severed from the consolidated matter by Judge Zainey on February 11, 2011.  No. 10-4275, Rec. Doc. 13.

of SS-1.[56]   The photographs included arrows to more clearly illustrate how the claims of the 871 patent read onto the photographed cam assembly.  Due to the mistake in using photographs of SS-1 instead of SnoWizard's patented cam assembly, SnoWizard argues that Plaintiffs have judicially admitted that SS-1 infringes the 871 patent by demonstrating how the claims of the 871 patent read onto SS-1.[57]

## 2.  Plaintiffs' Arguments Opposing Summary Judgment

First, Plaintiffs argue that summary judgment cannot be granted here because SnoWizard already stipulated that a disputed issue of material fact exists regarding the on-sale bar.[58]   Second, Plaintiffs reiterate the arguments and evidence presented in the motion for partial summary judgment that this Court denied based on the parties stipulations.[59]   Specifically, Plaintiffs argue that patent infringement requires a valid patent, and that element is disputed by the evidence set forth in the motion for partial summary judgment regarding the on-sale bar.[60]   Plaintiffs contend that SnoWizard avoided invalidation of the 871 patent on Plaintiffs' earlier motion for partial summary judgment by stipulating to the Court that material facts were disputed.[61]   However, by filing this new motion for summary judgment, Plaintiffs argue that SnoWizard is repudiating its

---

[56] Rec. Doc. 579-1 at p. 12; Rec. Doc. 579-8.

[57] Rec. Doc. 579-1 at p. 12

[58] Rec. Doc. 585 at p. 8.  Plaintiffs filed a Motion for Partial Summary Judgment Dismissing Entire Counterclaim for Patent Infringement on November 7, 2011.  Rec. Doc. 461.  On September 27, 2012, the pending motion for partial summary judgment was dismissed on the basis of the parties' stipulation in a status conference that there existed a disputed material issue of fact regarding the on-sale bar.  *See* Rec. Docs. 560 & 561.

[59] *Id.*

[60] Rec. Doc. 585 at p. 9.

[61] *Id.*

earlier stipulation.[62]   Third, Plaintiffs aver that SnoWizard merely includes "some photographs from where SnoWizard's owner took the side cover off of a Southern Snow ice-shaving machine to see the ratchet linkage," and SnoWizard has not proven patent infringement, which requires analyzing the elements of the accused device and connecting them to the elements in one or more patent claims.[63]

## III.  Law & Analysis

### A. Markman Determination

In *Markman v. Westview Instruments*,[64] the Supreme Court determined that the interpretation of patent claims is a question of law to be decided by the Court.[65]   The United States Court of Appeals for the Federal Circuit has clarified that "*Markman* does not require a district court to follow any particular procedure in conducting claim construction."[66]   The Federal Circuit further elaborated, saying that:

> [*Markman*] merely holds that claim construction is the province of the court, not a jury.  To perform that task, some courts have found it useful to hold hearings and issue orders comprehensively construing the claims in issue.  Such a procedure is not always necessary, however.  If the district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties.  District courts have wide latitude in how they conduct the proceedings before them, and there is nothing unique about claim construction that requires the court to proceed according to any particular protocol.  As long as the trial court construes the claims to the extent necessary to determine

---

[62] *Id.*

[63] *Id.* at p. 10.

[64] 517 U.S. 370 (1996).

[65] *Id.* at 372.

[66] *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001).

whether the accused device infringes, the court may approach the task in any way that it deems best.[67]

Some district courts have exercised this "wide latitude" to make *Markman* determinations on summary judgment.[68]  Moreover, Respondents have not indicated what, if any, additional information would be presented at a *Markman* hearing.  In fact, both parties argue that the Court should apply the definitions contained in a general-purpose dictionary to construe the patent claims, and the Court does not find that the application of those definitions to the patent claims would be aided by conducting a hearing.

### 1. Law Applicable to Claim Construction

Where words of a claim require interpretation, courts should look to the intrinsic evidence, namely the patent claims, the specification, and the prosecution history.[69]  Reliance on extrinsic evidence is proper only if the intrinsic evidence fails to resolve ambiguities in a disputed claim term.[70]  Terms within patent claims should be given their ordinary and accustomed meanings as understood by one of ordinary skill in the art at the time of the invention.[71]  To that end, courts may consult scientific dictionaries and scientific treatises to determine the ordinary meaning of a

---

[67] *Id.*

[68] *See Leoutsakos*, 51 Fed. Appx. 310; *Elder*, 180 F. Supp. 2d 818; *PMG, Inc.*, 2002 WL 31008137; *Utah Med. Prods., Inc.*, 79 F. Supp. 2d 1290.

[69] *Vitronics Corp.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

[70] *Id.*

[71] *Bell Atlantic*, 262 F.3d at 1267.

technical term,[72] and they may consult a general-purpose dictionary to determine the meaning of non-technical terms.[73]

When claim language is clear on its face, reference to the patent specification and prosecution history is only considered insofar as they set forth a definition deviating from the clear definition of the claim language or the prior art.[74]  Here, both parties rely on a general-purpose dictionary to interpret the patent claims,[75] and neither party suggests that the patent claims in dispute involve the interpretation of any technical or scientific terms, or that the patent specification or prosecution history indicates a definition differing from the ordinary meaning.[76]  Moreover, "there is a heavy presumption in favor of the ordinary meaning of claim language as understood by one of ordinary skill in the art."[77]  Therefore, construction of the disputed claim terms should begin with a general-purpose dictionary.

   2.   Interpretation of "The Second End has Formed in a Bottom Surface Thereof, a[n] Indented Cavity for Receipt of a Ratchet Tooth"

To evaluate the meaning of "the second end has formed in a bottom surface thereof, [a]n indented cavity for receipt of a ratchet tooth," the key disputed terms that may require the Court to consult a dictionary are "indented," "cavity," and "receipt."   The Merriam-Webster Online

---

[72] *Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1372-73 (Fed. Cir. 2001).

[73] *AFG Indus.*, 239 F.3d at 1248.

[74] *See Interactive Gift Express, Inc.*, 256 F.3d at 1331.

[75] *See* Rec. Doc. 585 at pp. 5-8; Rec. Doc. 579 at pp. 8-9.

[76] Although Plaintiffs appear to argue that a *Markman* hearing would aid the Court in construing the patent claims, Plaintiffs do not indicate what if any additional evidence or information would be provided to the Court in a hearing. *See* Rec. Doc. 585 at p. 8.

[77] *Bell Atlantic*, 262 F.3d at 1268.

Dictionary contains the following potentially applicable definitions of "indented": (1) to notch the edge of: make jagged; (2) indenture; and (3) to set (as a line of a paragraph) in from the margin. "Cavity" is defined by the Merriam-Webster Online Dictionary as "an unfilled space within a mass; especially a hollowed-out space." Finally, "receipt" is defined as "the act or process of receiving," and "receiving" is defined as: (1) to come into possession of; (2) to act as a receptacle or container for; (3) to permit to enter; and (4) to support the weight or pressure of.

Having determined the ordinary meaning of the key words, the phrase in dispute seems to have three distinct parts. First, the phrase indicates where the indented cavity must be located: on the second end on the bottom surface. Second, the phrase requires the existence of an indented cavity, at the above-referenced location. SnoWizard's proposed interpretation of "indented cavity" would make the word indented have the same meaning as cavity, or no meaning at all. The definition relied upon must be one that gives meaning to the use of the word "indented" to modify "cavity." Therefore, in this context, "indented cavity" must be a hollowed- out space set in from the margin. Finally, the phrase requires that the indented cavity at the specified location be for a specific purpose: to act as a receptacle or container for the ratchet tooth, to permit the ratchet tooth to enter, or to support the weight or pressure of the ratchet tooth. Therefore, the phrase "the second end has formed a bottom surface thereof, a[n] indented cavity for receipt of a ratchet tooth" means that the bottom surface at the end of the arm of the cam has a hollowed-out space set in from the margin for the purpose of receiving a ratchet tooth.

### 3. Interpretation of "A Gradually Tapering Width from Back to Front"

The parties dispute construction of the phrase "a gradually tapering width from back to front," and, in particular, they dispute the definition of the key words "gradually tapering." The

16

Merriam-Webster Online Dictionary defines "gradual" as "proceeding by steps or degrees" and "moving, changing, or developing by fine or often imperceptible degrees."  The same dictionary defines taper as "a gradual diminution of thickness, diameter, or width in an elongated object" or "a gradual decrease."  Thus, the ordinary meaning of "gradually tapering" is a diminution of thickness, by steps or degrees, in an elongated object.  Here, SnoWizard would have the Court find that it is irrelevant where this tapering occurs, but, in fact, the claim specifies that this gradual tapering occurs from back to front along "a single elongated structure."[78]   Further, within both patent claims at issue, the "front" and "back" of the "single elongated structure" are specified.[79]   Notwithstanding the doctrine of claim differentiation, which SnoWizard notes requires that "each claim in a patent must be interpreted to have a different scope than every other claim,"[80] the terms and phrases within a single claim can and should modify the scope and meaning of that particular claim.  Therefore, the phrase "a gradually tapering width from back to front" should be interpreted to mean a diminution of thickness, by steps or degrees, along the length of the cam member from the back, where the cam member is connected to the cam connector, to the front, where the indented cavity is located.


## B.  Summary Judgment of Patent Infringement

### 1.  Standard on a Motion for Summary Judgment for Patent Infringement

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to

---

[78] *See* Rec. Doc. 579-5 at pp. 7-8 (claims 1 and 11).

[79] *Id.*

[80] Rec. Doc. 579-1 at p. 8 (citing *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement."))

judgment as a matter of law."[81]   When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[82]   All reasonable inferences are drawn in favor of the nonmoving party,[83] but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[84]   If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[85]

### 2.  *Patent Validity*

Although SnoWizard has moved for summary judgment of patent infringement of the 871 patent by SS-1, the validity of the 871 patent has not yet been resolved.  The Court recognizes that validity and infringement are two distinct issues.  Here, however, the parties have stipulated that there is a disputed issue of material fact relating to the on-sale bar, which must be resolved before the validity of the 871 patent can be evaluated.[86]   Because the infringement issues will not be decided until the validity of the patent is determined, SnoWizard's motion for summary judgment of patent infringement is premature.  Nevertheless, the Court examines the alleged infringement, and

---

[81] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Southwall Techs., Inc.*, 54 F.3d at 1575.

[82] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[83] *SRI Int'l*, 775 F.2d at 1116.

[84] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[85] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[86] *See* Rec. Docs. 564 & 565.

notes that there are no material issues of fact in dispute regarding whether the claims of the 871 patent read onto SS-1.

### 3.  Literal Infringement of the 871 Patent

A patentee may prove infringement either by showing that an accused product literally infringes a claim in the patent or that the product infringes under the doctrine of equivalents.[87] Literal infringement requires proof that every limitation set forth in a claim is found in an accused product, exactly;[88] whereas, a product may infringe under the doctrine of equivalents if every element in the claim is either literally or equivalently present in the accused product.[89] "A claim element is equivalently present in an accused device if only insubstantial differences distinguish the missing claim element from the corresponding aspects of the accused device."[90]

Literal patent-infringement analysis involves two steps: proper construction of the asserted claim and then a determination as to whether the accused method or product infringes the asserted claim as properly construed.[91]  As discussed above, the construction of a patent, including terms of art within a claim, are exclusively within the province of the court.[92]  The existence of literal infringement is determined by a word-by-word reading of the patent claims onto the accused

---

[87] *Southwall*, 54 F.3d at 1579.

[88] *Id.* at 1575.

[89] *Sage Prods., Inc. v. Devon Indus. Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997).

[90] *Id.*

[91] *Vitronics*, 90 F.3d at 1581-82.

[92] *Markman*, 517 U.S. at 387.

product.[93]  The failure of the accused product to meet a single claim limitation is sufficient to negate literal infringement of the claim.[94]

### 4. *Application of the 871 Patent Claims to SS-1*

In the pending motion, SnoWizard asks the Court to determine if SS-1, Southern Snow's cam assembly used from 2006 to 2011, infringes the 871 patent.  First, a comparison of the photographic evidence submitted along with the briefs, reveals that SS-1 and SnoWizard's patented cam assembly are virtually identical.[95]  To aid in this claim-by-claim comparison of the accused product and the 871 patent, SnoWizard attaches an exhibit to its memorandum in support of the motion, wherein arrows and labels are used to demonstrate how the 871 patent reads onto the accused product.[96]  It is clear from the evidence that each and every claim of the 871 patent reads onto SS-1.  Additionally, SnoWizard submits the declaration of Sciortino, the inventor of the patented cam assembly, wherein Sciortino submits statements under oath that each and every element of claim 1 and claim 11 are found in SS-1.[97]  Plaintiffs have not presented any evidence, nor is there any evidence in the record, to refute the evidence submitted by SnoWizard that SS-1 infringes the 871 patent.

---

[93] *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

[94] *Id.*

[95] *See* Rec. Docs. 579-5, 579-6, 579-7, 579-8; Rec. Doc. 585 at pp. 2-3.

[96] *See* Rec. Doc. 579-8.  These pictures were originally submitted by Plaintiffs' counsel, Mark Andrews, in Civil Action No. 10-4275, to demonstrate how the 871 patent reads onto SnoWizard's cam assembly.  No. 10-4275, Rec. Docs. 18-4, 18-6, 18-7.  Andrews inadvertently used a Southern Snow cam assembly in the exhibits, instead of the SnoWizard cam assembly, and the Court did not allow the evidence to be withdrawn. No. 10-4275, Rec. Doc. 24.

[97] Rec. Doc. 579-4.

Second, Plaintiffs recognize in their opposition that "after SnoWizard sued Southern Snow for patent infringement, Southern Snow developed a newer design in September 2011, which … went into Southern Snow ice-shaving machines in 2012.  Southern Snow's newest ratchet linkage [SS-2] was designed to avoid SnoWizard's Patent."[98]  Plaintiffs further state that the new ratchet linkage went back to the prior-art by having essentially straight sides—a "change that was intended to avoid the Patent by going back to the prior art."[99]

Based on Plaintiffs own admissions and the evidence submitted by SnoWizard, there is no genuine issue as to any material fact that the patent claims of the 871 patent are present in SS-1. However, the Court finds that summary judgment is not appropriate regarding the issue of patent infringement, because an initial decision that the patent is valid must be made, and the issue of validity cannot be reached on a motion for summary judgment because the parties have stipulated to the existence of a disputed issue of material fact regarding when the patented device was first sold.

## IV.  Conclusion

Having determined that the Court has enough information to make a *Markman* determination without holding a hearing, claims 1 and 11 of the 871 patent should be construed in accordance with the foregoing interpretation.[100]  Although the Court also finds that the claims of the 871 patent read onto SS-1, summary judgment is not appropriate here because the validity of the patent has yet to be determined.  Accordingly,

---

[98] Rec. Doc. 585 at p. 2.

[99] *Id.*

[100] *See supra* Part IV.A.2 & IV.A.3.

**IT IS HEREBY ORDERED** that SnoWizard's Motion for a *Markman* Determination and for Summary Judgment of Patent Infringement[101] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the *Markman* determinations as to the disputed phrases are as follows: (1) "the second end has formed in a bottom surface thereof, a[n] indented cavity for receipt of a ratchet tooth" means that the bottom surface at the end of the arm of the cam has a hollowed-out space set in from the margin for the purpose of receiving a ratchet tooth; and (2) "a gradually tapering width from back to front" means a diminution of thickness, by steps or degrees, along the length of the cam member from the back, where the cam member is connected to the cam connector, to the front, where the indented cavity is located.

**IT IS FURTHER ORDERED** that SnoWizard's motion is **DENIED** as premature insofar as it requests summary judgment of patent infringement by SS-1, because questions regarding the validity of the patent have not been resolved.

**NEW ORLEANS, LOUISIANA**, this <u>2nd</u>  day of January, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[101] Rec. Doc. 579.

22