UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOUTHERN SNOW MANUFACTURING CO., INC.          CIVIL ACTION

VERSUS                                                       NO.    06-9170
                                                                    09-3394
                                                                    10-0791
                                                                    11-1499

SNOWIZARD HOLDINGS, INC., et. al.                    SECTION: "G" (1)

<u>**ORDER AND REASONS**</u>

Before the Court is Defendants SnoWizard, Inc. ("SnoWizard") and Ronald R. Sciortino (collectively, "Defendants") Motion for Summary Judgment on Duplicative Claims[1] in Civil Action No. 11-1499, which was consolidated with Civil Actions Nos. 06-9170, 09-3394, and 10-0791 by another section of this Court before the matter was transferred here.   Therein, Defendants move the Court to grant summary judgment against plaintiffs Southern Snow Manufacturing Co., Inc., Simeon, Inc., Snow Ingredients, Inc., Theodore Eisenmann, Parasol Flavors, LLC, Raggs Supply, LP, and Special T Ice Co., Inc. (collectively, "Plaintiffs"). Defendants argue that summary judgment is warranted because no genuine dispute of material fact exists that Plaintiffs' claims arising out of SnoWizard's alleged fraudulent assertion of trademark rights in nineteen trademarks are duplicative of substantially identical claims previously alleged by the same plaintiffs or their privies in Civil Actions Nos. 06-9170, 09-3394, and 10-0791, and should therefore be dismissed.[2]  Additionally or in the alternative, Defendants

---

[1] R. Doc. 580 (All docket references are in Civil Action No. 06-9170 unless otherwise indicated.).

[2] *Id.* at pp. 1-2.

1

move for dismissal of Plaintiffs' claims for damages for fraudulent procurement of trademarks, damages and injunctive relief for unfair competition, and declaratory judgment of invalidity and unenforceability of the trademarks MOUNTAIN MAPLE and SNOSWEET, because Plaintiffs have no evidence to support essential elements of the claims or rebut the presumption of trademark validity.[3]  Having considered the motion, the memorandum in support, the response, the record, and the applicable law, the Court will grant in part and deny in part the motion for summary judgment.

## I.  Background

### A.  Factual Background[4]

"Snowballs" or "snoballs" are shaved ice confections flavored and colored with "flavoring syrups" made from "flavor concentrate" mixed with simple syrup.[5]  In this case, all parties are engaged in the sale, distribution, or manufacture of snowballs.  SnoWizard, owned by Defendant Ronald R. Sciortino ("Sciortino"), is a manufacturer and purveyor of snowball flavor concentrates and ice-shaving machines that it sells at wholesale, at retail, and as private labelings.[6]  In the early 1980s, SnoWizard sold flavor concentrates manufactured by the Charles Dennery Company,[7] but, in the mid-2000s, SnoWizard began asserting various state and federal trademark rights in flavor concentrates it manufactured.[8]  Between 2003 and 2008, SnoWizard

---

[3] *Id.* at pp. 2-3.

[4] The Court has previously set forth the factual background of the consolidated cases throughout the record and will only provide a concise summary here.  *See* R. Docs. 332, 605 (detailed factual backgrounds).

[5] R. Doc. 412 ¶ 52.

[6] Civ. Action No. 11-1499, R. Doc. 1 ¶ 27.

[7] *Id.* at ¶ 67.

[8] *See id.* ¶ 58; R. Doc. 412 ¶ 15.

registered 22 trademarks.[9]   As SnoWizard began to enforce its perceived intellectual property rights, particularly by sending cease and desist letters to other participants in the snowball industry,[10] this litigation ensued.

### B.  Procedural Background

In 2006, Southern Snow Manufacturing Co, Inc. ("Southern Snow"), a competing manufacturer and purveyor of ice-shaving machines and flavor concentrates, filed the first lawsuit in Louisiana state court alleging, that SnoWizard fraudulently procured federal trademark registration of ORCHID CREAM VANILLA; made false assertions of trademark infringement of ORCHID CREAM VANILLA and WHITE CHOCOLATE & CHIPS; made false assertions of trademark rights in SNOBALL;[11] and violated the Louisiana Unfair Trade Practices and Consumer Production Act ("LUTPA"), La. Rev. Stat. 51:1405.[12]   Southern Snow separately brought an administrative cancellation action against ORCHID CREAM VANILLA in the U.S. Patent and Trademark Office ("USPTO"). SnoWizard removed the case to this Court as Civil Action No. 06-9170 and counterclaimed against Southern Snow for trademark infringement, unfair competition, and dilution of ORCHID CREAM VANILLA and WHITE CHOCOLATE & CHIPS.[13]   Civil Action No. 06-9170 was assigned to Judge Jay C. Zainey, Section "A."   In January 2008, Civil Action 06-9170 was stayed pending action on ORCHID CREAM VANILLA by the USPTO Trademark Trial and Appeal Board ("TTAB").  In December 2009

---

[9] R. Doc. 412 ¶ 15.

[10] *Id.* ¶¶ 166, 176.

[11] SnoWizard has clarified that it makes no claim to the term SNOBALL. Opp'n, R. Doc. 246 at p. 4 n. 1.

[12] R. Doc. 1-1 ¶¶ 4-10.  *See* R. Doc. 580-2 at pp. 2-3 (citing Pet., R. Doc. 1).

[13] R. Doc. 580-2 at pp. 2-3. (citing Countercls., R. Doc. 4).

the TTAB rendered its decision cancelling the registration for ORCHID CREAM VANILLA after finding the term to be merely descriptive.[14]

On April 28, 2009, Southern Snow and a new plaintiff, Parasol Flavors, LLC ("Parasol") filed Civil Action No. 09-3394, which was allotted to Judge Mary Ann Vial Lemmon, Section "S."[15]  Parasol is a manufacturer and reseller of flavor concentrates that sells at wholesale to Raggs Supply, LP and Special T Ice, Co., Inc. and at retail to Plum Street Snoballs.[16]  Southern Snow and Parasol alleged various violations of federal and state law for SnoWizard's assertions of trademark rights in the marks BUTTERCREAM, BUTTERED POPCORN, CAKE BATTER, DILL PICKLE, GEORGIA PEACH, HURRICANE, KING CAKE, MUDSLIDE, PRALINE, and SNOSWEET.[17]  Specifically, Plaintiffs' claimed damages for fraudulent procurement of trademark registrations under Section 38 of the Lanham Act, 15 U.S.C. § 1120; damages for unfair trade practices under the LUTPA, La. Rev. Stat. 51:1405 *et seq*; and cancellation of trademark registrations under 15 U.S.C. § 1119.[18]  SnoWizard filed counterclaims of trademark infringement, unfair competition, and dilution on the marks HURRICANE, KING CAKE, BUTTERED POPCORN, PRALINE, MUDSLIDE, DILL PICKLE, BUTTERCREAM, and SNOSWEET.[19]

---

[14] On March 23, 2011, the Court entered an order granting summary judgment in Plaintiffs' favor as to ORCHI CREAM VANILLA, in essence affirming the decision of the TTAB as to the mark's descriptive nature.  R. Doc. 332 (citing R. Doc. 229).

[15] *Id.* at p. 3 (citing Compl., Civ. Action No. 09-3394, R. Doc. 1).

[16] R. Doc. 412 ¶ 69.

[17] R. Doc. 580-2 at p. 3 (citing First Am. Compl., Civ. Action No. 093394, R. Doc. 19).

[18] First Am. Compl., Civ. Action No. 09-3394, R. Doc. 19.

[19] R. Doc. 580-2 at p. 3 (citing Countercls., Civ. Action No. 09-3394, R. Doc. 22).

4

On February 25, 2010, on cross motions for summary judgment,[20] Judge Lemmon dismissed "[P]laintiffs' claims for damages for the procurement of trademark registration under 15 U.S.C. § 1120 and La. Rev. Stat. 51:1405," because Plaintiffs did not "put forth evidence that there are disputed issues of material fact on the elements of cognizable injury or ascertainable loss."[21]   Judge Lemmon also dismissed SnoWizard's claims of infringement of the marks PRALINE, KING CAKE, BUTTERED POPCORN, GEORGIA PEACH, DILL PICKLE and BUTTERCREAM, because there were no disputed issues of material fact that the terms were generic.[22]   SNOSWEET was not part of the ruling.[23]

On March 2, 2010, Southern Snow and Parasol filed a Notice of Collateral Proceeding Under Local Rule LR3.1, and Judge Lemmon transferred Civil Action No. 09-3394 to Judge Zainey in Section "A" on March 5, 2010.[24]   On March 4, 2010, Southern Snow, Parasol, and a new plaintiff, Simeon, Inc. ("Simeon"), filed Civil Action No. 10-0791 against SnoWizard and additional notices of related cases in the three pending lawsuits.[25]   Simeon—a company related to Southern Snow through common ownership by Milton G. Wendling Jr.—owns rights, recipes, and designs for snowball-related products.[26]

The third lawsuit, Civil Action No. 10-0791 asserted various claims against SnoWizard for infringement of SOUTHERN SNOW and FLAVOR SNOW and challenged the validity of

---

[20] SnoWizard's partial motion for summary judgment did not include the claims for cancellation or prevention of federal trademark registration under § 37 of the Lanham Act, 15 U.S.C. § 1119.  Order & Reasons, Civ. Action No. 09-3394, R. Doc. 56 at p. 6 n. 1.

[21] Order & Reasons, Civ. Action No. 09-3394, R. Doc. 56 at p. 12.

[22] R. Doc. 580-2 at p. 3 (citing *id.* at pp. 10-12).

[23] *See* Civ. Action No. 09-3394, R. Doc. 56.

[24] *Id.* at p. 4.

[25] *Id.*

[26] *Id.* at p. 13; R. Doc. 412 ¶ 70.

SnoWizard's trademarks for CAJUN RED HOT, CHAI LATTEA, COOKIE DOUGH, MOUTAIN MAPLE, SNOFREE, SNOSOUR, SNOBALLS (design), SWISS ALMOND COCO, TIRAMASU, and ZEPHYR.[27]   Specifically, Plaintiffs sought monetary and injunctive relief under the Lanham Act, as well as state law recovery pursuant to the LUTPA, La. Rev. Stat. 51:1405, *et seq.*, and Louisiana Civil Code Article 2315.[28]   SnoWizard counterclaimed for trademark infringement, unfair competition, and dilution of CAJUN RED HOT, MOUNTAIN MAPLE, and GEORGIA PEACH[29] and for cancellation of SOUTHERN SNOW and FLAVOR SNOW.[30]

On May 13, 2010, Judge Zainey consolidated Civil Actions Nos. 06-9170, 09-3394, and 10-0791.[31]   On April 18, 2011, on cross motions for summary judgment, Judge Zainey dismissed all of Plaintiffs' unfair competition claims based on alleged false advertising, concluding that

> Plaintiffs have no claim for unfair competition under the Lanham Act or LUTPA insofar as they rely on the legal assertion that use of trademarking symbols with a generic term constitutes a literally false statement,[32]

and that:

> Plaintiffs have no evidence of materiality, *i.e.*, how the presence of those TMs are likely to influence the customers' purchasing decision, or of actual deception, which is necessary for monetary relief, or of the tendency to deceive, which is necessary for injunctive relief.[33]

---

[27] R. Doc. 580-2 at p. 4; R. Doc. 332 at p. 3; Am. Compl., Civ. Action No. 10-0791, R. Doc. 9 ¶ 6.

[28] Am. Compl., Civ. Action No. 10-0791, R. Doc. 9.

[29] The March 23, 2011, Order and Reasons also granted summary judgment in Plaintiffs' favor as to GEORGIA PEACH.  R. Doc. 332 (citing R. Doc. 299 at p. 19).

[30] R. Doc. 580-2 at p. 4 (citing Countercls., R. Doc. 168).

[31] *Id.* (citing R. Doc. 122).

[32] Order & Reasons, R. Doc. 332 at p. 32.

[33] *Id.* at p. 33.

Also on April 18, 2011, Judge Zainey granted SnoWizard's motion for partial summary judgment as to the validity of SnoWizard's federally registered trademarks MOUNTAIN MAPLE and SNOSWEET, because Southern Snow, Parasol, and Simeon had "offered no evidence to rebut the presumption of validity" attached to registered trademarks.[34]

On June 24, 2011, approximately one month before trial was scheduled to begin, Plaintiffs filed Civil Action No. 11-1499, naming a new defendant, the owner and principal officer of SnoWizard, Sciortino, and six new plaintiffs: Snow Ingredients, Inc. ("Snow Ingredients"), Theodore Eisenmann ("Mr. Eisenmann"), Raggs Supply, LP ("Raggs"), Special T Ice Co., Inc. ("Special T"), Plum Street Snoballs ("Plum Street"), and Van's Snowballs ("Van's").[35]  Snow Ingredients, a manufacturer and purveyor of ice-shaving machines and flavor concentrates, is related to Southern Snow and Simeon through common ownership by Milton J. Wendling, Jr.[36]  Snow Ingredients also sells at wholesale to Raggs and Special T and at retail to Plum Street.[37]  Mr. Eisenmann is a former owner of Eisenmann Products, a manufacturer of flavor concentrates and ice-shaving machines under the trademark FLAVOR SNOW. Eisenmann Products' FLAVOR SNOW business was sold in 2006 to the owner of Southern Snow, but Mr. Eisenmann continues a relationship with the FLAVOR SNOW business.[38]  Raggs and Special T are distributors of flavor concentrates and ice-shaving machines, and distribute Southern Snow, Snow Ingredients, and Parasol products.[39]  Plum Street and Van's are vendors of

---

[34] Order & Reasons, R. Doc. 333.

[35] Compl., Civ. Action No.11-1499, R. Doc. 1.

[36] R. Doc. 412 ¶ 72.

[37] *Id.*

[38] *Id.* ¶ 66

[39] *Id.* ¶¶ 67-68.

snowballs at retail to the general public and customers of Southern Snow, Snow Ingredients, and Parasol.[40]

Three days before filing Civil Action No. 11-1499 ("11-1499), Plaintiffs filed Plaintiffs' Status Report notifying the Court that they anticipated filing a fourth lawsuit that would put the Court "into the position of making duplicative efforts regarding the upcoming 18-20 July 2011 jury trial in 06-9170."[41]   In response to Plaintiffs' Status Report and the filing of the new action, Judge Zainey issued an ordered cancelling the pretrial conference and setting a principals conference.[42]   According to SnoWizard, Judge Zainey proposed consolidating the cases, while Plaintiffs proposed dismissing the prior pending cases because the new case "was merely duplicative" and because it would "clean up" the Court's docket; however, SnoWizard objected to Plaintiffs' proposal.[43]   Judge Zainey ultimately consolidated 11-1499 with Civil Actions Nos. 06-9170, 09-3394, and 10-0791 (hereinafter, "consolidated civil matter 06-9170"), and continued the trial to January 14, 2013.[44]

On October 7, 2011, consolidated matter 06-9170 was reassigned to this Section, Section "G," as part of a new docket created for the newly appointed judge.[45]   On August 30, 2011, Defendants filed a Motion to Dismiss Alleged RICO Claims Under Rule 12(b)(6);[46] wherein, Defendants asked the Court to dismiss Plaintiffs' claims under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. 1961, *et seq.* in the Amended Complaint.  The Amended

---

[40] *Id.* ¶ 65.

[41] R. Doc. 376.

[42] R. Doc. 382.

[43] R. Doc. 580-2 at p. 8.

[44] R. Doc. 383.

[45] R. Doc. 439.

[46] R. Doc. 415.

Complaint attempted to recharacterize many of the trademark infringement facts as predicate criminal acts under RICO, but the Court dismissed all asserted RICO claims because the allegations did not constitute the predicate criminal acts necessary for a RICO claim.[47]  Thus, at the time of filing the instant motion, the majority of the claims relating to the disputed trademarks remaining in the amended complaint in 11-1499 were similar to those claims first asserted in Civil Actions Nos. 06-9170, 09-3394, and 10-791 (hereinafter, the "original cases").

## C.  The Pending Motion

On November 6, 2012, Defendants filed the pending Motion for Summary Judgment on Duplicative Claims,[48] wherein Defendants request that Counts 19-21, 24-27, 29-81, and 83-84 of the Amended Complaint in 11-1499 relating to the marks BUTTERCREAM, BUTTERED POPCORN, CAJUN RED HOT, CAKE BATTER, CHAI LATTEA, COOKIE DOUGH, DILL PICKLE, GEORGIA PEACH, HURRICANE, KING CAKE, MOUTAIN MAPLE, MUDSLIDE, ORCHID CREAM VANILLA, PRALINE, SNOBALL, SNOFREE, SNOWSWEET, TIRAMISU, and WHITE CHOCOLATE & CHIPS be dismissed, because Defendants argue that "there is no genuine dispute of material fact that said claims are duplicative of substantially identical claims and causes of action previously alleged by the same plaintiffs or their privies in the original cases, thereby violating the rule against claim-splitting. Additionally, or in the alternative, Defendants request that the claims for alleged fraudulent procurement of trademarks under the Lanham Act, 15 U.S.C. § 1120, Louisiana trademark law,

---

[47] R. Docs. 561, 605.

[48] R. Doc. 580.

La. Rev. Stat. 51:221, and the LUTPA, La. Rev. Stat. 51:1409[49] be dismissed because there is no evidence of a cognizable injury or ascertainable loss—an essential element of Plaintiffs' claims.[50]   Likewise, Defendants request dismissal of Plaintiffs' claims for damages and injunctive relief for alleged unfair competition under the Lanham Act, 15 U.S.C. § 1125, the LUTPA, La. Rev. Stat. 1405 *et seq.*, the Louisiana Civil Code Article 2315, and Texas law,[51] because there is no evidence of materiality, actual deception, or a tendency to deceive—an essential element of Plaintiffs' claims.   Finally, Defendants request that Plaintiffs' claims for declaratory judgment of alleged invalidity and unenforceability of SnoWizard's federally registered trademarks MOUNTAIN MAPLE and SNOSWEET under 28 U.S.C. § 2201(a) be dismissed,[52] because there is no evidence to rebut the presumption of validity afforded the registered trademarks.[53]   Plaintiffs timely opposed the motion on November 20, 2012[54] and filed a Supplemental Memorandum Identifying New Precedent Informing Plaintiffs' Opposition to SnoWizard's MSJ on Duplicative Claims[55] on November 30, 2012 with leave of Court.

---

[49] Specifically, Defendants request dismissal of Counts 20, 26, 32, 34, 36, 53, 55, 57, 59, 61, 63, 65, 67, 69, 71, 73, 75, 77, and 79.  R. Doc. 580 at p. 2.

[50] R. Doc. 580 at p. 2.

[51] Specifically, Defendants request dismissal of Counts 19, 23, 25, 29, 51, 80-81, and 83.  R. Doc. 580 at p. 3.

[52] Specifically, Defendants request dismissal of Counts 27 and 37. R. Doc. 580 at p. 3.

[53] The Amended Complaint also alleged RICO claims in Counts 1-13, which this Court dismissed on September 27, 2012; antitrust claims in Counts 14, 82 and 85; patent law claims in Counts 15-17; and trademark infringement claims arising out of the use of the marks ORCHID CREAM VANILLA, SILVER FOX, and SNOBALL. R. Doc. 580-2 at p. 7.  None of the aforementioned claims are at issue in the instant motion. *Id.*

[54] R. Doc. 587.

[55] R. Doc. 595.

## II.  Parties' Arguments

### A.  Duplicative Claims

#### 1. SnoWizard's Motion for Summary Judgment on the Basis of Claim-Splitting

According to Defendants, the rule against claim-splitting—an "application of the doctrine of res judicata"[56]—is particularly applicable in a case such as this one to prevent Plaintiff's from obtaining a procedural advantage by "circumventing the rules pertaining to the amendment of complaints."[57]   Defendants' contend that Plaintiffs' duplicative claims should be dismissed because they have no right to maintain two separate actions involving the same causes of action and the same defendants or their privies.[58]

Defendants argue that 11-1499 involves the same causes of action as the original cases because the allegations are "based on the same nucleus of operative fact."[59]   Specifically, Defendants contend that based on the same factual allegations Plaintiffs set forth the following duplicative causes of action:

- The Second Amended Complaint[60] in Civil Action No. 06-9170 alleges causes of action arising out of SnoWizard's assertion of trademark rights in ORCHID CREAM VANILLA, WHITE CHOCOLATE & CHIPS, and SNOWBALL that are allegedly duplicative of Counts 19-21, 29-30, 78-81, and 83-84 in 11-1499.[61]

---

[56] R. Doc. 580-2 at p. 9 (quoting *Hayes v. Solomon*, 597 F.2d 958, 982 (5th Cir. 1979)).

[57] *Id.* (quoting *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 362 (5th Cir. 1996)).

[58] *Id.* at p. 10 (citing *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985)).

[59] *Id.* (quoting *F.D.I.C. v. Nelson*, No. 93-1590, 1994 WL 93409, at *2 n. 5 (5th Cir. 1994)).

[60] R. Doc. 113.

[61] R. Doc. 580-2 at pp. 11-12.

- The Third Amended Complaint[62] in Civil Action No. 09-3394 alleges causes of action arising out of SnoWizard's assertion of trademark rights in SNOSWEET, HURRICANE, KING CAKE, BUTTERED POPCORN, GEORGIA PEACH, PRALINE, MUDSLIDE, CAKE BATTER, DILL PICKLE, and BUTTERCREAM that are allegedly duplicative of Counts 26-27, 34-35, 38-39, 44-48, 52-53, 56-57, 60-67, 70-71, 75-75, 80-81 and 83-84 in 11-1499.[63]

- The Amended Complaint[64] in Civil Action No. 10-0791 alleges causes of action arising out of SnoWizard's assertion of trademark rights in CAJUN RED HOT, CHAI LATTEA, COOKIED DOUGH, MOUNTAIN MAPLE, SNOFREE, and TIRAMISU that are allegedly duplicative of Counts 32-33, 36-37, 41-43, 54-55, 58-59, 68-69, 72-73, 76-77, 80-81, and 83-84 in 11-1499.[65]

Defendants also argue that the rule-against claim splitting applies because the parties in the original cases and 11-1499 are either identical or in privity.[66]  Defendants note that Southern Snow is an identical plaintiff in all four cases; Parasol is an identical Plaintiff in three of the cases; and Simeon is an identical plaintiff in two of the cases.  According to Defendants, the six remaining plaintiffs are in privity with the three parties in the original cases.

Defendants argue that Southern Snow, Simeon, and Snow Ingredients are in privity because they are related through common ownership by Milton J. Wendling, Jr.  Defendants rely

---

[62] R. Doc. 167.

[63] R. Doc. 580-2 at pp. 11-12.

[64] Civ. Action No. 10-791, R. Doc. 9.

[65] R. Doc. 580-2 at pp. 11-12.

[66] *Id.* at p. 12.

12

on a Washington district court's finding in *Déjà vu, Inc. v. Spokane County*[67] that privity existed among corporations sharing "significant common ownership" as well as "a director, management, corporate headquarters, registered agent, and legal representation."[68]   Defendants contend that *Pet Product Innovations, LLC v. Paw Wash, LLC*[69] supports Defendants position that Mr. Eisenmann's continuing relationship with the FLAVOR SNOW business and ongoing financial interest in the nature of a commission on at least some sales constitutes privity, because in *Pet Product* the Court found that "[t]wo companies are in privity when one sells its assets to another, and the purchaser then uses those assets to continue manufacturing and selling the seller's products."[70]   Because the Illinois district court also found in *Pet Product* that privity "exists between a distributor of infringing products and a manufacture who was previously found to be infringing on a patent by manufacturing those products and subsequently enjoined from selling them," Defendants contend that privity exists between the manufacturers Southern Snow, Parasol, and Snow Ingredients, and their distributors, Special T and Raggs.[71]

Relying on the Fifth Circuit's opinion in *Meza v. General Battery Corp.*,[72] Defendants explain that Plum Street and Van's, as "customers" of Southern Snow and Parasol, are in privity with them, because Southern Snow and Parasol are "accountable" for the consequences of the prior suits alleging identical claims.[73]

---

[67] 46 F. Supp. 2d 1083 (E.D. Wash. 1998).

[68] *Id.* at 1086.

[69] No. 11C7182, 2012 WL 2022038 (N.D. Ill. June 5, 2012).

[70] *Id.* at *6.

[71] R. Doc. 580-2 at p. 14 (citing *id.* at *7).

[72] 908 F.3d 1262 (5th Cir. 1990).

[73] R. Doc. 580-2 at p. 14 (citing *id.* at 1266).

Defendants conclude that the original cases and 11-1499 advance the same claims made by identical parties and parties in privity with the Southern Snow, Parasol, and Simeon. Therefore, Defendants argue that the Court should apply the rule against claim-splitting and dismiss Counts 19-21, 24-27, 29-81, and 83-84 in 11-1499 to prevent Plaintiffs from achieving a significant "procedural advantage" by circumventing the Court's prior rulings, deadlines set forth in the scheduling order, and trial schedule.[74]

### 2. Plaintiffs' Opposition to SnoWizard's Motion for Summary Judgment

Plaintiffs argue in opposition that SnoWizard does not establish privity among the parties sufficient to invoke the rule against claim-splitting.[75]  Plaintiffs concede that Southern Snow, Simeon, and Snow Ingredients are closely related through common ownership, but maintain that this nonetheless results in seven unrelated plaintiffs.   Plaintiffs explain that Parasol is a competing manufacturer of flavor concentrates with no relationship to Southern Snow, Snow Ingredients, and Simeon.   Furthermore, Plaintiffs state that the two distributors of snowball supplies, Special T and Raggs, are not in privity with each other, because they are in different states and the owners have never met each other. Finally, Plaintiff explains that Plum Street and Van's are "snowball stands on the opposite side of the Mississippi River," and therefore, are not in privity with each other.[76]   Plaintiffs conclude that summary judgment should be denied,

---

[74] *Id.* at pp. 14-15 (citing *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 362 (5th Cir. 1996)).

[75] R. Doc. 587 at p. 2.

[76] *Id.*

because SnoWizard has not established privity among the individual plaintiffs as an uncontroverted fact.[77]

Plaintiffs also contend that summary judgment on the allegedly duplicative claims in 11-1499 should be denied, because these are different claims. Specifically, Plaintiffs note that SnoWizard "applied for federal and state registration of most of the trademarks that SnoWizard now claims" in mid-2008, after the first lawsuit was filed in 2006, and those allegations were therefore not included in the first lawsuit.[78] Plaintiffs also note that Parasol was not prompted to file a lawsuit until SnoWizard sent a cease-and-desist letter in April 2009, several of the trademark applications filed in 2008 were not accepted or denied until 2009 or 2010, and SnoWizard filed addition trademark applications in 2010 and 2011.[79]

Finally, Plaintiffs argue that SnoWizard has "overstated" the applicability of the claim-splitting rule to this case.[80] First, Plaintiffs contend that only final judgments can possibly have any *res-judicata* "effect on anything," and "[w]hen a district court declines to re-hear or re-hash a prior order in still-pending litigation[] that is docket management, not *res judicata*."[81] Plaintiffs further reason that "the existence of consolidation as a method of docket management shows that separate, related lawsuits are an acceptable occurrence."[82] Second, Plaintiffs suggest that the Fifth Circuit's opinion in *Oliney v. Garnder*,[83] upon which SnoWizard relies, is distinguishable from this case, because the parties and claims in the two lawsuits involved in

---

[77] *Id.*

[78] *Id.* at p. 3.

[79] *Id.*

[80] *Id.*

[81] *Id.* at p. 2.

[82] *Id.* at p. 3.

[83] 771 F.2d 856 (5th Cir. 1985).

*Oliney* were exactly the same, the second action was filed in a different state when the defendant permanently changed citizenship for diversity purposes by moving, and the cases were never consolidated.[84]   Third, Plaintiffs contend that "SnoWizard fails to specify that any such dismissal should be without prejudice if the first action has not gone to final judgment,"[85] or that "a stay or consolidation of the actions, are also equally valid ways to address the [duplicative lawsuit]."[86]

## B.  Absence of Evidence on Alleged Fraudulent Procurement Claims

Defendants request dismissal of the alleged fraudulent procurement claims in 11-1499,[87] because Plaintiffs have failed to demonstrate evidence of an essential element of the claims under Section 38 the Lanham Act, 15 U.S.C. § 1120 (hereinafter, the "Lanham Act § 38"), the Louisiana Trademarks, Trade Names, and Domain Names, La. Rev. Stat. 51:221, and the LUTPA, La. Rev. Stat. 51:1409 (hereinafter, the "LUTPA § 1409").[88] According to Defendants, Lanham Act §38 and La. Rev. Stat. 51:221 requires Plaintiffs to establish "damages sustained in consequence" of the fraudulently procured trademark;[89]  similarly, the LUTPA § 1409 requires Plaintiffs to show "an ascertainable loss."   In support of their position that Plaintiffs have not provided any evidence of a cognizable injury under Lanham Act § 38 or La. Rev. Stat. 51:221 or actual damages under the LUTPA § 1409, Defendants rely on Judge Lemmon's Order and

---

[84] R. Doc. 587 at p. 4.

[85] *Id.* at p. 3.

[86] *Id.* (citing *Walton v. Eaton Corp.*, 563 F.2d 66, 70-71 (3d Cir. 1977)).

[87] Specifically, Defendants request summary judgment on Counts 20, 26, 32, 34, 36, 53, 55, 57, 59, 61, 63, 65, 67, 69, 71, 73, 75, 77, and 70 in Civil Action No. 11-1499.

[88] R. Doc. 580-2 at p. 16.

[89] *Id.*

16

Reasons[90] granting summary judgment in Civil Action No. 09-3394,[91] wherein Judge Lemmon concluded that "Parasol and Southern Snow have not produced evidence of the existence of a genuine issue for trial on the essential element of cognizable injury or ascertainable loss."[92] Defendants conclude that Plaintiffs are again required in 11-1499, as in Civil Action No. 09-3394, to demonstrate an essential element of their case by more than "mere assumptions and speculation regarding possible injuries," and Plaintiffs have failed to produce any evidence of a "cognizable injury or ascertainable loss sustained in consequence of SnoWizard's federal and state trademark registrations."[93]

## C. Absence of Evidence on Alleged Unfair Competition Claims

Defendants request dismissal of the alleged unfair competitions claims based on false-advertising in 11-1499,[94] because Plaintiffs have no evidence of an essential element of their unfair competition claims under the Section 43 of the Lanham Act, 15 U.S.C. § 1125, the LUTPA, La. Rev. Stat. 51:1405, Louisiana Civil Code Article 2315, and Texas law.  According to Defendants, the basis of the unfair competition claims are allegations of "'false designation of origin and false and misleading descriptions and representations of fact' about the marks ORCHID CREAM VANILLA, SILVER FOX, SNOWSWEET, and SNOBALL" and "'fraudulent assertions of…trademark right… to existing and potential customers, distributors,

---

[90] Order & Reasons, Civ. Action No. 09-3394, R. Doc. 56.

[91] R. Doc. 580-2 at p. 19 (citing *id.* at p. 7).

[92] Order & Reasons, Civ. Action No. 09-3394, R. Doc. 56 at p. 7.

[93] R. Doc. 580-2 at p. 19.

[94] *Id.* at p. 20.

and competitors'" with respect to all of the disputed trademarks.[95]  Defendant's explain that the false advertising claims at issue in 11-1499 are "virtually identical" to the false-advertising claims in the original cases, which were dismissed by Judge Zainey on summary judgment.  In ruling on the motion for summary judgment, Judge Zainey first concluded that "Plaintiff have no claim for unfair competition under the Lanham Act or LUTPA insofar as they rely on the legal assertion that use of trademarking symbols with a generic term constitutes a literally false statement."[96]  According to Defendants, the conclusion of law set forth in Judge Zainey's order "applies to all of the virtually identical unfair competition claims alleged by *all* of the plaintiffs in Civil Action 11-1499."[97]

Defendant contends that Plaintiffs, having been foreclosed from relying on literal trademark infringement by Judge Zainey's ruling, must prove "all five elements of the prima facie case for false advertising under the Lanham Act, including materiality and the tendency to deceive—nothing is presumed."[98]  Judge Zainey also concluded:

> Plaintiffs have no evidence of any kind that demonstrates a tendency to deceive, which is necessary for the non-monetary relief that they seek in this motion, much less actual deception, which is necessary for any monetary relief that they had hoped to obtain at trial.  Plaintiffs have made a strategic business decision to proceed without customer input via surveys, etc., in order to avoid alienating their customers or discomfiting them by serving subpoenaes and other litigation-related materials.  (Rec. Doc. 293, at 3-4).  Thus Plaintiffs have no evidence of materiality….The law in this circuit is very clear as to how materiality and deception must be proven.  Even expert evidence will be insufficient where it lacks reliable market survey analysis and instead relies on "common sense."[99]

---

[95] *Id.* (citing R. Doc. 412).

[96] *Id.* at p. 21 (citing Order & Reasons, R. Doc. 332 at p. 32).

[97] *Id.*  Defendants note that Plaintiffs Amended Complaint attempts to "disclaim recovery in [11-1499] for unfair competition under the Lanham Act insofar as such recovery relies on the legal assertion that use of trademarking symbols with a generic term constitutes a literally false statement.  *Id.* (citing R. Doc. 412 ¶¶ 1007, 1069).

[98] *Id.* at p. 22 (citing R. Doc. 332 at p. 32).

[99] *Id.* (quoting R. Doc. 332 at p. 33).

Similarly, Defendants contend that Plaintiffs have no evidence of materiality, actual deception, or the tendency to deceive—essential elements of their unfair competition claims—in 11-1499, because Plaintiffs and their experts have neither produced any market or survey research or data that could be tested and verified nor identified any witnesses during discovery that would support the elements of materiality and deception.[100]   Therefore, Defendants request that the Court dismiss all of Plaintiffs claims for unfair competition based on false advertising, because, as a matter of law, the use of trademarking symbols with a generic term does not constitute a literally false statement, and, as a matter of undisputed fact, Plaintiffs have no evidence of essential elements of their unfair competition claims.[101]

### D.  Absence of Evidence on Claims for Declaratory Judgment

Defendants request dismissal of Counts 27 and 37 in 11-1499 alleging claims for declaratory judgment of invalidity and unenforceability of SnoWizard's federally registered trademarks MOUNTAIN MAPLE and SNOSWEET pursuant to 28 U.S.C § 2201(a), because Plaintiffs have allegedly failed to present any evidence rebutting the presumption of validity afforded registered trademarks.[102]   Moreover, SnoWizard relies on Judge Zainey's order granting SnoWizard's motion for partial summary judgment on the same issue in the original cases, because Southern Snow, Parasol, and Simeon "ha[d] offered no evidence to rebut the

---

[100] *Id.* at p. 23

[101] *Id.*

[102] *Id.* at pp. 23-24 (citing *Saulters v. Carson*, 103 F.3d 125 (5th Cir. 1996); *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1356 (Fed. Cir. 2009)).

presumption of validity" attached to the marks MOUNTAIN MAPLE and SNOSWEET.[103] Likewise, SnoWizard argues that the Court should grant summary judgment here because Plaintiffs have presented no evidence to rebut the presumption of the marks' validity in 11-1499.[104]

## III.  Law and Analysis

### A.  Standard on Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[105]  When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[106]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[107]  If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[108]

---

[103] *Id.* at p. 24 (citing Order & Reasons, R. Doc. 333 at p. 3).

[104] *Id.* at pp. 24-25.

[105] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[106] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[107] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[108] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

As here, if the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden merely by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[109]   At that time, the burden shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[110]   The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[111]   "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[112]

## B.  Summary Judgment on Duplicative Claims

Whether the rule against claim-splitting is viewed as an aspect of *res judicata* or a tool of docket management, it is well-established that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants."[113]   Indeed, "[w]hen a plaintiff files a second complaint alleging the same cause of action as a prior, *pending*, related action, the second complaint may be dismissed.[114]   In addition to dismissal of the second suit, some courts have recognized that a stay or consolidation

---

[109] *See Celotex*, 477 U.S. at 325.

[110] *See id.* at 324.

[111] *See, e.g., id.* at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

[112] *Ragas*, 136 F.3d at 458 (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992)).

[113] *Oliney*, 771 F.2d at 859 (citing *Walton*, 563 F.2d at 70).

[114] *Id.*

of the duplicative lawsuit may be appropriate, in the alternative.[115]   Regardless of the approach

to the duplicative litigation, "the district court must ensure that the plaintiff does not use the

incorrect procedure of filing duplicative complaints to expand the procedural rights [the plaintiff]

would otherwise enjoy-particularly for the purpose of circumventing the rules pertaining to the

amendment of complaints."[116]


   *1.  Same Claims in 11-1499*

   To apply the rule against claim-splitting, the Court must first conclude that 11-1499

involves the same claims and the same defendants as the original cases.   "To determine what

constitutes the same claim or cause of action [the Court] appl[ies] the same transaction test, i.e.

whether the earlier and later claims are based on the same nucleus of operative fact." [117]

   In evaluating whether Plaintiffs allege new claims in 11-1499, the emphasis is on the

factual allegations contained in the complaint, not whether Plaintiffs have relabeled the old facts

as new claims.   The Court notes that 11-1499 alleges new claims of trademark infringement

arising out of use of the marks ORCHID CREAM VANILLA, SILVER FOX, and SNOBALL.

However, Plaintiffs' opposition to the motion on the basis of these new claims in 11-1499 is

inapplicable, because SnoWizard does not seek dismissal of those claims in 11-1499 as being

duplicative.[118]   The Court also understands that as events occurred in 2007, 2008, 2009, and

2010 involving SnoWizard's registration of new trademarks or mailing of cease and desist

letters, Plaintiffs filed additional lawsuits alleging new causes of action based on those facts.

---

[115] *See Walton*, 563 F.2d at 70-71.

[116] *Oliney*, 771 F.2d at 859 (citing *id.* at 71); *Friends of the Earth*, 95 F.3d at 362.

[117] *Nelson*, 1994 WL 93409, at *2 n. 5 (internal quotations omitted).

[118] *See* R. Doc. 580-2 at p. 7 n. 1.

SnoWizard does not seek dismissal of the claims filed in the original cases on basis of events transpiring between 2007 and 2010. Instead, the issue is whether Plaintiffs may maintain the claims in 11-1499 that are based on those events occurring between 2007 and 2010 that have already been brought in the original cases. This Court finds that the vast majority of the claims in 11-1499 are duplicative of the claims in the original cases as detailed in SnoWizard's memorandum in support of the instant motion,[119] and Plaintiffs have not identified any specific facts, allegations, or claims that are not duplicative of the claims in the original cases, aside from the claims SnoWizard has expressly excluded from the instant motion.

### 2. Same Parties in 11-1499

Application of the rule against claim-splitting requires that the lawsuits involve the same parties. Defendants suggest that the parties must be identical or in privity to invoke the rule against claim-splitting, and Plaintiffs propose no other approach. The Fifth Circuit has held that privity exists in three narrow situations: "(1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit."[120] Under the rubric of adequate representation, the Fifth Circuit has recognized that a non-party is bound where a party to the original suit is "so closely aligned to the non-party's interests as to be his virtual representative."[121] Virtual representation is strictly confined to cases in which there is "an express or implied legal relationship in which parties to the first suit are accountable to non-

---

[119] *See supra* Part. II.A.1.

[120] *Meza v. General Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990).

[121] *Id.* at 1267 (quoting *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *appeal dismissed*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975)).

parties who file a subsequent suit raising identical issues."[122]   The Fifth Circuit also noted in *Meza* that a precise definition of when a party's and a non-party's interests are "close enough" to find that the non-party was "adequately represented" has "eluded the courts."[123]

In 11-1499, Plaintiffs added six new plaintiffs to the litigation.  The Court must evaluate the relationship between the new parties added in 11-1499 and the original three plaintiffs: Southern Snow, Parasol, and Simeon.  Plaintiffs incorrectly emphasize in their opposition to the motion the relationship, or lack thereof, among the six new plaintiffs in 11-1499, but that is not the relationship which must be evaluated to rule on the issue of claim-splitting.

It is undisputed that Southern Snow, Simeon, and Snow Ingredients are closely related entities that share common ownership by Milton G. Wendling, Jr., "among other close and common business relationships."[124]   Therefore, the Court may easily find that Simeon and Snow Ingredients were in privity with Southern Snow, based on the express legal relationship of shared ownership.[125]

Plaintiffs also admit that Mr. Eisenmann sold his FLAVOR SNOW business to Southern Snow in 2006, and maintains a financial interest in the sale of Southern Snow and Snow Ingredients products.[126]   Defendant's cite an opinion from the Northern District of Illinois finding that privity exists when one "sells its assets to another, and the purchaser then uses those

---

[122] *Id.* at 1272 (quoting *Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1175 (5th Cir. 1987); *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 339 (5th Cir. 1982); *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir. 1978)).

[123] *Id.* at 1273.

[124] R. Doc. 412 ¶ 71.

[125] *See Déjà Vu, Inc. v. Spokane Cnty.*, 46 F.Supp.2d 1083, 1086 (E.D. Wash. 1998) (finding privity amount corporations that shared, among other things, significant common ownership and a director).

[126] R. Doc. 412 at ¶ 66.

assets to continue manufacturing and selling the seller's products."[127]   The Court finds this reasoning, and the Seventh Circuit precedent upon which the district court relied, persuasive, especially where Plaintiffs have presented no case law or argument controverting this analysis. Mr. Eisenmann's participation in this lawsuit is by virtue of an ongoing financial arrangement between Southern Snow and Mr. Eisenmann and the sale of his FLAVOR SNOW business to Southern Snow.   The existence of this express and ongoing legal and financial relationship between Mr. Eisenmann and Southern Snow justifies finding that Mr. Eisenmann is in privity with Southern Snow.[128]

Defendants also rely on *Pet Products* to argue that Special T and Raggs, as distributors of Southern Snow, Snow Ingredients, and Parasol products, are in privity with Southern Snow and Parasol.[129]   Again, Plaintiffs makes no argument as to why the Court should not find that Special T and Raggs are in privity with plaintiffs in the original cases.   As distributors of products at issue in this lawsuit that were manufactured by Southern Snow, Snow Ingredients and Parasol, Special T and Raggs are in an express legal relationship with the original plaintiffs to in this lawsuit by virtue of the distributorship.   For this reason, the Court finds that Special T and Raggs are in privity with Southern Snow, Parasol, and Simeon, because they were adequately represented in the original cases.

The remaining two new plaintiffs, Plum Street and Van's sell snowballs to the general public, and purchase some of the supplies used in their businesses from Southern Snow, Snow

---

[127] *Pet Product*, 2012 WL 2022038, at *6.

[128] *See Pet Product*, 2012 WL 2022038, at *6 ("Two companies are in privity when one sells its assets to another and the purchaser then uses those assets to continue manufacturing and selling the seller's products.")

[129] *See Pet Product*, 2012 WL 2022038, at *7 ("Privity also exists between a distributor of infringing products and a manufacturer who was previously found to be infringing on a patent by manufacturing those products and subsequently enjoined from selling them.").

Ingredients and Parasol.[130]   Defendants rely on the statement in *Meza* that privity may exist when there is a legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.[131]   It appears from the answers to interrogatories that Plum Street and Van's purchase products directly from at least Southern Snow and Snow Ingredients.[132]   The Court recognizes that these direct purchases of products from Southern Snow creates an express legal relationship that could result in a situation where the plaintiffs in the original cases are accountable to Plum Street and Van's for the consequences of the prior suit.   However, the Court is hesitant to find, especially in the absence clear authority on this issue, that Plum Street and Van's are so closely aligned with the plaintiffs in the original cases that their interests are adequately represented by Southern Snow, Parasol and Simeon. Therefore, the Court does not find that Plum Street and Van's are in privity with the plaintiffs in the original cases.

### 3. Application of the Rule Against Claim-Splitting

The Fifth Circuit emphasized in *Friends of the Earth* that the rule prohibiting claim-splitting "finds particular application…where the plaintiff files the second complaint to achieve procedural advantage by 'circumventing the rules pertaining to the amendment of complaints."[133] Application of the rule against claim-splitting is particularly warranted in a case such as this one, where the only explanation for the duplicative litigation in the pending consolidated action is to expand Plaintiffs' procedural rights, upset the trial schedule, harass

---

[130] R. Doc. 412 ¶ 65.

[131] 908 F.2d at 1272.

[132] R. Doc. 580-4 at pp. 5, 15.

Defendants, and avoid the requirements of amendment of Plaintiffs' claims.  In fact, Plaintiff has filed additional lawsuits alleging very similar claims in 2012.[134]

Moreover, although this matter has already been consolidated for trial, the parties have failed to come forward with any manageable way to present the issues articulated in the four consolidated cases to a jury.  Accordingly, to simplify the case on the eve of trial and prevent Plaintiffs' from obtaining an unfair procedural advantage, the Court finds it appropriate to dismiss the claims in 11-1499 without prejudice to the prior filed actions, as to all Plaintiffs except Plum Street and Van's, that are duplicative of claims present in the original cases.

## B.   *Absence of Evidence on Alleged Fraudulent Procurement Claims, Alleged Unfair Competition Claims, and Claims for Declaratory Judgment*

As an initial matter, the Court reiterates that the burden is on the plaintiff to identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial, once the defendant has illustrated the absence of evidence on an essential element of the plaintiff's claims.[135]   Plaintiffs have not satisfied this burden.  Plaintiffs have failed to submit any arguments or identify any evidence in support of their opposition to the motion for summary judgment on the alleged fraudulent procurement claims, alleged unfair competition claims, and the claims for declaratory judgment.

---

[133] 95 F.3d 358, 362 (5th Cir. 1996) (quoting *Olney*, 771 F.2d at 859).

[134] *See* Civ. Action No. 12-1412, Rec. Doc. 1.

[135] *See, e.g., id.* at 325; *Ragas*, 136 F.3d at 458; *Little*, 37 F.3d at 1075; *Isquith*, 847 F.2d at 198.

*1.   Absence of Evidence on Alleged Fraudulent Procurement Claims*

Plaintiffs allege five counts of fraudulent procurement of trademarks under the Lanham

Act and fourteen counts of fraudulent procurement of trademarks under Louisiana law, all of

which Defendants move this Court to dismiss.

Lanham Act § 38 provides:

> Any person who shall procure registration in the Patent and Trademark Office of
> a mark by a false or fraudulent declaration or representation, oral or in writing, or
> by any false means, shall be liable in a civil action by any person injured thereby
> for any damages sustained in consequence thereof.[136]

On its face, a claim under this provision of the Lanham Act requires a showing of "damages

sustained in consequence thereof."  Indeed, this Court explained, in *Jackson v. Lynley Designs,*

*Inc.,*[137] that "an essential element of plaintiff's case with respect to which she has the burden of

proof is a cognizable injury under the Lanham Act."[138]

Section 221 of the Louisiana Trademarks, Trade Names, and Domain Names Law

provides:

> Any person who shall for himself, or on behalf of any other person, procure the
> filing or registration of any mark in the office of the secretary of state under the
> provisions hereof, by knowingly making any false or fraudulent representation or
> declaration, verbally or in writing, or by any other fraudulent means, shall be
> liable to pay all damages sustained in consequence of such filing or registration,
> to be recovered by or on behalf of the party injured thereby in any court of
> competent jurisdiction.[139]

Like the Lanham Act § 38, the Louisiana trademark law also requires a showing of "damages

sustained in consequence" of an alleged violation.  Although no Louisiana court has construed

---

[136] 15 U.S.C. § 1120.

[137] 729 F. Supp. 498 (E.D. La. 1990) (Feldman, J.).

[138] *Id.* at 500-01.

[139] La. Rev. Stat. 51:221.

the damages provision of La. Rev. Stat. 51:221, the Court finds the construction of 15 U.S.C. §

1120 and its identical language requiring "damages sustained in consequence" of a violation,

instructive in this case.  Therefore, this Court finds that an essential element of Plaintiffs' claims

under the Louisiana trademark law is a cognizable injury.

Section 1409 of the LUTPA provides in pertinent part:

> A. Any person who suffers any ascertainable loss of money or movable property,
> corporeal or incorporeal, as a result of the use or employment by another person of
> an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405,
> may bring an action individually but not in a representative capacity to recover
> actual damages. If the court finds the unfair or deceptive method, act, or practice
> was knowingly used, after being put on notice by the attorney general, the court
> shall award three times the actual damages sustained. In the event that damages are
> awarded under this Section, the court shall award to the person bringing such action
> reasonable attorney fees and costs. Upon a finding by the court that an action under
> this Section was groundless and brought in bad faith or for purposes of harassment,
> the court may award to the defendant reasonable attorney fees and costs.[140]

Again, the plain language of La. Rev. Stat. 51:1409 requires a showing of "any ascertainable loss

of money or movable property, corporeal or incorporeal" resulting from the unfair trade practice

of fraudulently procuring trademarks.[141]  This Court and Louisiana state courts have ruled that

Plaintiffs are required to establish actual damages in order to recover under the LUTPA.[142]

In Civil Action 09-3394, Judge Lemmon concluded that Southern Snow and Parasol

"have not produced evidence of the existence of a genuine issue for trial on the essential element

of cognizable injury or ascertainable loss."[143]   In 11-1499, new plaintiffs were added but the

same claims were alleged based on the same facts as those set forth in Civil Action 09-3394, and

---

[140] La. Rev. Stat. 51:1409 (A).

[141] *Id.*

[142] *See, e.g.*, *Gerasta v. Hibernia Nat. Bank*, 411 F. Supp. 176, 193 (E.D. La. 1976) (Boyle, J.), *rev'd on other grounds*, *Gerasta v. Hibernia Nat. Bank*, 575 F.2d 580, 584 (5th Cir. 1978); *Vickers v. Interstate Dodge, Inc.*, 2007-109, pp. 11 (La. App. 3 Cir. 9/29/04), 882 So. 2d 1236, 1244; *Abbyad v. Mathes Group*, 95-1543 (La.  App. 4 Cir. 3/14/96), 671 So. 2d 958, 962.

[143]  Order & Reasons, Civ. Action 09-3394, R. Doc. 56 at p. 7.

Plaintiffs have again failed to produce any evidence of a cognizable injury or ascertainable loss, or, for that matter, even respond to the instant motion on this issue.  Thus, Plaintiffs have failed to establish a genuine issue of material fact for trial on an essential element of their claims, and summary judgment dismissing Plaintiffs' claims for damages for alleged fraudulent procurement of trademark registrations under 15 U.S.C. § 1120, La. Rev. Stat. 51:221, and La. Rev. Stat. 51:1409 will be granted.

### 2.   *Absence of Evidence on Alleged Unfair Competition Claims*

In 11-1499, Plaintiffs allege eight counts of unfair competition, four counts of which are based on allegations of "false designation of origin and false and misleading descriptions and representations of fact" about the marks ORCHID CREAM VANILLA, SILVER FOX, SNOWSWEET, and SNOBALL, while the other four counts are based on alleged fraudulent assertions of trademark rights to existing and potential customers, distributors, and competitors with respect to all of the specified marks.  Defendants move for dismissal of all eight counts of unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125, Section 1405 of the LUTPA, La. Rev. Stat. 51:1405, Louisiana Civil Code Article 2315, and Texas law.

Earlier in this litigation, Judge Zainey exhaustively addressed the very similar, if not identical,[144] unfair competition claims based on the false-advertising at issue in the original cases.[145]  Plaintiffs may proceed on two theories to recover damages for these false-advertising claims: (1) plaintiff may demonstrate that the advertisement or promotion is literally false; or (2)

---

[144] Plaintiffs do not dispute in their opposition Defendant's characterization of the unfair competition claims in 11-1499 as "virtually identical" to the claims dismissed by Judge Zainey in Civil Action No. 06-9170.  However, even if the claims in 11-1499 differ in some respects from those in Civil Action No. 06-9170, Judge Zainey's reasoning is equally applicable here.

[145] *See* Order & Reasons, R. Doc. 332.

plaintiff may demonstrate that the advertisement or promotion is likely to deceive customers.[146] If the plaintiff establishes that an advertisement or promotion is literally false, then a court may assume that it actually misled customers.[147]   But, if the advertisement or promotion is only shown to be misleading or ambiguous, the plaintiff will have to demonstrate actual deception and materiality[148]—essential elements of an unfair competition claim for false-advertising.[149]

In an Order and Reasons issued on April 18, 2011, Judge Zainey concluded as a matter of law that "Plaintiffs have no claim for unfair competition under the Lanham Act or LUTPA insofar as they rely on the legal assertion that use of trademarking symbols with a generic term constitutes a literally false statement."[150]   Having determined that Plaintiffs could not rely on the assumptions afforded a literally false statement, Judge Zainey further concluded with respect to the essential elements of materiality and deception:

> Plaintiffs have no evidence of any kind that demonstrates a tendency to deceive, which is necessary for the non-monetary relief that they seek in this motion, much less actual deception, which is necessary for any monetary relief that they had hoped to obtain at trial. Plaintiffs have made a strategic business decision to proceed without customer input via surveys, etc., in order to avoid alienating their customers or discomfiting them by serving subpoenaes and other litigation-related materials.  Thus, Plaintiffs have no evidence of materiality, i.e., how the presence of those TMs are likely to influence the customers' purchasing decision, or of

---

[146] *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

[147] *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002).

[148] *Id.*

[149] *See Pizza Hut*, 227 F.3d at 495 (citing *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1500 (5th Cir. 1990)) (noting that the failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim).

[150] Order & Reasons, R. Doc. 332 at p. 32. Judge Zainey noted that "throughout this litigation Plaintiffs have always maintained that unfair competition claims under the LUTPA are governed by the same standards applied in the Lanham Act." *Id.* at p. 7 n. 9.  Given that Plaintiffs have not challenged this conclusion, the Court will apply the same reasoning to the instant motion.  Section 1405 of the LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ."  La. Rev. Stat. 51:1405(A).  Section 17.46 of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.46, similarly prohibits "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce ." Tex. Bus. & Com. Code § 17.46(a).

actual deception, which is necessary for monetary relief, or of the tendency to deceive, which is necessary for injunctive relief. The law in this circuit is very clear as to how materiality and deception must be proven. Even expert evidence will be insufficient where it lacks reliable market survey analysis and instead relies on "common sense."[151]

Judge Zainey's conclusions in Civil Action No. 06-9170 are equally applicable to Plaintiffs' allegations of false-advertising and unfair competition in the pending motion. Plaintiffs have not provided any arguments or produced any evidence to establish a genuine issue of material fact for trial on essential elements of their claims for unfair competition under Section 43 of the Lanham Act, Section 1405 of the LUTPA, Louisiana Civil Code Article 2315, or Texas law.

### 3. *Absence of Evidence on Claims for Declaratory Judgment*

As in the original cases, Plaintiffs have alleged claims for declaratory judgment of alleged invalidity and unenforceability of SnoWizard's federally registered trademark MOUNTAIN MAPLE and SNOWSWEET in 11-1499 under 28 U.S.C. § 2201(a). "A certificate of trademark registration establishes a rebuttable presumption of the validity of the mark, the registrant's ownership of the mark, and the registrant's right to use the mark in commerce."[152] Defendants have provided, as exhibits to this motion, certificates of registration for the marks MOUNTAIN MAPLE and SNOWSWEET.[153]

In the original cases, Judge Zainey granted SnoWizard's motion for partial summary judgment as to the validity of SnoWizard's federally registered trademarks MOUNTAIN

---

[151] *Id.* at p. 33 (internal citation omitted).

[152] *Saulters v. Carson*, 103 F.3d 125 (5th Cir. 1996) (citing 15 U.S.C. § 1057(b)).

[153] *See* R. Doc. 580, Exhs. F-G.

MAPLE and SNOSWEET because Southern Snow, Parasol, and Simeon "have offered no evidence to rebut the presumption of validity" attached to those marks.[154]   Plaintiffs have not presented any evidence in 11-1499 to support the claims of invalidity that was not before Judge Zainey when he entered summary judgment on the same issue in the original cases. Accordingly, the Court will grant Defendants' motion for summary judgment dismissing with prejudice Plaintiffs' alleged claims for declaratory judgment of alleged invalidity and unenforceability of SnoWizard's federally registered trademarks MOUNTAIN MAPLE and SNOSWEET under 28 U.S.C. § 2201(a), because Plaintiffs have failed to produce any evidence or make any arguments rebutting the presumption of validity afforded SnoWizard's registered trademarks.


## IV.  Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment on the duplicative claims in 11-1499 (Counts 19-21, 24-27, 29-81, 83-84) is **GRANTED** as to plaintiffs Southern Snow, Simeon, Snow Ingredients, Eisenmann, Parasol, Raggs, and Special T; however the motion is **DENIED** as to plaintiffs Plum Street and Van's.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment on Plaintiffs' claims for damages for alleged fraudulent procurement of trademark registrations under 15 U.S.C. § 1120, La. Rev. Stat. 51:221, La. R.S. 51:1409 is **GRANTED**, and Counts 20, 26, 32, 34, 36, 53, 55, 57, 59, 61, 63, 65, 67, 69, 71, 73, 75, 77, and 79 are dismissed with prejudice.

---

[154] Order & Reasons, R. Doc. 333 at p. 3.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment on Plaintiffs' claims for unfair competition under 15 U.S.C. § 1125, La. Rev. Stat. 51:1409, Louisiana Civil Code Article 2315, and Texas Business and Commercial Code § 17.46 is **GRANTED**, and Counts 19, 23, 25, 29, 51, 80-81, and 83 are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment on Plaintiffs' alleged claims for declaratory judgment of alleged invalidity and unenforceability of SnoWizard's federally registered trademarks MOUNTAIN MAPLE and SNOSWEET under 28 U.S.C. § 2201(a) is **GRANTED**, and Counts 27 and 37 are dismissed with prejudice.

**NEW ORLEANS, LOUISIANA**, this 30th day of January 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**