### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**SOUTHERN SNOW MANUFACTURING CO., INC.**          **CIVIL ACTION**

**VERSUS**                                                        **NO.    06-9170**
                                                                    **09-3394**
                                                                    **10-0791**
                                                                    **11-1499**

**SNOWIZARD HOLDINGS, INC., et. al.**                  **SECTION: "G" (1)**

### ORDER AND REASONS

Before the Court is Hanover Insurance Company's ("Hanover") Motion for Summary Judgment requesting reconsideration of Judge Zainey's partial denial of prior earlier motions for summary judgment regarding insurance issues in Civil Actions Nos. 06-9170, 09-3394, and 10-0791.[1]  Judge Zainey partially granted Hanover's earlier motions for summary judgment upon finding that SnoWizard's insurance policy with Hanover did not afford coverage for the claims asserted in Civil Actions Nos. 06-9170, 09-3394, and 10-0791; however, Judge Zainey denied the motions insofar as Hanover sought to terminate SnoWizard's defense, finding that the duty to defend was broader than coverage, and Hanover had a continuing duty to defend implicit in Louisiana law.[2] Having considered the motion, the memorandum in support, the response, the reply, the record and the applicable law, the Court will grant the motion in part.

---

[1] Rec. Docs. 342, 343, 346.

[2] *See id.* at p. 5.

# I.  Background

## A.  Procedural Background

Southern Snow Manufacturing Co., Inc., Simeon, Inc., Parasol Flavors, LLC, among other

plaintiffs, (collectively, "Plaintiffs") and SnoWizard, Inc. ("SnoWizard") are engaged in extensive

litigation in the United States District Court for the Eastern District of Louisiana that extends further

than the suits involved in the instant motion, namely Civil Actions Nos. 06-9170, 09-3394, and 10-

0791 (hereinafter, the "Consolidated Suits").[3]   Plaintiffs and SnoWizard are competitors in the

business of manufacturing and selling snowball ice-shaving machines and snowball flavor

concentrates.  Plaintiffs filed suit against SnoWizard for, *inter alia*, trademark infringement, false

assertion of trademark rights, and for disparaging Plaintiffs' businesses concerning certain flavor

names.[4]   Civil Action No. 06-9170 was originally assigned to Judge Jay C. Zainey, Section "A."

Civil Actions Nos. 09-3394 and 10-0791 were originally assigned to Judge Mary Ann Vial Lemmon,

Section "S," but those matters were subsequently transferred to Judge Zainey and consolidated with

Civil Action No. 06-9170.[5]   On October 7, 2011, consolidated matter No. 06-9170 was reassigned

to this Section, Section "G," as part of a new docket for a newly appointed judge.

SnoWizard approached Hanover, its commercial liability insurer under policy ZHO 9287162

(hereinafter, the "policy"), to provide it with a legal defense in this case.  Upon considering the

allegations of Plaintiffs' complaint, Hanover concluded that the policy provisions of its contract with

---

[3] The instant motion involves reconsideration of orders entered in Civil Actions Nos. 06-9170, 09-3394, and 10-0791.  The foregoing cases have all been consolidated with Civil Action No. 11-1499.

[4] *See* Rec. Docs. 1, 113, 167.

[5] Civil Action Nos. 11-0880 and 11-1499 were also subsequently consolidated with Civil Action No. 06-9170.  Civil Action No. 11-0880 was later removed from the consolidated matter and stayed.

SnoWizard did not compel it to defend SnoWizard in this case.  SnoWizard responded by filing a third-party complaint against Hanover for a declaratory judgment, breach of contract, and bad faith insurance claims adjusting under Louisiana insurance and contract law on May 3, 2007.[6]

In late 2007, Hanover and SnoWizard filed cross motions for summary judgment on the issue of coverage under the policy in Civil Action No. 06-9170.  The Court ruled against Hanover reasoning that the term "disparages" was broad enough to leave open the possibility that a cease and desist letter, allegedly containing a false accusation of trademark infringement, could trigger liability under the policy.[7]  Hanover moved for reconsideration, but the Court administratively closed the case until the resolution of cancellation proceedings before the United States Patent & Trademark Office ("USPTO").

Once Civil Action No. 06-9170 was reopened, Civil Actions Nos. 09-3394 and 10-0971 were transferred and consolidated with No. 06-9170.  On October 25, 2010, SnoWizard and Hanover later settled the third-party claims, with Hanover reserving "all coverage defenses which have been asserted or may hereafter be asserted against any of the parties to the Consolidated Suits."[8]  The Settlement Agreement bound Hanover "to defend SnoWizard in the Consolidated Suits subject to Hanover's three July 12, 2010, *Reservation of Rights* letters to SnoWizard concerning SnoWizard's tender of defense and indemnification in the Consolidated Suits...and subject to Hanover's stipulations and affirmative defenses set forth by Hanover in its response to the Third-Party

---

[6] Rec. Doc. 43.

[7] Order & Reasons issued January 2, 2008, Rec. Doc. 87 at pp. 5-6.

[8] Rec. Doc. 190.

Complaint."[9]

On February 23, 2011, March 8, 2011, and March 9, 2011, Hanover filed motions for summary judgment in Civil Actions Nos. 06-9170, 09-3394, and 10-0791, respectively.[10]   In each of these motions, Hanover argued that the undisputed facts unearthed by discovery demonstrate that the policy does not provide coverage for the claims asserted, and that Hanover therefore has no indemnity obligations nor any further duty to provide a defense for SnoWizard.[11]   Judge Zainey granted Hanover's motions as they pertained to indemnity in each case, holding that the policy did not afford coverage for the asserted claims, but he denied Hanover's motions insofar as Hanover sought to prospectively terminate its defense obligations.[12]   Hanover filed a Motion for Reconsideration[13] in each of the Consolidated Suits,[14] which Judge Zainey denied on June 27, 2011.[15]

The original scheduling order entered in the Consolidated Suits set a deadline of October 29, 2010 for the filing of dispositive motions.[16]   The Consolidated Suits were subsequently consolidated with Civil Action No. 11-1499, and a new scheduling order was entered on July 13, 2011 stating that "the following deadlines apply to case number[] . . . 11-1499.  Deadlines in case numbers 06-9170,

---

[9] Rec. Doc. 591-2 at p. 2.

[10] Rec. Docs. 266, 272, 273.

[11] Rec. Doc. 266-3 at p. 2; Rec. Doc. 272-2 at pp. 1-2; Rec. Doc. 273-2 at pp. 1-2, 3.

[12] Rec. Docs. 342, 343, 346 at p. 5.

[13] Rec. Docs. 357-359.  Hanover styled each motion as a "Motion for Reconsideration, Alternatively, Motion for Certification for Interlocutory Appeal and for Stay of Proceedings."  *Id.*

[14] *Id.*

[15] Rec. Doc. 381.

[16] Rec. Doc. 145 at p. 2.

4

09-33[9]4 and 10-791 are not extended."[17]  The deadline for filing dispositive motions set by the more recent scheduling order was November 6, 2012.[18]

On November 7, 2012 at 12:11 a.m., Hanover filed the instant Motion for Summary Judgment[19] in the Consolidated Suits, wherein Hanover requests that the Court reconsider Judge Zainey's orders that partially denied summary judgment on the basis of Hanover's continuing duty to defend even after the Court determined that SnoWizard had no coverage for the asserted claims under the policy.[20]  SnoWizard opposed the motion on November 27, 2012,[21] and Hanover subsequently filed a reply with leave of Court.[22]

### B.  The Insurance Policy

According to the Louisiana Changes-Insuring Agreement (hereinafter, the "Louisiana Insuring Agreement"),[23] the policy provides coverage to SnoWizard for "personal and advertising injury" liability as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.[24]

---

[17] Rec. Doc. 387.

[18] *Id.*

[19] Rec. Doc. 581.

[20] Rec. Docs. 342, 343, 346 at p. 5.

[21] Rec. Doc. 591.

[22] Rec. Doc. 599.

[23] Louisiana Insuring Agreement, Rec. Doc. 581-3 at p. 79.

[24] *Id.* ¶ B(1)(a).

The Commercial and General Liability Coverage Form (hereinafter, the "General Coverage Form"),[25] which is modified by the aforementioned Louisiana Insuring Agreement, further states with respect to coverage of "personal and advertising injury": "However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply."[26]

The only relevant provision in both the Louisiana Insuring Agreement and the General Coverage Form explicitly addressing Hanover's duty to defend provides in Subsection (2):

Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.... No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under [another section of the policy].[27]

The policy defines "personal and advertising injury" in pertinent part as: "Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organizations's goods, products, or services."[28]   Based on this definition, the Court has already determined–and it is undisputed by the instant motion–that the policy does not afford coverage for the claims asserted in the Consolidated Suits.[29]

---

[25] General Coverage Form, Rec. Doc. 581-3 at pp. 57-71.

[26] Id. at p. 61, ¶ (1)(a).

[27] Id. at p. 62, ¶(1)(2); Louisiana Insuring Agreement, Rec. Doc. 581-3 at p. 79, ¶ (B)(1)(a)(2).

[28] General Coverage Form, Rec. Doc. 581-3 at p. 70, ¶(14)(d).

[29] See Rec. Docs. 342, 343, 346 at pp. 4-5.

### III.  The Parties' Arguments

*A. Hanover's Motion for Summary Judgment*

    *1.  Hanover's Interpretation of Judge Zainey's Prior Summary Judgment Orders[30]*

    According to Hanover, Judge Zainey based his partial denial of summary judgment on three reasons: (1) the Louisiana Insuring Agreement does not expressly state that Hanover's duty to defend terminates upon a judicial determination that the plaintiff cannot prove any claims covered under the policy;[31] (2) *Allstate Insurance Co. v. Roy*[32] does not apply because the instant case does not involve a matter where "the undisputed facts clearly preclude coverage but the plaintiff simply chooses to omit those crucial, determinative facts from the petition;"[33] and (3) Hanover's omission of certain language from the Louisiana Insuring Agreement  is "likely in recognition of Hanover's broad and continuing duty to defend implicit in Louisiana law."[34]

    Hanover contends that Judge Zainey erred in reasoning that the "broad and continuing duty to defend that is implicit in Louisiana law requires Hanover to defend its insured even after it has been determined that its insured will not be legally obligated to pay any sums as damages because of injuries to which the Hanover policy applies."[35]  Hanover moved for reconsideration,[36] which

---

[30] *Id.*

[31] Rec. Doc. 581-1 at p. 2.

[32] 94-1072 (La. App. 1 Cir. 4/7/95); 653 So. 2d 1327.

[33] Rec. Doc. 581-1 at p. 2 (internal citation omitted).

[34] *Id.*

[35] *Id.* at p. 4 (internal quotations omitted).

[36] Rec. Docs. 357-359.

Judge Zainey denied without written reasons.  Hanover argues that this was also error.[37]

### 2. The "Duty to Defend" Within Louisiana Law

Hanover argues that reconsideration is necessary to "correct a manifest error of law," because "Louisiana courts and federal courts interpreting Louisiana law have recognized that an insurer's obligation to defend its insured terminates upon judicial determination that the plaintiff's claims against the insured are not covered under the policy."[38]  Hanover states that the Louisiana Supreme Court addressed the "broad and continuing duty to defend" that Judge Zainey recognized as implicit in Louisiana law in *American Home Assurance Co. v. Czarniecki*[39]:

> Generally the insurer's duty to defend is broader than its liability for damage for claims[,] ... with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
> Thus, if assuming all of the allegations in the petition to be true, there would be both (1) coverage under the policy, and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit.[40]

Hanover relies on the reasoning of the First Circuit Court of Appeal of Louisiana in *Roy*[41] to argue that *Czarniecki* should not be interpreted to force an insurer to provide a defense "where the undisputed facts obviously exclude coverage in a suit simply because the allegations of [t]he

---

[37] *Id.*

[38] *Id.* at p. 5 (citing *Stanley v. Trinchard*, No. 02-1235, 2008 WL 2185433, at *9 (E.D. La. May 27, 2008) (Africk, J.) (holding "an insurer's duty to defend exists until the insurer can establish by undisputed facts that the insured's conduct is not covered); *West v. Bd. of Comm'rs of Port of New Orleans*, 591 So. 2d 1358, 1360 (La. App. 4 Cir. 1991) ("Even though the duty to defend is broader than the question of liability, when in a summary judgment the trial court decides as a matter of law the exclusion is applicable, meaning there is no coverage, then of course there is no duty to defend."))

[39] 230 So. 2d 253, 269 (La. 1969).

[40] *Id.*

[41] 653 So. 2d 1327.

petition omit crucial, undisputed facts."[42]  Hanover argues that Judge Zainey incorrectly limited *Roy* as "merely recogniz[ing] that an insurer has no duty to defend when the undisputed facts clearly preclude coverage but the plaintiff simply chooses to omit those crucial, determinative facts from the petition."   According to Hanover, *Roy* involved a petition that failed to allege the date of installation resulting in allegations that did not unambiguously exclude coverage; however, after deposition testimony established the date of installation, the allegations together with the undisputed facts clearly excluded coverage, leading the Louisiana appellate court to conclude that the insurer's duty to defend was terminated.[43]

Hanover claims that the Consolidated Suits, similarly to *Roy*, involve petitions that alleged disparagement, and therefore did not unambiguously exclude coverage.[44]  Hanover argues that once discovery developed the record, the undisputed facts established that coverage was clearly excluded because there was no "evidence to sustain any type of defamation tort claim, whether in slander, libel, or disparagement."[45]  Therefore, Hanover argues that pursuant to the reasoning in *Roy*, "[o]nce Judge Zainey concluded that Hanover's policy does not afford coverage for the claims asserted against SnoWizard, any duty of Hanover to defend SnoWizard terminated."[46]

Hanover notes that, like Louisiana, a number of other states, including Mississippi, California, Wisconsin, and Pennsylvania, recognize a "broad and continuing duty to defend," and these jurisdictions collectively agree that the insurer's duty to defend terminates with a

---

[42] Rec. Doc. 581-1 at p. 6 (quoting *Roy*, 653 So. 2d at 1333).

[43] *See id.* at p. 7.

[44] *Id.*

[45] *Id.* at pp. 7-8 (citing Rec. Docs. 342, 343, 346 at p. 4).

[46] *Id.* at p. 8 (internal quotations and citations omitted).

determination that none of the plaintiff's claims fall within policy coverage.[47]  Finally, Hanover explains that even the leading treatises on Louisiana insurance law are clear that an insurer's duty to defend lasts until the conclusion of the underlying lawsuit or until it is shown that there is no potential for recovery.[48]

Hanover concludes that Judge Zainey's decision is unsupported by "any jurisprudence," and the Court should find that Hanover's obligation to defend SnoWizard in this case terminated, at the very latest, on May 9, 2011, when the Court granted Hanover partial summary judgment as to "indemnity coverage."[49]

### 3. Interpretation of the Louisiana Insuring Agreement

According to Hanover, Judge Zainey's decision was based, at least in part, on finding that the present cases do not fall within the policy's express statements in Subsection (2) of the Louisiana Insuring Agreement regarding the circumstances that allow Hanover to terminate its defense duties.[50] Hanover explains that Subsection (2) "comes into play only if there is a possibility that Hanover

---

[47] *Id.* at pp. 8-10 (citing *Audubon Ins. Co. v. Terry Road Wine & Liquor, Inc.*, 875 F. Supp. 1423, 1245, 1247 (S.D. Miss. 1995) (holding that insurer, who undertook the defense of its insured under a reservation of rights, could later withdraw its defense because the undisputed facts ruled out any possibility of coverage under the policy); *Scottsdale Ins. Co. v. MV Transp., et. al.*, 115 P.3d 460, 466 (Cal. 2005) ("[T]he defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage.")).

[48] Rec. Doc. 581-1 at p. 11 (citing 15 La. Civ. L. Treatise, *Insurance Law & Practice* § 213 (3d ed.); 14 *Couch on Ins.* §§ 200:47, 200:49; 200:52).

[49] *Id.* at p. 12.

[50] *Id.* (citing Rec. Doc. 343 at p. 5).  Specifically, Subsection (2) of the "Louisiana Changes-Insuring Agreement" provides: "Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements."

might be obligated to pay a judgment or settlement for damages to which the insurance applies."[51] Hanover objects to reading Subsection (2) to allow "an insurer [to] withdraw its defense <u>only</u> when it pays the remainder of policy limits in judgment or settlement, even when the policy unambiguously excludes coverage for each and every claim," because such a reading "undermines *Allstate v. Roy*, *Stanley v. Trinchard*, and all other decisions where a Louisiana insurer's defense obligation was held to cease once it is determined that all claims are wholly outside coverage."[52] Judge Zainey's interpretation of Subsection (2) would "lead to the absurd result of forcing insurers to provide defense coverage for suits for which there are no sums that the insured could possibly become legally obligated to pay because of damages to which the insurance applies, and such an interpretation would go beyond the terms of the contract."[53]

Hanover also asserts that Judge Zainey's decision was erroneous insofar as it found that the phrase "[h]owever we will have no duty to defend the insured against any 'suit' seeking damages . . . to which this insurance does not apply" was excluded from the Louisiana Insuring Agreement in recognition of a duty to defend extending beyond a judicial determination that coverage does not exist.[54]   Hanover argues that the terms of the policy should not be interpreted in an "unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated" by the contract.[55]   According to Hanover, the Louisiana Insuring Agreement, made

---

[51] *Id.* at p. 14.

[52] *Id.* at p. 15 (emphasis in original) (internal citations omitted).

[53] *Id.*

[54] *Id.* at pp. 13-14.

[55] *Id.* at p. 13 (quoting *Whitham v. La. Farm Bureau Cas. Ins. Co.*, 34 So. 3d 1104, 1108 (La. App. 2 Cir. 2010)).

part of every General Coverage Form issued in Louisiana, "unambiguously states that defense coverage applies, <u>only</u>, to the defense of claims for 'sums that the insured becomes legally obligated to pay as damages because of personal and advertising injury to which this insurance applies.'"[56]

## B. SnoWizard's Opposition

SnoWizard opposes Hanover's motion on the merits, but also objects to the motion because it: (1) violates two explicit orders of the Court; (2) is an untimely dispositive motion; (3) violates the law of the case doctrine; and (4) rehashes the same arguments and legal theories previously set forth in three motions for reconsideration.[57]

### 1. SnoWizard's Objections to the Motion

First, SnoWizard argues that Hanover's motion violates two explicit orders of the Court. SnoWizard refers to a Minute Entry dated July 11, 2011, where Judge Zainey ordered that "[d]eadlines will not be extended in the 06-9170, 09-3394, and 10-791 cases as those deadlines have already expired," and "[n]o additional dispositive motions, motions to reconsider, or discovery will be allowed in those cases."[58]  SnoWizard also refers to a second Minute Entry dated October 22, 2012, where this Court stated that it "was not inclined to disrupt Judge Zainey's earlier rulings prior to the matter's assignment to Section G of this Court."[59]  Therefore, SnoWizard argues that the

---

[56] *Id.* at p. 14.

[57] Rec. Doc. 591 at p. 2.

[58] *Id.* at p. 3 (quoting Rec. Doc. 383 at pp. 1-2).

[59] *Id.* (quoting Rec. Doc. 576 at pp. 1-2).

motion should be stricken or denied because Hanover "knowingly file[d] [this] motion for reconsideration ... under the guise of a dispositive motion for summary judgment," thereby violating two explicit orders of the Court.[60]

SnoWizard's second objection is that the motion is untimely under the applicable scheduling orders.  According to SnoWizard, the deadline for Hanover to file dispositive motions in the Consolidated Suits expired on October 29, 2010,[61] and, in Civil Action No. 11-1499, the deadline for filing dispositive motions expired on November 6, 2012.[62]  SnoWizard contends that Hanover's motion should be stricken or denied because it knowingly filed an untimely dispositive motion under all applicable scheduling orders on November 7, 2012, without requesting leave of Court.[63]

Third, SnoWizard argues that Hanover's request for this Court to overrule Judge Zainey's prior orders "merely because Hanover believes that given the identical facts and the identical law, that this Court might have decided matters differently," violates the law of the case doctrine.[64] According to SnoWizard, the law of the case doctrine "encompasses situations in which one judge has rendered an order or judgment and the case is then transferred to another judge,"[65] and "requires only that the successor judge respect principles of comity when considering issues that have already

---

[60] *Id.*

[61] *Id.* at p. 4 (citing Minute Entry, Rec. Doc. 145 at p. 2).

[62] *Id.* (citing Scheduling Order, Rec. Doc. 387 at p. 1).  Although Civil Action No. 11-1499 is not involved in the pending motion, it has been consolidated with the Consolidated Suits, and the Scheduling Order entered in connection with No. 11-1499 is the most recent scheduling order entered in the case.

[63] *Id.* at p. 4.

[64] *Id.* at p. 6 (citing *Williams v. Bexar Cnty., Tex.*, No. 98-51187, 2000 WL 1029171, at *1 n. 3 (5th Cir. July 14, 2000)) (internal quotations omitted).

[65] *Id.* at pp. 4-5 (citing *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Comm., Inc.*, 677 F.3d 720, 728 n. 3 (5th Cir. 2012)) (internal quotations omitted).

been decided."[66]   Therefore, SnoWizard maintains that this Court should only overrule Judge

Zainey's prior rulings if the Court concludes that Judge Zainey committed a "clear error of law."[67]

SnoWizard asserts that "Judge Zainey gave detailed and thoughtful reasons for his rulings denying

Hanover's motions for summary judgment, addressing and rejecting each of Hanover's arguments,

and he also had an opportunity to consider each of Hanover's assertions of error argued in its

motions for reconsideration, rejecting those arguments as well."[68]  Thus, SnoWizard concludes that

Hanover's motion should be denied because it is asking the Court to overrule Judge Zainey's rulings

simply because this Court may have decided matters differently, which violates the law of the case

doctrine.[69]

Finally, SnoWizard objects to the pending motion for summary judgment because it is

substantively a motion for reconsideration, which merely rehashes legal theories Hanover previously

asserted.  According to SnoWizard, Federal Rule of Civil Procedure 54 applies to the instant motion,

because the motion asks the Court to reconsider Judge Zainey's prior ruling in this case.  SnoWizard

relies on *Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma-Sea Ship Builders, L.L.C.*,[70] where this Court

stated that "Rule 54(b) motions ... are not the proper vehicle for rehashing evidence, legal theories,

or arguments.  Instead they 'serve the narrow purpose of allowing a party to correct manifest errors

---

[66] *Id.*

[67] *Id.* at p. 6 (quoting *Williams*, 2000 WL 1029171 at *2).

[68] *Id.*

[69] *Id.*

[70] 282 F.R.D. 146 (E.D. La. 2012) (Brown, J.).

of law or fact or to present newly discovered evidence.'"[71] Therefore, SnoWizard "objects to the motion as improper under Rule 54(b)," and argues that it should be stricken or denied because it rehashes legal theories and arguments already raised in its previous three motions for reconsideration.[72]

### 2. SnoWizard's Opposition on the Merits

SnoWizard opposes Hanover's motion for summary judgment on the merits because: (1) Hanover's duty to defend has been conclusively determined by an earlier order in the case and the settlement agreement between the parties; and (2) nothing in the Louisiana Insuring Agreement entitles Hanover to terminate its defense.

SnoWizard notes that before Civil Action No. 06-9170 was consolidated with the other actions, Judge Zainey entered an order finding that "the policy does not unambiguously exclude coverage on all claims alleged in the petition."[73] Thereafter, SnoWizard and Hanover entered a Settlement Agreement[74] in which Hanover agreed "to defend SnoWizard in the Consolidated Suits," and the Court entered an order[75] of partial dismissal reserving to Hanover "its coverage defenses which have been asserted or may hereafter be asserted against any of the parties to the Consolidated

---

[71] Rec. Doc. 591 at p. 7 (quoting *id.* at 153 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989))).

[72] *Id.* (citing Rec. Docs. 357-359 (earlier motions for reconsideration before Judge Zainey)).

[73] *Id.* at p. 8 (quoting Order & Reasons, Rec. Doc. 87 at pp. 6-7).

[74] Settlement Agreement, Rec. Doc. 591-2 at p. 2.

[75] Order, Rec. Doc. 190.

Suits."[76]  SnoWizard claims that under Louisiana law and federal law the Settlement Agreement is binding on the parties.[77]  According to SnoWizard, "the Settlement Agreement and Order of partial dismissal leave no doubt that Hanover agreed to defend SnoWizard in at least" the Consolidated Suits, which are subjects of the instant motion for reconsideration, and therefore, "the [S]ettlement [A]greement and Order are conclusive of SnoWizard's right to a defense and Hanover's duty to defend SnoWizard."[78]

SnoWizard also contends that Hanover's motion should be denied because nothing in the policy entitles Hanover to terminate its defense.  SnoWizard states that the *Erie* doctrine requires this Court to attempt to discern how the Louisiana Supreme Court would resolve the matter; therefore, a Louisiana Supreme Court case, *Pareti v. Sentry Indemnity Co.*,[79] is relevant here. SnoWizard explains that the issue in *Pareti* was "whether the liability insurer had a continuing duty, after the exhaustion of its policy limits through settlement, to defend its insured in another claim arising from the same accident."[80]  The Louisiana Supreme Court held that the insurer's duty to defend had ended because the "unambiguous policy language" provided that the duty to "defend ends when [the] limit of liability for this coverage had been exhausted."[81]  SnoWizard concludes that Hanover's motion must be denied based on *Pareti*, because "there is no such 'unambiguous policy

---

[76] Rec. Doc. 591 at p. 8 (quoting Order, Rec. Doc. 190).

[77] *Id.* at pp. 8-9 (citing *Noble Drilling, Inc. v. Davis*, 64 F.3d 191, 195 (5th Cir. 1995); *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967); *Holloway Drilling Equip., Inc. v. Bodin*, 2012-355 (La. App. 3 Cir. 11/7/12); 2012 WL 5417046, at *2)).

[78] *Id.* at p. 9.

[79] 536 So. 2d 417 (La. 1988).

[80] Rec. Doc. 591 at p. 10 (citing *id.* at 418, 422, 424).

[81] *Id.*

16

language' terminating Hanover's duty to defend SnoWizard under the circumstances of this case even though the plaintiffs' disparagement and unfair competition claims have been dismissed."[82] In other words, SnoWizard reiterates Judge Zainey's reasoning that *Roy* "does not stand for the proposition that Louisiana implicitly allows Hanover to do what its contract of insurance does not allow."[83]

SnoWizard argues that Hanover's omission of the phrase "[h]owever, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply,"[84] from the Louisiana Insuring Agreement can only mean that "Hanover has a duty to defend SnoWizard even against a suit seeking damages for personal and advertising injury to which the insurance is found not to apply."[85] SnoWizard notes that "Hanover's only explanation for omission of the sentence in this case is that it "does not alter the scope of defense coverage in the instant matter."[86] SnoWizard claims that Hanover's proposed interpretation would make the phrase have no purpose in violation of article 2050 of the Louisiana Civil Code, which states that "[a] provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."[87] Therefore, SnoWizard concludes that even if the Court reaches Hanover's motion on the merits and concludes that the prior Settlement Agreement and order do not prohibit Hanover from terminating its defense, the terms of

---

[82] *Id.* (citing Order & Reasons, Rec. Doc. 332).

[83] *Id.* (Rec. Docs. 342, 343, 346 at p. 5).

[84] *See* Rec. Doc. 581-3 at pp. 56-57.

[85] Rec. Doc. 591 at pp. 12-13.

[86] *Id.* (quoting Rec. Doc. 581-1 at p. 14).

[87] *Id.*

the insurance policy itself refutes Hanover's argument that the dismissal of the Plaintiffs' disparagement and unfair competition claims terminate the duty to defend.

## C.   Hanover's Reply to SnoWizard's Objections and Opposition to the Motion

### 1. Hanover's Reply to SnoWizard's Objections

In response to SnoWizard's objections that Hanover's motion was untimely and violates the Court's orders, Hanover argues that the most recent scheduling order[88] gave the parties until November 6, 2012 to file dispositive motions, and SnoWizard itself took advantage of that deadline by filing two motions for summary judgment on November 6, 2012.[89]  Although Hanover did not file its motion until November 7, 2012 at 12:11 a.m., the eleven minute delay was caused by counsel's efforts to prepare a proposed order while logged into the electronic filing system.  Hanover contends that SnoWizard cannot claim prejudice by an eleven minute delay.[90]

Hanover argues that its motion does not in fact violate the law of the case doctrine, because Hanover filed its motion to correct a clear error of law.[91]  In support of this position, Hanover relies on *Loumar, Inc. v. Smith*,[92] where the Fifth Circuit noted that "[l]aw-of-the-case doctrine is not...a barrier to correction of judicial error.  It is a rule of convenience and utility and yields to adequate reason."[93]

---

[88] Rec. Doc. 387.

[89] Rec. Doc. 599 at pp. 1-2 (citing Rec. Docs. 579, 580).

[90] *Id.*

[91] *Id.* at p. 3.

[92] 698 F.2d 759 (5th Cir. 1983).

[93] Rec. Doc. 599 at p. 3 (quoting *id.* at 762).

18

*2. Hanover's Reply to SnoWizard's Opposition on the Merits*

Hanover reiterates that Judge Zainey correctly held that the "policy does not afford coverage for the claims asserted in" each of the Consolidated Suits,[94] but, considering clear precedent establishing that "an insurer's duty to defend exists until the insurer can establish by undisputed facts that the insured's conduct is not covered," it was clear error for Judge Zainey to refuse to rule that  Hanover's duty to defend terminated once it was clear that the policy did not cover the claims asserted against SnoWizard.[95]   Hanover urges the Court to apply *Roy* here because the case is directly on point: in *Roy* and the pending case, facts were omitted from the petition, which when discovered in depositions, made it clear that the asserted claims were not covered by the policy, and the duty to defend terminated.[96]

Hanover agrees with SnoWizard that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole,"[97] but Hanover reasons that interpreting the omission of a sentence in the Louisiana Insuring Agreement to create an affirmative duty for Hanover to defend SnoWizard against any suit does not take into account the other policy provisions.[98]   Hanover emphasizes the clear scope and limitation of coverage set forth in the first sentence of the insuring agreement: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising

---

[94] *Id.* (quoting Rec. Docs. 342, 343, 346 at p. 5).

[95] *Id.* at pp. 3-4 (quoting *Stanley*, 2008 WL 2185433, at *9).

[96] *Id.* at pp. 4-5.

[97] *Id.* at pp. 5-6 (quoting Rec. Doc. 591 at p. 12).

[98] *Id.* at p. 6.

19

injury' to which this insurance applies."[99]    Likewise, Hanover asserts that the duty to defend is clearly limited by the provision that "[n]o other obligation or liability to pay sums or perform acts or services."[100]    According to Hanover, these provisions state the scope and limitation of coverage and the duty to defend under the Louisiana Insuring Agreement, and Hanover should not be required to specify what is not covered or "expressly negate, in writing, every affirmative duty in the policy."[101]    Hanover asserts that to interpret the policy to provide defense coverage against a suit where the claims are unambiguously excluded from the policy would enlarge the scope of the policy beyond what was reasonably contemplated.[102]

Finally, Hanover argues that SnoWizard is incorrect in arguing that the Settlement Agreement between SnoWizard and Hanover prohibits Hanover from withdrawing its defense of SnoWizard.  Hanover explains that the Settlement Agreement "expressly reserved Hanover's rights to amend or alter its position on liability and defense coverage should additional information come to light, should circumstances change."[103]    According to Hanover, the circumstances changed when Judge Zainey determined on May 9, 2011 that the claims against SnoWizard are not covered under the policy, and Hanover has continued to provide SnoWizard a defense with a reservation of right to demand recoupment of the defense cost should the Court determine that Hanover's defense obligation terminated "on the date of the first judicial determination of no indemnity coverage."[104]

---

[99] *Id.* (quoting Louisiana Insuring Agreement, Rec. Doc. 581-3).

[100] *Id.* at p. 7 (quoting Louisiana Insuring Agreement, Rec. Doc. 581-3).

[101] *Id.*

[102] *Id.*

[103] *Id.* at pp. 7-8 (citations omitted).

[104] *Id.* at pp. 9.

### III.  Law and Analysis

#### A.  Timeliness of the Motion

SnoWizard objects that Hanover's Motion for Summary Judgment is untimely and in violation of the Court's prior orders.[105]  First, the Scheduling Order applicable to the Consolidated Suits required Hanover to file its dispositive motions by October 29, 2010.[106]  The Scheduling Order entered in Civil Action No. 11-1499 provided that all dispositive motions "shall be filed and served no later than November 6, 2012;" however, that Scheduling Order explicitly states that "[t]he following deadlines apply to case number[]...11-1499.  Deadlines in case numbers 06-9170, 09-3394 and 10-791 are not extended."[107]  Furthermore, Judge Zainey entered a Minute Entry, containing an Order, on July 11, 2011, stating that "[d]eadlines will not be extended in the 06-9170, 09-3394, and 10-791 cases as those deadlines have already expired.  No additional dispositive motions, motions to reconsider, or discovery will be allowed in those cases and violation of this prohibition may result in sanctions."[108]  This Court also stated in a minute entry that "the Court was not inclined to disrupt Judge Zainey's earlier rulings prior to the matter's assignment to Section G."[109]

In a status conference on December 13, 2012, Hanover and SnoWizard stipulated to having "their issue decided by the Judge rather than being submitted to a jury."[110]  The Fifth Circuit has

---

[105] Although Hanover contends that SnoWizard's also filed summary judgment motions after the deadline for dispositive motions in the Consolidated Suits, those motions are not related to the instant motion and will not be addressed here.

[106] Rec. Doc. 145 at p. 2.

[107] Rec. Doc. 387 at p. 1.

[108] Rec. Doc. 383 at pp. 1-2.

[109] Rec. Doc. 576 at pp. 1-2.

[110] Rec. Doc. 604 at p. 3.  No formal stipulation was ever entered into the record.

explained that when "a trial on the merits will not enhance the court's ability to draw those inferences and conclusions, then a district judge should properly draw his inferences [on a motion for summary judgment] without resort to the expense of a trial."[111]  Here, the Court will ultimately have to decide the scope of Hanover's continuing duty to defend SnoWizard and any applicable reservation of rights made by Hanover, and it is unclear how a trial on the interpretation of the duty to defend in Louisiana law–the issue presented for reconsideration by this motion–would enhance the record .

SnoWizard argues that Hanover's motion is untimely because it was filed at 12:11 a.m on November 7, 2012 instead of November 6, 2012; however, such a minor delay should not be dispositive of the motion, especially where the Court will, at trial, have to decide the issues presented on virtually the same record as that presented here.  It is also unpersuasive that Hanover is barred from filing this motion because the deadline for dispositive motions in the Consolidated Suits expired on October 29, 2010.  This matter was transferred to Section G well after the expiration of the October 29, 2010 deadline in the Consolidated Suits and after a new trial date and deadlines were issued in Civil Action No. 11-1499.  Moreover, this Court has wide discretion in how it manages its docket.  Accordingly, the earlier scheduling order in the Consolidated Suits should not be applied here to frustrate the Court's ability to efficiently decide the issues before it.

## B.  Law of the Case

SnoWizard contends that the Court should not revisit the previous rulings on Hanover's duty to defend in the Consolidated Suits pursuant to the law of the case doctrine.  Typically, an issue

---

[111] *Matter of Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991).

addressed by a court becomes *stare decisis* for subsequent proceedings in the same case;[112] however, this doctrine is not mandatory,[113] and under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."[114]   The Fifth Circuit has explained that the law of the case doctrine does not prohibit the Court from reconsidering a prior trial judge's interlocutory ruling "in order to correct a clear error of law."[115]   However, a judge is not permitted to overrule an earlier judge's order or judgment merely because the latter judge might have decided matters differently.[116]   Therefore, the Court is not prohibited from reconsidering this matter and correcting it for clear error by the law of the case doctrine.

## C.  Motion for Reconsideration

### 1.  Standard of Review on a Motion for Reconsideration

Hanover styles the instant motion as a motion for summary judgment, however, the relief requested is reconsideration of Judge Zainey's partial denial of summary judgment in the Consolidated Suits.[117]   Therefore, the Court will apply the standard applicable to motions for reconsideration.  Although the Fifth Circuit has noted that the Federal Rules "do not recognize a

---

[112]*See Morrow v. Dillard*, 580 F.2d 1284, 1289 (5th Cir. 1978).

[113] *Perillo v. Johnson*, 205 F.3d 775, 780-81 (5th Cir. 2000) ("The law of the case doctrine is a matter of judicial discretion rather than judicial power when a court is reviewing its own prior decision.").

[114] *Melancon v. Tezaco, Inc.*, 659 F.2d 551, 553 (5th Cir. Unit A Oct. 1981).

[115] *Williams*, 2000 WL 1029171, at *1 n. 3 (internal citations and quotations omitted); *see also Stoffels*, 677 F.3d at 728 n. 3.

[116] *Williams,* 2000 WL 1029171, at *1 n. 3.

[117] *See* Rec. Docs. 342, 343, 346.

'motion for reconsideration' *in haec verba*,"[118] it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).[119] Rules 59 and 60, however, apply only to final judgments.[120]   An order on a motion for partial summary judgment is interlocutory and the trial court has discretion to reconsider or reverse its decision.[121]   An interlocutory order is not final because the court  "at any time before final decree [could] modify or rescind it."[122]

Therefore, when a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, Federal Rule of Civil Procedure 54(b) controls.[123]  The Rule states:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of

---

[118] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[119] *Id.* (Rules 59 and 60); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3-4 (E.D. La. Apr. 5, 2010) (Vance, C.J.) (Rule 54).

[120] Rule 59 concerns motions to "alter or amend a judgment" whereas Rule 60 can provide relief from "a *final* judgment, order, or proceeding."  Fed. R. Civ. P. 60(b) (emphasis added).  The Advisory Committee Notes of 1946 state that "[t]he addition of the qualifying word 'final' emphasizes the character of judgement, orders or proceedings from which *Rule 60(b)* affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."  Fed. R. Civ. P. 60(b) (1946 Advisory Committee Notes).  *See* also, *Helena Labs. Corp.*, 483 F. Supp. 2d 538 (E.D. Tex. 2007) (motion was improperly filed under Rule 59(e) when there existed no final judgment that had been entered).  *See also*, *Lambert v. McMahon*, No. 06-10679, 2007 U.S. App. LEXIS 5220 (5th Cir. Mar. 6, 2007) (where there was no entry of final judgment, requests could not be considered under Rule 60(b)); *Greene v. Union Mut. Life Ins. Co.*, 764 F.2d 19, 37 (1st Cir. 1985) (finding that a district court's decision to dismiss fewer than all counts of a complaint did not constitute a basis for any final judgment, such that it was error for the district court to have applied a Rule 60(b) standard to a motion seeking reconsideration of the dismissal).

[121] *Lavespere*, 910 F.2d at 185 (citing Fed. R. Civ. P. 54(b) and *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970)).

[122] *Bon Air Hotel*, 426 F.2d at 862 (quoting *John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 88 (1922)).

[123] Fed. R. Civ. P. 54(b).  *See also*, *Helena Labs*, 483 F. Supp. 2d 538 (motion for reconsideration under Rule 59(e) treated as under Rule 54(b) because reconsideration of partial summary judgment order was sought and no final judgment had yet been entered in the case).

a judgment adjudicating all the claims and all the parties' rights and liabilities.[124]

Under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."[125]  However, this broad discretion[126] must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays.[127]  Further, the decision of the district court to grant or deny a motion for reconsideration will only be reviewed for an abuse of discretion.[128]

The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment.[129]  A Rule 59(e) motion "calls into question the correctness of a judgment,"[130] and courts have considerable discretion in deciding whether to grant such a motion.[131]  In exercising this discretion, courts must carefully balance the interests of justice with the need for finality.[132]  Courts in the Eastern District of Louisiana have generally considered four factors in

---

[124] Fed. R. Civ. P. 54(b).

[125] *Melancon*, 659 F.2d at 553.

[126] *See Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993).

[127] *See, e.g.,* 18B Charles A. Wright et al., Fed. Prac. & Proc. § 4478.1 (2d ed. 2002).

[128] *Martin v. H.M.B. Constr. Co.*, 279 F.2d 495, 496 (5th Cir. 1960) (citation omitted).  *See also Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996).

[129] *See, e.g., Castrillo*, 2010 WL 1424398, at *3; *Rosemond v. AIG Ins.*, No. 08-1145, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *In re Katrina Canal Breaches*, No. 05-4182, 2009 WL 1046016, at *1 (E.D. La. Apr. 16, 2009) (Duval, J.).

[130] *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 581 (5th Cir. 2002).

[131] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[132] *Id.* at 355-56.

25

deciding a motion under the Rule 59(e) standard:

> (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;
> (3) the motion is necessary in order to prevent manifest injustice; or
> (4) the motion is justified by an intervening change in controlling law.[133]

Although Rules 59 and 60 set forth specific time frames during which reconsideration may be sought,[134] Rule 54 sets forth no such limitation.[135]  However, importantly, Rule 54(b) motions, like those under Rules 59(e) and 60(b), are not the proper vehicle for rehashing evidence, legal theories, or arguments.[136]  Instead, they "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[137]  "It is well settled that motions for reconsideration should not be used . . .  to re-urge matters that have already been advanced by a party."[138]

Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly"[139] and the motion must

---

[133] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[134] Fed R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); Fed. R. Civ. P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.").

[135] Fed. R. Civ. P. 54(b) (stating that the order "may be revised at any time" before entry of final judgment). The only limitation imposed on Rule 54(b) reconsideration is if the court issues an order expressly stating that there is "no just reason for delay," in which case the order becomes a final, appealable judgment.  *Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Auth.*, 925 F.2d 812, 815 (5th Cir. 1991).

[136] *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).

[137] *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

[138] *Helena Labs.*, 483 F. Supp. 2d at 539 (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[139] *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004).

"clearly establish" that reconsideration is warranted.[140]  When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[141]

Here, Hanover argues Judge Zainey's ruling was manifestly erroneous in finding that Hanover continued to owe SnoWizard a duty to defend after the Court determined that the undisputed facts precluded coverage of Plaintiffs' claims under the policy.  This Court finds it arguable that Judge Zainey's ruling was manifestly erroneous, and that it is, therefore, appropriate for this Court to reconsider whether Hanover continues to owe SnoWizard a defense.  Accordingly, the Court now turns to an analysis of whether it should modify Judge Zainey's prior ruling.

### 2.  Reconsideration of Hanover's Continuing Duty to Defend

For the sake of clarity, the only issue Hanover asks the Court to reconsider is the scope and extent of its duty to defend.  It has already been determined in this litigation, and it is not contested in the instant motion, that the policy does not afford liability coverage for any of Plaintiffs' asserted claims.  Therefore, the issue presently before the Court is whether Hanover's duty to defend continues after a judicial determination has been made that the asserted claims are not covered under the policy prior to trial.[142]

"The issue of whether a liability insurer has the duty to defend a civil action against its

---

[140] *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[141] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F.Supp. 2d 471 (M.D. La. 2002).  *See also Mata v. Schoch*, 337 BR 138 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented). *See also FDIC v. Cage*, 810 F.Supp. 745, 747 (D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[142] Rec. Doc. 342, 343, 346 at p. 5.

insured is determined by application of the 'eight corners rule,' under which an insurer must look to the 'four corners' of the plaintiff's petition and the 'four corners' of [the insurer's] policy to determine whether it owes that duty."[143]   However, it is well established that the duty to defend in Louisiana law is generally broader than an insurer's liability for damage claims.[144]   The Louisiana Supreme Court addressed the duty to defend in *Czarniecki*, stating that an "insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage."[145]   Thus, the Louisiana Supreme Court concluded: "if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit."[146]

The First Circuit Court of Appeal of Louisiana recognized in *Roy*, that if the reasoning set forth in *Cziarnecki* were taken to its logical conclusion, insurers would be obligated to provide a defense in a case where the undisputed facts obviously exclude coverage in a suit simply because the allegations of the plaintiff's petition omit the crucial, undisputed facts.[147]   The Louisiana appellate court explained that "[w]hile the duty to defend may exist in circumstances where it is apparent that there is no coverage, it is predicated on some possibility that the allegations, when

---

[143] *Stanley*, 2008 WL 2185433, at *5 (citing *Mossy Motors, Inc. v. Cameras Am.,* 898 So.2d 602, 606 (La.App. 4 Cir.2005)); *see also Henly v. Phillips Abita Lumber Co.,* 971 So.2d 1104, 1109 (La. App. 1 Cir.2007); *see Lamar Adver. Co. v. Cont'l Cas. Co.,* 396 F.3d 654, 660 (5th Cir. 2005).

[144] *Czarniecki*, 230 So. 2d at 259.

[145] *Id.*

[146] *Id.*

[147] 653 So. 2d at 1333.

supported by competent evidence, can be proven."[148]   Therefore, *Roy* held that an insurer's duty to defend terminates once the undisputed facts establish that claims asserted in the petition are not covered under the policy.[149]

As in *Roy*, because the allegations in Plaintiffs' complaint taken as true could have resulted in liability to SnoWizard, Hanover at least initially owed SnoWizard a duty to defend.[150]   However, when the petition is read in conjunction with the undisputed facts established in discovery, coverage is clearly excluded.[151]   Therefore, it would appear, as Hanover argues, that the duty to defend terminated on May 9, 2011, the date of the Court's initial determination that the undisputed facts unambiguously precluded coverage.[152]   However, SnoWizard claims that the policy requires otherwise.

### 3.   The Duty to Defend as Defined by the Policy

An insurance policy is a contract, and as with any other contract, it constitutes the law

---

[148] *Id.*

[149] The weight of jurisprudence, in Louisiana and other states with similarly broad application of the duty to defend, supports the reasoning of *Roy*.  *See Stanley*, 2008 WL 2185433, at *9 ("[A]n insurer's duty to defend exists until the insurer can establish by undisputed facts that the insured's conduct is not covered."); *West*, 591 So. 2d at 1360 ("Even though the duty to defend is broader than the question of liability, when in a summary judgment the trial court decides as a mater of law...there is no coverage, then of course there is no duty to defend."); *see also Audubon Ins. Co.*, 875 F. Supp. at 1249 (holding that insurer could withdraw its defense because the undisputed facts ruled out any possibility of coverage under the policy).

[150] *Cf. Roy*, 653 So. 2d at 1333 (finding that insurer initially owed duty to defend because allegations in petition did not originally exclude coverage).

[151] *See* Rec. Docs. 342, 343, 346 at p. 5 (Order and Reasons determining that SnoWizard has no coverage under the policy for any of Plaintiffs' asserted claims).

[152] *See id.* (orders entered on May 9, 2011).

between the parties.[153]   Accordingly, "courts are guided by certain principles of construction and should interpret insurance policies the same way they do other contracts, by using the general rules of contract interpretation as set forth in [the] Civil Code."[154]   In interpreting an insurance contract, the court's role is to "ascertain the common intent of the insured and insurer as reflected by the words in the policy."[155]   The policy should be "construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another."[156]   Where the words of the insurance policy are clear, courts are to interpret the contract as written and are not to delve into the parties' intent;[157] in such instances, the court is to look only to the four corners of the instrument.[158]

The Louisiana Insuring Agreement provides, in pertinent part, that the policy covers SnoWizard for "personal and advertising injury" liability as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.[159]

Therefore, the policy requires Hanover to defend SnoWizard in any suit seeking "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising

---

[153] *Pareti*, 56 So. 2d at 420 (citing *Carney v. Am Fire & Indemnity Co.*, 371 So. 2d 815 (La. 1979)).

[154] *Peterson v. Schimek*, 799 So. 2d 1024, 1028 (La. 1999) (citing *Ledbetter v. Concord Gen. Corp.*, 665 So. 2d 1166, 1169 (La. 1996); *Crabtree v. State Farm Ins. Co.*, 632 So. 2d 736 (La. 1994)).  *See also, LeBlanc v. Aysenne*, 921 So. 2d 85, 89 (La. 2006).

[155] *Id.* (citing La. Civ. Code art 2045; *Ledbetter*, 665 So. 2d at 1169).  *See also, Edwards v. Daugherty*, 883 So. 2d 932, 940 (La. 2004).

[156] *Pareti*, 56 So. 2d at 420 (citing *Benton Casing Serv., Inc. v. Avemco Ins.*, 379 So. 2d 225 (La. 1979)).

[157] *Peterson*, 799 So. 2d at 1028.  *See also Edwards*, 883 So. 2d at 940.

[158] *Brown v. Drillers, Inc.*, 630 So. 2d 741 (La. 1994).

[159] Louisiana Insuring Agreement, Rec. Doc. 581-3 at p. 79, ¶ B(1)(a).

injury' to which this insurance applies." Once the Court ruled that the undisputed facts establish that there is no "'personal and advertising injury' to which this insurance applies," Hanover's policy no longer required Hanover to defend SnoWizard.  The language is not ambiguous, and the policy should not be interpreted in such a way as to force Hanover to assume obligations not reasonably contemplated by the contract or Louisiana law.

Furthermore, even if the Court found this provision to be unclear, article 2053 of the Lousiana Civil Code provides that "[a] doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before an after the formation of the contract and of other contracts of a lake nature between the same parties."  The nature of an insurance contract weighs in favor of the Court interpretation that this provision gives Hanover the "right and duty to defend" in lawsuits seeking damages that the insurance policy covers.  Insurance contracts are not entered to create affirmative duties where the insurance at issue would not even apply.

SnoWizard's emphasis on the Louisiana Supreme Court's ruling in *Pareti* is misguided, because *Pareti* involved the termination of the duty to defend once policy limits were exhausted.[160] Hanover's policy contains a similar provision to the one at issue in *Pareti*,[161] but that provision was never invoked in this litigation because the Court has already determined that there is no coverage under the policy.

---

[160] *Pareti*, 536 So. 2d at 418.

[161] *See* Louisiana Insuring Agreement, Rec. Doc. 581-3 at p. 79, ¶ (B)(1)(a)(2) ("Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.").

***D. Motion for Summary Judgment on Defense Obligations in the Settlement Agreement***

SnoWizard opposes the instant motion on the basis of the Settlement Agreement between the parties, which SnoWizard contends obligates Hanover to furnish a defense, notwithstanding any continuing duty to defend in Louisiana law.  This argument is presented for the first time in the instant motion and was never advanced before Judge Zainey in the motions for summary judgment filed in 2011.[162]  Therefore, the Court will evaluate this argument under the standard applicable to a motion for summary judgment.[163]

### 1. Standard Applicable to a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[164]  When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[165]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[166]  If the record,

---

[162] *See* Rec. Docs. 342, 343, 346.

[163] Although the parties stipulated in a status conference to have a judge rather than jury decide the case, the parties did not formally enter a stipulation into the record.  *See* Rec. Doc. 604 at p. 3.  Therefore, the Court is hesitant to conclude that any issues of fact in dispute with respect to the Settlement Agreement would not be tried to a jury.

[164] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[165] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[166] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine

issue of fact exists and the moving party is entitled to judgment as a matter of law.[167]


### 2. Interpretation of the Settlement Agreement

Under both Louisiana law[168] and federal law, an agreement between the parties settling a

disputed liability is "as conclusive of their rights as a judgment would be."[169]   A settlement

agreement is a contract.[170]   A district court's interpretation of an unambiguous contract is a question

of law, subject to *de novo* review,[171] but where an agreement is ambiguous, such that its construction

turns on a consideration of extrinsic evidence, the district court's interpretation is reviewed for clear

error.[172]   However, the initial determination that the ambiguous nature of a contract warrants the

introduction of extrinsic evidence is itself a question of law.[173]

Under Louisiana law, the scope of a settlement agreement "settles only those differences that

the parties clearly intended to settle, including the necessary consequences of what they

---

[167] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[168] The Court finds that Louisiana law is applicable to interpretation of this settlement agreement.  *See Davis v. Huskipower v. Outdoor Equipment Corp.*, 936 F.2d 193, 196 (5th Cir. 1991) (enforceability of settlement agreement is governed by the law of the forum state).

[169] *Noble Drilling*, 64 F.3d at 195; *Holloway Drilling*, 2012-355 (La. App. 3 Cir. 11/7/12); 2012 WL 5417046, at *2 (applying the doctrine of *res judicata* where there is a transaction or settlement of a dispute that has been entered into by the parties).  *See also Cia Anon*, 374 F.2d at 35 ("Federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced.") (footnotes and citations omitted).

[170] *In re Raymark Indus., Inc.,* 831 F.2d 550, 553 (5th Cir.1987).  *See also* La. Civ. Code. art. 3071 ("A compromise is a contract.")

[171] *Guidry v. Halliburton Geophysical Services, Inc.*, 976 F.2d 938, 940 (5th Cir. 1992) (citing *LTV Educ. Systems, Inc. v. Bell*, 862 F.2d 1168, 1172 (5th Cir.1989)*; Raymark*, 831 F.2d at 553).

[172] *Id.* (citing *Nat'l Union Fire Ins. Co. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir. 1990)).

[173] *Id.* (citing *Nat'l Union Fire Ins. Co.*, 915 F.2d at 989.

express,"[174]and "the scope of the transaction cannot be extended by implication."[175]   A valid settlement agreement requires that "there must be a meeting of the minds between the parties as to what they intended when the compromise was reached."[176]  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation of the parties intent in a contract can be made."[177]  A contract is not rendered ambiguous simply because the agreement does not expressly impose the obligation in question.[178]  However, "[w]hen the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provision of the contract, but also to whatever the law . . . regards as implied in a contract of that kind or necessary for the contract to achieve its purpose."[179]

When a contract term is ambiguous, the court must turn to the rules of construction outlined in the Civil Code to determine the meaning of the contract within the "four corners" of the document.[180]   A provision is ambiguous where it is "reasonably subject to more than one meaning."[181]  The Civil Code sets forth a number of factors to consider in determining which possible meaning accurately reflects the intent of the parties.  Importantly, "[a] doubtful provision

---

[174] La. Civ. Code art. 3076.

[175] *Brown v. Drillers,* Inc., 630 So. 2d 741, 748 (La. 1994)*.*

[176] *Parich v. State Farm Fire & Casuatly Co.*, 508 S0 2d 1356, 1359 (La. 1987).

[177] *Exxon Corp. v. St. Paul Fire & Marine Ins.*, 889 F. Supp. 908, 911 (E.D. La. 1995) (Jones, J.) (quoting La. Civ. Code art. 2046).

[178] *Id.* (citing *American Totalisator Company, Inc. v. Fair Grounds Corp.*, 3 F.3d 810, 814 (5th Cir.1990)).

[179] La. Civ. Code art. 2054.

[180] *Brown,* 630 So. 2d at 748; *Hettig & Co. v. Union Mut. Life Ins. Co.*, 781 F.2d 1141, 1143 (5th Cir. 1986) (citations omitted).

[181] *Hettig & Co.*, 781 F.2d at 1143.

34

must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."[182]  Additionally, "the contract must be construed as a whole and in light of attending events and circumstances."[183]

The Louisiana Supreme  Court has explained that the meaning of a settlement agreement, as with any other contract, is "ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or contradict the terms of the instrument."[184]  An exception to this rule exists in Louisiana law when the parties disagree on the scope of the compromise agreement, at which time extrinsic evidence may be considered to determine exactly what differences the parties intended to settle.[185]

Here, the parties entered a Settlement Agreement on October 25, 2010, wherein SnoWizard released Hanover from all claims asserted in the third-party complaint for Hanover's refusal to defend SnoWizard in the Consolidated Suits in consideration of:

> Hanover's agreement to defend SnoWizard in the Consolidated Suits subject to Hanover's three July 12, 2010, *Reservation of Rights* letters to SnoWizard concerning SnoWizard's tender of defense and indemnification in the Consolidated Suits...and subject to Hanover's stipulations and affirmative defenses set forth by Hanover in its response to the Third-Party Complaint.[186]

The Reservation of Rights letters clearly state that:

---

[182] La. Civ. Code art. 2053.

[183] *See Brown v. Drillers,* Inc., 630 So. 2d at 748; *see also* La. Civ. Code art. 2050 ("Each provision in a contract must be interpreted in light of the other provision so that each is given the meaning suggested by the contract as whole.")

[184] *Exxon Corp.*, 889 F. Supp. at 911 (citing *Brown v. Drillers, Inc.*, 630 So. 2d 741, 748 (La. 1994)).

[185] *Id.*

[186] Rec. Doc. 591-2 at p. 2.

> Although [Hanover] maintains that all alleged damages fall outside of the coverages provided by its policy, or fall within exclusions of the policy, nevertheless, because and to the extent the Second Amended [Complaint] lacks clarity as to the allegation that Snowizard, Inc. 'disparaged and tarnished Plaintiff's business,' which may or may not fall within coverage depending on the facts proven at trial, [Hanover] will defend the suit at its expense.[187]

Hanover's response to the Third-Party Complaint[188] contains three "defenses" but does not clearly state any "stipulations."  Therefore, it is unclear what Hanover is reserving in the Settlement Agreement based on the "stipulations."  Moreover, the defenses set forth in the answer are so broad, if literally applied, they would render the Settlement Agreement virtually meaningless.  Based on the settlement and subsequent Motion for Partial Dismissal,[189] Judge Zainey entered an order of partial dismissal "reserving unto Hanover all of its coverage defenses which have been asserted or may hereafter be asserted against any of the parties to the Consolidated Suits."[190]

The Settlement Agreement and the Reservation of Rights letters clearly state Hanover's position that Plaintiffs' allegations unambiguously fall outside of the policy's coverage, and that the duty to defend does not attach until the insured receives notice of the allegations that fall within the policy's coverage.[191]  Nevertheless, Hanover agrees to defend SnoWizard in the Consolidated Suits "because and to the extent" Plaintiffs' allegations of disparagement lack

---

[187] *Id.* at p. 19; *see also id.* at pp. 29, 39.

[188] Rec. Doc. 46.

[189] Rec. Doc. 188.

[190] Rec. Doc. 190.

[191] *See* Reservation of Rights letters, Rec. Doc. 591-2 at pp. 19, 29, 40 (citing case law stating that insurer has no duty to defend until it receiving notice of the petition containing allegations within policy coverage, including *Liberty Mutual Ins. Co. v. Jotun Paints, Inc.*, 555 F. Supp. 2d 686 (E.D. La. 2008) and *Gully & Assocs., Inc. v. Wausau Ins. Co.*, 536 So. 2d 816 (La. App. 1 Cir. 1988)).

clarity, "which may or may not" be covered under the policy "depending on the facts proven at trial."   The Reservation of Rights letters do not explicitly address the termination of the duty to defend should a determination that coverage is excluded be made before trial.

The Settlement Agreement was entered into after the Court's determination in Civil Action No. 06-9170, that the Plaintiffs' allegations, specifically those allegations related to disparaging and tarnishing Plaintiffs' business, did not unambiguously preclude coverage under the policy.[192]  Subsequent to execution of the Settlement Agreement, discovery further developed the record and the Court determined that the undisputed facts established that Plaintiffs' "lack[ed] evidence to sustain any type of defamation *tort* claim, whether in slander, libel, or disparagement," and therefore the policy does not afford coverage for any of the asserted claims.[193]  Neither the Reservation of Rights letters nor the Settlement Agreement address the present situation where the Court has determined, prior to trial, that the policy does not cover Plaintiffs' allegations of disparagement.

Considering that there is a disputed issue of fact as to whether in the Settlement Agreement and Reservation of Rights letters the parties intended Hanover's defense to continue through trial even if a determination of no coverage was made prior to trial, summary judgment is not appropriate on this issue.  Moreover, in light of the fact that this issue was raised for the first time in opposition to the instant motion and the parties did not thoroughly brief the issue, the Court finds that additional briefing on the construction and application of the Settlement Agreement in this case is warranted.

---

[192] *See* Rec. Doc. 87 at p. 7.

[193] Rec. Docs. 342, 343, 346 at pp. 4-5.

## IV.  Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Hanover's Motion for Summary Judgment is **GRANTED** insofar as it seeks reconsideration of Judge Zainey's prior orders finding that Hanover has a continuing duty to defend SnoWizard in this case, which was implicit in Louisiana law;[194] and the Court finds that, as a matter of law, the duty to defend terminated upon the Court's determination that the undisputed facts excluded coverage.  Nevertheless, such a conclusion is not dispositive of the issue here, because the parties entered into a settlement agreement and Reservation of Rights letters were issued;

**IT IS FURTHER ORDERED** that Hanover's Motion for Summary Judgment is **DENIED** insofar as it requires an interpretation of defense obligations imposed by the Settlement Agreement and Reservation of Rights letters;

**IT IS FURTHER ORDERED** that the parties brief the issue of whether the parties intended the Settlement Agreement and Reservation of Rights letters to require Hanover to continue its defense of SnoWizard if a determination that coverage is excluded was made prior to trial.

**NEW ORLEANS, LOUISIANA**, this  31st  day of January 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[194] Rec. Doc. 342, 343, 346.

38