## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SOUTHERN SNOW MANUFACTURING CO., INC.**     **CIVIL ACTION**

**VERSUS**                                                                  **NO.    06-9170**
                                                                                          **09-3394**
                                                                                          **10-0791**
                                                                                          **11-1499**

**SNOWIZARD HOLDINGS, INC., et. al.**          **SECTION: "G" (1)**


## ORDER AND REASONS

Considering the disputed issues of law presented to the Court by the parties in the pretrial order[1] and accompanying memoranda of law,[2]

The Court makes the following conclusions as to the contested issues of law presented:

***Issue 1:  Does a valid claim under Section 38 of the Lanham Act, 15 U.S.C. § 1120, require procurement of a trademark registration?[3]***

Parties' Arguments

Plaintiffs explain that no *controlling* authority exists regarding whether a registration has to be actually obtained in order to obtain relief under § 1120.  However, Plaintiffs argue that "[i]f Plaintiffs had waited until one, then another, then another of the applications had become fully-procured registrations, any attempted amendment of this lawsuit, or any filing of additional lawsuits at additional cost, would probably be blocked."[4]  Plaintiffs maintain

---

[1] Rec. Doc. 636.

[2] Rec. Docs. 617, 619.

[3] *See* Rec. Doc. 636 at p. 18 (PL 1, PL 2, and SW 2).

[4] Rec. Doc. 619 at p. 6.

1

that Judge Zainey's prior holding on this issue only "directly affects the unregistered marks in Case No. 10-0791."[5]   Moreover, Plaintiffs note that "Judge Barbier, in the 'Who Dat' litigation . . . allowed §38 (§1120) counterclaims against applied-for-but-not-yet-registered trademarks to remain in that lawsuit."[6]

SnoWizard argues that the plain language of the statute only covers registered marks, a fact that SnoWizard contends Plaintiffs have previously conceded in a response brief.[7] According to SnoWizard, "the only case law found on this issue states that a claim for damages resulting from a fraud on the PTO is not ripe until the mark matures to registration."[8]   Moreover, SnoWizard contends that this Court already decided this issue, holding that § 1120 does not apply to unregistered marks,[9] and the law of the case doctrine provides that the previous decision should govern this issue.[10]

SnoWizard argues that this Court should ignore Plaintiffs' arguments that it would be impractical to wait until registration of the mark is complete because the law suit would be time-barred.   SnoWizard explains that the PTO already has in place a method of challenging

---

[5] *Id.* at p. 5.

[6] *Id.*

[7] Rec. Doc. 617 at p. 2.

[8] *Id.* at pp. 2-3.  (citing *Country Mut. Ins. Co. v. Am. Farm Bureau Federation*, 876 F.2d 599 (7th Cir. 1989) (court of appeals affirmed a dismissal of a Lanham Act §38 claim of fraud in the prosecution of a pending application for registration as unripe); *Kuklachev v. Gelfman*, 600 F.Supp.2d 437, 478 (E.D. N.Y. 2009) ("To 'procure registration' means to obtain registration, not merely to apply for registration."); *Gaudreau v. American Promotional Events, Inc.*, 511 F. Supp. 2d 152, 160 (D.D.C. 2007) (holding that the "trademark owner must have actually procured a federal trademark registration in order for its deeds to be actionable in federal court under Section 38" and dismissing §38 claim based on a pending application.)).

[9] *Id.* at p. 3 (citing Rec. Doc. 162 (Judge Zainey striking plaintiffs' §1120 claims as to the unregistered marks and further noting that "[n]umerous cases have recognized that a claim under §1120 is not ripe until the registration is obtained.")).

[10] *Id.*

2

the validity of a mark prior to registration.[11]  Furthermore, SnoWizard maintains that § 1120 "is not meant as a means of challenging the registration of the mark or recovering penalties for misrepresentations made to the PTO.[12]  Instead, according to SnoWizard, the plain language of § 1120 only allows recovery where the registration under false premises actually harms another, which cannot occur until the mark has been registered.[13]

Analysis

Lanham Act §38, 15 U.S.C. § 1120, provides: "Any person who **shall procure registration** in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

This Court has identified no *controlling* precedent holding that a trademark must be registered to have a viable claim under § 1120.  However, the available case law, and in particular Judge Easterbrook's opinion from the Seventh Circuit, clearly holds that § 1120 should be interpreted, in accordance with the plain language of the statute, to require actual procurement of the mark's registration in order to have a viable claim.[14]

---

[11] *Id.*

[12] *Id.* at p. 4.

[13] *Id.*

[14] *See Country Mut. Ins. Co. v. Am. Farm Bureau Federation*, 876 F.2d 599 (7th Cir. 1989) (court of appeals affirmed a dismissal of a Lanham Act §38 claim of fraud in the prosecution of a pending application for registration as unripe); *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 478 (E.D.N.Y. 2009) ("To 'procure registration' means to obtain registration, not merely to apply for registration."); *Gaudreau v. American Promotional Events, Inc.*, 511 F. Supp. 2d 152, 160 (D.D.C. 2007) (holding that the "trademark owner must have

In addition, Judge Zainey has already ruled on this precise issue when dismissing claims in Civil Action No. 10-0791.  He held that the claims under § 1120 required actual registration of the marks.[15]  Therefore, the attempted and pending registrations of PRALINE, BUTTERED POPCORN, GEORGIA PEACH, and MUDSLIDE and incomplete registration of KING CAKE due to Plaintiffs' intervention are not the basis for viable claims under § 1120, and all such claims should be dismissed.

***Issue 2: Can attempted enforcement of a patent or trademark registration obtained by fraud be an antitrust violation?***

<u>Parties' Arguments</u>

Plaintiffs maintain that under the Supreme Court's *Walker-Process* doctrine "[u]sing a patent to obtain or preserve a monopoly, if the patent was procured through intentional fraud on the USPTO, is an actionable antitrust violation."[16]

Plaintiffs do not separately address whether attempted enforcement of a trademark may be an antitrust violation.  Plaintiffs seem to suggest that the *Walker-Process* doctrine should be extended to fraudulently procured trademarks on the basis of the Supreme Court's holding in *California Motor Transport Co. v. Trucking Unlimited*.[17]  According to Plaintiffs, *California Motor Transport* "made very clear that antitrust claims based on 'unethical conduct in the setting of the adjudicatory process,' including proceedings before federal

---

actually procured a federal trademark registration in order for its deeds to be actionable in federal court under Section 38" and dismissing §38 claim based on a pending application.).

[15] Order and Reasons, Rec. Doc. 162 at pp. 5-6.

[16] Rec. Doc. 619 at p. 3.

[17] 404 U.S. 508, 513 (1972).

agencies like the USPTO, are actionable."[18]  Plaintiffs reason that willful false statement in an application to the USPTO for a trademark registration is an abuse of the administrative process and the abuse produces an illegal result, which constitutes an actionable antitrust violation under *California Motor Transport*.[19]  In support of this position, Plaintiffs rely on the Ninth Circuit's discussion of *California Motor Transport*:

> Litigation is invariably costly, distracting and time-consuming; having to defend a whole series of such proceedings can inflict a crushing burden on a business. *California Motor Transport* thus recognized that the filing of a whole series of lawsuits and other legal actions without regard to the merits has far more serious implications than filing a single action, and can serve as a very effective restraint on trade. When dealing with a series of lawsuits, the question is not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival. The inquiry in such cases is prospective: Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?[20]

Thus, Plaintiffs argue that by flooding the USPTO with a series of fraudulent applications, SnoWizard has "weaponized" the USPTO application process, the TTAB appeal process, and the opposition and cancellation process to damage SnoWizard's competitors.[21]

SnoWizard recognizes, in accordance with the holding in *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.*[22] that "the enforcement of a patent procured by fraud on the patent office could form the basis for a lawsuit under the Sherman Act **provided that** the other elements of monopolization or attempted monopolization under Section 2, 15

---

[18] Rec. Doc. 619 at p. 3.

[19] *Id.*

[20] *Kaiser Foundation Health Plan v. Abbott Labs.*, 552 F.3d 1033, 1046 (9th Cir. 2009).

[21] Rec. Doc. 619 at p. 4.

[22] 382 U.S. 172 (1965).

U.S.C. § 2 are established."[23]   SnoWizard reasons that Plaintiffs will have to prove the following in this case to prevail on their antitrust claims arising from the fraudulent procurement and enforcement of SnoWizard's patent:

> 1) prove by clear and convincing evidence that a defendant committed intentional fraud upon the patent office, as opposed to an honest mistake or even gross negligence 2) define the relevant market in terms of the pertinent product and the geography in which the pertinent product is distributed 3) produce evidence of the exclusionary or market power of Defendants or the patent at issue herein, if any, in the relevant market, and 4) prove that Plaintiffs have attempted to monopolize the defined relevant market by engaging in predatory, anti-competitive conduct with a specific intent to monopolize along with a dangerous probability of achieving a monopoly.[24]

Ultimately, SnoWizard contends that Plaintiffs cannot prove any of the elements because they have no evidence that SnoWizard misrepresented facts before the USPTO and Plaintiffs have not even attempted to define the relevant market.[25]

SnoWizard argues that "[s]ustaining an antitrust claim based upon an alleged fraudulent procurement of a trademark registration is even more difficult than supporting such a claim based upon fraudulent procurement of a patent."[26]   SnoWizard relies heavily on a district court case from the Northern District of New York, which explained:

> Unlike a patent or copyright, a trademark does not in any way represent a monopoly conferred upon a particular product. While patent laws were enacted to encourage invention and development of new products, trademark laws were intended solely to protect the consuming public from deception and confusion, often times resulting from imitation of the distinguishing trademarks of established products.
> ***

---

[23] Rec. Doc. 617 at p. 6.

[24] *Id.* at p. 8.

[25] *Id.*

[26] *Id.* at p. 9.

The test for determining whether using or enforcing a trademark is an antitrust violation is the same as in any other antitrust case.[27]

Although SnoWizard does not argue that attempted enforcement of a trademark cannot possibly constitute an antitrust violation, it contends that proving that enforcement of a trademark "creates a dangerous probability of a monopoly is nearly impossible because the plaintiff must make the additional leap that the trademark (which only protects the mark applied to goods) somehow created a monopoly for the class of goods to which it is applied."[28]  In fact, SnoWizard maintains that courts have generally been reluctant to allow a defendant in an infringement action to assert antitrust laws as a defense to trademark enforcement claims "because it would convert courts into a battleground for extensive antitrust litigation whenever a trademark holder seeks any, totally unrelated equitable relief."[29]


Analysis

In *Walker Process*, the Supreme Court held that "the enforcement of a patent procured by fraud on the Patent Office may be violative of s 2 of the Sherman Act provided the other elements necessary to a s 2 case are present."[30]  Although SnoWizard argues that Plaintiffs cannot prove the elements of the claim, a summary judgment motion was not filed on this issue.  Therefore, on the narrow issue of whether the fraudulent procurement of a

---

[27] *Car-Freshener Corporation v. Auto Aid Manufacturing Corporation*, 438 F. Supp. 82, 86 (N.D.N.Y. 1977).

[28] Rec. Doc. 617 at p. 10.

[29] *Id.* (quoting *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979)).

[30] 382 U.S at 174.

patent can constitute an antitrust violation, the controlling precedent is clear that this Court must answer in the affirmative.

There is no controlling case law addressing whether the attempted enforcement of a trademark can constitute an antitrust violation, but there is persuasive precedent which indicates that if a plaintiff could demonstrate the other elements of a violation of Section 2 of the Sherman Act, then the attempted enforcement of a trademark may constitute an antitrust violation.  Specifically, Justice Blackmun noted in his concurring opinion in V*endo Co. v. Lektro-Vend Corp.*,[31] that "the enforcement of restrictive provisions in a license to use . . . a trademark may violate the Sherman Act."[32]  Moreover, even the case upon which SnoWizard relies, *Car-Freshner Corp. v. Auto Aid Mfg. Corp.*, states ["[t]here is no doubt that a trademark may be utilized in such a manner as to constitute a violation of antitrust laws," and "trademark laws may not be used to monopolize with respect to a certain product."[33] Although it is equally clear that the nature of a trademark, which does not in any way represent a monopoly conferred upon a particular product,[34] will make it particularly difficult to establish that "the plaintiffs' actions have led to or resulted in a dangerous probability that it will gain a monopoly over the product in issue."[35]  Nonetheless, such a claim is possible as a matter of law.

On this issue of law, the Court does not find it necessary to address Plaintiffs' argument that "by flooding the USPTO with a series of fraudulent applications," some of

---

[31] 433 U.S. 623 (1977).

[32] *Id.* at 652 (Blackmun, J., concurring).

[33] 438 F. Supp. at 86-87.

[34] *Id.* at 86.

[35] *Id.* at 87.

which have resulted in patents and federal trademark registrations, SnoWizard has engaged in conduct that is actionable under *California Motor Transport* and the "sham" litigation exception to the *Noerr-Pennington* doctrine. The Court is persuaded by the available case law, that the attempted enforcement of a trademark registration may constitute an antitrust violation if Plaintiffs establish the other elements of an antitrust violation under Section 2 of the Sherman Act. Accordingly, Plaintiffs may pursue this claim at trial.

**Issue 3: Must actual damages be proven to maintain an action for alleged fraudulent procurement of trademark registrations under 15 U.S.C. § 1120?[36]**

The Court has already decided this issue in its Order and Reasons[37] on Defendants Motion for Summary Judgment on Duplicative Claims.

**Issue 4: Can the fraudulent application for a patent or trademark registration be an antitrust violation?[38]**

The Court has requested additional briefing on this issue to be submitted by noon on February 18, 2013, and will issue an order regarding this issue after the Court has had an opportunity to review the briefs.

---

[36] *See* Rec. Doc. 636 at p. 18 (SW 1).

[37] Rec. Doc. 621.

[38] *See* Rec. Doc. 636 at p. 18 (PL 3).

9

*Issue 5: Does the rule against claim-splitting bar certain of Plaintiffs' claims?*[39]

The Court has already decided this issue in its Order and Reasons[40] on Defendants Motion for Summary Judgment on Duplicative Claims.


*Issue 6: Interpretation of claims in the '871 Patent owned by SnoWizard.*[41]

The Court has already decided this issue in its Order and Reasons[42] on Defendants Motion for a *Markman* Determination and for Summary Judgment of Patent Infringement.


Accordingly,

**IT IS HEREBY ORDERED** that the attempted and pending registrations of PRALINE, BUTTERED POPCORN, GEORGIA PEACH, and MUDSLIDE and incomplete registration of KING CAKE due to Plaintiffs' intervention are not the basis for viable claims under § 1120, and all such claims are **DISMISSED** in consolidated Civil Action No. 06-9170 c/w 09-3394, 10-0791, and 11-1499;

**IT IS FURTHER ORDERED** that Plaintiffs may pursue their claims of antitrust violations based on the attempted enforcement of patents and trademark registrations allegedly obtained by fraud.

**NEW ORLEANS, LOUISIANA**, this <u>18th</u> day of February, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[39] *See id.* at p. 18 (SW 3).

[40] Rec. Doc. 621.

[41] *See* Rec. Doc. 636 at p. 18 (SW 4).

[42] Rec. Doc. 608.