UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SOUTHERN SNOW MANUFACTURING CO., INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-9170**<br>**09-3394**<br>**10-0791**<br>**11-1499** |
| **SNOWIZARD HOLDINGS, INC., et. al.** | **SECTION: "G" (1)** |

**ORDER AND REASONS**

Before the Court is SnoWizard, Inc. and Ronald R. Sciortino's (collectively, "SnoWizard") Renewed Motion for a Judgment as a Matter of Law Pursuant to FRCP 50 and/or Alternatively to Alter/Amend Judgment under FRCP 59(e).[1] Therein, SnoWizard seeks judgment as a matter of law or amendment to the judgment entered in conformity with the jury verdict on the basis that (1) Southern Snow Manufacturing Co., Inc.'s cam assembly literally infringed SnoWizard's U.S. Patent No. 7,536,871 (the "871 patent"); and (2) Plum Street Snoballs is not entitled to damages due to SnoWizard's use of the mark ORCHID CREAM VANILLA. Having considered the motion, the response, the reply, the record, and the applicable law, the Court will grant in part and deny in part the motion.

**I. Background[2]**

This matter commenced in 2006, when Plaintiff Southern Snow Manufacturing Co., Inc. ("Southern Snow") filed a Petition and a Supplementing and Amending Petition in the 24th Judicial

---

[1] Rec. Doc. 676.

[2] The factual and procedural background of this case has been repeatedly detailed by the Court in the orders and reasons resolving numerous motions in this matter and will not be repeated here.

1

Court, Parish of Jefferson, State of Louisiana, against SnoWizard for violations of Louisiana state law and U.S. trademark law. SnoWizard subsequently removed the case to the Eastern District of Louisiana invoking this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331.[3] After more than six years of litigation, this matter—composed of four consolidated cases with two defendants and numerous plaintiffs—was tried before this Court with a jury beginning on February 28, 2013.[4] The jury found, *inter alia*, that Southern Snow, Banister & Co. and Milton Wendling knowingly and willfully directly infringed, induced infringement of, and contributorily infringed SnoWizard's 871 patent under the doctrine of equivalents. However, the jury found that Southern Snow did not literally infringe the 871 patent. Furthermore, the jury found that SnoWizard's use of the term ORCHID CREAM VANILLA entitled Plum Street Snoballs ("Plum Street") to $5,000 in actual damages and $5,000 in profits that SnoWizard gained from its use of ORCHID CREAM VANILLA.[5] On March 5, 2013, the Court entered judgment in conformity with the jury verdict.[6]

On April 2, 2013, SnoWizard filed the instant motion seeking to have judgment entered as a matter of law pursuant to Federal Rule of Civil Procedure 50 or to amend/alter the judgment entered in conformity with the jury's verdict pursuant to Rule 59(e).[7] Plaintiffs and Counter-Defendants Plum Street, Southern Snow, Simeon, Inc., Snow Ingredients, Inc., Banister & Co., Inc. and Milton

---

[3] Rec. Doc. 1. This matter was originally assigned to Judge Jay C. Zainey, Section "A," but was reassigned to this section, Section "G," as part of a docket created for a newly appointed judge. Rec. Doc. 439.

[4] Rec. Doc. 654.

[5] See attached for complete verdict form.

[6] J. on Jury Verdict, Rec. Doc. 665.

[7] Rec. Doc. 676.

Wendling (collectively, "Plaintiffs") filed an opposition on April 16, 2013.[8] Defendants timely filed a reply with leave of Court on April 22, 2013.[9]

## II. Parties' Arguments

### A. *Literal Infringement of the 871 Patent by SS-1*

In support of the instant motion, SnoWizard argues that there is no evidentiary basis to support the jury's finding that Southern Snow's cam asembly did not literally infringe the 871 patent. SnoWizard explains that from May 26, 2009, the date the 871 patent was issued, until 2012, Southern Snow produced and sold a cam assembly (hereinafter, "SS-1") that was identical to the cam assembly covered by the 871 patent. SnoWizard submits that the testimony of Milton Wendling established that that Southern Snow sold the SS-1 cam assembly until 2012, when the first shipment of the redesigned cam assembly (hereinafter, "SS-2") was received, and the testimony of Ronald Sciortino, the inventor of the patented cam assembly, established that SS-1 literally infringed the patented cam assembly.[10]

In addition, SnoWizard directs the Court to its ruling on SnoWizard's earlier motion for a *Markman* determination and for summary judgment on literal infringement, wherein the Court found that SS-1 was "virtually identical" to the patented cam assembly but refused to grant summary judgment on the issue because findings of fact by a jury were necessary to any determination upholding the validity of the 871 patent.[11] Therefore, SnoWizard contends that once the jury determined that Snowizard 871 patent was valid, a finding of literal infringement by SS-1

---

[8] Rec. Doc. 683.

[9] Rec. Doc. 689.

[10] Rec. Doc. 676-1 at p. 5.

[11] *Id.* at pp. 5-6 (citing Order & Reasons, Rec. Doc. 608 at pp. 20-21).

3

was warranted as a matter of law, or alternatively, there was no factual basis for the jury to find that SS-1 did not literally infringe the 871 patent.[12]

In the opposition to the motion, Plaintiffs admit that "Southern Snow's ratchet linkage [which was] ordered from Precision Metalsmiths, Inc. (PMI) in 2004, and used in Southern Snow ice-shaving machines from 2006 through 2011, called 'SS-1', is [] a copy of SnoWizard's ratchet linkage that SnoWizard designed."[13] But Plaintiffs argue that SnoWizard, "trying to avoid the on-sale bar, never proved that its own SnoWizard part was 'covered by the patent.'"[14] Therefore, Plaintiffs claim that SnoWizard's election of this tactic to avoid invalidity of its 871 patent based on the on-sale bar, resulted in the jury determining that Southern Snow's SS-1 cam assembly did not literally infringe the 871 patent.[15] Further, Plaintiffs explain that SnoWizard's own expert, Heather Barnes, did not testify regarding the SS-1 cam assembly, and therefore there was no evidence before the jury to support a finding of literal infringement.[16] Regarding Mr. Sciortino's testimony that the claims of the 871 patent were all present in SS-1, Plaintiffs claim that the jury "must have found that testimony to lack credibility."[17]

In reply to Plaintiffs' opposition, SnoWizard argues that it is "utterly ridiculous to assert that an exact copy of a product does not infringe a patent covering the product."[18] SnoWizard also notes that when its expert, Heather Barnes, was asked if she was retained to provide a literal infringement

---

[12] *Id.* at pp. 6-7.

[13] Rec. Doc. 683 at p. 1. This statement is consistent with earlier statements in this litigation by Plaintiffs recognizing that SS-1 was nearly identical to the patented cam assembly and SS-2 was designed to rectify this problem. *See* Rec. Doc. 608 at p. 21.

[14] *Id.*

[15] *See id.* at p. 2.

[16] *Id.*

[17] *Id.*

[18] Rec. Doc. 689 at p. 2.

opinion she replied "no" because it was an exact copy.[19]  Moreover, SnoWizard emphasizes that it did not need to produce an expert opinion if literal infringement can be proven by other means.[20] Regarding the on-sale bar, SnoWizard explains that the jury agreed with SnoWizard's contention that its purchase of some of the individual components of the cam assembly did not constitute a public offer for sale of the "claimed invention."  Once this issue was resolved by the jury and the patent's validity determined, SnoWizard argues that the only possible conclusion was that SS-1 infringed the 871 patent. [21]

### B. Damages for Use of ORCHID CREAM VANILLA

SnoWizard argues in the instant motion that the jury was unreasonable in determining that Plum Street has a valid and enforceable trademark in ORCHID CREAM VANILLA, because the owner of Plum Street, Donna Black, testified at trial that she never applied for registration of the mark, never asked SnoWizard to cease using the mark, and had no idea whether she had any rights in the mark.[22]  SnoWizard further relies on the fact that Donna Black argued to the Trademark Trial and Appeal Board ("TTAB") in proceedings to cancel SnoWizard's registration of ORCHID CREAM VANILLA that the mark was generic and descriptive, and therefore incapable of use as a trademark.[23]

Irrespective of whether ORCHID CREAM VANILLA is a valid trademark, SnoWizard argues that the jury's damages award to Plum Street in the amount of $5,000 was clearly erroneous,

---

[19] *Id.* at p. 3.

[20] *Id.*

[21] *Id.*

[22] Rec. Doc. 676-1 at pp. 7-8.

[23] *Id.* at p. 8.

because the jury determined in the preceding question that Plum Street did not suffer any actual damages. In addition, SnoWizard argues that Plum Street did not present any evidence at trial to support the damage award or to explain the testimony of Ms. Black that she did not know if the mark was a trademark or if the business made a profit.[24]

In opposition, Plaintiffs argue that SnoWizard's motion is "all because the Jury was forced to make a guess as to what to enter for question 5(d) in light of a typographical error in the verdict form that seemed to insist that some amount must be written for question 5(d)."[25] Although Plaintiffs agree that there is a conflict in the jury's response to question 5(c) and 5(d), Plaintiffs contend that there is no way to tell which of the responses is "wrong" and therefore the jury's verdict should not be modified in any way.[26]

Regarding Ms. Black's testimony, Plaintiffs argue that the jury heard the testimony and rendered a verdict which may reflect the jury's determination that "SnoWizard stole the trademark from Plum Street Snoballs, who had been using it for 50 years, and registered the trademark in SnoWizard's own name, and that Donna Black has been attempting since 2005 to rectify that theft of the flavor name."[27] Plaintiffs contend that other evidence also supports the validity of the mark and the jury's verdict, including SnoWizard's own newsletter of July 2000 that Plum Street had been continuously and exclusively using ORCHID CREAM VANILLA since the 1940s.[28]

In reply, SnoWizard reiterates the arguments made in its memorandum in support of the instant motion. SnoWizard also clarifies that it is seeking a determination by this Court that

---

[24] *Id.* at p. 9.

[25] Rec. Doc. 683 at p. 3.

[26] *Id.* at p. 3.

[27] *Id.* at p. 4.

[28] *Id.*

ORCHID CREAM VANILLA is not a valid trademark, but, in the event this Court upholds the jury's determination of trademark infringement, SnoWizard alternatively seeks modification of the actual damages awarded.[29]

## III.  Legal Standards

### A.  *Motion for Judgment as a Matter of Law Under Rule 50*

Rule 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Motions under Rule 50(a)(1) may be renewed after trial pursuant to Rule 50(b), which states:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.

Regarding technical compliance with the requirements of Rule 50(b), the Fifth Circuit has emphasized that "the two basic purposes of this rule are 'to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the

---

[29] Rec. Doc. 689 at p. 4.

movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury.'"[30]

"The district court properly grants a motion for judgment as a matter of law only if the facts and inferences point so strongly in favor of one party that reasonable minds could not disagree."[31] When ruling on a motion under Rule 50 based upon the sufficiency of the evidence, courts "consider all of the evidence-not just that evidence which supports the non-mover's case-but in the light and with all reasonable inferences most favorable to the party opposed to the motion."[32] "In evaluating the Rule 50 motion, the district court cannot assess the credibility of witnesses or weigh the evidence."[33]

### B. Motion to Alter/Amend Judgment Under Rule 59(e)

A Rule 59(e) motion calls into question the correctness of a judgment,[34] and courts have considerable discretion in deciding whether to grant such a motion.[35] In exercising this discretion, courts must carefully balance the interests of justice with the need for finality.[36] "Rule 59(e) is properly invoked to correct manifest errors of law or fact or to present newly discovered evidence."[37]

---

[30] *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996).

[31] *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 927 (5th Cir. 2006) (internal quotations omitted).

[32] *Id.* (internal quotations omitted).

[33] *Id.*

[34] *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002).

[35] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[36] *Id.* at 355-56.

[37] *In re Transtexas Gas Corp.*, 303 F.3d at 581.

Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard:

> (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;
> (3) the motion is necessary in order to prevent manifest injustice; or
> (4) the motion is justified by an intervening change in controlling law.[38]

Rule 59(e) is "'not the proper vehicle for rehashing evidence, legal theories, or arguments.'"[39] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[40] "It is well settled that [such motions] should not be used . . . to re-urge matters that have already been advanced by a party."[41]

Alteration or amendment, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly"[42] and the motion must "clearly establish" that alteration or amendment is warranted.[43] When there exists no independent reason for alteration or amendment other than mere disagreement with a prior order, alteration or amendment is a waste of judicial time and resources and should not be granted.[44]

---

[38] *See, e.g.*, *Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma–Sea Ship Builders, L.L.C.*, Civ. A. Nos. 10-1440, 10-1802, 2012 WL 1150128, at *3-4 (E.D. La. Apr. 5, 2012) (Brown, J.) (citing *Castrillo v. Am. Home Mortg. Servicing Inc.*, Civ. A. No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) (Vance, C.J.)).

[39] *Castrillo*, 2010 WL 1424398, at *4 (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[40] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

[41] *Helena Labs. v. Alpha Scientific Corp.*, 483 F. Supp. 2d 538, 539 (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[42] *Templet*, 367 F.3d at 478-79.

[43] *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[44] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 BR 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented). *See also FDIC v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

## IV. Law and Analysis

### A. *Literal Infringement of the 871 Patent by SS-1*

#### 1. Applicable Law

A patentee may prove infringement either by showing that an accused product literally infringes a claim in the patent or that the product infringes under the doctrine of equivalents.[45] Literal infringement requires proof that every limitation set forth in a claim is found in an accused product, exactly;[46] whereas, a product may infringe under the doctrine of equivalents if every element in the claim is either literally or equivalently present in the accused product.[47]

Literal patent-infringement analysis involves two steps: proper construction of the asserted claim and then a determination as to whether the accused method or product infringes the asserted claim as properly construed.[48] The existence of literal infringement is determined by a word-by-word reading of the patent claims onto the accused product.[49] The failure of the accused product to meet a single claim limitation is sufficient to negate literal infringement of the claim.[50]

In *Markman v. Westview Instruments*,[51] the United States Supreme Court determined that the interpretation of patent claims is a question of law to be decided by the Court.[52] The United States Court of Appeals for the Federal Circuit has clarified that "*Markman* does not require a

---

[45] *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1533, 1579 (Fed. Cir. 1991).

[46] *Id.* at 1575.

[47] *Sage Prods., Inc. v. Devon Indus. Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997).

[48] *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996).

[49] *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

[50] *Id.*

[51] 517 U.S. 370 (1996).

[52] *Id.* at 372.

district court to follow any particular procedure in conducting claim construction."[53] The Federal Circuit further elaborated, saying that:

> [*Markman*] merely holds that claim construction is the province of the court, not a jury. To perform that task, some courts have found it useful to hold hearings and issue orders comprehensively construing the claims in issue. Such a procedure is not always necessary, however. If the district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties. District courts have wide latitude in how they conduct the proceedings before them, and there is nothing unique about claim construction that requires the court to proceed according to any particular protocol. As long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best.[54]

District courts have exercised this "wide latitude" to make *Markman* determinations on summary judgment,[55] as the Court did in this matter prior to trial.[56]

### 2. Analysis

Prior to invention of the cam assembly patented by the 871 patent, Southern Snow and SnoWizard used "old-style ratchet linkages assembled from 2 bars of metal drilled and fitted with 3 steel pins."[57] From 2006 to 2011, Southern Snow used a cam assembly (SS-1) it claims to have "develop[ed] on its own."[58] On May 26, 2009, the 871 patent for "Icemaker with Improved Cam Assembly" was issued to Ronald R. Sciortino, who exclusively licensed the patent to SnoWizard,

---

[53] *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001).

[54] *Id.*

[55] *See Leoutsakos v. Coll's Hosp. Pharmacy, Inc.*, 51 Fed. Appx. 310 (5th Cir. 2002); *Elder v. Tanner*, 180 F. Supp. 2d 818 (E.D. Tex. 2001); *PMG, Inc. v. Stinger Spike Sys., Inc.*, No. Civ. A. 5:98CV69, 2002 WL 31008137 (N.D. W. Va. Mar. 29, 2002); *Utah Med. Prods., Inc. v. Clinical Innovations Assocs., Inc.*, 79 F. Supp. 2d 1290 (D. Utah Oct. 28, 1999).

[56] Order & Reasons, Rec. Doc. 608.

[57] *Id.* at p. 3.

[58] *Id.*

Inc.[59] After SnoWizard's 871 patent issued and SnoWizard sued Southern Snow for patent infringement based on its use of SS-1, Southern Snow claims to have developed a new design (SS-2) in September of 2011, which was incorporated into machines in 2012.[60]

The scope of SnoWizard's 871 patent is limited by 20 claims. The meaning and scope of certain phrases in claims 1 and 11 were previously decided by this Court on a motion for a *Markman* determination and summary judgment.[61] Claim 1 of the patented invention provides for:

> A cam assembly for an icemaker having a pusher arm with ratchet teeth comprising:
> a cam connector, the cam connector is adapted to be coupled to a handle of said icemaker; and,
> a cam member having a single elongated structure that has a gradually tapering width from back to front, the back having a forked end pivotally coupled to said cam connector and the front having a second end, the second end has formed in a bottom surface thereof, a[n] indented cavity for receipt of a ratchet tooth.[62]

Claim 11 also provides for:

> An icemaker comprising:
> means for shaving ice;
> a pusher arm with ratchet teeth;
> a handle; and,
> a cam assembly, the cam assembly comprising:
> a cam connector, the cam connector is adapted to be coupled to said handle of said icemaker and
> a cam member having a single elongated structure that has a gradually tapering width from back to front, the back having a forked end pivotally coupled to said cam connector and the front having a second end, the second end has formed in a bottom surface thereof, a[n] indented cavity for receipt of a ratchet tooth.[63]

Regarding the interpretation of certain phrases in claims 1 and 11, the Court held that:

---

[59] *Id.* at p. 2.

[60] *Id.*

[61] *See* Rec. Doc. 579.

[62] Rec. Doc. 608 at p. 2.

[63] *Id.* at pp. 2-3.

the phrase "the second end has formed a bottom surface thereof, a[n] indented cavity for receipt of a ratchet tooth" means that the bottom surface at the end of the arm of the cam has a hollowed-out space set in from the margin for the purpose of receiving a ratchet tooth. . . . [And] the phrase "a gradually tapering width from back to front" should be interpreted to mean a diminution of thickness, by steps or degrees, along the length of the cam member from the back, where the cam member is connected to the cam connector, to the front, where the indented cavity is located.[64]

However, the Court refused to grant SnoWizard's motion for summary judgment on the issue of literal patent infringement of the 871 patent by SS-1, the cam assembly used in Southern Snow's machines from 2006 to sometime in 2012. The Court stated:

Based on Plaintiffs own admissions and the evidence submitted by SnoWizard, there is no genuine issue [in dispute] as to any material fact that the patent claims of the 871 patent are [all] present in SS-1. However, the Court finds that summary judgment is not appropriate regarding the issue of patent infringement, because an initial decision that the patent is valid must be made, and the issue of validity cannot be reached on a motion for summary judgment because the parties have stipulated to the existence of a disputed issue of material fact regarding when the patented device was first sold.[65]

After trial on the merits, the jury found that the patented cam assembly was not the subject of a commercial offer for sale or public use before the critical date. The jury further found that "Southern Snow's accused product" did not literally infringe the 871 patent because every requirement of claims 1 or 11 was not found in the accused product, but the jury found that the equivalent of every requirement of claims 1 or 11 was found in the accused product, and therefore infringed under the doctrine of equivalents.

The Court finds that the verdict form did not need to distinguish between SS-1 and SS-2. As the Court's rulings prior to trial made clear, the Court had already determined based on the evidence before it on summary judgment, that every claim of the 871 patent was present in the SS-1 cam

---

[64] *Id.* at pp. 16-17.

[65] *Id.* at p. 21.

13

assembly. Once the jury determined that the 871 patent was not the subject of a commercial offer for sale or in public use more than 1 year before the patent application was filed, SnoWizard was entitled to judgment as a matter of law that SS-1 literally infringed the 871 patent. The only issue on infringement before the jury, and therefore, the only issue on which SnoWizard's expert provided testimony at trial was whether SS-2 infringed the 871 patent. Once the jury determined that the 871 patent was not invalidated by the on-sale bar, there was no legally sufficient basis, considering the evidence and even Plaintiffs' own admissions throughout this litigation, to find that SS-1 did not literally infringe the 871 patent.[66] Accordingly, SnoWizard's motion for judgment as a matter of law that SS-1—a virtually identical copy of SnoWizard's patented cam assembly—literally infringed the 871 patent from May 26, 2009 until 2012 will be granted.

## B. Damages for Use of ORCHID CREAM VANILLA

### 1. Damages for Trademark Infringement

The elements of a trademark infringement claim under the Lanham Act are that the plaintiff is the owner of a valid and protectable or registered mark and the defendant's use of the mark creates a likelihood of confusion.[67] Upon proving trademark infringement, "the plaintiff is entitled to recover defendant's profits and 'any damages sustained by the plaintiff.'"[68] Further:

> In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing

---

[66] *See Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 549 (5th Cir. 2005) ("[J]udgment as a matter of law is appropriate only where there is no legally sufficient basis for a reasonable jury to find for [a] party. Although our review is de novo, we accord great deference to a jury verdict, evaluating the evidence in the light most favorable to the non-movant and reversing only if the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.") (internal quotations omitted).

[67] *Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 310 (5th Cir. 2008).

[68] *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997) (quoting 15 U.S.C. § 1117(a)).

>   damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.[69]

"Great latitude is given the district court in awarding damages under the Lanham Act, 'which expressly confers upon the district judges wide discretion in determining a just amount or recovery for trademark infringement.'"[70]

### 2. Inconsistent Answers to the Jury Verdict Form

"The Seventh Amendment requires that if there is a view of a case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly."[71] "If the jury gives inconsistent answers to special interrogatories, the case must be remanded for a new trial."[72] Therefore, answers should be considered inconsistent only if there is no way to reconcile them.[73] "The touchstone in reconciling apparent conflict is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted."[74]

In *White v. Grinfas*,[75] the Fifth Circuit considered how to reconcile inconsistent answers where the jury's answer to an additional question was superfluous to its finding on the prior

---

[69] 15 U.S.C. § 1117(a)

[70] *Martin's Herend Imports, Inc.*, 112 F.3d at 1304.

[71] *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973).

[72] *Willard v. The John Hayward*, 577 F.2d 1009, 1011 (5th Cir. 1978) (citing *Morrison v. Frito-Lay, Inc.*, 546 F.2d 154, 160 (5th Cir. 1977); *Miller v. Royal Netherlands Steamship Co.*, 508 F.2d 1103, 1106 (5th Cir. 1975)).

[73] *Id.* (citing *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962); *Griffin*, 471 F.2d at 915.

[74] *White v. Grinfas*, 809 F.2d 1157, 1161 (5th Cir. 1987) (internal quotations omitted).

[75] *Id.*

question.[76] The Fifth Circuit stated "[i]f the jury's answer to a question that was supposed to pretermit further inquiry is clear and disposes of the legal issues, we must ignore the jury's conflicting answers to any other questions, as they are irrelevant."[77] The Fifth Circuit concluded that:

> To effectuate best the intent of the jury, we hold that if the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions. The subsequent questions are by definition irrelevant in these circumstances, and cannot be used to impeach the jury's clear verdict.[78]

*2. Analysis*

In the instant motion, SnoWizard seeks to invalidate or amend the jury's verdict regarding its findings and award of damages for trademark infringement of ORCHID CREAM VANILLA. Based on the evidence presented at trial, the jury concluded that Plum Street owed a valid and protectable trademark in ORCHID CREAM VANILLA and SnoWizard's use of that mark infringed Plum Street's rights. To prove this, Plaintiff presented the testimony of Donna Black, the owner of Plum Street, and during her testimony, she stated, among other things, that she was not sure if she had a trademark because she did not fully understand that term and she believed the mark was hers when she purchased the business. Having reviewed Ms. Black's testimony, there was sufficient evidence for the jury to conclude that, although Ms. Black is not familiar with legal terms, she had a valid and protectable trademark in ORCHID CREAM VANILLA, which SnoWizard infringed.

---

[76] The Court is aware that the verdict form in this instance, unlike the verdict form in *White*, contained a typographical error which appeared to instruct the jury to enter an amount for actual damages even if though the jury answered "no" in response to the preceding question regarding proof of actual damages. However, the Court does not find this distinction conclusive here.

[77] *White*, 809 F.2d at 1161.

[78] *Id.*

Therefore, the Court will not disturb the jury's findings on the issues of trademark validity and infringement, because the jury was entitled to weigh the credibility of Ms. Black relative to SnoWizard's witnesses and make any reasonable inferences it found appropriate.

However, the jury also found that Plum Street Snoballs did *not* prove by a preponderance of the evidence that it suffered actual damages as a result of the use of the trademark ORCHID CREAM VANILLA that were attributable to SnoWizard. Nonetheless, and possibly due to a typographical error in the verdict form,[79] the jury entered a dollar amount in the sum of $5,000 for actual damages.[80] The Court has not identified in the trial transcript, nor have Plaintiffs identified in their opposition, any evidence in the record to support an award of actual damages. No evidence was presented at trial quantifying the damage to Plum Street's business caused by SnoWizard's use of the mark. Therefore, the Court finds that because no reasonable jury would have a legally sufficient evidentiary basis to award actual damages to Plaintiffs, the Court must enter judgment as a matter of law on the issue of Plaintiffs' actual damages.

In addition to finding that Plaintiffs' failed to prove actual damages as a matter of law, the Court finds that the jury's entry of the sum of $5,000 in response to question "5(d)" is irrelevant and must be disregarded here. The jury's negative response to question "5(c)" regarding whether Plaintiffs' proved actual damages "was supposed to pretermit further inquiry [] and disposes of the

---

[79] The jury answered "no" to question 5(c), which provided: "Did Plum Street Snoballs prove by a preponderance of the evidence that it suffered actual damages as a result of the use of the trademark ORCHID CREAM VANILLA that were directly attributable to SnoWizard?" The verdict form instructed the jury: "If you answered "YES" to question 5(c), please proceed to the next subpart. If you answered "NO" to question 5(c), then please skip to question 5(d). However, the verdict form should have instructed the jury to skip to 5(e) in the event of a "no" answer to question 5(c). Despite the jury's finding of no actual damages in question 5(c), the jury entered "$5,000" in the blank following question 5(d), which provided: "What is the value of actual damages proven by Plum Street Snoballs directly attributable to SnoWizard's use of ORCHID CREAM VANILLA?"

[80] The Court notes that the parties, when given several opportunities to view and review the verdict form before it was presented the jury, did not identify the typographical error or bring it to the Court's attention.

17

legal issues."[81] Once the jury determined that Plaintiff did not prove any actual damages, the jury had clearly disposed of the factual question before it, and the jury's conflicting answers to other questions are irrelevant.[82]

In addition, the jury found that Plum Street was entitled to recover the profits gained by SnoWizard's infringement, and awarded $5,000 in damages to Plaintiffs for SnoWizard's profits. The record indicates that Plaintiffs introduced evidence of SnoWizard's profits during certain years and argued to the jury that the increase in profit was caused by the infringement of certain marks, like ORCHID CREAM VANILLA. The Court is not permitted on a motion under Rule 50 to weigh the evidence or consider the credibility of the witnesses. Accordingly, the Court is not inclined the disrupt the jury's clear verdict and determination of the amount of those profits given that the jury's findings cannot be deemed unreasonable in light of the evidence presented.

Regarding the jury's finding of trademark infringement and monetary damages awarded for SnoWizard's profits, the Court will not discuss at length SnoWizard's motion under Rule 59(e). Rather, it suffices to state that, having determined the jury's verdict was supported by sufficient evidence on these issues, the Court cannot conclude under Rule 59(e) that a manifest error of law, error of fact, or injustice has occurred warranting alternation of the judgment on these issues.

---

[81] *White*, 809 F.2d at 1161.

[82] *Id.*

## V.  Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that SnoWizard's Renewed Motion for Judgment as a Matter of Law Pursuant to FRCP 50 and/or Alternatively to Alter/Amend Judgment Under FRCP(e)[83] is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that judgment be entered as a matter of law that Southern Snow's SS-1 cam assembly literally infringed SnoWizard's 871 patent from May 26, 2009 until 2012;

**IT IS FURTHER ORDERED** that the judgment be entered as a matter of law that Plaintiffs failed to prove actual damages caused by SnoWizard's infringement of the mark ORCHID CREAM VANILLA in any amount and therefore no actual damages will be awarded;

**IT IS FURTHER ORDERED** that, insofar as SnoWizard seeks to invalidate the remainder of the jury's verdict regarding Plaintiffs' claim of trademark infringement of ORCHID CREAM VANILLA and award of profits, the motion is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this  1st   day of August, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[83] Rec. Doc. 676.