UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOUTHERN SNOW MANUFACTURING CO., INC., et al.     CIVIL ACTION

VERSUS     NO.   06-9170
                                                             09-3394
                                                              10-0791
                                                               11-1499

SNOWIZARD HOLDINGS, INC., et. al.     SECTION: "G" (1)

### ORDER AND REASONS

Before the Court is Plaintiffs and Counter-Defendants Parasol Flavors, LLC, Southern Snow Manufacturing Co., Inc., Simeon, Inc., Snow Ingredients, Inc., Banister & Co., Inc., and Milton Wendling's (collectively, "Plaintiffs") Renewed Motion for Judgment as a Matter of Law under Rule 50, and Motion for a New Trial or to Alter or Amend Judgment under Rule 59.[1] Therein, Plaintiffs seek judgment as a matter of law, amendment to the judgment entered in conformity with the jury verdict, or a new trial on the basis that there is insufficient evidence to support the following findings by the jury: (1) SnoWizard's patented cam assembly was not the subject of a commercial offer for sale before the critical date; (2) $102,000 was a reasonably royalty for Plaintiffs' patent infringement; (3) Plaintiffs infringed SnoWizard's marks SNOSWEET, MOUNTAIN MAPLE, CAJUN RED HOT, and WHITE CHOCOLATE & CHIPS; and (4) Plaintiffs claims for trademark infringement of the mark SNOBALL were groundless, brought in bad faith, or for purposes of harassment. Having considered the motion, the response, the reply, the record, and the applicable law, the Court will deny the motion.

---

[1] Rec. Doc. 677.

1

## I.  Background[2]

This matter commenced in 2006, when Plaintiff Southern Snow Manufacturing Co., Inc. ("Southern Snow") filed a Petition and a Supplementing and Amending Petition in the 24th Judicial Court for the Parish of Jefferson, State of Louisiana, against SnoWizard for violations of Louisiana state law and U.S. trademark law.  SnoWizard subsequently removed the case to the Eastern District of Louisiana invoking this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331.[3]  After more than six years of litigation, this matter—composed of four consolidated cases with two defendants and numerous plaintiffs—was tried before this Court with a jury beginning on February 28, 2013.[4]

Among other things, the jury found that SnoWizard's patented cam assembly was *not* on sale, the subject of a commercial offer for sale, or in public use before the critical date of February 6, 2003, and that SnoWizard was entitled to recover reasonable royalties in the amount of $102,000 due to Southern Snow's patent infringement of SnoWizard's U.S. Patent No. 7,536,871 (the "871 patent").  The jury also found that Southern Snow and Snow Ingredients, Inc.'s use of MOUNTAIN MAPLE, CAJUN RED HOT, and WHITE CHOCOLATE & CHIPS and Parasol Flavors, LLC's use of SNOSWEET constituted trademark infringement.  Finally, as it pertains to this motion, the jury found that Southern Snow and Simeon Inc.'s claims for trademark infringement of the term SNOBALL were groundless, brought in bad faith, or for

---

[2] The factual and procedural background of this case has been repeatedly detailed by the Court in the orders and reasons resolving numerous motions in this matter and will not be repeated here.

[3] Rec. Doc. 1.  This matter was originally assigned to Judge Jay C. Zainey, Section "A," but was reassigned to this section, Section "G," as part of a docket created for a newly appointed judge.  Rec. Doc. 439.

[4] Rec. Doc. 654.

purposes of harassment.[5] However, the jury did not find that Southern Snow and Simeon Inc.'s claims under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. Rev. Stat. 51:1405, were groundless, brought in bad faith, or for purposes of harassment. On March 5, 2013, the Court entered judgment in conformity with the jury verdict.[6]

On April 2, 2013, Plaintiffs filed the instant motion seeking to have judgment entered as a matter of law pursuant to Federal Rule of Civil Procedure 50 or to amend or alter the judgment entered in conformity with the jury's verdict or to be granted a new trial pursuant to Rule 59(e).[7] SnoWizard, Inc. and Ronald R. Sciortino (collectively, "SnoWizard") timely filed an opposition on April 16, 2013.[8]

## II. Parties' Arguments

### A. *Patent Validity and the On-Sale Bar*

In support of the instant motion, Plaintiffs argue that no reasonable jury could have found that SnoWizard's patented cam assembly was not the subject of a commercial offer for sale prior to the critical date of February 6, 2003, which is one year prior to filing the patent application. Plaintiffs argue that "SnoWizard failed to show that the PMI quotations in October 2001 and January 2002, for *both* parts, and also for a "completed assembly", where primarily for experimentation rather than commercial gain."[9] According to Plaintiffs, the burden was on SnoWizard to produce objective evidence that any sale or use prior to the critical date was

---

[5] See attached for complete verdict form.

[6] J. on Jury Verdict, Rec. Doc. 665.

[7] Rec. Doc. 677.

[8] Rec. Doc. 683.

[9] Rec. Doc. 677-1 at p. 5.

primarily for experimentation rather than commercial gain. Further, Plaintiffs claim that it was only within the jury's province to determine if any documents or other evidence constituted "a forgery, or could not be reliably dated before the critical date, or some other factual question," but the "jury never should have made any finding—implicit or otherwise—of whether any of the documents legally constituted a commercial offer."[10] Therefore, Plaintiffs contend that a new trial should be granted or judgment entered as a matter of law and the 871 patent invalidated under the on-sale bar of 35 U.S.C. § 102(b).

In opposition to the motion, SnoWizard argues that "the jury found as a fact that Southern Snow and Parasol failed to prove 'by clear and convincing evidence that the claimed invention was on sale, the subject of a commercial offer for sale, or in public use before the 'critical date' of February 6, 2003.'"[11] According to SnoWizard, this finding mandates the ultimate conclusion of law here that the 871 patent is valid.[12] SnoWizard contends that the jury's finding that Plaintiffs did not demonstrate by clear and convincing evidence that SnoWizard's cam assembly was on sale or in public use before the critical date is further supported by Mr. Sciortino's testimony that he did not approve the sample of Part No. SW2 (a component of the patented part) until December 23, 2002, and the manufacturer did not ship the first order of Part No. SW2 to SnoWizard until February 12, 2003, making it impossible for the claimed invention to have been on sale prior to February 6, 2003.[13]

---

[10] *Id.* at p. 5.

[11] Rec. Doc. 684 at p. 4.

[12] *Id.*

[13] *Id.* at p. 5.

## B. *A Reasonable Royalty for Patent Infringement*

Even if SnoWizard's valid patent was infringed, Plaintiffs claim that the jury's finding of $102,000 as a reasonable royalty is unsupported by the evidence presented at trial.[14] Plaintiffs argue that "[i]f Southern Snow had simply bought 1050 'cam assemblies' from SnoWizard at $40 each it would have only cost $42,000." [15] Therefore, Plaintiffs contend that the $102,000 award is unsupported by the evidence or testimony because "[t]he value of a reasonable royalty cannot possibly exceed the cost of just buying the parts at retail on the open market."[16]

In opposition to the instant motion requesting modification of the $102,000 award for reasonable royalties or a new trial, SnoWizard argues that "a reasonable royalty is merely the floor below which damages shall not fall,"[17] and one challenging the reasonable royalty award must show that the award is so outrageously high as to be unsupportable as an estimation of a reasonable royalty based on the evidence.[18] SnoWizard contends that, considering Mr. Sciortino's testimony that SnoWizard would expect to receive no less than 15% of Southern Snow's sales of ice shaving machines as a royalty, or $220,000 for the time period at issue, $102,000 cannot be considered outrageously low if the parties had negotiated a reasonable royalty.[19]

---

[14] Rec. Doc. 677-1 at p. 8.

[15] *Id.* at p. 9.

[16] *Id.*

[17] Rec. Doc. 684 (citing *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1583 (Fed. Cir. 1983) (internal quotations omitted).

[18] Rec. Doc. 684 at p. 6 (citing *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990)).

[19] *Id.* at pp. 6-7.

5

## C. Trademark Infringement

Plaintiffs challenge the jury's finding that they infringed SnoWizard's trademarks in SNOSWEET, MOUNTAIN MAPLE, CAJUN RED HOT, and WHITE CHOCOLATE & CHIPS. In essence, Plaintiffs challenge what they term "inconsistent" findings by the jury "because the same kind of activity, on the same kind of products, using the same kind of packaging and labeling, and the same kind of price lists . . . were found to be infringing when that same kind of activity was done by the Southern Snow Companies and Parasol" but not when done by SnoWizard.[20] Further, Plaintiffs argue that there was "no evidence or testimony about any actual confusion, and with no evidence or testimony even suggesting a plausible likelihood of confusion, no reasonable jury could have found infringement."[21]

In opposition, SnoWizard states that "[t]he jury heard and saw evidence that Southern Snow used the identical trademarks on *identical* goods, that Parasol used a colorable imitation of SNOSWEET on *identical* goods, that the reason Southern Snow copied SnoWizard's trademarks was because SnoWizard had popularized them to the point that consumers asked for them by name, and that Southern Snow's and Parasol's infringing products were not the same quality as SnoWizard's products."[22] According to SnoWizard, based on the evidence presented, the jury was entitled to infer that:

> the manner in which Southern Snow and Parasol used SnoWizard's registered trademarks CAJUN RED HOT, MOUNTAIN MAPLE, WHITE CHOCOLATE & CHIPS, and SNOSWEET was likely to confuse and deceive consumers as to the source, origin, sponsorship, or approval of Southern Snow's and Parasol's respective products, and to cause them to mistakenly assume the products sold by

---

[20] Rec. Doc. 677-1 at p. 7.

[21] *Id.* at p. 8.

[22] Rec. Doc. 684 at pp. 8-9.

Southern Snow and Parasol were the same as those sold by SnoWizard under the same names.[23]

## D. Groundless, Bad Faith, or Harassing Claims of Trademark Infringement

In support of the instant motion, Plaintiffs argue that the jury's findings regarding Simeon Inc.'s trademark in SNOBALL are inconsistent and unsupported. Regarding the jury's findings that SNOBALL is a valid trademark, and Simeon Inc. and Southern Snow's claims for trademark infringement were groundless, brought in bad faith, or for purposes of harassment, Plaintiffs ask: "How can claims for infringement of a valid and enforceable trademark be groundless? How can a claim for trademark infringement be groundless, but a similar LUTPA claim is not groundless?"[24] Plaintiffs further claim that there was no evidence the claims were groundless, in bad faith, or for the purposes of harassment, because "Bubby Wendling for Simeon did not make any groundless or bad-faith allegations against SnoWizard—in fact, Bubby was very forthcoming about what he thought of all the trademark claims in this litigation."[25]

SnoWizard opposes the instant motion , and points to the evidence the jury heard that Mr. Wendling "purchased a Louisiana registration of the term SNOBALL from a third party for $1 in 2011 while this litigation was pending, . . . that he then sued SnoWizard for infringement of it, and that he did not even expect to win the lawsuit when he filed it."[26] Accordingly, SnoWizard argues that the jury could reasonable infer "that the only reason Southern Snow purchased the

---

[23] *Id.* at p. 9.

[24] Rec. Doc. 677-1 at p. 10.

[25] *Id.*

[26] Rec. Doc. 684 at p. 9.

Louisiana registration of the term SNOBALL was to use it in bad faith to harass SnoWizard by filing a groundless claim for infringement in this litigation."[27]

### III. Legal Standards

*A. Motion for Judgment as a Matter of Law Under Rule 50*

Rule 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Motions under Rule 50(a)(1) may be renewed after trial pursuant to Rule 50(b), which states:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.

Regarding technical compliance with the requirements of Rule 50(b), the Fifth Circuit has emphasized that "the two basic purposes of this rule are 'to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary

---

[27] *Id.*

to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury.'"[28]

A motion for judgment notwithstanding the verdict—like a motion for a directed verdict—requires the district judge to decide "whether, as a matter of law, the evidence, when considered in the light most favorable to the non-moving party, is legally sufficient to submit the case to the jury, or whether it is legally sufficient to support the jury's verdict."[29] "The district court properly grants a motion for judgment as a matter of law only if the facts and inferences point so strongly in favor of one party that reasonable minds could not disagree."[30] When ruling on a motion under Rule 50 based upon the sufficiency of the evidence, courts "consider all of the evidence-not just that evidence which supports the non-mover's case-but in the light and with all reasonable inferences most favorable to the party opposed to the motion."[31] "In evaluating the Rule 50 motion, the district court cannot assess the credibility of witnesses or weigh the evidence."[32]

### B. *Motion for a New Trial or to Alter/Amend Judgment Under Rule 59*

Federal Rule of Civil Procedure 59 governs motions for a new trial or to alter or amend judgment brought within 28 days after the entry of judgment.[33] Rule 59(a) provides:

> The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

---

[28] *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996).

[29] *Urti v. Transp. Commercial Corp.*, 479 F.2d 766, 768 (5th Cir. 1973).

[30] *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 927 (5th Cir. 2006) (internal quotations omitted).

[31] *Id.* (internal quotations omitted).

[32] *Id.*

[33] Fed. R. Civ. P. 59.

> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
> (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

A renewed motion for judgment as a matter of law may be joined in the alternative with a motion for new trial under Rule 59, but the motions have distinct functions and are governed by different standards. "The trial court's power to grant a new trial [under Rule 59(a)] on the basis of the court's firm belief that the verdict is clearly contrary to the weight of the evidence has . . . long been regarded as an integral part of trial by jury."[34] "In making this determination, the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party."[35] The Fifth Circuit has instructed that the district courts should "respect the jury's collective wisdom and must not simply substitute its opinion for the jury's," but "if the trial judge is not satisfied with the verdict of a jury, he has the right-and indeed the duty-to set the verdict aside and order a new trial."[36]

A motion under Rule 59(e) calls into question the correctness of a judgment,[37] and courts have considerable discretion in deciding whether to grant such a motion.[38] In exercising this discretion, courts must carefully balance the interests of justice with the need for finality.[39] "Rule 59(e) is properly invoked to correct manifest errors of law or fact or to present newly discovered evidence."[40]

---

[34] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

[35] *Id.*

[36] *Id.* (internal quotations omitted).

[37] *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002).

[38] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[39] *Id.* at 355-56.

[40] *In re Transtexas Gas Corp.*, 303 F.3d at 581.

Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard:

> (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;
> (3) the motion is necessary in order to prevent manifest injustice; or
> (4) the motion is justified by an intervening change in controlling law.[41]

Rule 59(e) is "'not the proper vehicle for rehashing evidence, legal theories, or arguments.'"[42] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[43] "It is well settled that [such motions] should not be used . . . to re-urge matters that have already been advanced by a party."[44]

Alteration or amendment under Rule 59, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly"[45] and the motion must "clearly establish" that alteration or amendment is warranted.[46] When there exists no independent reason for alteration or amendment other than mere disagreement with a prior order, alteration or amendment is a waste of judicial time and resources and should not be granted.[47]

---

[41] *See, e.g.*, *Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma–Sea Ship Builders, L.L.C.*, Civ. A. Nos. 10-1440, 10-1802, 2012 WL 1150128, at *3-4 (E.D. La. Apr. 5, 2012) (Brown, J.) (citing *Castrillo v. Am. Home Mortg. Servicing Inc.*, Civ. A. No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) (Vance, C.J.)).

[42] *Castrillo*, 2010 WL 1424398, at *4 (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[43] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

[44] *Helena Labs. v. Alpha Scientific Corp.*, 483 F. Supp. 2d 538, 539 (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[45] *Templet*, 367 F.3d at 478-79.

[46] *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[47] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 BR 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was

## IV. Law and Analysis

### A. *Patent Validity and the On-Sale Bar*

A patent is presumed to be valid.[48] However, under the on-sale bar of 35 U.S.C. § 102(b), a patent is invalid or an invention is not patentable if it was in public use or on sale in this country more than one year prior to the date of the application for a patent in the United States. Although the ultimate question of whether a patent is invalid under § 102(b) due to the application of an on-sale bar is a question of law, the inquiry is inherently based on underlying questions of fact.[49] "In order to overcome the presumption of validity, such underlying facts supporting a determination of invalidity must be proven by clear and convincing evidence."[50]

Whether an invention was in public use or on sale must be determined by reference to the "claimed invention."[51] In *Pfaff v. Wells Electronics, Inc.*,[52] the United States Supreme Court held that the on-sale bar applies when two conditions are satisfied before the critical date:

> First, the product must be the subject of a commercial offer for sale. An inventor can both understand and control the timing of the first commercial marketing of his invention. . . .
>     Second, the invention must be ready for patenting. That condition may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.[53]

---

presented). *See also FDIC v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[48] 35 U.S.C. § 282.

[49] *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001).

[50] *Id.*

[51] *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1573 (Fed. Cir. 1986).

[52] 525 U.S. 55 (1998).

[53] *Id.* at 67-68.

Under the first prong of the analysis involving whether the claimed invention was the subject of a commercial offer for sale, "[o]nly an offer which . . . the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)."[54]  "[W]hether or not the alleged offer in [the] case [rises] to the level of a commercial offer for sale is a factual question to be judged in view of the circumstances surrounding its making, taking into account such factors as the status of negotiations, the language of the documents, the terms of any previous inquiry, and the prior course of dealings between the parties."[55]

However, a sale does not invalidate a patent if "the primary purpose of the inventor at the time of the sale, as determined from an objective evaluation of the facts surrounding the transaction, was to conduct experimentation."[56] "A use or sale is experimental for purposes under 35 U.S.C. 102(b) if it represents a bona fide effort to perfect the invention or to ascertain whether it will answer its intended purpose."[57]

Here, Plaintiffs were required to prove by clear and convincing evidence that the patented invention, SnoWizard's cam assembly, was the subject of a commercial offer for sale prior to the critical date, February 6, 2003.  The jury determined, based on the evidence presented and applying the law as it was provided to them, that the patented invention was not the subject of a commercial offer for sale or in public use before February 6, 2003.  In support of the jury's conclusion, the testimony of the inventor of the cam assembly, Mr. Sciortino, established that he

---

[54] *Fisher-Price, Inc. v. Safety 1st, Inc.*, 109 F. App'x 387, 391 (Fed. Cir. 2004).

[55] *Id.* at 392.

[56] *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1354 (Fed. Cir. 2002).

[57] *LaBounty Mfg. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1071 (Fed. Cir. 1992).

13

had not approved the sample of a part of the patented cam assembly, SW2, until December 23, 2002, and the manufacturer did not ship the first order of the part to SnoWizard until February 12, 2003. Therefore, if the jury believed this testimony, the jury could reasonable conclude that it would have been impossible for the "claimed invention" to have been on sale, the subject of a commercial offer for sale, or in public use before February 6, 2003, because SW1 and SW2 were both required components of the "claimed invention."[58]

Moreover, Plaintiffs claim that the issue of whether there was a commercial offer is unsupported by any authority, and, in fact, whether there was a commercial offer for sale prior to the critical date is based on underlying factual questions. It was appropriate for the jury to decide the underlying factual questions and apply the law as given to them to the facts to answer the jury interrogatories.

Considering the high burden of clear and convincing evidence that Plaintiffs were required to satisfy and the testimony of Mr. Sciortino, the Court cannot find that the evidence points so strongly in favor of Plaintiffs that reasonable minds could not disagree. In fact, plaintiffs had a high burden to sustain here, and the jury reasonably found that burden was not satisfied. Furthermore, the Court does not find that the jury's verdict is against the weight of the evidence. Thus, a new trial is not warranted on the issue of the on-sale bar.

[58] Rec. Doc. 684 at p. 5.

## B. A Reasonable Royalty for Patent Infringement

In *Rite-Hite Corp. v. Kelley Co., Inc.*,[59] the United States Court of Appeals for the Federal Circuit summarized the standard governing awards of reasonable royalties in patent cases:

> A patentee is entitled to no less than a reasonable royalty on an infringer's sales for which the patentee has not established entitlement to lost profits. The royalty may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant. The hypothetical negotiation requires the court to envision the terms of a licensing agreement reached as the result of a supposed meeting between the patentee and the infringer at the time infringement began. One challenging only the court's finding as to amount of damages awarded under the 'reasonable royalty' provision of § 284, therefore, must show that the award is, in view of all the evidence, either so outrageously high or so outrageously low as to be unsupportable as an estimation of a reasonably royalty.[60]

A reasonable royalty is "merely the floor below which damages shall not fall."[61] Further, a party is not required to present expert testimony to receive a reasonable royalty award in a patent case."[62]

Without citing any authority, Plaintiffs argue that the $102,000 awarded to SnoWizard as a reasonable royalty for Plaintiffs' infringement of the 871 patent was unsupported by the evidence, because the award exceeds the amount that the patented cam assembly costs to manufacture plus profits. This position is unsupported by the authority, which explains that a reasonably royalty would be the terms arrived at upon a hypothetical negotiation of a licensing

---

[59] 56 F.3d 1538 (Fed. Cir. 1995) (en banc).

[60] *Id.* at 1554 (internal citations and quotations omitted); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("The second, more common approach, called the hypothetical negotiation or the 'willing licensor-willing licensee' approach, attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.").

[61] *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1583 (Fed.Cir.1983).

[62] *Dow Chemical Co. v. Mee Industries, Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003).

agreement. Ample testimony was presented at trial to support this award, including the testimony of Mr. Sciortino that "if SnoWizard had considered granting Southern Snow a license, then SnoWizard would expect to receive no less than 15% of Southern Snow's sales of ice shaving machines as a royalty, or more than $220,000 for the period May 26, 2009 to the time of the trial. Thus, an award of $102,000 cannot be considered outrageously high, and the Court must deny the Rule 50 motion.

Even applying the less stringent standard for a new trial under Rule 59, the Court finds that substantial evidence was presented to support the conclusion that if Southern Snow and SnoWizard negotiated a licensing agreement for the patented part, the royalty would be significantly higher than Plaintiffs' suggested value of $40 per cam assembly. In addition to Mr. Sciortino's testimony, ample evidence demonstrated that the parties did not have a good relationship and were serious competitors within the local market. Therefore, the Court finds that the weight of the evidence suggests that a reasonable royalty would be substantially higher than the costs of manufacturing plus profits on the sale of the part. Accordingly, the Court will not modify the damages awarded for reasonable royalties.

## C. *Trademark Infringement*

"In a trademark infringement action, the paramount question is whether one mark is likely to cause confusion with another."[63] "Likelihood of confusion" requires more than a "mere

---

[63] *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985).

possibility" of confusion; rather, "the plaintiff must demonstrate a probability of confusion."[64] Typically, whether there is a likelihood of confusion is a question of fact.[65]

Here, despite Plaintiff's insistence to the contrary, there was substantial evidence supporting the jury's finding that the use of the marks CAJUN RED HOT, MOUNTAIN MAPLE, WHITE CHOCOLATE & CHIPS, and SNOSWEET created a likelihood of confusion. The evidence demonstrated that Southern Snow used SnoWizard's trademarks on identical goods, and that Parasol used a colorable imitation of SNOSWEET on identical goods. Furthermore, the Court disagrees with Plaintiffs' contention that displaying the house brand on the infringing products negated the likelihood of confusion. Indeed, evidence was presented that the flavors were asked for by name by customers who may not have seen the house brand displayed on the bottled. Thus, ample evidence was presented to support the jury's inference that consumers were likely confused as to the source, origin, or sponsorship of the goods. This Court will not grant Plaintiffs' Rule 50 or Rule 59 motion based solely on Plaintiffs insistence that there was no evidence of actual confusion and where the weight of the evidence suggests a probability of confusion.

### D. *Groundless, Bad Faith, or Harassing Claims of Trademark Infringement*

At trial, Mr. Wendling candidly testified that he purchased the registration of the mark SNOBALL for $1 dollar while this litigation was pending, he did not believe the mark could serve as a trademark when he purchased it, and he did not expect to win the lawsuit against SnoWizard when he filed his trademark infringement claims. The jury was permitted, and in

---

[64] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009).

[65] *Id.* at 227.

fact, required to evaluate this testimony and weigh the credibility of Mr. Wendling's testimony. In doing so, the jury determined that Mr. Wendling's trademark infringement claims were groundless, brought in bad faith, or for purposes of harassment.

The crux of Plaintiffs motion appears to be that the jury could not find SNOBALL to be a valid trademark and also find the trademark infringement claims to be groundless, in bad faith or for purposes of harassment. However, Plaintiffs position is clearly erroneous because it is entirely possible to have a valid trademark, even without knowing it was a valid trademark at some point in time, and nevertheless file a lawsuit in bad faith or for purposes of harassment. Indeed, Mr. Wendling's testimony is strong evidence, if not an admission, that such circumstances occurred here, and the jury's finding is consistent with that testimony.

Plaintiffs also seem to take issue with the fact that the jury did not find that the LUTPA claims were groundless, in bad faith, or for purposes of harassment, because this is considered by Plaintiffs to be "inconsistent" with the jury's finding on trademark infringement. Assuming that Plaintiffs are not asking for this Court to enter judgment as a matter of law *against* Plaintiffs on this basis, the Court will simply note that Mr. Wendling's testimony related more directly to trademark infringement and may have provided better evidence in the jury's determination of his bad faith in filing trademark infringement claims rather than claims under the LUTPA.

## V.  Conclusion

For the foregoing reasons, the Court finds that the jury's verdict as it pertains to the validity and infringement of the 871 patent; infringement of SnoWizard's marks in SNOSWEET, MOUNTAIN MAPLE, CAJUN RED HOT, and WHITE CHOCOLATE & CHIPS; and the

groundless, bad faith, or harassing nature of Plaintiffs' claim for infringement of SNOBALL, is supported by the weight of the evidence presented at trial and considering the burdens of proof attributable to each claim. Moreover, the Court will not discuss at length Plaintiffs' motion under Rule 59(e). Rather, it suffices to state that, having determined the jury's verdict was supported by sufficient evidence on these issues, the Court cannot conclude under Rule 59(e) that a manifest error of law, error of fact, or injustice has occurred warranting alteration of the judgment on the issues presented by the instant motion. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Renewed Rule-50 Motion for JMOL and Rule-59 Motion for New Trial or to Alter or Amend Judgment[66] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this  5th  day of August, 2013.

*[signature]*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[66] Rec. Doc. 677.