**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SOUTHERN SNOW MANUFACTURING CO., INC., et al.**     **CIVIL ACTION**

**VERSUS**                                                                          **NO.    06-9170**
                                                                                                   **09-3394**
**SNOWIZARD HOLDINGS, INC., et al.**                                    **10-0791**
                                                                                                   **11-1499**

                                                                               **SECTION: "G" (1)**

<u>**ORDER AND REASONS**</u>

Before the Court is Defendants SnoWizard, Inc. and Ronald R. Sciortino's (collectively, "SnoWizard") Motion for Permanent Injunction,[1] wherein SnoWizard, after successfully litigating its claims of patent and trademark infringement before a jury, seeks to enjoin future patent and trademark infringement by certain Defendants-in-Counterclaim. Having considered the motion, the response, the reply, the supplemental reply, the record, and the applicable law, the Court will grant the motion.

<u>**I. Background[2]**</u>

*A. Factual Background*

This matter commenced in 2006, when Plaintiff Southern Snow Manufacturing Co., Inc. ("Southern Snow") filed a Petition and a Supplementing and Amending Petition in the 24th Judicial Court for the Parish of Jefferson, Louisiana, against SnoWizard for violations of Louisiana state law and U.S. trademark law. SnoWizard subsequently removed the case to the Eastern District of Louisiana, invoking this Court's federal question jurisdiction pursuant to 28

---

[1] Rec. Doc. 672.

[2] The factual and procedural background of this case has been repeatedly detailed by the Court in the orders and reasons resolving numerous motions in this matter and will not be repeated here.

1

U.S.C. § 1331.[3] SnoWizard ultimately asserted counterclaims against Plaintiffs,[4] generally raising claims of infringement and dilution of multiple asserted state and federal trademarks, unfair competition under federal and state law, and patent infringement. After more than six years of litigation, this matter, composed of four consolidated cases with two defendants and numerous plaintiffs, was tried before a jury in this Court beginning on February 19, 2013.[5]

Among other things, the jury found that Southern Snow, Banister & Co., Inc. ("Banister"), and Milton "Bubby" Wendling knowingly and willfully directly infringed, induced infringement of, and contributorily infringed SnoWizard's U.S. Pat. No. 7,536,871 (the "871 Patent"). The jury also determined that SnoWizard did not suffer lost profits as a result of sales of the patented product.[6] Likewise, the jury found that SnoWizard did not suffer loss of collateral sales as a result of the infringement.[7] The jury ultimately awarded SnoWizard $102,000 as a reasonable royalty owed to SnoWizard as a result of the use of its patented product.[8]

Additionally, the jury found that Southern Snow and Snow Ingredients, Inc. ("Snow Ingredients") willfully infringed SnoWizard's federally and Louisiana registered trademarks CAJUN RED HOT, MOUNTAIN MAPLE, and WHITE CHOCOLATE & CHIPS, and that Parasol Flavors, LLC ("Parasol") willfully infringed SnoWizard's federally and Louisiana

---

[3] Rec. Doc. 1.  This matter was originally assigned to Judge Jay C. Zainey, Section "A," but was reassigned to this section, Section "G," as part of a docket created for a newly appointed judge. Rec. Doc. 439.

[4] Rec. Doc. 38, 168.

[5] Rec. Doc. 654.

[6] *Id.* at p. 22.

[7] *Id.* at pp. 22–23.

[8] *Id.* at p. 23.

registered trademark SNOSWEET.[9] It further found that SnoWizard was entitled to the value of the profits Southern Snow and Parasol earned as a result of its infringing activity, determining that Southern Snow earned $1,200 as a result of its infringement and that Parasol gained $100.[10] However, the jury found that SnoWizard did not prove that it suffered any actual damages from any of the infringing activity.[11] On March 5, 2013, the Court entered judgment in conformity with the jury's verdict.[12] The Court then granted SnoWizard's motion to amend the judgment, ordering as a matter of law that Southern Snow literally infringed on the 871 Patent and that Plum Street Snoballs was not entitled to actual damages for SnoWizard's infringement of Plum Street's ORCHID CREAM VANILLA trademark.[13]

### B. Procedural Background

On March 26, 2013, SnoWizard filed the pending motion for injunctive relief against Southern Snow, Banister, and Wendling for patent infringement; against Southern Snow and Snow Ingredients for trademark infringement of CAJUN RED HOT, MOUNTAIN MAPLE, and WHITE CHOCOLATE & CHIPS; and against Parasol for trademark infringement of SNOSWEET.[14] Plaintiffs and Defendants-in-Counterclaim Parasol, Southern Snow, Simeon, Inc., Snow Ingredients, Banister, and Wendling (collectively, "Defendants-in-Counterclaim") timely filed an opposition on April 2, 2013.[15] On April 10, 2013, SnoWizard filed a reply with

---

[9] Rec. Doc. 661-3 at pp. 14–20.

[10] *Id.*

[11] *Id.* at pp. 14–18.

[12] Rec. Doc. 665.

[13] Rec. Doc. 709 at p. 19.

[14] Rec. Doc. 672.

[15] Rec. Doc. 678.

leave of Court.[16] SnoWizard also filed a Supplemental Memorandum in Support of Motion for Permanent Injunctions with leave of Court to detail alleged continuing developments relevant to the motion.[17]

Subsequent to the filings related to this motion, the parties filed notices of appeal to the United States Court of Appeals for the Federal Circuit. All parties in this case, including several not involved in the pending motion, have appealed multiple orders, the judgment on the jury's verdict, "any other interlocutory order entered in the consolidated cases," and "any order entered after the date of this Notice of Appeal."[18] The Defendants-in-Counterclaim have appealed to the Federal Circuit pursuant to 28 U.S.C. § 1295(a)(1).[19] Next, Hanover Insurance Company, intervenor and third-party defendant, filed an "Amended and Supplemental Notice of Appeal" on September 4, 2013, wherein it appeals this Court's orders finding that it had a continuing duty to defend SnoWizard to the Fifth Circuit "or, pursuant to 28 U.S.C. [§] 1295(a)(1), the Federal Circuit."[20] Defendants Sciortino and SnoWizard filed a "Notice of Cross Appeal to Federal Circuit" on September 4, 2013, wherein they appeal the Court's denial of SnoWizard's motion for sanctions against certain Plaintiffs and their attorney, the Court's rulings related to Hanover Insurance Company's duty to defend SnoWizard, part of the judgment on the jury verdict, and the Court's denial in part of SnoWizard's motion for judgment as a matter of law and/or to alter

---

[16] Rec. Doc. 682.

[17] Rec. Doc. 703.

[18] Rec. Doc. 713 at pp. 1–2 (citing Rec. Doc. Nos. 162, 332, 333, 336, 561, 605, 610, 621, 651, 665, 709, 711; *Parasol Flavors, LLC v. SnoWizard, Inc.*, Case No. 09-3394, Rec. Doc. 56).

[19] *Id.* at p. 1.

[20] Rec. Doc. 716 at p. 1 (citing Rec. Doc. Nos. 342, 343, 346, 641).

4

or amend judgment on validity and infringement by SnoWizard of Plum Street Snoballs'

trademark in ORCHID CREAM VANILLA.[21]

## II. Jurisdiction

Considering various appeals have been lodged in this matter, the Court must first address

whether it has jurisdiction to hear the pending motion.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers

jurisdiction on the court of appeals and divests the district court of its control over those aspects

of the case involved in the appeal."[22] The Federal Circuit, which has exclusive appellate

jurisdiction over this case pursuant to 28 U.S.C. § 1295(a)(1),[23] has noted that while "in some

matters [it has] followed the law of the circuit in which the district court sits, on issues of our

own appellate jurisdiction, such deference is inappropriate."[24] However, the Federal Circuit also

"look[s] for guidance in the decisions of the applicable regional circuit as well as those of other

circuits."[25] The Federal Circuit does not appear to have squarely addressed the issue of whether a

notice of appeal divests a district court of jurisdiction to entertain a motion for entry of a

permanent injunction that was filed prior to a notice of appeal. However, the Court notes that the

general rule in the Fifth Circuit is one that "recognize[s] the continuing jurisdiction of the district

---

[21] Rec. Doc. 717 at pp. 1–2 (citing Rec. Doc. Nos. 557, 558, 559, 622, 655, 709).

[22] *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).

[23] The Federal Circuit has appellate jurisdiction over "an appeal from a final judgment of a district court 'if the jurisdiction of that court was based, in whole or in part, on 28 U.S.C. § 1338.'" *See DSC Commc'ns Corp. v. Pulse Commc'ns, Inc.*, 170 F.3d 1354, 1359 (Fed. Cir. 1999). That statute confers original jurisdiction over any civil action, such as the one here, arising under patent or trademark laws. *See* 28 U.S.C. § 1338.

[24] *Wang Labs., Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355, 357 (Fed. Cir. 1992).

[25] *Id.*

5

court in support of its judgment, as long as that judgment has not been superseded."[26] Moreover, commentators have explained that, "unless the judgment is stayed, the district court may act to enforce it despite the pendency of an appeal."[27] Accordingly, because the judgment has not been stayed, nor has the verdict been superseded, the Court finds that it has jurisdiction to entertain the motion.

### III. Injunctive Relief for Patent Infringement

*A. Applicable Law*

Section 283 of the Patent Act provides that a federal court with jurisdiction over patent cases "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."[28] Therefore, a party may appropriately obtain permanent injunctive relief in a patent infringement case by filing a post-trial motion for such relief.[29] Until recently, the general rule was "an injunction will issue when infringement has been adjudged, absent a sound reason for denying it."[30] Courts "applied a presumption of irreparable harm following judgment of infringement and validity to support the issuance of permanent injunctions."[31] However, in *eBay Inc. v. MercExchange, LLC,*[32] the

---

[26] *Farmhand, Inc. v. Anel Eng'g Indus., Inc.*, 693 F.2d 1140, 1146 (5th Cir. 1982) (approving district court's entertainment of motion for contempt where defendant did not seek stay of judgment pending appeal).

[27] *See* 16A WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3949.1 (4th ed. 2013).

[28] 35 U.S.C. § 283.

[29] *Robert Bosch*, 659 F.3d at 1145.

[30] *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226 (Fed. Cir. 1989) (citing *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281 (Fed. Cir. 1988)).

[31] *Robert Bosch*, 659 F.3d at 1148.

[32] 547 U.S. 388 (2006).

United States Supreme Court, "jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief."[33]

The Supreme Court reiterated, however, "that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards."[34] The Supreme Court thus set forth the standard four-factor test to determine whether a party is entitled to a permanent injunction:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[35]

The Federal Circuit, whose case law controls regarding issues of patent law,[36] has since held that although "a successful patent infringement plaintiff can no longer rely on presumptions or other short-cuts to support a request for a permanent injunction, it does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude."[37]

---

[33] *Robert Bosch*, 659 F.3d at 1149.

[34] 547 U.S. at 394.

[35] *Id.* at 391 (citations omitted).

[36] *See* 28 U.S.C. § 1295(a)(1) (granting Federal Circuit "exclusive jurisdiction" in "any civil action arising under any Act of Congress relating to patents").

[37] *Robert Bosch*, 659 F.3d at 1149.

**B. Parties' Arguments**

### 1. SnoWizard's Arguments in Support of an Injunction

SnoWizard first contends that it is entitled to injunctive relief here because it has suffered irreparable injury.[38] To establish this first factor, it analogizes this case to *Robert Bosch, LLC v. Pylon Manufacturing Corporation*,[39] arguing that the Federal Circuit recognized in that case that "the existence of a two-player market may well serve as a substantial ground for *granting* an injunction" and that "some courts have referenced the fact that the patented product is at the core of a party's business when explaining their bases for *granting* an injunction."[40]

SnoWizard contends that such grounds for finding irreparable injury exist here because the patented ice shaving machine in this case "is at the core of the parties' businesses[,]" which means that the parties are in direct competition.[41] Moreover, the parties' direct competition creates an "inference that an infringing sale by Southern Snow amounts to *many* lost sales, substantial market share, and loss of customers, and loss of referrals to potential customers by SnoWizard."[42] Finally, SnoWizard argues that Wendling "testified unabashedly" that he continued to order infringing cam assemblies even after learning that SnoWizard's improved cam assembly was patented.[43] SnoWizard asserts that this testimony and conduct establishes that

---

[38] Rec. Doc. 672-1 at p. 4.

[39] 659 F.3d 1142 (Fed. Cir. 2011).

[40] Rec. Doc. 672-1 at p. 4. (quoting *Robert Bosch*, 659 F.3d at 1150) (emphasis in original).

[41] *Id.*

[42] *Id.* (emphasis in original).

[43] *Id.* at p. 5.

"there is no reason to believe that [Defendants-in-Counterclaim] will cease infringing SnoWizard's patent unless enjoined by this Court."[44]

As to whether damages are an adequate remedy, SnoWizard argues that "unless and until [Defendants-in-Counterclaim] are permanently enjoined, SnoWizard will continue to suffer irreparable harm due to lost sales, lost market share, lost customers, and lost referrals to potential customers, for which money damages alone cannot fully compensate."[45]

Third, SnoWizard argues that the balance of hardships favor granting the injunction. It asserts that the failure to enjoin continued infringement would likely lead to continued infringing conduct, which in turn would force "SnoWizard to compete against its own patented invention" and result in continued harm.[46] On the other hand, SnoWizard contends that an injunction would not pose any hardship on Defendants-in-Counterclaim because "Southern Snow has no right to infringe SnoWizard's patent, and need only revert to the prior art cam assembly in its ice shaving machines."[47] Fourth, and finally, SnoWizard argues that the public interest "would not be disserved by a permanent injunction" because an injunction would allow consumers to "continue to have the option to purchase non-infringing Southern Snow ice shaving machines."[48] Moreover, SnoWizard asserts that the public has a "substantial interest in the innovation incentive of the patent," and this interest will be protected and upheld by "restoring to

---

[44] *Id.*

[45] *Id.* (citing *Robert Bosch*, 659 F.3d at 1155).

[46] *Id.*

[47] *Id.*

[48] *Id.*

SnoWizard the constitutional exclusivity it lost as a result of [Defendants'-in-Counterclaim] infringement."[49]

### 2. Arguments in Opposition by Defendants-in-Counterclaim

Defendants-in-Counterclaim argue that "[t]here is no need for an injunction. SnoWizard has failed to show any need for an injunction. This is a waste of the parties' and the Court's time."[50] They contend further that "[i]mmediately after the jury's verdict," they "took steps to cease any arguably infringing activities."[51] In particular, Southern Snow asserts that it "immediately began the manufacture of the ratchet linkages having the 'prior art' design" upon the entry of judgment on March 5, 2013.[52]

### 3. SnoWizard's Arguments in Reply

SnoWizard asserts that "Southern Snow and Parasol's representations to the Court are false and misleading, unreliable, lacking in credibility, and utterly insufficient" to establish Defendants'-in-Counterclaim assertion that the pending motion is a waste of time.[53] Moreover, SnoWizard contends that Defendants'-in-Counterclaim conduct establishes that "this is not a case in which Parasol and Southern Snow's 'wrongful behavior could not reasonably be expected to recur.'"[54]

SnoWizard highlights Defendants'-in-Counterclaim "past conduct" in this case, which SnoWizard argues has repeatedly established that Defendants-in-Counterclaim are "not to be

---

[49] *Id.* (citing *Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1314 (Fed. Cir. 2012)) (internal quotation marks omitted).

[50] Rec. Doc. 678 at p. 1.

[51] *Id.*

[52] *Id.* at pp. 1–2.

[53] Rec. Doc. 682 at p. 2.

[54] *Id.* at p. 8 (quoting *Friends of the Earth, Inc. v. Laidlaw Envntl. Servs.*, 528 U.S. 167, 189 (2000)).

10

trusted."[55] Specifically, SnoWizard notes that Wendling's testimony at trial is inconsistent with Southern Snow's representation to the Court that it immediately began to make ratchet linkages with the prior art design.[56] SnoWizard asserts that Wendling testified that it would take "a couple of months" to prepare to use the prior-art linkages and that therefore Southern Snow could not have used those type of linkages "less than one week" after the entry of judgment.[57]

SnoWizard also claims that continued infringement is likely because "Southern Snow made clear what it thinks about SnoWizard's patents and trademarks through Mr. Wendling's testimony at trial."[58] It highlights Wendling's testimony that he "wasn't going to stop making snowball machines" despite his knowledge "that the Southern Snow cam assembly was identical to the cam assembly disclosed and claimed in that patent."[59] SnoWizard therefore concludes that Defendants-in-Counterclaim "wish to be free to continue and repeat their infringing conduct while evading review by the Court notwithstanding the Verdict of the Jury and the Judgment of the Court."[60]

### 4. SnoWizard's Supplemental Reply

SnoWizard contends that an injunction is necessary because "Southern Snow may in fact be actively attempting to continue its manufacture of ice makers with improved cam assemblies" covered by the 871 Patent.[61] SnoWizard bases this assertion on two grounds. First, it asserts that Banister and Wendling have asked the manufacturing company ("PMI") that first made the

---

[55] *Id.*

[56] *Id.*

[57] *Id.* at p. 6.

[58] *Id.* at p. 7.

[59] *Id.*

[60] *Id.* at p. 8.

[61] Rec. Doc. 703 at p. 2.

infringing cam assemblies for Southern Snow to return to Banister and Wendling "the tooling with which PMI has manufactured parts" for them.[62] It quotes in support a May 10, 2013, letter from PMI's attorney to Southern Snow's counsel responding to the request and asking that Banister and Wendling "confirm, in writing, that they will abide by all orders and decisions of the Court" in this action.[63]

Second, SnoWizard highlights Wendling's testimony that another, unidentified, company in Oklahoma had provided certain parts for Southern Snow's ice makers. SnoWizard claims that after trial it wrote to Oklahoma Investment Casting Company ("OIC"), to demand that OIC "immediately cease and desist" providing the parts "to avoid the consequences of contributory infringement of the [871] patent."[64] SnoWizard asserts that OIC has never responded "by denying that it manufactures and sells components of the [infringing] cam assemblies."[65]

SnoWizard therefore concludes that "these continuing developments underscore the need for permanent injunctive relief . . . to protect against the obvious danger that Southern Snow does not intend to cease its infringement of the [871] patent voluntarily, or that it seeks to resume such infringement at the earliest opportunity."[66] It further notifies the Court that it had issued a subpoena to OIC seeking documents related to any business transactions or communications with Southern Snow, and SnoWizard asserts that it may seek leave of Court to supplement the record

---

[62] *Id.* at pp. 2–3.

[63] *Id.* at p. 3.

[64] *Id.* at p. 2.

[65] *Id.* at p. 3.

[66] *Id.*

with the responses, "[t]o the extent any documents produced in response to the subpoena are relevant to the pending motions."[67]

## C. Analysis

### 1. SnoWizard's Irreparable Injury

The Federal Circuit has held that "[w]here two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."[68] Moreover, "[s]imply because a patentee manages to maintain a profit in the face of infringing competition does not automatically rebut a case for irreparable injury."[69] "Irreparable injury encompasses different types of losses that are often difficult to quantify, including lost sales and erosion in reputation and brand distinction."[70]

SnoWizard argues that it has established irreparable injury in light of *Robert Bosch*.[71] In that case, the Federal Circuit found that the district court abused its discretion in denying a permanent injunction requested by the maker of windshield wiper blades whose patented design of a particular blade type had been infringed.[72] The district court denied the injunction after finding that Bosch had more than one competitor, that wiper blades were a "non-core" aspect of

---

[67] *Id.* SnoWizard filed its Supplemental Reply on May 14, 2013, and it has not filed any such documents to date.

[68] *Douglas Dynamics*, 717 F.3d at 1345; *see also Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude.") (citation omitted); *cf. ActiveVideo Networks*, 695 F.3d 1337 (reversing grant of permanent injunction in part because patentee and infringing entity "do not compete").

[69] *Douglas Dynamics*, 717 F.3d at 1344 (Fed. Cir. 2013).

[70] *Id.*

[71] 659 F.3d 1142 (Fed. Cir. 2011).

[72] *See id.* at 1145–46.

Bosch's overall business, and that Bosch had failed to define a relevant market.[73] Notwithstanding those determinations, the Federal Circuit held that the district court "committed a clear error of judgment" by failing to give appropriate consideration to "(1) the parties' direct competition; (2) loss in market share and access to potential customers resulting from Pylon's introduction of infringing beam blades; and (3) Pylon's lack of financial wherewithal to satisfy a judgment."[74]

Here, the parties do not contest that SnoWizard and Southern Snow are, or were during the relevant times, manufacturers and sellers, at wholesale and retail, of ice-shaving machines and snowball flavor concentrates.[75] Moreover, the jury found that SnoWizard and Southern Snow were competing for the same customers in the same markets. Indeed, the Court notes that the trial record reflects that they were fervent competitors and that they both used SnoWizard's patented cam assembly as a critical part of their ice-shaving machines, which served as the core of their respective businesses. On the other hand, SnoWizard has not provided evidence of the kind of loss in market share that was at issue in *Robert Bosch*. Moreover, SnoWizard has not provided evidence that Defendants-in-Counterclaim cannot satisfy the judgment rendered against them.

However, the Federal Circuit has held that failure to make such a showing is not enough to withhold a permanent injunction where a district court also finds that the trademark holder suffers a reputation loss.[76] In *Douglas Dynamics, LLC v. Buyers Products Company*, a manufacturer of snowplow mounting assemblies received a jury verdict finding that a direct

---

[73] *Id.* at 1152.

[74] *Id.* at 1150–51.

[75] *See* Rec. Doc. 636 ("Revised Pretrial Order") at p. 8 (setting forth same as uncontested material fact).

[76] *See Douglas Dynamics*, 717 F.3d at 1344.

competitor had infringed two of its patents. The district court denied permanent injunctive relief, finding that the plaintiff did not establish irreparable injury because it failed "to show it was losing sales or market share" due to the defendant's infringement.[77] The Federal Circuit reversed, holding that "[s]imply because a patentee manages to maintain a profit in the face of infringing competition does not automatically rebut a case for irreparable injury."[78]

In *Douglas Dynamics*, the Federal Circuit focused on the patent holder's place in the market as a higher-end manufacturer and the loss of "some of its distinctiveness and market lure [due to infringement] because competitors could contend that they had 'similar features' without noting that those features infringe" on the patent holder's proprietary technologies.[79] It likewise noted that the patent holder's reputation as an innovator would be damaged where customers found the same "innovations" in a competitor's product and that the patent holder's "reputation would be damaged if its dealers and distributors believed it did not enforce its intellectual property rights." Finally, the Federal Circuit reasoned that the patent holder had never licensed the infringed patents and thus "intentionally chose not to, so that it could maintain market exclusivity."[80] Such exclusivity, it noted, "is part of a company's reputation," which is under attack when a competitor sells an infringing product.[81]

Here, SnoWizard was the sole license holder of Sciortino's patents, and Sciortino testified that he "probably" would not have granted a license to Wendling or his companies, even if they had asked, "because I don't want to help him, you know, to improve his machine to

---

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.* at 1345.

[81] *Id.*

15

compete against mine."[82] Sciortino likewise testified that sales of the ice-shaving machines led to referrals and that "if somebody were to go to Southern Snow and get a demonstration and come [sic] to us and that cam assembly is in both of them and they decide to go with him . . . I am also going to be losing out on referrals."[83] While the jury rejected SnoWizard's claim that the patent infringement by Defendants-in-Counterclaim caused SnoWizard to lose profits and collateral sales, the Court finds that this testimony is sufficient to establish that the infringement nonetheless damaged SnoWizard's reputation because, as in *Douglas Dynamics*, customers who bought ice-shaving machines from Defendants-in-Counterclaim found SnoWizard's innovations in those machines. Thus, SnoWizard's reputation as an innovator in this field was damaged by the patent infringement. Accordingly, the Court finds that SnoWizard has suffered irreparable harm and that any future infringing conduct would cause similarly irreparable harm.

### 2. The Inadequacy of Money Damages

In *Douglas Dynamics*, the Federal Circuit held that money damages were "inadequate to compensate Douglas for at least the reputation loss" it suffered due to infringement of its patents.[84] Here, as the Court has determined that SnoWizard has suffered an analogous reputation loss due to the infringement of its patents, the Court finds that monetary damages would similarly be an inadequate remedy for damage to SnoWizard's "reputation and brand distinction." Accordingly, the Court finds that money damages are inadequate. Therefore, and in light of the fact that this Court should not "entirely ignore the fundamental nature of patents as

---

[82] *See* Rec. Doc. 724 (Appeal Tr. of February 25, 2013) at p. 130.

[83] *Id.* at p. 131.

[84] 717 F.3d at 1345.

property rights granting the owner the right to exclude,"[85] the Court finds that SnoWizard has established that it suffered an irreparable harm for which monetary damages are an inadequate remedy.

### 3. Balance of Hardships Between SnoWizard and Southern Snow, Banister, and Wendling

Next, the Court must balance the hardships that a decision to grant or deny a permanent injunction would cause the respective parties. As the Federal Circuit noted in *Robert Bosch*, the failure of issuing an injunction against infringement could require the patent holder to "compete against its own patented invention," which in turn leads to the irreparable harms discussed above.[86] This competition against one's own innovations "places a substantial hardship" on the patent holder.[87]

Here, if the Court denies SnoWizard's request for a permanent injunction, SnoWizard may find itself again competing against its own patent, thereby placing a substantial hardship on its business.[88] That hardship only increases if SnoWizard is forced to file a new lawsuit for infringement of the 871 Patent in the future. In contrast, if the Court issued a permanent injunction against further infringement, Southern Snow could revert to the "prior art" cam assemblies in its ice-shaving machines. More important, an order enjoining Southern Snow from future infringement merely requires it to respect SnoWizard's intellectual property rights, which is something that the law requires it to do anyway and that Southern Snow already asserts that it is doing. Accordingly, the balance of hardships weighs in SnoWizard's favor.

---

[85] *See Robert Bosch*, 659 F.3d at 1149.

[86] *Id.* at 1156.

[87] *Id.*

[88] *See id.* at 1156 ("[R]equiring Bosch to compete against its own patented invention, with the resultant harms described above, places a substantial hardship on Bosch.").

### 4. Public's Interest in Permanent Injunction

Finally, the Court must consider whether a permanent injunction would disserve the public interest. In *Douglas Dynamics*, the Federal Circuit noted that while competition serves the public interest, the failure to protect the intellectual property rights of patent holders has "the effect of inhibiting innovation and incentive."[89] Such inhibition, "coupled with the public's general interest in the judicial protection of property rights in innovative technology, outweighs any interest the public has in purchasing cheaper infringing products."[90] Accordingly, a permanent injunction in this case would not disserve the public interest; in fact, enjoining Defendants-in-Counterclaim from further patent infringement would restore to SnoWizard the constitutional exclusivity it lost as a result of the infringement by Southern Snow, Banister, and Wendling and thereby protect the incentive to invent. Accordingly, because SnoWizard has established that all four factors for permanent injunctive relief apply in this case, the Court will enjoin Defendants-in-Counterclaim from future infringement of claims 1 or 11 of the 871 Patent.

## IV. Injunctive Relief for Trademark Infringement

### A. Applicable Law

The Lanham Act authorizes courts to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of" a trademark.[91] In considering whether such an injunction is appropriate here, the Federal Circuit here will apply Fifth Circuit law.[92] The Fifth Circuit has held that "[i]t is

---

[89] 717 F.3d at 1346.

[90] *Id.*

[91] 15 U.S.C. § 1116(a).

[92] *See Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1373 (Fed. Cir. 2002) ("The law of the pertinent regional circuit governs the assertion of federally protected trademark rights.") (citation omitted).

well-established that the party seeking a permanent injunction must demonstrate" the presence of the four factors outlined in *eBay*: (1) irreparable injury, (2) the inadequacy of monetary damages, (3) a balance of hardships that warrants the injunction, and (4) a determination that the injunction would not disserve the public interest.[93]

### B. Parties' Arguments

#### 1. SnoWizard's Arguments in Support of Permanent Injunction

SnoWizard first contends that it is entitled to injunctive relief against further trademark infringement because it has suffered irreparable injury due to the likelihood of confusion that the infringing conduct by Defendants-in-Counterclaim created.[94] As to the second factor, SnoWizard argues only that "money damages alone are inadequate to compensate SnoWizard for that [irreparable] injury."[95] Third, SnoWizard argues that the balance of hardships favor granting the injunction because the injunction would "only require the defendants to bring their business into line with the requirements of the law."[96] Finally, SnoWizard argues that an injunction would favor the public's interest because that the Supreme Court has held that the Lanham Act is meant "to protect the ability of consumers to distinguish among competing producers."[97]

#### 2. Arguments in Opposition by Defendants-in-Counterclaim

Defendants-in-counterclaim argue that there is no need for an injunction against trademark infringement because Parasol changed the name of its SNOW SWEET to FAUX

---

[93] *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013) (citing *eBay*, 547 U.S. at 391).

[94] Rec. Doc. 672-1 at p. 7.

[95] *Id.*

[96] *Id.* (citation omitted).

[97] *Id.* (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985)).

SWEET.[98] Also, they claim that Southern Snow changed the name of its WHITE CHOCOLATE & CHIPS to "White Chocolate" and its CAJUN RED HOT to "Red Hot."[99] Likewise, they suggest that there can be no possible future infringement of MOUNTAIN MAPLE because Southern Snow "had already ceased selling" it in 2011.[100] Defendants-in-Counterclaim thus conclude that "there is no threat to SnoWizard, and certainly no threat of any harm that cannot be rectified with money damages, and no need for an injunction."[101]

### 3. SnoWizard's Arguments in Reply

SnoWizard argues that the representations made by Defendants-in-Counterclaim are not to be believed.[102] In particular, SnoWizard argues that printouts from Parasol's website establish that it advertised its sugar substitute under the SNOW SWEET name as recently as April 7, 2013, concluding that "not only was Parasol's purported change of SNOW SWEET to FAUX SWEET not 'immediate,' it did not even happen."[103] SnoWizard further contends that Parasol continued this advertising after representing to the Court on April 2, 2013, that it had ceased infringement.[104] Likewise, SnoWizard attaches printouts from Southern Snow's website to assert that Southern Snow has not fully described for the Court the name of the products at issue. First, it alleges that Southern Snow did not change WHITE CHOCOLATE & CHIPS to "White Chocolate;" instead, its product is named WHITE COCOLATE (WITH VANILLA CHIPS).[105]

---

[98] *Id.*

[99] *Id.*

[100] *Id.*

[101] *Id.* at p. 2.

[102] Rec. Doc. 682 at p. 2.

[103] *Id.* at p. 4.

[104] *Id.*

[105] *Id.* at p. 5.

Likewise, SnoWizard argues that while Southern Snow no longer uses CAJUN RED HOT, the product now is sold under the name "RED HOT (A CAJUN FAVORITE)."[106] SnoWizard also highlights the "past conduct" of Defendants-in-Counterclaim in this case, which SnoWizard argues has repeatedly established that they are "not to be trusted."[107] Specifically, SnoWizard points to Wendling's testimony that he did not feel that the CAJUN RED HOT trademark was "valid" and so continued to make and sell flavoring concentrates under that name.[108]

### C. SnoWizard's Entitlement to Injunctive Relief for Trademark Infringement

#### 1. SnoWizard's Irreparable Injury

SnoWizard first must demonstrate that it has suffered an irreparable injury.[109] In *Abraham v. Alpha Chi Omega*, the Fifth Circuit stated that "[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion— injury is presumed."[110] This rule was reiterated after *eBay*, in which the Supreme Court rejected a similar presumption of irreparable injury in patent infringement cases.[111] Thus, because the jury found that Defendants-in-Counterclaim used SnoWizard's CAJUN RED HOT, MOUNTAIN MAPLE, WHITE CHOCOLATE & CHIP, and SNOSWEET trademarks in a manner likely to cause confusion, this element is satisfied pursuant to the Fifth Circuit's rule as set forth in *Abraham*.

---

[106] *Id.*

[107] *Id.*

[108] *Id.*

[109] *See Abraham*, 708 F.3d at 627.

[110] *Id.* (citing 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:2 (4th ed. 2001)).

[111] In fact, the Fifth Circuit even cited *eBay* immediately before stating the rule regarding presumed irreparable injury. *Id.* at 627.

The opposition by Defendants-in-Counterclaim rests on the fact that they have purportedly ceased infringing the trademarks. They represent to the Court that Southern Snow renamed its flavors "White Chocolate" and "Red Hot," but the evidence provided by SnoWizard, and not disputed by Defendants-in-Counterclaim, establishes that the flavors are actually called "White Chocolate (With Vanilla Chips)" and "Red Hot (A Cajun Favorite)."[112] Further, there is uncontradicted evidence that Southern Snow did not "*immediately*" stop using the marks. The misleading statements by Defendants-in-Counterclaim, Wendling's testimony, and the jury's findings convince the Court that the infringing conduct may recur without an injunction. That result would render SnoWizard unable to control the ability of Defendants-in-Counterclaim to exacerbate the confusion they already caused, thereby again inflicting irreparable harm on SnoWizard.

### 2. The Inadequacy of Money Damages

As the Fifth Circuit has held, "[i]t is notoriously difficult for the owner of a trade-mark to prove the amount of his damage or how much of it is caused by the infringement."[113] Likewise, it has held that where irreparable injury is established, "there seems little doubt that money damages are inadequate to compensate [the] owner for continuing acts of [the] infringer."[114] Here, SnoWizard has established that it has suffered irreparable injury. Moreover, the jury found that the infringement of SnoWizard's trademarks created a likelihood of consumer confusion or deception as to the source, sponsorship, or approval of the trademarked products. The injury caused by such a result cannot easily be measured by the price of a bag of flavor concentrate, and

---

[112] *See id.* at p. 9.

[113] *Pure Food v. Minute Maid Corp.*, 214 F.2d 792, 797 (5th Cir. 1954).

[114] *Abraham*, 708 F.3d at 627 (citing 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:2 (4th ed. 2001) (alterations omitted)).

indeed the jury itself determined that SnoWizard could not prove actual damages deriving from the trademark infringement by Defendants-in-Counterclaim. Accordingly, the Court finds that monetary damages are an inadequate remedy to rectify SnoWizard's injury.

### 3. Balance of Hardships

Considering the past behavior of the parties, it appears that absent an injunction, SnoWizard may not be able to protect its trademarks from future infringement by Defendants-in-Counterclaim without pursing additional litigation, even after having endured this lawsuit for nearly seven years. On the other hand, if the Court issues an injunction, Defendants-in-Counterclaim will need only to abide by trademark law by not infringing upon SnoWizard's intellectual property rights.[115] Accordingly, the Court finds that this factor strongly supports granting the requested injunction.

### 4. Public's Interest in Permanent Injunction

Finally, the purpose of trademark law is to "protect the ability of consumers to distinguish among competing producers."[116] Therefore, it is in the interest of the public that a permanent injunction issue to ensure that there will be no future confusion between SnoWizard's products and the products of Southern Snow, Snow Ingredients, and Parasol. The Court therefore finds that it is appropriate to grant injunctive relief in this case pursuant to 15 U.S.C. § 1116(a).

## V. Injunctive Relief Under Louisiana Law

Louisiana Revised Statute section 51:223 allows the owner and user of a state-registered trademark to "proceed by suit to enjoin the manufacture, use, display or sale of any counterfeits or imitations thereof." It further allows any court of competent jurisdiction to grant such an

---

[115] *See id.*

[116] *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985).

23

injunction, "as may be by the said court deemed just and reasonable." [117] While generally seeking relief under this statutory provision, SnoWizard does not separately analyze its entitlement to injunctive relief under Louisiana law, and Defendants-in-Counterclaim do not address it either. Because the Court already has determined that SnoWizard is entitled to an injunction under the Lanham Act, it will decline to consider whether an injunction pursuant to section 51:223 is appropriate here.

## VI.  Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that SnoWizard's Motion for Permanent Injunction[118] is **GRANTED**;

**IT IS FURTHER ORDERED** that Southern Snow Mfg. Co., Inc., Banister & Co., Inc., Milton G. Wendling, Jr., their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, are enjoined from directly or contributorily infringing, or actively inducing others to infringe, claims 1 or 11 of U.S. Pat. No. 7,536,871 by making, importing, distributing, selling, or offering to sell an icemaker with an improved cam assembly, an improved cam assembly, or any component of an improved cam assembly not colorably different than those disclosed and claimed in U.S. Pat. No. 7,536,871;

**IT IS FURTHER ORDERED** that Southern Snow Mfg. Co., Inc., Banister & Co., Inc., Milton G. Wendling, Jr., their officers, agents, servants, employees, attorneys, and those persons

---

[117] La. Rev. Stat. § 51:223.

[118] Rec. Doc. 672.

24

in active concert or participation with them who receive actual notice of the order by personal service or otherwise, shall destroy any and all remaining inventory in the United States of the improved cam assembly or any component of the improved cam assembly found to infringe claims 1 or 11 of U.S. Pat. No. 7,536,871;

**IT IS FURTHER ORDERED** that Southern Snow Mfg. Co., Inc., Snow Ingredients, Inc., their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, are enjoined from using the marks CAJUN RED HOT, MOUNTAIN MAPLE, and WHITE CHOCOLATE & CHIPS, or any colorable imitation thereof, in connection with the sale, offering for sale, or advertising for sale of a food flavoring concentrate for shaved ice confections in commerce or in the State of Louisiana;

**IT IS FURTHER ORDERED** that Parasol Flavors, LLC, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it who receive actual notice of the order by personal service or otherwise, are enjoined from using the mark SNOSWEET, or any colorable imitation thereof, in connection with the sale, offering for sale, or advertising for sale of a food flavoring concentrate for shaved ice confections in commerce or in the State of Louisiana; and

**IT IS FURTHER ORDERED** that Southern Snow Mfg. Co., Inc., Banister & Co., Inc., Milton G. Wendling, Jr., Snow Ingredients, Inc., and Parasol Flavors, LLC shall file with the Court and serve on SnoWizard, Inc. and Ronald R. Sciortino within thirty days after the date of such injunction a report in writing under oath setting forth in detail the manner and form in which they have complied with the injunction.

**NEW ORLEANS, LOUISIANA**, this <u>24th</u> day of April, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

26