# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**SOUTHERN SNOW MFG. CO., INC.**                    **CIVIL ACTION**

**VERSUS**                                          **NO. 06-9170 c/w 09-3394,**
                                                    **10-791, 11-1499**

**SNOWIZARD HOLDINGS, INC.** *et al.*               **SECTION: G(1)**


## ORDER AND REASONS

Presently pending before the Court is a "Renewed Motion for Attorneys' Fees"[1] filed by SnoWizard, Inc. and Ronald R. Sciortino (collectively, "SnoWizard"), in which SnoWizard urges the Court to award attorney's fees against Parasol Flavors, LLC ("Parasol"), Southern Snow Mfg. Co., Inc. ("Southern Snow"), Snow Ingredients, Inc. ("Snow Ingredients"), Simeon, Inc. ("Simeon"), Banister & Co., Inc. ("Banister"), and Milton "Bubby" Wendling ("Wendling") (collectively, "Plaintiffs"). Having reviewed the motion, the opposition, the record, and the applicable law, the Court will deny the motion.

## I. Background[2]

In 2006, Southern Snow filed a Petition and a Supplementing and Amending Petition in the 24th Judicial District Court for the Parish of Jefferson, Louisiana, against SnoWizard for violations of Louisiana state law and U.S. trademark law.[3] On October 27, 2006, SnoWizard removed the case

---

[1] Rec. Doc. 741.

[2] The factual and procedural history of this case has been summarized in numerous Orders issued by this Court. The following background is adapted from the Court's April 24, 2014 Order and Reasons granting SnoWizard's post-trial "Motion for Permanent Injunction." Rec. Doc. 732.

[3] Rec. Doc. 1.

to the United States District Court for the Eastern District of Louisiana, invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331.[4]

SnoWizard asserted counterclaims against Plaintiffs,[5] generally raising claims of infringement and dilution of multiple asserted state and federal trademarks, unfair competition under federal and state law, and patent infringement. After more than six years of litigation, this matter, composed of four consolidated cases with two defendants and numerous plaintiffs, was tried before a jury in this Court beginning on February 19, 2013.[6]

Among other things, the jury found that Southern Snow, Banister, and Wendling knowingly and willfully directly infringed, induced infringement of, and contributorily infringed SnoWizard's U.S. Pat. No. 7,536,871 (the "'871 Patent").[7] The jury also determined that SnoWizard did not suffer lost profits as a result of sales of the patented product.[8] Likewise, the jury found that SnoWizard did not suffer loss of collateral sales as a result of the infringement.[9] The jury ultimately awarded SnoWizard $102,000 as a reasonable royalty owed to SnoWizard as a result of the use of its patented product.[10]

Additionally, the jury found that Southern Snow and Snow Ingredients willfully infringed SnoWizard's federally and Louisiana registered trademarks "CAJUN RED HOT," "MOUNTAIN MAPLE," and "WHITE CHOCOLATE & CHIPS," and that Parasol willfully infringed SnoWizard's

---

[4] *Id.* This matter was originally assigned to Judge Jay C. Zainey, Section "A," but was reassigned to this section, Section "G," as part of a docket created for a newly appointed judge. Rec. Doc. 439.

[5] Rec. Doc. 38, 168.

[6] Rec. Doc. 654.

[7] Rec. Doc. 710 at pp. 20–21.

[8] *Id.* at p. 22.

[9] *Id.* at pp. 22–23.

[10] *Id.* at p. 23.

federally and Louisiana registered trademark "SNOSWEET."[11] It further found that SnoWizard was entitled to the value of the profits Southern Snow and Parasol earned as a result of their infringing activity, determining that Southern Snow earned $1,200 as a result of its infringement and that Parasol gained $100.[12] However, the jury found that SnoWizard did not prove that it suffered any actual damages from any of the infringing activity.[13] On March 5, 2013, the Court entered judgment in conformity with the jury's verdict.[14] The Court then granted SnoWizard's motion to amend the judgment, ordering as a matter of law that Southern Snow literally infringed on the '871 Patent and that Plum Street Snoballs was not entitled to actual damages for SnoWizard's infringement of Plum Street's ORCHID CREAM VANILLA trademark.[15]

On March 19, 2013, SnoWizard moved for attorney's fees.[16] On March 26, 2013, SnoWizard filed a "Motion for Permanent Injunction"[17] against Southern Snow, Banister, and Wendling for patent infringement; against Southern Snow and Snow Ingredients for trademark infringement of CAJUN RED HOT, MOUNTAIN MAPLE, and WHITE CHOCOLATE & CHIPS; and against Parasol for trademark infringement of SNOSWEET.[18] On May 13, 2013, Plaintiffs Southern Snow,

---

[11] *Id.* at pp. 14–20.

[12] *Id.*

[13] *Id.* at pp. 14–18.

[14] Rec. Doc. 665.

[15] Rec. Doc. 709 at p. 19. On appeal, the Federal Circuit vacated the Court's judgment of literal infringement as to the '871 patent, as well as its judgments of equivalents infringement, willfulness, and damages related to that patent. *See So. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 567 Fed. App'x 945, 964 (Fed. Cir. 2014). The Federal Circuit affirmed the Court's judgment related to the validity and infringement of the mark "ORCHID CREAM VANILLA," but did not address the issue of damages related to that mark. *Id.* at 956–57.

[16] Rec. Doc. 669.

[17] Rec. Doc. 672.

[18] *Id.*

Banister, Wendling, and "all antitrust Plaintiffs in 11-1499" filed a "Motion for Relief Under Rule 60."[19] On June 26, 2013, SnoWizard filed a "Re-Urged Motion for Sanctions Pursuant to Rule 11."[20]

On August 8, 2013, all plaintiffs in this case filed a "Notice of Appeal to Federal Circuit."[21] On September 3, 2013, Hanover Insurance Company, intervenor and third-party defendant, filed an "Amended and Supplemental Notice of Appeal" to the Fifth Circuit "or, pursuant to 28 U.S.C. [§] 1295(a)(1), the Federal Circuit."[22] On September 4, 2013, Defendants Sciortino and SnoWizard filed a "Notice of Cross Appeal to Federal Circuit."[23]

On April 24, 2014, the Court granted SnoWizard's "Motion for Permanent Injunction."[24] On June 30, 2014, the Federal Circuit issued its judgment affirming this Court's judgment in most respects, but reversing the Court's judgment as to: (1) the validity and infringement of the '879 patent; and (2) the dismissal of certain claims asserted by Plaintiffs Raggs Supply, LP ("Raggs") and Special T Ice Co., Inc. ("Special T").[25]

On September 23, 2014, the Court dismissed without prejudice all pending motions in light of the Federal Circuit's decision.[26] On October 20, 2014, the Court reconsidered in part and lifted in part its permanent injunction, consistent with the Federal Circuit's Mandate.[27] On October 29,

---

[19] Rec. Doc. 701.

[20] Rec. Doc. 708.

[21] Rec. Doc. 713 at pp. 1–2 (citing Rec. Doc. Nos. 162, 332, 333, 336, 561, 605, 610, 621, 651, 665, 709, 711; *Parasol Flavors, LLC v. SnoWizard, Inc.*, Case No. 09-3394, Rec. Doc. 56).

[22] Rec. Doc. 716 at p. 1 (citing Rec. Doc. Nos. 342, 343, 346, 641).

[23] Rec. Doc. 717 at pp. 1–2 (citing Rec. Doc. Nos. 557, 558, 559, 622, 655, 709).

[24] Rec. Doc. 732.

[25] *So. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 567 Fed. App'x 945, 964 (Fed. Cir. 2014).

[26] Rec. Doc. 735.

[27] Rec. Doc. 739.

2014, Raggs and Special T moved to dismiss without prejudice the claims reinstated by the Federal

Circuit.[28] Also on October 29, 2014, SnoWizard filed the instant motion for attorneys' fees.[29]

## II. Parties' Arguments

### A.   SnoWizard's "Renewed Motion for Attorneys' Fees"[30]

In the pending motion, SnoWizard argues that "the jury's findings of willful trademark

infringement" on the part of Plaintiffs, "coupled with Plaintiffs' pattern of harassing and meritless

litigation, serve as a clear signal to this Court that attorney's fees are warranted in this action in

favor of SnoWizard."[31]

### 1.   Fees Pursuant to the Lanham Act

SnoWizard first argues that Section 35(a) of the Lanham Act[32] authorizes courts to award

attorney's fees in "exceptional cases," in which a party has "engaged in some form of willful,

deliberate, or fraudulent conduct."[33] According to SnoWizard, the present case meets this

requirement because the jury found that: (1) Southern Snow and Snow Ingredients "engaged in

willful trademark infringement" and "unethical, oppressive, unscrupulous, or deceptive" conduct

with regard to SnoWizard's "CAJUN RED HOT," "WHITE CHOCOLATE & CHIPS," and

"MOUNTAIN MAPLE" trademarks; and (2) Parasol "engaged in willful trademark infringement"

and "unethical, oppressive, unscrupulous, or deceptive" conduct with regard to SnoWizard's

---

[28] Rec. Doc. 740. The Court granted this motion on November 12, 2014. Rec. Doc. 742.

[29] Rec. Doc. 741.

[30] *Id.*

[31] Rec. Doc. 141-1 at p. 9.

[32] 15 U.S.C. § 1117(a).

[33] Rec. Doc. 741-1 at p. 9 (citing *Taco Cabana, Int't, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991) (internal quotation marks omitted)).

"SNOSWEET" trademark.[34] SnoWizard cites four district court cases in support of its argument that Plaintiffs' infringement actions make this case exceptional.[35]

SnoWizard additionally argues that the findings are consistent with evidence adduced at trial as Wendling, on behalf of Southern Snow and Snow Ingredients, "admitted to directly copying SnoWizard's flavor names because of their popularity," and Drewes, on behalf of Parasol, admitted that he was on notice to SnoWizard's earlier claim to trademark rights concerning the "SNOSWEET" mark, yet continued to infringe.[36] SnoWizard further contends that Southern Snow, Snow Ingredients, and Parasol "deliberately continued to infringe these marks all the way through trial and beyond."[37] Specifically, SnoWizard argues that Parasol continues to use the term "SNOW SWEET" on its website, notwithstanding the Court's order permanently enjoining Parasol from using the "SNOSWEET" mark.[38] Therefore, SnoWizard contends, attorney's fees should be awarded against these parties.[39]

### 2.    Fees Pursuant to the Louisiana Unfair Trade Practices Act ("LUTPA")

SnoWizard next argues that, pursuant to the LUTPA,[40] a prevailing defendant may recover attorney's fees "[u]pon a finding that an action under this Section was groundless and brought in bad faith or for purposes of harassment."[41] SnoWizard argues that the Court should award LUTPA

---

[34] *Id.* at pp. 9–10.

[35] Rec. Doc. 741-1 at pp. 10–11 (citing *Shen Mfg. Co. v. Suncrest Mills, Inc.*, 673 F. Supp. 1199 (S.D.N.Y. 1987); *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 634 F. Supp. 990 (W.D. Mo. 1986); *Bagdasarian Prods. v. Audiofidelity Enters., Inc.*, No. 84-2290, 1984 WL 1564 (D.N.J. Oct. 3, 1984); and *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339 (S.D.N.Y. 1998)).

[36] *Id.* at p. 10.

[37] *Id.*.

[38] *Id.* at p. 11 (citing Rec. Doc. 732).

[39] *Id.* at pp. 11–12.

[40] LA. REV. STAT. § 51:1409.

[41] Rec. Doc. 741-1 at p. 12 (quoting La. Rev. Stat. § 51:1409).

attorney's fees here because: (1) "many of Plaintiffs' LUTPA claims were dismissed outright by this Court as a matter of law;" (2) the jury found that Southern Snow and Simeon's infringement claims regarding the term "SNOBALL" were "groundless, brought in bad faith, or were brought for the purposes of harassment;" and (3) the jury rejected Parasol's LUTPA infringement claim regarding "SNOW SWEET," and found Parasol's conduct "unethical, oppressive, unscrupulous, or deceptive" with regard to SnoWizard's "SNOSWEET" trademark.[42] SnoWizard contends that, in addition to the jury's findings on these points, an award of attorney's fees "is further justified" here "by Plaintiffs' duplicative and harassing litigation tactics."[43]

### 3. Fee Calculation

SnoWizard next argues that its fee application is reasonable under the "lodestar" method, where a court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly billing rate.[44] SnoWizard contends that the appropriate lodestar figure is $491,748.25 which "corresponds to the number of hours worked and actually billed" for the claims at issue, "multiplied by each timekeeper's hourly billing rate."[45]  SnoWizard further contends that the requested fees are reasonable pursuant to an analysis of the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* which are used in combination with the "lodestar" method in order to determine whether a requested fee award is reasonable.[46] As to the allocation of fees, SnoWizard contends that Plaintiffs

---

[42] *Id.* (citing Rec. Doc. 710).

[43] *Id.* at p. 13.

[44] *Id.* (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).

[45] Rec. Doc. 741-1 at pp. 13–15.

[46] *Id.* (citing 488 F.2d 714, 717–19 (5th Cir. 1974)).

"were the primary driving force behind the consolidated litigation," and that "each should be liable for a 1/6 *pro rata* share" of the requested fees.[47]

SnoWizard next addresses each of the *Johnson* factors.  According to SnoWizard, these factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[48]

As to the "amount involved and the results obtained," SnoWizard argues that "the degree of the plaintiffs overall success is 'the most critical factor' in determining the reasonableness of a fee award."[49] SnoWizard states that courts "are reluctant to decrease the lodestar amount" in cases where, as here, "the prevailing party is granted relief on the majority of its claims."[50]

Addressing "the time and labor required," SnoWizard contends that "particularized records" filed in support of its prior motion for fees "illustrate that the division of labor was efficient and that each attorney and staff member had specified projects for which they were responsible . . . [and that] this matter was staffed appropriately."[51] SnoWizard  further contends that "the time spent on this

---

[47] *Id.* at p. 15.

[48] *Id.* at p. 14, n.1.

[49] *Id.* at p. 15 (citing *Toys "R" Us, Inc. v. Abir*, No. 97-8673, 1999 WL 61817, at *3 (S.D.N.Y. Feb 10, 1999) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

[50] *Id.* at pp. 16.

[51] *Id.* at pp. 16–17.

matter was reasonable given the attorneys' varying experience levels" and that its attorneys' time "was reasonably expended in meeting the demands of the Court and this case."[52]

Turning to "the customary fee," SnoWizard asserts that its fee rates in this case were "set intentionally low in order to accommodate long-standing relationships with the clients," and were "far below the industry standard for typical commercial litigation, much less for the more specialized field of intellectual property litigation."[53] Discussing "the experience, reputation, and ability of the attorneys" factor, SnoWizard asserts that "the specialized knowledge and experience" of its attorneys "further support[] the fee application."[54]

As to the "novelty and difficulty of the questions," SnoWizard contends that Plaintiffs "continually asserted claims for which there was no supporting case law," thereby presenting novel and difficult issues that support the reasonableness of its fee application.[55] Turning to "the skill requisite to perform the legal service properly," SnoWizard argues that its counsel are "all highly specialized trial and intellectual property attorneys with years of collective trademark litigation experience."[56]

Discussing "the preclusion of other employment by the attorneys due to acceptance of the case," SnoWizard avers that the fee statements submitted here show that "this matter dominated several attorneys' calendars for years," and thereby prevented "some of SnoWizard's attorneys from taking on other matters and clients."[57] Furthermore, SnoWizard contends that "[i]n addition to the

---

[52] *Id.*

[53] *Id.* at p. 17.

[54] *Id.* at pp. 17–18.

[55] *Id.* at p. 18.

[56] *Id.* at pp. 18–19.

[57] *Id.* at p. 19.

motions that SnoWizard filed, SnoWizard had to respond to Plaintiffs' numerous motions and discovery disputes," which was both time-consuming and "subject to tight deadlines that required the immediate attention of several attorneys."[58]

Regarding "awards in similar cases," SnoWizard asserts that courts in similar cases have upheld awards of $940,000 and $889,986.50 in attorneys' fees, and that "[b]oth of these cases were decided more than ten years ago," and since then "legal fees have increased, in part to keep pace with inflation."[59]

### 4.    Fee Segregation

Finally, SnoWizard asserts that "it is contrary to the law" to hold that it is "only entitled to recover attorney's fees in connection with the claims upon which it prevailed at trial," because "the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted."[60] SnoWizard contends that such a holding would "improperly shift this burden to SnoWizard."[61] According to SnoWizard, the appropriate course of action when "a plaintiff's claims cannot be disentangled" is to consider "the results obtained and adjust the lodestar accordingly."[62] SnoWizard asserts, however, that the Fifth Circuit has held that where "time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required."[63]

---

[58] *Id.*

[59] *Id.* at pp. 19–20 (citing *Taco Cabana*, 932 F.2d at 1128, *aff'd* 505 U.S. 763 (1992), *reh'g denied* 505 U.S. 1244 (1992); *Dunkin' Donuts, Inc. v. Mercantile Ventures, Inc.*, No. 91-154, 1994 WL 720236 (W.D. Tex. Aug. 11, 1994)).

[60] *Id.* at p. 20 (quoting *Millon v. Johnston*, No. 98-2235, 1999 WL 358968 (E.D. La. May 28, 1999) (Wilkinson, M.J.)).

[61] *Id.*

[62] *Id.* at p. 20.

[63] *Id.* at p. 21 (quoting *Abell v. Potomac Ins. Co. of Ill.*, 946 F.2d 1160, 1169 (5th Cir. 1991)).

## B.      *Plaintiffs' Opposition*

In opposition, Plaintiffs assert that the question of whether to shift attorneys fees "encompasses all of the litigation in all of these 4 consolidated cases" and that the "8-day jury trial and 7-year litigation produced mixed results and split decisions for the dominant parties SnoWizard and Southern Snow companies."[64] Plaintiffs contend that "SnoWizard lost both its patent-infringement claims and the patent itself on appeal," therefore the instant motion is "only about attorney's fees under trademark law."[65]

### 1.      SnoWizard's Entitlement to Fees

Plaintiffs argue that "SnoWizard did not prevail on even half of its counterclaims, and lost 15 out of 19 of its purported trademarks, in this 7-year litigation."[66] According to Plaintiffs, SnoWizard "was not the prevailing party for the purported trademarks that . . . [it] lost," even if it "was able to avoid liability for fraud in claiming the trademarks in the first place."[67] Plaintiffs additionally contend that Plaintiff Plum Street Snoballs was "clearly a prevailing party" with regards to the flavor name Orchid Cream Vanilla where the jury found "10,000 in damages and profits" and that there was "deliberate and willful intent to deceive and unethical, unscrupulous, or deceptive conduct on SnoWizard's part."[68] Furthermore, Plaintiffs argue that they "should not be punished by the Court for agreeing to the consent judgment," in which "SnoWizard gave up 15 out of 19 purported trademarks," and Plaintiffs gave up "their now-completely-justified claims against the

---

[64] Rec. Doc. 743 at p. 1.

[65] *Id.* at p. 2.

[66] *Id.* at p. 3.

[67] *Id.*

[68] *Id.*

unlawful assertion" of those surrendered marks, and their "years-long defense against SnoWizard's claims of infringement of these now-proven-bogus trademarks."[69]

### 2.    SnoWizard's Fee Calculation

Plaintiffs additionally argue that SnoWizard's requested fee award includes "hundreds of thousands of dollars in fees for issues upon which SnoWizard did not prevail," and is essentially the same sum it requested before the Federal Circuit reversed its "huge patent victory."[70] Plaintiffs maintain that although SnoWizard "only prevailed on a small portion of the claims in this litigation," its requested fee award amounts to "a bill for essentially all of their work," and that SnoWizard's attorneys "make no attempt" to segregate or estimate the fees pertaining to the issues upon which SnoWizard prevailed.[71] Plaintiffs argue that "it is not the responsibility of the Plaintiffs' counsel to go through the 3-inch stack of confidential, sealed, faint photocopies to try to guess which entries might arguably be allowable," and that the descriptions given therein "do not appear to have enough detail to allow anyone—even SnoWizard's attorneys themselves—to tease out any arguably allowable fees."[72]

### 3.    The Prevailing Plaintiffs' Entitlement to Fees

According to Plaintiffs, they should be awarded attorneys' fees regarding the purported trademarks that SnoWizard gave up in the consent judgment because SnoWizard's litigation of these marks after the Court or the Trademark Trial and Appeal Board "found them to be generic" gave SnoWizard "extra years of asserting to customers that SnoWizard owned several trademarks that

---

[69] *Id.* at p. 2.

[70] *Id.* at pp. 3–4.

[71] *Id.* at p. 4.

[72] *Id.*

SnoWizard really never did own," and was therefore "willful and fraudulent."[73] Further, Plaintiffs argue, "[i]f the reasons given by SnoWizard support the shifting of attorney fees to any party, then those reasons equally support the shifting of attorney fees to all other parties" with regard to "claims and issues upon which each party prevailed."[74] Moreover, Plaintiffs argue, "under SnoWizard's method of counting hours, which is to count all of them," Plaintiffs "are entitled to recover all of the attorney fees for the whole 7-year litigation."[75]

Plaintiffs assert that defendants-in-counterclaim Ron Robinson, Raggs Supply LP, Doty Management, LLC and Julie K. Doty (collectively, "Raggs Counter-Defendants") are also entitled to attorney's fees, because the consent judgment dismissed various claims asserted by SnoWizard against these parties.[76] Thus, Plaintiffs argue, the Raggs Counter-Defendants prevailed on these claims.[77] According to Plaintiffs, SnoWizard's claims against these parties were "objectively unreasonable and were frivolous on the day they were filed," but the Raggs Counter-Defendants were required to defend against the claims for a year and a half.[78] Therefore, Plaintiffs argue, the Raggs Counter-Defendants are entitled to fees related to these claims.[79]

Plaintiffs also assert that Plaintiff Plum Street Snoballs ("Plum Street") is entitled to attorney's fees because the jury found that SnoWizard infringed the "ORCHID CREAM VANILLA" mark owned by Plum Street and found that SnoWizard's "conduct was unethical,

---

[73] *Id.* at p. 5.

[74] *Id.* at pp. 5–6.

[75] *Id.*

[76] *Id.* at p. 6.

[77] *Id.*

[78] *Id.* at pp. 6–7.

[79] *Id.* at p. 7.

oppressive, unscrupulous, or deceptive" as to the use of that trademark.[80] According to Plaintiffs, "SnoWizard avoided [Plum Street] getting a judgment to cancel SnoWizard's federal registration of 'ORCHID CREAM VANILLA' by agreeing, at the last minute, to 'voluntarily' cancel it" in the Consent Judgment, even though it had already "required [Plum Street] to fully litigate the issue."[81]

Thus, Plaintiffs argue, "[u]nder SnoWizard's reasoning, the prevailing Plaintiffs, who succeeded in getting 12 purported trademarks declared generic and invalid, and got federal and state registrations of these 12 purported trademarks cancelled, are entitled to recover their attorney fees," due to SnoWizard's unreasonable delay in giving up the marks.[82]

### III. Law and Analysis

A.   *Entitlement to Attorney's Fees Pursuant to the Lanham Act*

1.    **Legal Standard**

Section 35(a) of the Lanham Act, as codified at 15 U.S.C. § 1117(a), provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." To qualify for an award of attorney's fees pursuant to this provision, "the prevailing party must demonstrate the exceptional nature of the case by clear and convincing evidence."[83] "An exceptional case is one where the violative acts can be characterized as malicious, fraudulent, deliberate, or willful."[84] The requisite showing "demands a high degree of culpability on the part of the infringer, for example bad faith or fraud."[85]

---

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5th Cir. 1992).

[84] *Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 491 (5th Cir. 2008).

[85] *Id.* (citations and internal quotation marks omitted).

However, a finding of "bad faith in violating the Lanham Act" or "deliberate copying of a mark" does not require the Court to find that a particular case is exceptional.[86] Furthermore, the Fifth Circuit instructs that jury findings do not render a case *per se* "exceptional" for purposes of Section 35(a),[87] as the "[i]mposition of attorney's fees on the unsuccessful infringer is not a matter for the jury."[88] Rather, in determining whether the requisite showing has been made, the Fifth Circuit instructs courts to "examin[e] all the facts and circumstances,"[89] including the merits and substance of the action,[90] and the party's subjective culpability.[91] Once a party has made the requisite showing, the Court may, in its discretion, award attorney's fees.[92]

### 2.    Analysis

Applying these legal standards here, the Court will consider whether SnoWizard has demonstrated by clear and convincing evidence that Plaintiffs have acted with the level of culpability required to merit a determination that this case is "exceptional" such that attorney's fees should be awarded.

In support of its claim for attorney's fees pursuant to Section 35(a) of the Lanham Act, SnoWizard argues that the jury found that Southern Snow and Snow Ingredients willfully infringed

---

[86] *Id.*; *Nat'l Bus. Forms & Printing Co., Inc. v. Ford Motor Co.*, 671 F.3d 526, 537 (5th Cir. 2012).

[87] *See Tex. Pig Stands, Inc. v. Hard Rock Café Intern., Inc.*, 951 F.2d 684, 697 (5th Cir. 1992) ("A jury finding of willfulness does not bind the trial court in determining whether this case is 'exceptional'; it may, however, serve as a guide."). *See also Clearline Techs. Ltd v. Cooper B-Line, Inc.*, 948 F. Supp.2d 691, 719 (S.D. Tex. 2013) ("Although the jury was presented with sufficient evidence to conclude that the infringement was willful by a preponderance standard . . . the Court does not find that Cooper infringed willfully by a clear and convincing standard.").

[88] *Id.* at 696.

[89] *CJC Holdings, Inc.*, 979 F.2d at 65.

[90] *Procter & Gamble*, 280 F.3d 519, 528 (5th Cir. 2002).

[91] *Nat'l Bus. Forms & Printing Co., Inc.,* 671 F.3d at 537.

[92] *CJC Holdings, Inc.*, 979 F.2d at 65.

SnoWizard's trademarks, "CAJUN RED HOT," "WHITE CHOCOLATE & CHIPS," and "MOUNTAIN MAPLE" and that these Plaintiffs' conduct was "unethical, oppressive, unscrupulous, or deceptive" with respect to these trademarks.[93] SnoWizard further argues that Wendling testified on behalf of Southern Snow and Snow Ingredients at trial and admitted to "directly copying SnoWizard's flavor names because of their popularity."[94] Additionally, SnoWizard argues that the jury found that Parasol willfully infringed SnoWizard's "SNOSWEET" mark and that its conduct was "unethical, oppressive, unscrupulous, or deceptive" with respect to this trademark.[95] SnoWizard contends that Drewes "admitted that he was on notice of SnoWizard's earlier claim to trademark rights concerning the 'SNOSWEET' mark" yet chose to ignore them.[96] According to SnoWizard, a fee award against Parasol is "particularly warranted" in this case, because Parasol "has thumbed its nose at this Court's order enjoining it from further use of its SNOW SWEET mark" and continues to use that mark on its website.[97] Finally, SnoWizard argues that "the jury's findings of willful trademark infringement, coupled with Plaintiffs' pattern of harassing and meritless litigation, serve as a clear signal to this Court that attorneys' fees are warranted."[98]

Plaintiffs, in opposition, argue that SnoWizard only prevailed on four of its Lanham Act counterclaims.[99] Plaintiffs further argue that they should not be punished for agreeing to the Consent Judgment, in which SnoWizard "gave up 15 of 19 purported trademarks."[100] Finally, Plaintiffs

---

[93] Rec. Doc. 741-1 at p. 9.

[94] *Id.* at 10.

[95] *Id.* at 9.

[96] *Id.* at 10.

[97] *Id.* at pp. 10–11.

[98] *Id.* at 9.

[99] Rec. Doc. 743 at p. 3.

[100] *Id.* at p. 2.

contend that they, too, should be entitled to attorney's fees, in light of the consent judgment and trademark claims upon which they prevailed.[101]

SnoWizard correctly asserts that the jury found that Southern Snow and Snow Ingredients' conduct was both willful and "unethical, oppressive, unscrupulous, or deceptive" with regards to the use of the trademarks "CAJUN RED HOT," "WHITE CHOCOLATE & CHIPS," and "MOUNTAIN MAPLE,"[102] and that Parasol's conduct was both willful and "unethical, oppressive, unscrupulous, or deceptive" with regards to the use of the trademark "SNOSWEET."[103] However, jury findings alone do not render a case *per se* "exceptional" for purposes of Section 35(a).[104] Therefore, the jury findings do not end the inquiry.

In support of its argument that this case is exceptional, SnoWizard relies upon four district court cases. In *Shen Manufacturing Co. v. Suncrest Mills, Inc*,[105] a case from the Southern District of New York, the court found that defendant had engaged in intentional copying of the plaintiff's product, even going so far as to provide a manufacturer with the plaintiff's product as "reference" for the manufacture of its own product.[106] The District Court for the Western District of Missouri, in *Hallmark Cards v. Hallmark Dodge*,[107] found the case to be exceptional because it determined that defendant, in adopting the name "Hallmark," using a similar typestyle for the name, and adopting a similar slogan, intended to "ride the coattails of an existing reputable company."[108] In

---

[101] *Id.* at pp. 4–7. Notwithstanding this final argument, Plaintiffs have not moved for attorney's fees.

[102] Rec. Doc. 710 at pp. 15–18.

[103] *Id.* at p. 19.

[104] *See Tex. Pig Stands, Inc.,* 951 F.2d at 697.

[105] 673 F. Supp. 1199, 1207 (S.D.N.Y. 1987).

[106] *Id.* at 1206–07.

[107] 634 F. Supp. 990 (W.D. Mo. 1986).

[108] *Id.* at 999.

*Bagdasarian Productions v. Audiofidelity Enterprises, Inc.*,[109] a case from the District of New Jersey, the court found that attorney's fees should be awarded as the defendant's actions revealed a "purposeful intent . . . to capitalize on the goodwill and popularity [of Plaintiff's product]."[110] In the final case, *Tri-Star Pictures, Inc. v. Unger*,[111] the District Court for the Southern District of New York found that the defendant had adopted the infringing mark "for the purpose of trading on the goodwill, fame, and reputation of [plaintiff's mark]."[112]

These cases are not analogous to the instant case. The courts in those cases found that the defendants had intentionally sought to benefit by infringing upon the plaintiffs' protected interests. Here, the testimony of Wendling and Drewes demonstrate that they believed that SnoWizard's trademarks were invalid. Based on the testimony discussed below, as neither Wendling nor Drewes believed that SnoWizard's trademarks were valid, there was no purposeful infringement that rises to the level of culpability as found in the cases cited.

Wendling did testify at trial that he had copied "WHITE CHOCOLATE & CHIPS" from SnoWizard and that he had also copied "CAJUN RED HOT"once he saw how popular it had become, though he contested that he had copied it from SnoWizard.[113] However, Wendling further testified that he had spoken with another distributor, Jason Guidry, and, from that conversation, he believed that others had also been selling the flavor at the time and that the trademark was not valid.[114] Furthermore, Wendling testified that he continued to make and sell "WHITE CHOCOLATE

---

[109] No. 84-9920, 1984 WL 1565 (D.N.J. Oct. 4, 1984).

[110] *Id.* at *4.

[111] 14 F. Supp. 2d 339 (S.D.N.Y. 1998).

[112] *Id.* at 352.

[113] Rec. Doc. 720 at pp. 80, 90.

[114] *Id.* at p. 88.

18

& CHIPS," despite his acknowledgment that there was a certificate of registration on the mark, because he believed that SnoWizard's claim before the Patent and Trademark Office that it was selling "WHITE CHOCOLATE & CHIPS" exclusively was a "boldfaced lie."[115]

Drewes testified at trial, on behalf of Parasol, that he had created the name "SNOW SWEET" and that he contacted a trademark attorney to ensure that the mark "SNOW SWEET" was available.[116] However, Drewes testified that SnoWizard's application was submitted to the Patent and Trademark Office before his own application and that his application was subsequently rejected.[117] Although Drewes acknowledged that he received a cease and desist letter from SnoWizard, he also testified that he had done research into trademark law and believed that SnoWizard had committed fraud.[118] He further testified that he was unaware that the Court had ruled that SnoWizard's prior use of the mark had been sufficient.[119]

Based on the foregoing, the Court finds that SnoWizard has not met its burden of demonstrating by clear and convincing evidence that these entities acted with the "high degree of culpability" required to render this case "exceptional" within the meaning of Section 35(a) of the Lanham Act. The Fifth Circuit instructs that "[a] district court normally should not find a case exceptional where the party presents what it in good faith believes may be a legitimate defense."[120] Although the Court ultimately granted the motion for summary judgment as to the claim challenging the validity of "SNOSWEET"[121] and the jury found SnoWizard's marks in "CAJUN RED HOT,"

---

[115] *Id.* at p. 91.

[116] Rec. Doc. 721 at pp. 47, 55.

[117] *Id.* at p. 53.

[118] *Id.* at pp. 55–57.

[119] *Id.* at p. 59.

[120] *CJC Holdings Inc.*, 929 F.2d at 66.

[121] Rec. Doc. 333.

19

"WHITE CHOCOLATE & CHIPS," and "MOUNTAIN MAPLE" to be valid and enforceable, the testimony of Wendling and Drewes is indicative of a good-faith, if ultimately incorrect, belief that SnoWizard did not actually own the marks.

SnoWizard additionally argues that attorney's fees are warranted because Parasol did not remove "SNOW SWEET" from its website after the Court enjoined it, in April of 2014, from using "SNOSWEET" or any colorable imitation of that mark.[122] Although the name "SNOW SWEET" and a description of the product appear in Exhibit A to SnoWizard's motion, alleged to be Parasol's website in October of 2014, neither "SNOSWEET" nor "SNOW SWEET" appear in the "flavor list" on the website, suggesting that Parasol's failure to eliminate all instances of the mark may have been inadvertent. Accordingly, the evidence from Parasol's website does not support SnoWizard's claim that this case is exceptional.

Finally, SnoWizard argues that attorney's fees are warranted due to Plaintiffs' "pattern of harassing and meritless litigation."[123] SnoWizard alleges that various Plaintiffs have filed at least five separate lawsuits against SnoWizard, creating close to nine years of "costly and time-consuming litigation," and that over the years, more than 200 of the over 225 claims brought against SnoWizard were dismissed on motions for summary judgment.[124] SnoWizard further argues that the Court noted at one point during the litigation that "the only explanation for the duplicative litigation in the pending consolidated action is to expand Plaintiffs' procedural rights, upset the trial schedule, harass Defendants, and avoid the requirements of amendment of Plaintiffs' claims."[125]

---

[122] Rec. Doc. 741-1 at pp. 10–11.

[123] *Id.* at p. 9.

[124] *Id.* at pp. 1–2.

[125] Rec. Doc. 741-1 at p. 8 (quoting Rec. Doc. 621 at pp. 26–27).

Although there was some duplicative litigation, the Court does not find that the litigation was meritless, as SnoWizard asserts, or that the circumstances of the litigation make this case exceptional. The Fifth Circuit instructs that "[t]he fact that the outcome was mixed is relevant to whether a case is exceptional, but it should not be accorded great weight in the court's analysis."[126] Although SnoWizard contends that the jury "rejected each and every one of the claims against SnoWizard that were brought by the primary instigators of the consolidated lawsuits" and that SnoWizard "prevailed on nearly all of its remaining counterclaims,"[127] Plaintiffs argue that "SnoWizard did not prevail on even half of its counterclaims, and lost 15 out of 19 of its purported trademarks, in this 7-year litigation."[128] In fact, both sides obtained mixed results in this litigation.[129] Therefore, the litigation brought by Plaintiffs was not meritless.

Considering all of the facts and circumstances, the Court finds that SnoWizard has failed to meet its burden of demonstrating that this case is sufficiently "exceptional" to warrant the imposition of attorney's fees pursuant to Section 35(a) of the Lanham Act. Accordingly, SnoWizard's motion will be denied, to the extent that it seeks an award of fees pursuant to this statutory provision.[130]

---

[126] *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 556 (5th Cir. 1998) *abrogation on other grounds recognized in Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 356 (5th Cir. 2002).

[127] *Id.* at p. 8–9.

[128] Rec. Doc. 743 at p. 3.

[129] After trial had begun, SnoWizard entered into a consent judgment agreeing that fifteen marks that it had litigated were "generic for flavor concentrates for shaved ice confections or food flavorings." Rec. Doc. 652. The jury found in Plaintiff Plum Street Snoballs' favor regarding the validity and enforceability of the mark "ORCHID CREAM VANILLA" and found that SnoWizard had infringed on that mark. Rec. Doc. 709-1 at p. 3. The jury also found that SnoWizard had made false claims to customers about having invented and/or originated the snowball, the snowball machine, the snowball industry, and various snowball flavors. *Id.* at 13.

[130] Plaintiffs, in opposition, aver that "*Prevailing* Plaintiffs . . . should be entitled to reasonable attorney fees because of SnoWizard's unreasonable prolongation of litigation, and unsupported counterclaims." Rec. Doc. 743 at p. 4 (emphasis in original). To the extent that this argument is construed as a request for fees, the Court finds it unavailing. As noted above, Plaintiffs, like SnoWizard, took certain unsuccessful positions and unsuccessfully pursued certain claims in this litigation. Considering all of the facts and circumstances present here, however, no evidence was presented to show that SnoWizard's conduct warrants a finding that the present case is "exceptional" pursuant to Section 35(a) of the Lanham Act.

**B.**     ***Entitlement to Attorney's Fees Pursuant to the Louisiana Unfair Trade Practices Act "LUPTA"***

**1.     Legal Standard**

The LUTPA, as codified at LA. REV. STAT. § 51:1409(A), provides that:

> Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs.

Louisiana courts have described this provision as "penal in nature and subject to reasonably strict construction."[131] Courts have discretion in determining whether to award attorney's fees under this provision.[132]

**2.     Analysis**

SnoWizard argues that in order to prevail on its motion, it need only establish two elements: "(1) that the plaintiffs did not prevail on their LUPTA claims, and (2) that, with respect to such claims, the plaintiffs' claims were either groundless or brought in bad faith or for purposes of harassment."[133] SnoWizard argues that Plaintiffs have not prevailed upon their LUPTA claims at trial because: (1) "many of Plaintiffs' LUTPA claims were dismissed outright by this Court as a matter of law;" (2) the jury found that Southern Snow and Simeon's infringement claims regarding the term "SNOBALL" were "groundless, brought in bad faith, or were brought for the purposes of harassment;" and (3) the jury rejected Parasol's LUTPA infringement claim regarding the "SNOW SWEET," and found Parasol's conduct "unethical, oppressive, unscrupulous, or deceptive" with

---

[131] *Bobby and Ray Williams P'ship, L.L.P. v. The Shreveport La. Hayride Co., L.L.C.*, 38,224, p. 12 (La. App. 2 Cir. 4/21/04); 873 So.2d 739. *See also Grace-Cajun Oil Co. No. Two v. Damson Oil Corp.*, 897 F.2d 1364 (5th Cir. 1990) (same).

[132] *Id.* at 13.

[133] Rec. Doc. 741-1 at p. 12.

regard to SnoWizard's "SNOSWEET" trademark.[134] SnoWizard argues that the jury's express findings on Plaintiffs' claims as well as Plaintiffs' "duplicative and harassing litigation tactics" support an award of attorney's fees under LUPTA.

Plaintiffs do not specifically address SnoWizard's LUPTA arguments. However, as noted above, Plaintiffs contend that they should not be punished  for agreeing to the Consent Judgment, in which SnoWizard "gave up 15 of 19 purported trademarks."[135]

The Court finds that SnoWizard has not demonstrated that it is entitled to attorney's fees pursuant to the LUPTA. SnoWizard cites one finding by the jury—Southern Snow and Simeon's infringement claim regarding the term "SNOBALL" was "groundless, brought in bad faith, or [] brought for the purposes of harassment." However, the jury was instructed that "[i]n the event you find that the plaintiff Southern Snow's claim . . . was groundless, filed in bad faith for the purpose of harassing SnoWizard, you may conclude that SnoWizard is entitled to reasonable attorney's fees and costs. However, the Court will determine the amount SnoWizard is entitled to."[136] The jury, so instructed, found that Southern Snow and Simeon's claims under the LUPTA were *not* "groundless, brought in bad faith, or [] brought for the purposes of harassment."[137] SnoWizard does not acknowledge or attempt to distinguish the jury's specific finding of no bad faith with regard to either

---

[134] *Id.* (citing Rec. Doc. 710).

[135] Rec. Doc. 743 at p. 2.

[136] Rec. Doc. 727 at p. 39.

[137] Rec. Doc. 710 at p. 13. The jury verdict form states as follows:

15.  Do you find by a preponderance of the evidence that the following parties' claims under the Louisiana Unfair Trade Practices Act (LUTPA) La. R.S. 51:1405 were groundless, brought in bad faith, or were brought for the purposes of harassment?

|  | | |
|---|---|---|
| SOUTHERN SNOW, MFG. CO, INC. | YES _____ | NO _____ |
| SIMEON, INC. | YES _____ | NO _____ |

*Id.*

23

of these parties' LUTPA claims.[138] Therefore, this finding appears to foreclose SnoWizard's reliance upon the jury's findings with respect to its claim for LUTPA attorney's fees against Southern Snow and Simeon.

In support of its claim that attorney's fees are warranted, SnoWizard also cites the jury's rejection of Parasol's claim for infringement of Parasol's purported mark "SNOW SWEET" and the jury's finding that Parasol's conduct regarding the use SnoWizard's trademark "SNOSWEET" was "unethical, oppressive, unscrupulous, or deceptive."[139] However, both of these claims were under the Lanham Act, not LUTPA.[140] To obtain an award of attorney's fees pursuant to the LUPTA, a party must point to "an action under *this Section* [that] was groundless and brought in bad faith, or for purposes of harassment."[141] As SnoWizard does not specifically point to an unsuccessful LUPTA claim asserted by Parasol or argue why it is "groundless and brought in bad faith, or for purposes of harassment," SnoWizard has failed to show that it is entitled to attorney's fees as a result of the claim by Parasol.

Additionally, SnoWizard argues that the pre-trial dismissal of Plaintiffs' LUTPA claims support its request for attorney's fees.[142] However, other than a discussion of the background of the litigation,[143] SnoWizard offers no argument or citation to any authority for its claim that the pre-trial dismissal of Plaintiffs' LUTPA claims entitles it to attorney's fees. Although the Court dismissed certain LUTPA claims before trial, SnoWizard does not specifically identify which, if any, of these

---

[139] Rec. Doc. 741-1 at p. 12.

[140] Rec. Doc. 710 at p. 5, 19.

[141] LA. REV. STAT. § 51:1409(A) (emphasis added).

[142] Rec. Doc. 741-1 at p. 12

[143] *Id.* ("Over the course of the nearly seven years the consolidated suits have been pending, many of Plaintiffs' LUTPA claims were dismissed outright by this Court as a matter of law (discussed *supra*).")

24

dismissed LUTPA claims support its request for attorney's fees pursuant to LUTPA. Rather, SnoWizard seeks attorney's fees based upon a vague reference to pre-trial dismissals and a quotation from a prior Order of this Court. SnoWizard has not explained how the Court's pre-trial dismissals of certain LUTPA claims, considered along with, or independent of, the jury's findings, show that the claims brought by Parasol, Simeon, or Southern Snow were "groundless and brought in bad faith or for purposes of harassment."

Finally, SnoWizard argues that an award of attorney's fees is justified by Plaintiffs' "duplicative and harassing tactics."[144] As discussed above, both sides obtained mixed results in this litigation and SnoWizard has not demonstrated that the claims were "groundless and brought in bad faith or for the purposes of harassment."

---

[144] Rec. Doc. 741-1 at p. 13.

Accordingly, SnoWizard has not demonstrated that it is entitled to attorney's fees pursuant to the LUPTA. Therefore, the Court, in its discretion, declines to award attorney's fees pursuant to the LUPTA, and will deny SnoWizard's motion.[145]

### IV. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the "Renewed Motion for Attorney's Fees"[146] filed by SnoWizard, Inc. and Ronald R. Sciortino  is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this   26th  day of August, 2015.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[145] Because the Court has determined that SnoWizard has not shown that it is entitled to attorney's fees pursuant to Section 35(a) of the Lanham Act or pursuant to the LUPTA, the Court need not reach the issue of whether the amount of fees requested by SnoWizard is reasonable, or how those fees should be allocated between Plaintiffs.

[146] Rec. Doc. 741.